Xiaoning et al v. Yahoo! Inc, et al                                                                    Doc. 5

Case 4:07-cv-02151-CW     Document 5     Filed 05/29/2007     Page 1 of 32

1  Morton H. Sklar, Executive Director
   msklar@humanrightsusa.org
2  World Organization for Human Rights USA
   1725 K Street NW, Suite 610
3  Washington, DC  20006
4  Telephone:  (202) 296-5702
   Facsimile:   (202) 296-5704
5  [Admitted *Pro Hac Vice*]

6
   Roger Myers (CA State Bar No. 146164)
7  roger.myers@hro.com
   HOLME ROBERTS & OWEN LLP
8  560 Mission Street, 25th Floor
9  San Francisco, CA  94105-2994
   Telephone:  (415) 268-2000
10 Facsimile:   (415) 268-1999

11
   [Additional Attorneys Appear on Signature Page]
12
   Attorneys for Plaintiffs
13 WANG XIAONING, YU LING, SHI TAO

14
                 UNITED STATES DISTRICT COURT
15             NORTHERN DISTRICT OF CALIFORNIA
16                    OAKLAND DIVISION

17
   WANG XIAONING, YU LING, SHI TAO, and      CASE NO. C07-02151 CW
18 ADDITIONAL PRESENTLY UNNAMED
   AND TO BE IDENTIFIED INDIVIDUALS,
19
20              Plaintiffs,

21       v.                                    **AMENDED COMPLAINT
                                               FOR TORT DAMAGES**
22 YAHOO! INC., a Delaware Corporation,
   YAHOO! HOLDINGS (HONG KONG), LTD.,
23 a Foreign Subsidiary of Yahoo!,            **JURY TRIAL DEMANDED**
   ALIBABA.COM, INC., a Delaware
24 Corporation, AND OTHER PRESENTLY
   UNNAMED AND TO BE IDENTIFIED
25 INDIVIDUAL EMPLOYEES OF SAID
   CORPORATIONS,
26
27              Defendants.

28

---

Amended Complaint                                          Case No. C 07-02151 CW

#30216 v1

1    Plaintiffs, by and through their attorneys, allege upon personal knowledge and belief as to

2    their own circumstances, and upon information and belief (based on the investigation of counsel) as

3    to all other matters, that substantial evidentiary support exists or will exist after a reasonable

4    opportunity for further investigation and discovery as a result of trial proceedings, in support of the

5    following:

6    1.    Plaintiffs have been subjected to grave violations of some of the most universally

7    recognized standards of international law, including prohibitions against torture, cruel, inhuman, or

8    other degrading treatment or punishment, arbitrary arrest and prolonged detention, and forced labor,

9    for exercising their right of freedom of speech, association, and assembly, at the hands of Defendants

10    through Chinese officials acting under color of law in the People's Republic of China (referred to

11    herein as "the PRC" or "China").

12    2.    To commit these violations of specific, universal, and obligatory standards of

13    international law, Defendants willingly provided Chinese officials with access to private e-mail

14    records, copies of email messages, e-mail addresses, user ID numbers, and other identifying

15    information about the Plaintiffs and the nature and content of their use of electronic

16    communications.  This information, available only to the Defendants, was voluntarily provided to

17    Chinese officials by Defendants Yahoo! Inc., its agents, wholly-owned subsidiaries Yahoo! HK and

18    Yahoo! China, and its strategic partner Alibaba.com,Inc., and served as the basis for the acts of

19    persecution and torture that followed as a direct result of the Defendant's activities.  By providing

20    this information to the PRC, Defendants knowingly and willfully aided and abetted in the

21    commission of torture and other major abuses violating international law that caused Plaintiffs'

22    severe physical and mental suffering.

23    3.    Plaintiffs' claims are actionable under the Alien Tort Statute (ATS), 28 U.S.C. §

24    1350, and the Torture Victim Protection Act (TVPA), 28 U.S.C. § 1350, because their injuries

25    resulted from violations of specific, universal, and obligatory standards of international law as

26    embodied in a number of treaty obligations binding on the United States and implemented

27    domestically here in the United States by a number of statutes including the TVPA.

28

1

1    4.    Defendants' conduct also violates California state laws, including prohibitions against

2   battery, false imprisonment, assault, intentional infliction of emotional distress, negligence,

3   negligent supervision, and the California Business & Professions Code § 17200.

4    5.    Defendants' conduct also breaches United States law under the Electronic

5   Communications Privacy Act by exceeding their authorization to access and control highly private

6   and potentially damaging information concerning Plaintiffs' electronic communication, in violation

7   of 18 U.S.C. § 2701, by unlawfully and knowingly divulging Plaintiffs' electronic communication

8   contents and user information, in violation of 18 U.S.C. § 2702, and by intentionally acquiring

9   and/or intercepting the contents of electronic communications sent by and/or received by Plaintiffs

10   through their use of computers and other electronic devices which were part of, and utilized in,

11   Defendants' electronic communications systems, in violation of 18 U.S.C. § 2511.

12    6.    Plaintiffs seek general, compensatory, and punitive damages for their injuries, as well

13   as declaratory and injunctive relief to hold Defendants accountable for their unlawful actions, to

14   secure their assistance in obtaining the Plaintiffs' release from prison, and to prevent them from

15   similarly harming others in the future.

16    **JURISDICTION AND VENUE**

17    7.    This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 (federal

18   question jurisdiction), 28 U.S.C. § 1350 (Alien Tort Statute) and 28 U.S.C. § 1350 (Torture Victim

19   Protection Act). The Alien Tort Statute provides federal jurisdiction for "any civil action by an alien

20   for a tort only, committed in violation of the law of nations or a treaty of the United States." The

21   Torture Victim Protection Act supplements and confirms the ATS by providing federal jurisdiction

22   for acts of torture, as defined by 28 U.S.C. § 1350. The Electronic Communications Privacy Act, 18

23   U.S.C. § 2701 *et seq.*, provides federal jurisdiction for civil claims arising from unauthorized

24   disclosure of electronic communications and customer information.

25    8.    This Court also has supplemental jurisdiction over claims arising from violations of

26   state law because, pursuant to 28 U.S.C. § 1367, the facts in the claims arising from state law are so

27   related to the Plaintiffs' claims under federal laws that they form part of the same case or

28   controversy under Article III of the United States Constitution.

2

Amended Complaint

Case No. C07-02151 CW

#30216 v1

1

## INTRADISTRICT ASSIGNMENT

2      9.      Assignment and venue in the San Francisco/Oakland Division is proper pursuant to

3   Local Rule 3-2(c) and (d) because Defendants Yahoo! Inc. and Alibaba.com, Corp. are located in, do

4   business in, and/or have major business contacts with this district and division.

5

## PARTIES

### *Plaintiffs*

6

7      10.      Plaintiff **Wang Xiaoning** is a subject, citizen, and resident of the People's Republic

8   of China.  He sues on behalf of himself for the injuries, including pain and suffering, he has endured

9   as a result of his torture, cruel, inhuman, or other degrading treatment, and arbitrary arrest and

10  prolonged detention inflicted upon him as a result of the Defendants' actions aiding and abetting

11  Chinese government officials in committing these major human rights abuses.  Specifically, Wang

12  Xiaoning was arrested and unlawfully and arbitrarily detained and prosecuted for publishing and

13  circulating through the Internet electronic journals and articles that supported democratic reform in

14  China and for communicating with other democracy advocates. He also sues for compensation for

15  property seized by government officials in conjunction with his arbitrary arrest and prolonged

16  detention.  He is serving a ten-year sentence at Beijing Municipal No. 2 Prison, a forced labor prison

17  for political prisoners, under severe conditions of prolonged confinement that are highly abusive in

18  nature.

19     11.      Plaintiff **Yu Ling** is a subject, citizen, and resident of the People's Republic of China,

20  and is the wife of 27 years of Plaintiff Wang Xiaoning.  She sues on behalf of herself for the injuries,

21  including pain and suffering, she has endured as a result of her husband's torture, cruel, inhuman, or

22  other degrading treatment, and arbitrary arrest and prolonged detention inflicted upon him as a result

23  of the Defendants' actions aiding and abetting Chinese government officials in committing these

24  major human rights abuses.  Specifically, subsequent to her husband's unlawful and arbitrary

25  detention, Yu Ling has suffered extreme emotional distress and financial hardship.  She also sues for

26  compensation for property seized by government officials in conjunction with her husband's

27  arbitrary arrest and prolonged detention.

28

3

Amended Complaint                                                                    Case No. C07-02151 CW

#30216 v1

12.    Plaintiff **Shi Tao** is a subject, citizen, and resident of the People's Republic of China. He sues on behalf of himself for his injuries, including pain and suffering, resulting from torture, cruel, unusual, or other degrading treatment or punishment, arbitrary arrest and prolonged detention, and forced labor that were inflicted upon him as a result of the Defendants' actions in making possible and aiding and abetting Chinese government officials in committing these major human rights abuses. Specifically, Plaintiff Shi Tao was arrested and unlawfully and arbitrarily detained and prosecuted for emailing messages and notes describing government restrictions on journalists imposed in connection with the 15th anniversary of the Tiananmen Square crackdown on democracy advocates. He also sues for compensation for property seized by government officials in conjunction with his arbitrary arrest and prolonged detention. He currently is serving a ten-year sentence for "divulging state secrets abroad" at Chishan Prison of Hunan Province, a high-security prison with a documented system of forced labor and torture.

13.    Plaintiffs temporarily designated as "Presently Unnamed and To Be Identified" are citizens of China currently living in China or in exile in other countries, such as the United States, who were arbitrarily detained, arrested, tortured, subjected to cruel, inhuman, or degrading treatment or punishment, and/or subjected to forced labor, as a result of Defendants' actions in aiding and abetting these violations of United States and international law, including federal and state laws that provide civil actions for Defendants' acts. At the time of filing, Plaintiffs and their attorneys have identified at least 60 individuals imprisoned in China for expressing their support for free elections, democracy, or human rights through Internet communications or use, whose arrests and detention, based on information currently available, may be linked to actions by the Defendants that revealed Internet and electronic communication identifying information to PRC officials. Additional information about their arrests and detention, and their treatment in detention, for these unnamed individuals, as well as information on how the Defendants are responsible for their abuse, will be obtained during discovery and described in greater detail during these proceedings.

### *Defendants*

14.    Defendant **Yahoo! Inc.** is incorporated in Delaware with its principle place of business being located in California since 1994. Its corporate headquarters are in Sunnyvale,

4

California, in Santa Clara County. Yahoo! Inc. operates a business concerned primarily with electronic communication and information. The company's major activities include supplying Internet service, web-based personal e-mail accounts, news portals, and a search engine, all designed to facilitate electronic communication and sharing of information. By the nature of its activities, Yahoo! has access to and maintains identifying information about individuals using its electronic services.

15. Defendant **Yahoo! Holdings (Hong Kong), Ltd.** (Yahoo! HK), is a wholly owned subsidiary of Yahoo! Inc. based in Hong Kong. Yahoo! HK was the business entity, partner, and/or agent of Yahoo! Inc. responsible for operating and managing Yahoo! China until Yahoo! Inc. formed a strategic partnership with Defendant Alibaba.com, Corp. in October 2005.

16. Defendant **Alibaba.com, Inc.** (Alibaba) is a Chinese company engaged in electronic commerce and communications, operating the world's largest online marketplaces for both international and Chinese trade. Alibaba is, upon information and belief, incorporated in Delaware and the Grand Cayman Islands, and conducts its US business from its offices in Santa Clara and Newark, California.

17. Yahoo! Inc. has conducted business in China under the name Yahoo! China since 1999. Yahoo! Inc. has conducted business in China directly, through its wholly-owned subsidiary Yahoo! HK, and, since 2005, primarily through its strategic partner, Alibaba.

18. Defendant Yahoo! Inc. formed a strategic, exclusive partnership with Defendant Alibaba in October 2005. Under this partnership agreement, Yahoo! Inc. acquired a 40% share in Alibaba with 35% voting rights in exchange for $1 billion in cash. Also, Yahoo! Inc. merged the operations of Yahoo! China into Alibaba, giving Alibaba the exclusive right to use the Yahoo! brand in China. The two companies continue to work in an exclusive partnership to carry out and expand electronic services operations in China.

19. The additional, presently unknown Defendants listed in the caption heading of this case are presently unnamed and to be identified employees of the Defendant companies, and/or other persons whose individual actions contributed to or aided and abetted the violations of international law suffered by Plaintiffs as set out in this complaint. Identifying information about them and the

1   role they played in the abuses are expected to be identified and described in greater detail during

2   these proceedings.

3                                   **STATEMENT OF FACTS**

4                                      ***General Facts***

5          20.     Journalists, human rights activists, and other Internet users in China have been

6   subjected to a pattern of arbitrary criminal prosecution, imprisonment, and torture as a result of their

7   expression of ideas in opposition to the positions or policies of the government of the PRC on a

8   variety of politically disfavored topics, such as the Tiananmen Square massacre, democratic reform,

9   human rights advocacy, or disagreement with government policies generally.  As a result of the

10  expression of their views, these "dissidents" are subjected to arbitrary arrest, criminal prosecution,

11  and persecution in violation of numerous protections for fundamental rights of freedom of

12  expression, association, and assembly under the Chinese Constitution and international law.

13         21.     Since the arrival of electronic communications and the Internet in China, official

14  controls have been imposed to monitor and censor electronic communications on a widespread basis,

15  in order to keep track of the access and use of Internet information sources, including expression

16  related to certain political topics, such as democracy support and human rights.  As a result,

17  "dissident" journalists, human rights activists, and other Internet users' personal communications

18  and activities are carefully censored and monitored.

19         22.     Once these "dissidents" are identified and targeted through the Internet monitoring

20  and censorship program, they face a well documented pattern of systematic arbitrary arrest and

21  prolonged detention, incommunicado detention, extrajudicial killings, torture, cruel, inhuman or

22  degrading treatment and punishment, and forced labor.  Sometimes, these abuses lead to death in

23  custody.  Despite Chinese laws prohibiting these violations of both domestic law and international

24  human rights standards, authorities carry out these abuses under color of law within a culture of

25  impunity.

26         23.     In or around the Spring of 2002, Yahoo! Inc. signed an official, voluntary agreement

27  that had the effect of directly involving Yahoo! in the censoring and monitoring of on-line content

28  and communication by its Chinese users.  This agreement was in the form of the Internet Society of

                                              6

China's "Public Pledge on Self-Discipline for the Chinese Internet Industry" (referred to herein as "the Public Pledge"). The Internet Society of China is a government-affiliated professional organization, and the Public Pledge is described as being voluntary, not required by government regulation, although pressures to sign the Pledge and to abide by its requirements as a prerequisite for doing business in China are considerable. By signing the Public Pledge, Yahoo! Inc. voluntarily agreed to help monitor and censor electronic communication use involving information that, according to the Internet Society of China, could "jeopardize state security" or "disrupt social stability," and to report any offending on-line expression or communication to PRC authorities.

24.    A number of human rights organizations responded to news of the Defendants signing this pledge by alerting Defendants that by helping the censors, and by identifying people who could be accused of anti-government speech or communication, the Defendants would be placing many innocent individuals, who were merely expressing their views or communicating with others, at risk of arbitrary arrest, prolonged arbitrary detention, forced labor, and torture as a result of their lawful exercise of free speech and free association rights. For example, on July 30, 2002, Human Rights Watch sent a letter to Yahoo! Inc. Chairman and Chief Executive Officer Terry Semel, expressing concern that Yahoo! Inc. signed the Public Pledge, and alerting Yahoo! Inc. of the dangers to Internet users associated with their company's cooperation with monitoring and censoring efforts. This letter notified Yahoo! Inc. that it was common in China for people to be arbitrarily arrested for expressing disfavored views. The letter pointed out that "In China ... any public expression of views that differ from those of the state, and provision of information not deemed politically acceptable, may be considered 'harmful' and may result in a prison sentence," mistreatment, torture, and execution. The letter also stated that, by upholding the Public Pledge, Defendants would risk assisting such human rights violations, clearly pointing out that "there is a strong likelihood that Yahoo will assist in furthering such human rights violations" through support of these monitoring and censorship activities. The letter urged Yahoo! Inc. to withdraw from the Public Pledge and to state its support for internationally recognized standards of free expression. Human Rights Watch also sent copies of this letter to Jerry Yang, Co-Founder and Director of Yahoo! Inc., Chris Castro, Chief Communications Officer and Senior Vice President of Yahoo! Inc., John Costello, Chief

7

1 Global Marketing Officer of Yahoo! Inc., and Jon Sobel, Vice President, General Counsel, and
2 Secretary of Yahoo! Inc.

3     25.    A subsequent 2002 Amnesty International report also provided Defendants notice that
4 the Defendants' involvement in the monitoring and censorship program presented a grave risk to
5 Internet users, and subjected them to arbitrary detention and torture.  On November 26, 2002,
6 Amnesty International published "State Control of the Internet in China," documenting Chinese
7 officials' use of electronic evidence to prosecute Chinese democracy advocates for exercising their
8 freedom of expression over the Internet. This report, as well as the numerous press releases and news
9 articles publicizing it, noted that Yahoo! Inc. had signed the Public Pledge and pointed out that
10 compliance with the pledge could lead to violations of international human rights norms.
11 Furthermore, the report documented that 21 prisoners in China had already suffered arbitrary arrest
12 and prolonged arbitrary detention, torture, and death in custody as punishment for the "crime" of
13 using the Internet to exercise their right to freedom of expression, and to communicate and obtain
14 information concerning human rights or democracy.

15     26.    Particularly in light of these notifications, along with general and well-publicized
16 documentation of Chinese human rights abuses, including those in the U.S. Department of State
17 Reports on human rights abuses in China, Defendants had every reason to know and understand that
18 the electronic communication user information they provided to authorities could well be used to
19 assist in the infliction of such abuses as arbitrary arrest, torture, cruel, inhuman, or other degrading
20 treatment, and prolonged detention and/or forced labor, to punish what might be viewed by
21 authorities as pro-democracy or human rights activities.

22     27.    Despite this knowledge and understanding, Defendants turned over specific
23 identifying information about the Plaintiffs and their electronic communications to officials who
24 used this information as a basis for arbitrarily arresting, detaining, and torturing the Plaintiffs.

25     28.    While in custody, Plaintiffs were subjected to torture, cruel, inhuman or degrading
26 treatment, forced labor, and arbitrary, prolonged and indefinite detention, for expressing their free
27 speech rights and for using the Internet to communicate about democracy and human rights matters.

28

8

29.    Defendants greatly benefited from these violations of the Plaintiffs' fundamental human rights through their continued and expanded conduct of business in the PRC, the second-largest Internet market in the world with at least 110 million users. Defendants provided identifying information about the Plaintiffs, in violation of the privacy agreements and assurances made to the Defendants' customers and users, that led to their arbitrary arrest, indefinite detention and torture, in order to obtain the approval and support of PRC officials and their agreement to allow them to continue conducting and expanding the Defendants' business interests in the PRC.

### *Specific Facts*

Wang Xiaoning

30.    From 2000 to 2001, Wang Xiaoning edited *Free Forum of Political Reform*, and from 2001 to 2002, he edited *Commentaries on Current Political Affairs*, electronic journals containing articles written by Wang and others calling for democratic reform and a multi-party system in China.

31.    During this same time period, Wang posted additional pro-democracy articles on websites in China and abroad. From 2000 to 2001, Wang Xiaoning published his journals and articles on an e-mail subscriber list, "aaabbbccc" Yahoo! Group.

32.    In 2001, administrators noticed the political content of Wang's writings and blocked him from sending messages to the "aaabbbccc" Yahoo! Group.

33.    With this means of dissemination blocked to him, Wang Xiaoning continued to publish his writings by electronically sending his journal on an anonymous basis to individual e-mail addresses until he was arbitrarily detained in 2002.

34.    Yahoo! HK provided identifying information to police, linking Wang Xiaoning to his anonymous e-mails and other pro-democracy Internet communications.

35.    On September 1, 2002, approximately ten security police raided Wang Xiaoning's home and arbitrarily detained Wang Xiaoning without informing him or his family of the charges against him. On the same day, police searched his home and seized two computers, personal computer files, e-mail records, written notes, address books, and manuscripts.

36.    Wang was not formally arrested and charged until almost a month later, on September 30, 2002.

9

1      37.    From September 1, 2002 to May 2004, Wang was held at the Detention Center of

2  Beijing State Security Bureau, where he suffered severe abuse at the hands of the prison officials.

3  The officials kicked and beat Wang repeatedly to force him to confess to having engaged in "anti-

4  state" activities and to turn over the names of other persons with whom he had communicated.

5  Prison guards commanded and instructed other prisoners to use psychological tactics against Wang

6  to break his resolve so that he would confess, and also as punishment for his writings.  During the

7  more than twenty months that he was arbitrarily detained at the Detention Center, Wang was often

8  barred from going outside.  These abuses had severe physical and psychological effects on Wang.

9  When his wife was finally able to see him approximately six months after his arbitrary and unlawful

10  detention, Wang was very weak, showed no emotional expression, and exhibited severe respiratory

11  difficulties.

12      38.    On July 25, 2003, the Beijing Municipal First Intermediary People's Court tried

13  Wang Xiaoning on charges of "incitement to subvert state power," advocating the establishment of

14  an alternative political party, and communicating with an overseas organization the Chinese

15  government considers "hostile."

16      39.    On September 12, 2003, after almost fourteen months of arbitrary detention, the court

17  sentenced Wang to ten years in prison and two additional years of deprivation of political rights.

18      40.    The court specifically relied on evidence supplied by Defendants to identify and

19  convict Wang Xiaoning.  The judgment noted that Yahoo! HK informed investigators that a

20  mainland China-based e-mail account (bxoguh@yahoo.com.cn) was used to set up Wang Xiaoning's

21  "aaabbbccc" Yahoo! Group, and that the e-mail address ahgq@yahoo.com.cn, which Wang

22  Xiaoning used to post e-mails to that Yahoo! Group, was also a mainland China-based account

23  maintained by Wang Xiaoning.  Defendants were cited in the court decision as instrumental in

24  causing the Plaintiff's arrest and criminal prosecution.

25      41.    Additional evidence cited by the judgment included the following pro-democracy,

26  non-violent statements attributed to Wang Xiaoning as having appeared in his electronic

27  communications:

28

10

1    "Without the multi-party system, free elections and separation of powers, all types of
2    political reform will come to nothing."

3

4    "We should never forget that China is still a totalitarian and despotic country."

5

6    "The Four Basic Principles [of Chinese Communist government] are the biggest
7    obstacle to the establishment of the democratic system [in China]."

8

9    "In today's China, the workers and peasants are pressed under the lowest level of
10    society.  Thousands upon thousands of workers lost their job and many peasant
11    workers are bitterly oppressed and exploited. However, they have no right to go on
12    strike, no freedom to organized their own union and cannot find anything by which to
13    secure their basic rights."

14

15    "The main reason that the Chinese Communist Party has been able to retain power in
16    spite of being so corrupt is that China does not yet have a party that can replace the
17    Communist Party."

18

19    42.    In May 2004, authorities transferred Wang to the Beijing Prison No. 2. Upon his
20    transfer, authorities warned Wang Xiaoning that if he appealed the judgment against him, he would
21    be denied any opportunity for parole, reduction of sentence for good behavior, or other privileges.
22    Despite these warnings, Wang Xiaoning filed his appeal with the Supreme People's Court, citing
23    that his arrest and conviction for free expression of his opinions was illegal under Chinese and
24    international law.  Rejecting these arguments, the court denied his appeal on December 22, 2004.
25    Through his wife, Yu Ling, Wang Xiaoning appealed his case again, but the courts rejected his
26    application for appeal on July 1, 2006.
27    43.    Wang Xiaoning has continued to suffer severe physical, psychological, and emotional
28    abuse as a result of the court's decision that his writings and beliefs were subversive. Beijing

11

1   Municipal No. 2 Prison, where Wang is unlawfully incarcerated, is a secretive, high-security forced

2   labor prison where serious and "special control" prisoners are held, particularly political prisoners.

3   Wang has been subjected to a severe form of treatment in this prison.  He is held in a cell with nine

4   other inmates and subjected to malnourishment.  The prison guards deny Wang any access to

5   recreation or even sunlight for weeks and even months at a time, even though the standard at the

6   prison is to allow prisoners outside once a day.  Prison officials refused to allow Wang to see his

7   mother before her death in September 2005.  Wang's access to family members is strictly limited,

8   with his wife allowed to see him at most for only one half hour per month. Prison officials scrutinize

9   all written correspondence to and from Wang, severely limiting his ability to communicate with

10  anyone outside the prison, including his wife.

11                                               Yu Ling

12      44.    Yu Ling and her family have endured severe psychological and emotional suffering

13  as a direct result of the arbitrary detention of her husband on September 1, 2002.  She and her family

14  have suffered from the loss of Wang's presence and the lack of information about his location, the

15  charges against him, his treatment, and his well-being.

16      45.    Yu Ling was present on September 1, 2002, when security police raided the house she

17  shared with her husband, Wang Xiaoning.  Some of the property that security police seized that day

18  – including one of the computers – was Yu Ling's property.

19      46.    Since Wang Xiaoning was illegally detained, Yu Ling has been subjected to

20  continued police surveillance, which caused her to fear for her own safety and personal security.

21  She feared that the police would arbitrarily arrest her and subject her to physical abuse like her

22  husband.  These fears were reinforced by the actions of her family and friends, who no longer

23  contacted her out of their own fears for their personal safety and respectability, and also because the

24  police required people coming to visit her to register their names.  Because of the surveillance and

25  out of sincere concern for herself and her family, friends, and neighbors, Yu Ling isolated herself

26  and took extra care not to raise the suspicions of the officials toward her or her family and friends.

27  Yu Ling has suffered from extreme depression and guilt over these events.

28

Amended Complaint                                                    Case No. C07-02151 CW

#30216 v1

47. The arbitrary detention of her husband Wang Xiaoning placed Yu Ling in an extremely embarrassing position with her family. Due to the implications of his arrest, the danger it could cause to her family, and the heightened importance of status in China, Yu Ling kept the truth of Wang's arbitrary detention from her immediate family. At her mother's funeral, Yu Ling's siblings confronted her and accused her husband of being a bad man for not attending the funeral. In the midst of her extreme grief over the passing of her mother, Yu Ling had to tell her brothers and sisters the truth that her husband Wang could not attend because he was in prison.

48. These psychological and emotional injuries have caused Yu Ling physical injury. She cannot eat or sleep due to the emotional distress caused by her husband's absence, has lost a substantial amount of weight, and is consumed by her efforts to assist her husband.

49. Since the arbitrary detention of her husband Wang Xiaoning on September 1, 2002, Yu Ling has had to devote many hours to her husband's defense. This has taken her away from work, resulting in lost income. She has also had to pay several attorneys a substantial amount of money to defend her husband. Yu and her family have also suffered financially from the loss of Wang Xiaoning's income. Her son has attempted to replace his father's lost salary but a company that offered him work terminated the contract when it learned of Wang Xiaoning's conviction.

### Shi Tao

50. From February 2002 to May 2004, Shi Tao worked as a reporter and head of the Editorial Department for *Contemporary Business News* (*Dangdai Shangbao*) in Changsha, Hunan Province, China. From May 2004 until his arbitrary arrest and prolonged arbitrary detention on November 23, 2004, Shi Tao worked as a freelance journalist, in Taiyuan, Shanxi Province, China.

51. As a reporter, Shi Tao wrote about corruption by government officials in China. As a freelance writer, he published numerous political commentaries calling for democratic reform of the Chinese government, as well as several books of poetry.

52. In April 2004, Shi Tao published an essay, "The Most Disgusting Day," that criticized the Chinese government for detaining an activist member of the Tiananmen Mothers, an organization of mothers whose children were killed by the Chinese government in its 1989

13

1   crackdown on the internal democracy movement and demonstrators in Tiananmen Square. Tao

2   published the essay under a pseudonym on an Internet forum.

3       53.     On April 20, 2004, at a staff meeting at the offices of the publication *Contemporary*

4   *Business News*, Shi Tao was advised of a document sent by the CCP's Central Propaganda Bureau,

5   alerting journalists to the security concerns and government preparations in anticipation of the

6   upcoming 15th anniversary of the 1989 Tiananmen Square massacre. Later that night, Shi Tao sent

7   his notes from this staff meeting, under an alias, to the New York-based Web site *Democracy Forum*

8   *(Minzhu Tongxun)*, using his personal Yahoo! e-mail account.

9       54.     Between April 20, 2004 and November 23, 2004, Yahoo! HK gave Chinese officials

10  and investigators information linking Shi Tao to the anonymous email he sent to Democracy Forum,

11  including the account holder information for the email address, the IP address and physical address

12  of the computer from which the email was sent, and the date and time the email was sent and its

13  contents. Defendants also supplied to the prosecuting officials the physical address of the office

14  where the offending electronic communication took place, thereby linking the anonymous email

15  message to Shi Tao.

16      55.     On November 23, 2004, Shi Tao was detained mid-day in a street near his home in

17  Taiyuan, Shanxi Province. As he was walking on the street, several people suddenly accosted and

18  kidnapped him, placed a hood over his head and transported him thousands of miles away to

19  Changsha, Hunan Province. His house was subsequently searched and police seized his computer,

20  papers, and other property without a warrant.

21      56.     After 21 days of detention, Shi Tao was formally arrested and charged on December

22  14, 2004, but the charges were not made public.

23      57.     Up to and during his trial, Shi Tao was held at Changsha Detention Center, where

24  officials are known to physically abuse and torture detainees on a regular basis. Survivors of the

25  prison describe being handcuffed and shackled for weeks at a time and chained to a door plank.

26  Officials typically prohibit visits from family members as they believe isolation contributes to a

27  more rapid reeducation of the detainee and a repudiation of their "unlawful" conduct.

28

14

1    58.    On February 24, 2005, Chinese authorities revoked the credentials of Shi Tao's

2    defense attorney for representing activists accused of "adopting positions and making statements

3    contrary to the law and the Constitution" and "defiling and slandering the Communist Party and

4    government." On March 4, 2005, seven days before Shi Tao's trial, authorities placed his defense

5    attorney under house arrest, presumably for the "crime" of properly defending his client.

6    59.    On March 11, 2005, the Changsha Municipal Intermediate People's Court in Hunan

7    Province tried Shi Tao in a closed hearing. To no one's surprise, given what had happened to his

8    prior attorney, Shi Tao's court-appointed replacement attorney entered a guilty plea on Shi Tao's

9    behalf.

10    60.    On April 30, 2005, the court sentenced Shi Tao to ten years imprisonment for

11    "illegally providing state secrets overseas." In its verdict, the court specifically made reference to

12    and cited the Internet user information that Defendants had supplied to Chinese officials as evidence

13    against Shi Tao:

14    "Account holder information furnished by Yahoo! Holdings (Hong Kong) Ltd., which

15        confirms that for IP address 218.76.8.201 at 11:32:17 p.m. on April 20, 2004, the

16        corresponding user information was as follows: user telephone number 0731-4376362

17        located at the Contemporary Business News office in Hunan."

18    61.    On May 4, 2005, Shi Tao appealed the judgment to the Hunan Province High

19    People's Court on the ground that because the police used items seized without a warrant, the

20    evidence against him was illegal, and that because the information he provided to *Democracy Forum*

21    was a reflection of public sentiment, he could not be accused of revealing a state secret. At the

22    appellate court's hearing, the court refused to hear the arguments presented by Shi Tao's legal

23    defense, failed to respond to the evidence presented by the defense, and closed the hearing to the

24    public despite Chinese Criminal Procedure Law provisions that appeal hearings, even for state

25    secrets cases, should be open to the public unless there are enumerated exceptional circumstances.

26    The court denied Shi Tao's appeal on June 2, 2005.

27    62.    On March 30, 2006, Shi Tao, through his legal representative, filed a formal

28    complaint with the Hong Kong Privacy Commissioner, requesting an investigation of the

15

1    Defendants' actions divulging Shi Tao's private information. The Privacy Commissioner accepted

2    the complaint and conducted an investigation. The Privacy Commissioner's report, made public on

3    March 14, 2007, concluded that because Hong Kong's privacy ordinance only regulates the actions

4    of companies in Hong Kong and in Shi Tao's case the information was disclosed in China to

5    Chinese officials, his office did not have jurisdiction over the incident.

6        63.    Since his appeal was denied in June 2005, Shi Tao has been incarcerated at Chishan

7    Prison of Hunan Province, Area 6, a high-security prison known for holding political prisoners and

8    violent criminals serving long sentences. Shi Tao shares a cell with more than ten other inmates.

9    His health and mental state have deteriorated sharply in the prison. He suffers from an ulcer and a

10   heart ailment, as well as skin lesions induced by the prison's damp conditions. He has very little

11   contact with people outside the prison. The prison officials monitor his written communications.

12       64.    Chishan Prison uses a severe system of forced labor, in which prisoners work in dark,

13   dust-filled factories, starting before dawn and working for sixteen hours or more, in conditions

14   intended to destroy their physical and mental capacities. Shi Tao has served as a forced laborer in

15   these workshops. Detainees in this prison rarely see daylight. Former prisoners have reported that

16   inmates are denied sleep and forced to labor for long hours under bright lights, which harm their

17   vision and in some cases cause blindness and other disabilities. Prisoners convicted of violent crimes

18   are placed in charge of the workshops to intimidate their fellow inmates. They are encouraged to

19   target their attention and abuse on the political prisoners. Guards in Chishan Prison also abuse and

20   torture the political prisoners with constant violence and intimidation. Survivors of the prison have

21   described the systemic use of torture and other cruel, inhuman or degrading treatment or punishment

22   by prison guards. Prisoners also are denied necessary medical care, a particularly important

23   consideration for Shi Tao considering his ulcer, heart ailment, and skin lesions.

24       65.    In addition to his physical and psychological injuries, Shi Tao has suffered extreme

25   emotional distress. He has even lost his family, since his wife divorced him in 2006.

26       66.    In October 2005, the Committee to Protect Journalists named Shi Tao one of three

27   annual recipients of its International Press Freedom Award. Amnesty International has declared Shi

28   Tao a prisoner of conscience as he was imprisoned solely for peacefully exercising his right to

16

freedom of expression and opinion. The United States Department of State Country Report on

Human Rights Practices in China for 2006, published March 6, 2007, names Shi Tao as a political

prisoner, imprisoned for exercising the right to free expression.

## CAUSES OF ACTION

67.    Plaintiffs' causes of action arise under and violate the following laws, agreements,

conventions, resolutions, and treaties:

(a)    Alien Tort Statute, 28 U.S.C. § 1350;

(b)    Torture Victim Protection Act, 28 U.S.C. § 1350;

(c)    Convention against Torture and Other Cruel, Inhuman, or Degrading Treatment or
Punishment G.A. res. 39/46, annex, 39 U.N. GAOR Supp. (No. 51) at 197, U.N. Doc.
A/39/51 (1984), *entered into force* June 26, 1987;

(d)    International Covenant on Civil and Political Rights, G.A. res. 2200A (XXI), 21 U.N.
GAOR Supp. (No. 16) at 52, U.N. Doc. A/6316 (1966), 999 U.N.T.S. 171, *entered
into force* Mar. 23, 1976;

(e)    Universal Declaration of Human Rights (1948) G.A. res. 217A (III), U.N. Doc A/810
at 71;

(f)    Charter of the United Nations (1945), **adopted** June 26, 1945, 59 Stat. 1031, T.S.
993, 3 Bevans 1153 (*entered into force* October 24, 1945);

(f)    International Labor Organization Convention No. 29 Concerning Forced or
Compulsory Labor (1930), *adopted* June 28, 1930, 39 U.N.T.S. 55 (*entered into force*
May 1, 1932).

(g)    The Electronic Communications Privacy Act, 18 U.S.C. § 2701, § 2702, and §2511;
and

(h)    Statutes and common law of the State of California, including but not limited to
assault and battery, false imprisonment, negligence, intentional infliction of emotional
distress, negligent infliction of emotional distress, and unfair business practices.

17

1

### *FIRST CLAIM FOR RELIEF*

2

**(Torture, a Violation of International Law for Which the Alien Tort Statute**

3

**and the Torture Victim Protection Act Provide Relief)**

4

**(By Wang Xiaoning and Shi Tao Against All Defendants)**

5      68.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in

6    paragraphs 1 through 66 of this Complaint as if fully set forth herein in this First Claim for Relief.

7      69.    The Defendants' acts described in this Complaint caused direct and severe physical

8    and mental pain and suffering to the Plaintiffs and placed them at severe risk of personal injury

9    and/or death in connection with their participation in, and support of, the peaceful exercise of their

10   rights of free speech and communication, free association, and the right to hold, exercise and express

11   their political beliefs.

12     70.    Because Defendants' acts described herein violated multiple provisions prohibiting

13   torture on an absolute basis including: (1) treaties binding on the United States, (2) statutes adopted

14   by the Congress of the United States implementing those treaty obligations, (3) international and

15   domestic judicial decisions applying and interpreting the prohibition against cruel, inhuman, or

16   degrading treatment or punishment, (4) administrative regulations and international and domestic

17   judicial decisions applying and interpreting the prohibition against torture, and (5) a number of

18   specific, universal, and obligatory standards that are recognized to be part of customary international

19   law, these acts constitute "tort[s] ... committed in violation of the law of nations or a treaty of the

20   United States" under the Alien Tort Statute (ATS), 28 U.S.C. § 1350.

21     71.    These acts also specifically constitute torture in violation of the Torture Victim

22   Protection Act (TVPA), 28 U.S.C. § 1350.

23     72.    Defendants aided and abetted and/or ratified these acts of torture in violation of

24   international, federal, and state law. These violations and actions meet the definition of torture under

25   the meaning of the TVPA, the ATS, and international treaties and U.S. laws and regulations, as well

26   as customary international law, which condemn torture on an absolute basis, irrespective of the

27   reasons why the abuses are inflicted.

28

18

Amended Complaint                                                        Case No. C07-02151 CW

#30216 v1

73.    The Plaintiffs are therefore entitled on this basis to compensatory and punitive damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

### SECOND CLAIM FOR RELIEF

**(Cruel, Inhuman or Degrading Punishment or Treatment or Punishment, Violations of International Law for Which the Alien Tort Statute Provides Relief)**

**(By Wang Xiaoning and Shi Tao Against All Defendants)**

74.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 66 of this Complaint as if fully set forth herein in this Second Claim for Relief.

75.    These acts of cruel, inhuman, or degrading treatment or punishment suffered by the Plaintiffs designated in this Second Claim for Relief, including physical injury and the severe physical and mental suffering associated therewith, were inflicted upon them by the joint and collusive actions of the Defendants and PRC government officials acting under color of law, through unlawful or unauthorized actions prohibited by international law.

76.    These acts had the intent and the effect of grossly humiliating, debasing, intimidating, and punishing the Plaintiffs, forcing them to act against their will and conscience, inciting fear and anguish, and seeking to break their physical and/or moral resistance.

77.    These acts of cruel, inhuman, or degrading treatment or punishment were inflicted on the Plaintiffs for purposes that include, among others, preventing them from exercising their free speech and free association rights, and punishing them for exercising their right to have and communicate political beliefs.

78.    Because the acts described herein violated the prohibitions against cruel, inhuman, or degrading punishment or treatment including: (1) treaties binding on the United States, (2) statutes adopted by the Congress of the United States implementing those treaty obligations, (3) international and domestic judicial decisions applying and interpreting the prohibition against cruel, inhuman, or degrading treatment or punishment, (4) administrative regulations and international and domestic judicial decisions applying and interpreting the prohibition against cruel, inhuman or degrading treatment or punishment, and (5) a number of specific, universal, and obligatory standards that are

19

1    recognized to be part of customary international law, these acts constitute "tort[s] ... committed in

2    violation of the law of nations or a treaty of the United States" under the Alien Tort Statute, 28

3    U.S.C. § 1350.

4        79.    Defendants knowingly aided and abetted and/or ratified these abuses, and did not act

5    to prevent or punish these violations of human rights as embodied in international law.

6        80.    Defendants are liable for aiding and abetting and/or ratification of the commission of

7    these abuses under this cause of action.

8        81.    The Plaintiffs are therefore entitled on this basis to compensatory and punitive

9    damages in amounts to be established at trial, and to such other declaratory and/or injunctive relief

10   as may be deemed appropriate.

### THIRD CLAIM FOR RELIEF

**(Arbitrary Arrest and Prolonged Detention, a Violation of International Law for Which the
Alien Tort Statute and the Torture Victim Protection Act Provide Relief)**

**(By Wang Xiaoning and Shi Tao Against All Defendants)**

15       82.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in

16   paragraphs 1 through 66 of this Complaint as if fully set forth herein in this Third Claim for Relief.

17       83.    These acts of arbitrary arrest and long-term detention suffered by the Plaintiffs

18   designated in this Third Claim for Relief, including arrest and detention for an unlawful purpose in

19   violation of the rights to freedom of speech, association, and assembly, were inflicted upon them by

20   the joint and collusive actions of the Defendants and government officials acting under color of law,

21   albeit through unlawful or unauthorized actions and for unlawful and unauthorized purposes.

22       84.    These acts caused direct physical and mental pain and suffering upon the Plaintiffs,

23   caused loss of liberty and property, and placed them at severe risk of personal injury in connection

24   with their participation in, and support of, the peaceful exercise of their rights of free speech and free

25   association, and their rights to hold, exercise and express their political beliefs.

26       85.    Because the acts described herein violated provisions prohibiting arbitrary arrest and

27   prolonged detention including: (1) treaties binding on the United States, (2) statutes adopted by the

28   Congress of the United States implementing those treaty obligations, (3) international and domestic

20

1  judicial decisions applying and interpreting the prohibition against arbitrary arrest and prolonged

2  detention, (4) administrative regulations and international and domestic judicial decisions applying

3  and interpreting the prohibition against arbitrary arrest and prolonged detention, and (5) a number of

4  specific, universal, and obligatory standards that are recognized to be part of customary international

5  law, these acts constitute "tort[s] ... committed in violation of the law of nations or a treaty of the

6  United States" under the Alien Tort Statute, 28 U.S.C. § 1350.

7     86.    Defendants aided and abetted in the carrying out of these abuses, and did not act to

8  prevent or punish these violations of human rights as embodied in international and domestic law.

9     87.    Defendants are liable for aiding and abetting and/or ratifying these abuses, as

10  specified in this cause of action.

11     88.    The Plaintiffs are therefore entitled on this basis to compensatory and punitive

12  damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief

13  as may be deemed appropriate.

14                        ***FOURTH CLAIM FOR RELIEF***

15  **(Forced Labor, a Violation of International Law for Which the Alien Tort Claims Act**
   **and the Torture Victims Protection Act Provide Relief)**

16

17                  **(By Shi Tao Against All Defendants)**

18     89.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in

19  paragraphs 1 through 47of this Complaint as if fully set forth herein in this Fourth Claim for Relief.

20     90.    The Plaintiffs were placed in fear for their lives, were deprived of their freedom, and

21  were forced to suffer severe physical and mental abuse associated with forcing them into working in

22  the prison factories in inhumane conditions, by the joint and collusive actions of the Defendants and

23  government officials acting under color of law, through unlawful or unauthorized actions.

24     91.    Because the acts described herein violated provisions prohibiting forced labor

25  including: (1) treaties binding on the United States, (2) international and domestic judicial decisions

26  applying and interpreting the prohibition against forced labor, and (3) administrative regulations and

27  international and domestic judicial decisions applying and interpreting the prohibition against forced

28  labor, and (4) a number of specific, universal, and obligatory standards that are recognized to be part

                                        21

Amended Complaint                                              Case No. C07-02151 CW

#30216 v1

of customary international law, these acts constitute "tort[s] ... committed in violation of the law of nations or a treaty of the United States" under the Alien Tort Claims Act, 28 U.S.C. § 1350.

92.     Defendants aided and abetted in the carrying out of these abuses, and did not act to prevent or punish these violations of human rights as embodied in international and domestic law.

93.     Defendants are liable for aiding and abetting and/or ratifying this cause of action.

94.     The Plaintiffs are therefore entitled on this basis to compensatory and punitive damages to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

## FIFTH CLAIM FOR RELIEF

### (Battery)

### (By Wang Xiaoning and Shi Tao Against All Defendants)

95.     Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 66 of this Complaint as if fully set forth herein in this Fifth Claim for Relief.

96.     On information or belief, Defendants intentionally committed acts that resulted in harmful or offensive treatment of Plaintiffs' persons, and produced bodily harm.  Plaintiffs did not consent to the contact and treatment that caused injury, damage, loss or harm to Plaintiffs.

97.     The acts described constitute battery, actionable under the laws of California and the United States.

98.     Defendants are liable for aiding and abetting and/or ratifying these abuses, as specified in this cause of action.

## SIXTH CLAIM FOR RELIEF

### (Assault)

### (By Wang Xiaoning and Shi Tao Against All Defendants)

99.     Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 66 of this Complaint as if fully set forth herein in this Sixth Claim for Relief.

100.    On information or belief, Defendants' conduct caused Plaintiffs to be subjected to numerous batteries and/or intentional invasions of their rights to be free from offensive and harmful

22

Amended Complaint                                                    Case No. C07-02151 CW

#30216 v1

1   contact, and said conduct demonstrated that Defendants had a present ability to subject Plaintiffs to

2   immediate, intentional, offensive and harmful touching.

3       101.    The acts described herein constitute assault, actionable under the laws of California

4   and the United States.

5       102.    Defendants are liable for aiding and abetting and/or ratifying these abuses, as set forth

6   in this cause of action.

7                                                      ***SEVENTH CLAIM FOR RELIEF***

8                                                           **(False Imprisonment)**

9                               **(By Wang Xiaoning and Shi Tao Against All Defendants)**

10      103.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in

11  paragraphs 1 through 66 of this Complaint as if fully set forth herein in this Seventh Claim for

12  Relief.

13      104.    On information or belief, Defendants intentionally and unlawfully exercised force or

14  the express or implied threat of force to restrain, detain or confine Plaintiffs on an arbitrary and

15  unlawful basis.  The restraint, detention or confinement compelled Plaintiffs to stay or go

16  somewhere against their will for some appreciable time.  Plaintiffs did not consent to this restraint,

17  detention or confinement.

18      105.    Defendants' actions constituted false imprisonment under standards of law applied by

19  California and the United States.

20      106.    Defendants are liable for aiding and abetting and/or ratifying these abuses as specified

21  in this cause of action.

22                                                        ***EIGHTH CLAIM FOR RELIEF***

23                    **(Intentional Infliction of Emotional Distress)**

24                          **(By All Plaintiffs Against All Defendants)**

25

26      107.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in

27  paragraphs 1 through 66 of this Complaint as if fully set forth herein in this Eighth Claim for Relief.

28

Amended Complaint                                                      Case No. C07-02151 CW

#30216 v1

108.    On information or belief, Defendants intended to cause Plaintiffs to suffer emotional distress, or, in the alternative, (a) Defendants engaged in the conduct adversely affecting Plaintiffs with reckless disregard of the high probability that it would cause Plaintiffs to suffer severe abuses and emotional distress, (b) Plaintiffs were present at the time the outrageous conduct and these results occurred and (c) the Defendants knew that Plaintiffs were present and would be adversely affected.

109.    Plaintiffs suffered severe abuse and emotional distress as a result of the conduct of the Defendants.

110.    Defendants' conduct constitutes the intentional infliction of emotional distress and is actionable under the laws, standards, and causes of action as set forth in this complaint.

111.    Defendants are liable for aiding and abetting and/or ratifying these abuses as set forth in this cause of action.

### *NINTH CLAIM FOR RELIEF*

### (Negligence)

### (By All Plaintiffs Against All Defendants)

112.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 66 of this Complaint as if fully set forth herein in this Ninth Claim for Relief.

113.    On information or belief, Defendants failed to use ordinary or reasonable care in order to avoid injury to Plaintiffs. Defendants' negligence was a cause of injury, damage, loss or harm to Plaintiffs.

114.    As a result of these acts, Plaintiffs suffered harm including, but not limited to, severe emotional distress. Defendants' conduct constitutes negligence and is actionable under the causes of action as set forth in this complaint.

115.    Defendants are liable for aiding and abetting and/or ratifying these abuses as specified in this cause of action.

24

### TENTH CLAIM FOR RELIEF

**(Violation of the California Business & Professional Code §§ 17200 *et seq.*,
Unfair Business Practices)**

### (By All Plaintiffs Against All Defendants)

116.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 66 of this Complaint as if fully set forth herein in this Second Claim for Relief.

117.    Plaintiffs bring this cause of action on behalf of themselves, pursuant to Business and Professions Code § 17204. The Defendants' conduct as alleged herein has been and continues to be deleterious to Plaintiffs, and Plaintiffs are seeking to enforce important rights affecting the public interest within the meaning of the Code of Civil Procedure § 1021.5.227. Plaintiffs also seek compensation for the loss of their property and the personal financial impacts they have suffered as a result of Defendants' unfair business practices.

118.    The California Business and Professions Code §§ 17200 *et seq.* prohibits "unfair competition," defined as any "unlawful, unfair, or fraudulent business act or practice." These acts or practices consist of those forbidden by law.

119.    The unlawful, unfair, and fraudulent business acts and practices described herein constitute ongoing and continuous unfair business practices within the meaning of Business and Professions Code §§ 17200 *et seq.*, as they are prohibited by state, federal, and international laws including but not limited to: (1) Electronic Communications Privacy Act, 18 U.S.C. § 2701 *et seq.*; (2) Alien Tort Statute, 28 U.S.C. § 1350; (3) Torture Victim Protection Act, 28 U.S.C. § 1350; (4) 18 U.S.C. § 2450 (federal statute criminalizing torture); (5)  Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment; (6)  International Covenant on Civil and Political Rights; (7)  Universal Declaration of Human Rights; (8) Charter of the United Nations; (9) International Labor Organization Convention No. 29 Concerning Forced or Compulsory Labor; and (10) Statutes and common law of the State of California, including but not limited to assault and battery, false imprisonment, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. Defendant's acts described herein also violate universal, specific,

Amended Complaint                                                    Case No. C07-02151 CW

#30216 v1

1  and obligatory customary international law, which prohibit aiding and abetting, and conspiracy to

2  commit, violations of *jus cogens* human rights norms.

3      120.    Defendants' practices described herein offend established public policies and involve

4  business practices that are immoral, unethical, oppressive, unscrupulous and/or substantially

5  injurious to customers.

6      121.    Such practices include, but are not limited to, the unwarranted provision of internet

7  users' private electronic communication information or records in order to be permitted to engage in

8  business in China, with the knowledge that such information would substantively support the torture,

9  battery, threats, and further intimidation of persons who used Defendants' services in China.

10  Members of the public have been in the past and will in the future likely be damaged by these

11  practices.

12      122.    Defendants have also acted contrary to public policy by infringing upon the freedom

13  of speech and expression of the general public.  Members of the public have been in the past and will

14  in the future likely be harmed by these practices.

15      123.    The conduct as alleged herein constitutes clear violations of customary international

16  law, federal law, and the laws of California.

17      124.    The furtherance of Defendants' role in the stream of commerce by providing

18  information which results in the aforementioned business practices creates an unfair business

19  advantage over competitors that do not utilize such practices from within California and the United

20  States.

21      125.    Plaintiffs seek injunctive relief, disgorgement of all profits resulting from these unfair

22  business practices, restitution and other appropriate relief on behalf of themselves and members of

23  the general public as provided in Business and Professions Code § 17203.

24

25

26

27

28

Amended Complaint                                                    Case No. C07-02151 CW

#30216 v1

*ELEVENTH CLAIM FOR RELIEF*

**(Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2701, §2702, and §2511, Unlawful Access to Stored Communications)**

**(By Wang Xiaoning and Shi Tao Against All Defendants)**

126.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 66 of this Complaint as if fully set forth herein in this First Claim for Relief.

127.    Upon information and belief, Defendants violated the rights of Plaintiffs herein by intercepting, disclosing, and/or intentionally using electronic communication between Plaintiffs and other persons.  The right of a civil action arises under 18 U.S.C. 2707(a), which provides that any person aggrieved by any violation of the Electronic Communications Privacy Act, "in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from any person or entity, other than the United States, which engaged in that violation such relief as may be appropriate."

128.    Defendants exceeded their authorization to access and control private information concerning Plaintiffs' electronic communications, in violation of 18 U.S.C. § 2701.

129.    Defendants unlawfully and knowingly divulged Plaintiffs' electronic communication contents and user information, in violation of 18 U.S.C. § 2702.

130.    Defendants intentionally acquired and/or intercepted the contents of electronic communications sent by and/or received by Plaintiffs through the use of an electronic device. Defendants intentionally acquired the communications that had been sent from or directed to Plaintiffs through their use of computers and other electronic devices which were part of, and utilized in, Defendants' electronic communications system, in violation of 18 U.S.C. § 2511 and pursuant to 18 U.S.C. § 2520.

131.    Defendants unlawfully accessed and used, and voluntarily disclosed, the contents of the intercepted communications to enhance their business in China.  This disclosure was not necessary for the operation of Defendants' system or to protect Defendants' rights or property.

132.    Plaintiffs are "person[s] whose ... electronic communication is intercepted ... or intentionally used in violation of this chapter" within the meaning of 18 U.S.C. § 2520.

27

1    133.    Defendants are liable directly and/or vicariously for this cause of action.

2    134.    Plaintiffs therefore seek remedy as provided for by 18 U.S.C. § 2520, including such

3    preliminary and other equitable or declaratory relief as may be appropriate, damages consistent with

4    subsection (c) of that section to be proven at trial, punitive damages to be proven at trial, and a

5    reasonable attorney's fee and other litigation costs reasonably incurred.

6    ## ABSENCE OF AVAILABLE AND EFFECTIVE REMEDIES IN CHINA

7    135.    These claims are not precluded by the need or failure to exhaust local remedies as set

8    out in the Torture Victim Protection Act since Plaintiffs have made every effort to seek local

9    remedies in China and Hong Kong, and their efforts have proven pointless and futile.

10    136.    Plaintiff Wang Xiaoning has attempted to utilize domestic remedies, pleading the

11    laws of China, but the Chinese courts have convicted him and rejected his appeals in violation of

12    Chinese and international law and have rejected all other efforts to challenge the actions taken

13    against him. He exhausted all remedies available to him in the Chinese courts when the courts

14    rejected his second appeal on July 1, 2006.

15    137.    Under Chinese law, Plaintiff Yu Ling would have a civil claim for her injuries were

16    her husband's conviction overturned. She has supported her husband's appeals not only to end the

17    abuses he is suffering and exonerate him, but also to establish her own right to a remedy. When the

18    courts rejected her husband's second appeal on July 1, 2006, Yu Ling lost any chance for local

19    remedies as well.

20    138.    Plaintiff Shi Tao has similarly appealed his conviction in the Chinese courts, and lost.

21    He then filed a complaint with the Hong Kong Privacy Commission to challenge the Defendants'

22    actions. The Commissioner dismissed Shi Tao's complaint, finding that jurisdictional restrictions

23    prohibited the Commission from holding the Defendants responsible despite evidence from Chinese

24    court documents that the company and its agents played a material part in the convictions. This

25    outcome exhausts all of Shi Tao's possible remedies in Hong Kong and precludes the other Plaintiffs

26    from filing similar complaints under the privacy laws of Hong Kong.

27    139.    Any further efforts to obtain relief in China could well result in serious reprisals

28    against those making allegations of wrongdoing on the part of high level officials in the PRC, as well

28

1    as against the local attorneys representing the complainants.  High level officials of the PRC are

2    involved in the abuses alleged in this complaint and in the ratification of these abuses.  Taking into

3    consideration that the PRC government used the courts of China to secure Plaintiffs' prolonged

4    arbitrary arrests and detentions, using a highly controlled judicial process to do so, and taking into

5    account the PRC government's refusal and/or inability to properly and effectively investigate acts of

6    torture, cruel, inhuman or degrading treatment or punishment, and arbitrary arrest and prolonged

7    detention and bring the perpetrators to justice, and given further other substantial indicators of

8    governmental acquiescence in the violations of international law and its unwillingness to support

9    legal initiatives that might be undertaken in PRC to obtain relief for Plaintiffs, efforts to secure

10   remedies for them in the PRC, including lawsuits in Chinese courts, must be considered futile.   The

11   actions taken by the PRC government to revoke the license of Plaintiff Shi Tao's criminal defense

12   attorney and place him under house arrest just days before his trial, as well as similar actions against

13   Chinese human rights attorneys who defend persons accused of the types of charges for which

14   Plaintiffs Wang Xiaoning and Shi Tao were convicted, further indicate the futility of using the

15   Chinese judicial system to secure relief.

16          140.    For these reasons, requirements for further exhaustion of efforts to obtain local relief

17   should be considered waived and satisfied.

18                              **PRAYER FOR RELIEF**

19          WHEREFORE, the Plaintiffs pray for judgment against Defendants Yahoo! Inc., Yahoo!

20   HK, Alibaba, and Other Presently Unnamed and to be Identified Individual Employees of Said

21   Corporations, as follows:

22          (a)     For compensatory damages to each of the Plaintiffs according to proof to be

23                  established at trial;

24          (b)     For punitive and exemplary damages according to proof to be established at trial;

25          (c)     For declaratory relief determining that the actions of the Defendants constituted

26                  violations of international law, specifically, that such violations included prohibited

27                  acts of torture, cruel, inhuman or degrading treatment, and arbitrary arrest and

28                  prolonged detention for the peaceful and exchange of ideas, views, and political

                                      29

beliefs in violation of the Convention Against Torture, numerous other international treaty obligations binding on the United States, and domestic laws and regulations implementing such standards, including the Torture Victim Protection Act, and other enumerated causes of action in this Complaint;

(d)     For affirmative action by the Defendants to secure the release of the detainees;

(e)     For injunctive relief to prevent similar actions to be taken in the future;

(f)     For costs of the litigation, including, attorneys' fees; and

(g)     For such other relief as the Court deems just and proper.

Respectfully submitted this 29th day of May, 2007,

WORLD ORGANIZATION FOR HUMAN RIGHTS USA
MORTON SKLAR
THERESA HARRIS

By:    /s/ Morton Sklar
       Morton Sklar

HOLME ROBERTS & OWEN LLP
ROGER MYERS

By:    /s/ Roger Myers
       Roger Myers

Attorneys for Plaintiffs
WANG XIAONING, YU LING and SHI TAO

Karen Parker
(CA State Bar No. 112486)
Association of Humanitarian Lawyers
154 5th Avenue
San Francisco, CA 94118
Telephone: (415) 668-2752
E-mail: ied@agc.org

30

*With the assistance of:*

Albert Ho Chun-Yan
Legal Representative for Shi Tao
Hong Kong

Mariam Amedhani
Student Attorney
International Human Rights Law Clinic
American University, Washington College of
Law

Sarah Leinicke, Mary Beth Gallagher, and
Gwyneth Hesser: American University,
Washington College of Law
Joseph Husty: George Washington University
Law School
Emily Camastra and Purvi Patel: Georgetown
University Law School
Delia Hou, Camille Boulanger, Ian Feng, Jass
Krasner, Sarah Rubenfeld, and Emily Jean
Wallace: New York University Law School

31

#30216 v1