Xiaoning et al v. Yahoo! Inc, et al

Case 4:07-cv-02151-CW    Document 12-3    Filed 06/21/2007    Page 1 of 21

Doc. 12 Att. 2

# EXHIBIT B

Dockets.Justia.com

1  DANIEL MERON
   Acting Assistant Attorney General
2  KEVIN V. RYAN
   United States Attorney
3  VINCENT M. GARVEY
   Deputy Branch Director
4  ALEXANDER K. HAAS
   Trial Attorney, Civil Division
5  Federal Programs Branch
   U.S. Department of Justice
6  Post Office Box 883, Room 1030
   Washington, D.C.  20044
7  Telephone:  (202) 307-3937
   Facsimile:  (202) 616-8470
8
   Attorneys for the United States
9

10              UNITED STATES DISTRICT COURT

11         FOR THE NORTHERN DISTRICT OF CALIFORNIA

12  _____
                                    )
13  JANE DOE I, et al.,             )    No. C 02 0672 CW (EMC)
                                    )    No. C 02 0695 CW (EMC)
14       Plaintiffs,                )
                                    )    STATEMENT OF INTEREST
15            v.                    )
                                    )    OF THE UNITED STATES
16  LIU QI, et al.,                 )
                                    )
17       Defendants.                )
    _____)
18                                  )
    PLAINTIFF A, et al.,            )
19                                  )
         Plaintiffs,                )
20                                  )
              v.                    )
21                                  )
    XIA DEREN, et al.,              )
22                                  )
         Defendants.                )
23  _____)

24       By letter dated November 7, 2003, this Court solicited

25  "the State Department's position regarding Magistrate Judge

26  Chen's Report and Recommendation and Plaintiffs' objections"

27  related to the above-captioned cases.  See Letter from U.S.

28  STATEMENT OF INTEREST OF THE UNITED STATES, C 02 0672 CW (EMC) &
    C 02 0695    CW (EMC)

1  District Judge Claudia Wilken to William Howard Taft, IV of

2  November 7, 2003.  Pursuant to 28 U.S.C. §§ 516-517, the

3  Attorney General, on behalf of the Department of State,

4  hereby submits the following.

5      Attached hereto as Exhibit A is a letter, dated January

6  14, 2004, from William H. Taft, IV, Legal Adviser, U.S.

7  Department of State, to Peter D. Keisler, Assistant Attorney

8  General, in response to the Court's request for the

9  Department of State's position.[1]/

11                          Respectfully submitted,

12                          DANIEL MERON
                            Acting Assistant Attorney General
13                          KEVIN V. RYAN
                            United States Attorney

15                          *Alexander K. Haas*
                            _____
                            VINCENT M. GARVEY
16                          Deputy Branch Director
                            ALEXANDER K. HAAS
17                          Trial Attorney, Civil Division
                            Federal Programs Branch
18                          U.S. Department of Justice
                            20 Massachusetts Ave., NW, 7221
19                          Washington, D.C.  20001
                            Telephone:  (202) 307-3937
20                          Facsimile:  (202) 616-8470
                            Attorneys for the United States

22  Dated:  January 16, 2004

24      [1] The brief for the United States in support of the petition
   for certiorari in Sosa v. Alvarez-Machain, a case referenced in the
25  attached letter from the Legal Adviser, was filed on September 25,
   2003.  It can be found at the Solicitor General's website. See
26  website of the Office of Solicitor General, at
   http://www.usdoj.gov/osg/briefs/2003/0responses/
27  2003-0339.resp.html (last visited Jan.16, 2004).

28  STATEMENT OF INTEREST OF THE UNITED STATES, C 02 0672 CW (EMC) &
   C 02 0695   CW (EMC)              - 2 -

THE LEGAL ADVISER

DEPARTMENT OF STATE

WASHINGTON

January 14, 2004

Honorable Peter D. Keisler
Assistant Attorney General
Civil Division
United States Department of Justice
Washington, D.C. 20530


        Re:  *Jane Doe I, et al. v. Liu Qi, et al.*, C-02-0672
             CW; *Plaintiff A, et al. v. Xia Deren, et al.*, C-
             01-0695 CW


Dear Mr. Keisler:

        By letter dated November 7, U.S. District Court Judge
Claudia Wilken invited the Department of State to submit
its views, by January 16, 2004, regarding the June 11
Report and Recommendation of U.S. Magistrate Judge Edward
Chen and the July 24/25 objections of plaintiffs thereto in
the above-captioned cases.  (By way of background, I am
enclosing a copy of the United States' statement of
interest filed by your predecessor with Judge Chen on
September 27, 2002 that attached a copy of my September 25,
2002 letter in response to Judge Chen.)  I am writing now
to ask that you please file a copy of this letter with
Judge Wilken, in response to her November 7 letter, in
whatever manner you deem most appropriate.

        As you know, the United States Supreme Court has
recently granted certiorari in *Sosa v. Alvarez-Machain*,
2003 WL 22070605 (Dec. 1, 2003), which implicates issues
that would appear to be central to the District Court's
disposition of the above-captioned cases.  On December 9,
the U.S. Court of Appeals for the Ninth Circuit in *Doe v.
Unocal*, Nos. 00-56603 and 00-57197 (copy attached) ordered
a suspension of further proceedings in that case pending
the Supreme Court's decision in *Sosa*.

In light of the above, it would seem appropriate for Judge Wilken similarly to postpone the *Liu* and *Xia* litigation.  If, however, Judge Wilken intends to dispose of the above-captioned cases before the Supreme Court decides, we would appreciate an opportunity to submit additional substantive comments in response to her November 7 request.

Thank you for your assistance.

Sincerely,

William H. Taft, IV

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC - 9 2003

CATHY A. CATTERSON
CLERK, U.S. COURT OF APPEALS

JOHN DOE I, individually & as
Administrator of the Estate of his deceased
child Baby Doe I, & on behalf of all others
similarly situated; JANE DOE, I, on behalf of
herself, as Administratrix of the Estate of her
deceased child Baby Doe I & on behalf of all
others similarly situated; JOHN DOE II;
JOHN DOE III; JOHN DOE IV; JOHN DOE
V; JANE DOE II; JANE DOE III; JOHN
DOE VI; JOHN DOE VII; JOHN DOE VIII;
JOHN DOE IX; JOHN DOE X; JOHN DOE
XI, on behalf of themselves & all others
similarly situated & Louisa Benson on behalf
of herself & the general public,

       Plaintiffs - Appellants,

v.

UNOCAL CORPORATION, a California
Corporation; TOTAL S.A., a Foreign
Corporation; JOHN IMLE, an individual;
ROGER C. BEACH, an individual,

       Defendants - Appellees.

Nos. 00-56603
      00-57197

D.C. No. CV-96-06959-RSWL



DEC 1 1 2003
CALENDAR DKT RPR
ATTYS: DMP
B84122-7

SERVED ON US BY MAIL
  POSTMARKED 12.9.03

JOHN ROE III; JOHN ROE vII; JOHN
ROE VIII; JOHN ROE X,

       Plaintiffs - Appellants,

v.

UNOCAL CORPORATION; UNION OIL
COMPANY OF CALIFORNIA,

       Defendants - Appellees.

Nos. 00-56628
    00-57195

D.C. No. CV-96-06112-RSWL

**ORDER**

SCHROEDER, Chief Judge:

    This case is withdrawn from submission pending issuance of the Supreme

Court's decision in Sosa v. Alvarez-Machain, 2003 WL 22070605 (Dec. 1, 2003).

2

1 | ROBERT D. McCALLUM, JR.
Assistant Attorney General
2 | VINCENT M. GARVEY
Deputy Branch Director
3 | ALISON N. BARKOFF
Trial Attorney, Civil Division
4 | Federal Programs Branch
U.S. Department of Justice
5 | Post Office Box 883, Room 1020
Washington, D.C.  20044
6 | Telephone:  (202) 514-5751
Facsimile:  (202) 616-8470
7 |
8 | Attorneys for the United States

9 | UNITED STATES DISTRICT COURT

10 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

11 | _____

12 | JANE DOE I, et al.,                   )   No. C 02 0672 CW (EMC)
                                      )   No. C 02 0695 CW (EMC)
13 |      Plaintiffs,                     )
                                      )   STATEMENT OF INTEREST
14 |           v.                        )   OF THE UNITED STATES
                                      )
15 | LIU QI, et al.,                      )
                                      )
16 |      Defendants.                    )
_____)
17 |                                       )
PLAINTIFF A, et al.,                  )
18 |                                       )
~~Plaintiffs,~~                        )
19 |                                       )
           v.                        )
20 |                                       )
XIA DEREN, et al.,                    )
21 |                                       )
      Defendants.                    )
22 | _____)

23 |      By letter dated May 3, 2002, and by order dated August 5,

24 | 2002, this Court "solicit[ed] the Department of State's opinion

25 | on a number of issues" related to the above-captioned cases,

26 | including whether the cases are barred by the Foreign Sovereign

27 | Immunities Act, 28 U.S.C. §§ 1330, 1605-07, or are nonjusticiable

28 | STATEMENT OF INTEREST OF THE UNITED STATES, C 02 0672 CW(EMC), C 02 0695 CW(EMC)

1  under the act of state doctrine. <u>See</u> Letter from U.S. Magistrate

2  Judge Edward M. Chen to William Howard Taft, IV of May 3, 2002;

3  Court's Aug. 5, 2002 Order.  Pursuant to 28 U.S.C. §§ 516-617,

4  the Attorney General, on behalf of the Department of State,

5  hereby submits the following.

6       Attached hereto as Exhibit A is a letter, dated September

7  25, 2002, from William H. Taft, IV, Legal Advisor, U.S.

8  Department of State, to Robert D. McCallum, Jr., Assistant

9  Attorney General, which explains the Department of State's views

10  on the issues raised by the Court.

11

12                          Respectfully submitted,

13                          ROBERT D. McCALLUM, JR.
                            Assistant Attorney General
14

15                          _Alison N. Barkoff_
                            VINCENT M. GARVEY
16                          Deputy Branch Director
                            ALISON N. BARKOFF
17                          Trial Attorney, Civil Division
                            Federal Programs Branch
18                          U.S. Department of Justice
                            Post Office Box 883, Room 1020
19                          Washington, D.C.   20044
                            Telephone:  (202) 514-5751
20                          Facsimile:  (202) 616-8470
                            Attorneys for the United States
21
    Dated:    September 26, 2002
22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28
    STATEMENT OF INTEREST OF THE UNITED STATES, C 02 0672 CW(EMC), C 02 0695 CW(EMC)

1

2
## CERTIFICATE OF SERVICE

3      I am over the age of 18 years and not a party to the within

4 action.  I am employed by the United States Department of

5 Justice, Civil Division, Federal Programs Branch.  My business

6 address is 901 E Street, N.W., Washington, D.C. 20004.

7      On <u>September 26, 2002</u>, I served <u>STATEMENT OF INTEREST OF THE

8 UNITED STATES</u> on the persons named below, by enclosing a copy in

9 an envelope addressed as shown below and placing the envelope for

10 collection and mailing on the date and at the place shown below

11 following our ordinary business practices.  I am readily familiar

12 with the practice of this office for collection and processing

13 correspondence for mailing.  On the same day that correspondence

14 in placed for collection and mailing, it is deposited in the

15 ordinary course of business within the United States Postal

16 Service in a sealed envelope with postage fully prepaid.

17      Date of mailing:  <u>September 26, 2002</u>.  Place of mailing:

18 <u>Washington, D.C.</u>  Persons to whom mailed:

19      Joshua Sondheimer
       The Center for Justice & Accountability
20     870 Market Street, Suite 684
       San Francisco, CA  94102
21     Attorney for plaintiffs in <u>Doe v. Liu Qi</u>

22     Terri E. Marsh
       1333 Connecticut Ave., N.W.
23     Suite 608
       Washington, D.C.  20008
24     Attorney for plaintiffs in <u>Doe v. Liu Qi</u>

25     Paul Hoffman
       Schonbrun DeSimone Seplow Harris & Hoffman LLP
26     723 Ocean Front Walk
       Venice, CA  90291
27     Attorney for plaintiffs in <u>Doe v. Liu Qi</u>
   ///

28
   STATEMENT OF INTEREST OF THE UNITED STATES, C 02 0672 CW(EMC), C 02 0695 CW(EMC)

1     Karen Parker
     154 5th Avenue
2     San Francisco, CA 94118
     Attorney for plaintiffs in <u>Plaintiff A v. Xia Deren</u>
3

4     Morton Sklar
     World Organization Against Torture USA
     1725 K St., N.W., Suite 610
5     Washington, D.C. 20006
     Attorneys for plaintiffs in <u>Plaintiff A v. Xia Deren</u>
6

7     I declare under penalty of perjury under the laws of the

8 United States of America that the foregoing is true and correct.

9 Executed on <u>September 26, 2002</u>, at Washington, D.C.

10                        *Alison N. Barkoff*
                       Alison N. Barkoff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STATEMENT OF INTEREST OF THE UNITED STATES, C 02 0672 CW(EMC), C 02 0695 CW(EMC)

THE LEGAL ADVISER

DEPARTMENT OF STATE

WASHINGTON

September 25, 2002

Honorable Robert D. McCallum
Assistant Attorney General
Civil Division
United States Department of Justice
10th Street & Constitution Avenue, N.W.
Washington, D.C. 20530

     Re:  *Doe, et al. v. Liu Qi, et al.*, and *Plaintiff A,
         et al. v. Xia Deren*, Civil Nos. C 02-0672 CW
         (EMC) and C 02-0695 CW (EMC) (N.D. Cal.)

Dear Mr. McCallum:

    By letter dated May 3, U.S. Magistrate Judge Edward M.
Chen of the Northern District of California solicited the
Department of State's views on several issues in connection
with the above-captioned case.  Encl 1.  Magistrate Chen
asked that we respond before July 5, either by letter or
statement of interest pursuant to 28 U.S.C. § 517.  On June
25, the Department of Justice sought and received an
extension of time to August 9.  On July 25, the District
Court consolidated proceedings in the *Plaintiff A v. Xia
Deren* case with *Liu*, and referred that case also to
Magistrate Judge Chen.  On August 5, Magistrate Chen
vacated the previous briefing schedule, and invited the
State Department to provide its views on either or both of
these cases by September 27.  We ask that you please file a
copy of this response to these requests with Magistrate
Chen in whatever manner you deem most appropriate under the
circumstances.

    In *Liu*, the gravamen of plaintiffs' complaint is that
the defendant, as Mayor of Beijing, People's Republic of
China ("PRC"), either knew or should have known about
various human rights abuses that were allegedly perpetrated
against adherents to the Falun Gong movement in Beijing,
and that he was under a duty under both Chinese and

- 2 -

international law to prevent such actions.[1] The complaint
alleges that Defendant Liu "planned, instigated, ordered,
authorized, or incited police and other [PRC] security
forces to commit the abuses suffered by Plaintiffs, and had
command or superior responsibility over, controlled, or
aided and abetted such forces in their commission of such
abuses.  The acts alleged herein…were carried out in the
context of a nationwide crackdown against Falun Gong
practitioners." Compl., ¶ 2.

In *Liu*, all but one of the plaintiffs are aliens; four
apparently reside in the United States.  Federal subject
matter jurisdiction is alleged to lie under customary
international law, the Torture Victims Protection Act
(TVPA), 28 U.S.C. § 1350, note, the Alien Tort Statute
(ATS), 28 U.S.C. § 1350, and 28 U.S.C. § 1331.  Id., ¶ 3.

As noted in Magistrate Chen's May 3 letter, a default
was entered in favor of the plaintiffs on March 12.
Plaintiffs subsequently moved for judgment by default.  In
reviewing that motion, the Court has asked for the
Department's views on two questions: (1) whether the case
is barred under the Foreign Sovereign Immunities Act
("FSIA"), and (2) whether the Court should find the case
"nonjusticiable" under the Act of State doctrine.  We
address these issues in turn.

Before turning to the questions posed by the Court, we
would note Magistrate Chen's subsequent invitation to
provide the Department's views in the *Xia* case.  From our
review of that complaint, we conclude, as did Magistrate
Chen in his August 5 order, that the relevant issues
involved in both cases are "similar, if not identical."  In
these circumstances, we see no need to comment separately
on the *Xia* case; the views as expressed below regarding *Liu*
may be taken to apply *mutatis mutandis* to *Xia*.  At the same
time, we note that the complaint in *Xia* is unambiguous in
asserting that the defendant was acting in his official
capacity.

We also stress our deep concern about the human rights
abuses that have been alleged in these complaints.  The
United States has repeatedly made these concerns known to
the Government of the PRC and has called upon it to respect

---

[1] We note that the Complaint caption refers to "Liu Qi, and Does 1-5,
inclusive," but we have not found specific reference in the complaint
to any defendants other than Mr. Liu.

- 3 -

the rights of all its citizens, including Falun Gong
practitioners. Our critical views regarding the PRC
Government's abuse and mistreatment of practitioners of the
Falun Gong movement are a matter of public record and are
clearly set forth in the Department's annual human rights
reports, the most recent version of which may be found at
http://www.state.gov/drl/rls/hrrpt/2001/eap/8289.htm.

With respect to the FSIA, Magistrate Chen asked
specifically whether the exception to immunity under 28
U.S.C. § 1605(a)(7) applies to the case against *Liu*. In
our considered opinion, the exception under 28 U.S.C. §
1605(a)(7) does not apply by its terms, since the Peoples'
Republic of China has never been designated as a state
sponsor of terrorism within the meaning of subsection (A)
of that provision. Nor, in our view, does the "tort"
exception under 28 U.S.C. § 1605(a)(5) apply since none of
the acts in question occurred in the United States. It
does not appear to us that any other exception of the FSIA
would be relevant to the facts alleged in the complaint.
Therefore, if the FSIA is the appropriate legal framework
for determining the issue, the action would have to be
dismissed. See 28 U.S.C. §§ 1330, 1604 (immunity unless
there is exception under 28 U.S.C. §§ 1605-1607).

Whether the FSIA applies to this case presents a
number of issues for the Court to determine. We understand
that, since *Chuidian v. Philippine National Bank*, 912 F.2d
1095 (9th Cir. 1990), the practice in the 9th Circuit has
been to evaluate claims brought against individual foreign
government officials in United States federal courts
according to whether the allegations giving rise to the
suit were performed in an official capacity. Where the
conduct is found to be official, the courts have deemed the
action to be, in effect, a claim against the foreign state,
and have applied the analytical framework of the FSIA.
Other jurisdictions have also adopted this approach. See,
e.g., *Byrd v. Corporacion Forestal Y Industrial de Olancho
S.A.*, 182 F.3d 380, 388-89 (5th Cir. 1999); *El-Fadl v.
Central Bank of Jordan*, 75 F.3d 668, 671 (D.C. Cir. 1996).[2]

The following considerations may be relevant given
this framework. As noted above, the only named defendant
in *Liu* is Beijing's Mayor, Mr. Liu Qi. The allegations of

---

[2] The Executive Branch has not specifically endorsed the approach of
*Chuidian*, but recognizes that it is controlling law in the 9th Circuit
in which these cases arise.

- 4 -

the complaint are directed solely towards actions he
allegedly took, or failed to take, as a senior official of
the Chinese Government, in implementation of official
policy.  What is at issue, in the words of the complaint,
is the "Chinese government's crackdown on Falun Gong," and
more particularly the "[a]buses being committed by police
and security forces in Beijing against the Falun Gong."
Compl., ¶¶ 31, 32.  The acts and omissions attributed to
Mayor Liu are characterized as part of this "widespread
governmental crackdown"; the duties he is said to have
violated derived from his official position.  The complaint
specifically alleges that "[a]s the Mayor of the City of
Beijing, Defendant Liu held and holds the power not only to
formulate all important provincial policies and policy
decisions, but also to supervise, direct and lead the
executive branch of the city government, which includes the
operation of the Public Security Bureau of Beijing, under
which the police operate, and other security forces."  Id.,
¶ 34.[3]

     It is noteworthy in this regard that the 9th Circuit
has previously held that the FSIA is not rendered
inapplicable because of alleged violations of customary
international law by the officials of a foreign state
defendant.  *Siderman de Blake v. Argentina*, 965 F.2d 699
(9th Cir. 1992), *cert. denied*, 507 U.S. 1017 (1993).  See
also *Argentine Republic v. Amerada Hess*, 488 U.S. 428
(1989)(FSIA is exclusive basis for suit against foreign
state notwithstanding alleged violations of international
law by its officials).  Because suits against current
officials may well constitute the "practical equivalent" of
suits against the sovereign, and because denial of immunity
in such circumstances would allow "litigants to accomplish
indirectly what the [FSIA] barred them from doing
directly," *Chuidian, supra* at 1101-02, we believe the
courts should be especially careful before concluding that
the FSIA is inapplicable to a suit against a current
official relating to the implementation of government
programs.  Cf., *Saudi Arabia v. Nelson*, 507 U.S. 349, 361
(1993)("the intentional conduct alleged here (the Saudi
Government's wrongful arrest, imprisonment and torture of

---

[3] As is described more fully below, this is one of a series of suits in
U.S. courts against Chinese officials for actions allegedly taken
against Falun Gong practitioners.  This pattern may reinforce the
inference from the complaint that, at bottom, this suit is directed at
PRC government policies rather than past conduct of a specific
official.

- 5 -

Nelson) ... boils down to abuse of the power of its police
by the Saudi Government, and however monstrous such abuse
undoubtedly may be, a foreign state's exercise of the power
of its police has long been understood ... as peculiarly
sovereign in nature"). Otherwise, plaintiffs could evade
the FSIA altogether by the simple expedient of naming a
high level foreign official as a defendant rather than a
foreign state.

We acknowledge the expanding body of judicial
decisions under the TVPA holding _former_ foreign government
officials liable for acts of torture and extrajudicial
killing despite (or indeed because of) the fact that the
defendants abused their governmental positions. See, e.g.,
_Xuncax v. Gramajo_, 886 F. Supp. 162 (D.Mass. 1995); _Hilao
v. Estate of Marcos_, 103 F.3d 767 (9th Cir. 1996); _Cabello
Barreuto v. Fernández Larios_, 205 F.Supp.2d 1325 (N.D.Fla.
2002). The principal aim of the TVPA was to codify the
decision of the Second Circuit in _Filartiga v. Pena-Irala_,
630 F.2d 876 (2d Cir. 1980), by providing an explicit
statutory basis for suits against former officials of
foreign governments over whom U.S. courts have obtained
personal jurisdiction, for acts of torture and
extrajudicial killing committed in an official capacity.
The Senate Report on the TVPA states that "[b]ecause all
states are officially opposed to torture and extrajudicial
killing … the FSIA should normally provide no defense to an
action taken under the TVPA against a _former_ official"
(emphasis supplied).[4]

At the same time, the TVPA was not intended to
override otherwise existing immunities from U.S.
jurisdiction, as courts have recognized in suits brought
under these statutes against _current or sitting_ foreign
governmental officials.[5] See, e.g., _Saltany v. Reagan_, 702

---

[4] As this sentence indicates, Congress anticipated that, although it
would not normally be so, in some cases involving officials who had
left office, exercise of jurisdiction under the TVPA would still be
inappropriate. See, e.g., S. Rep. No. 102-249, at *8 ("To avoid
liability by invoking the FSIA, a former official would have to prove
an agency relationship to the state, which would require that the state
admit some knowledge or authorization of relevant acts.")(internal
quotation marks omitted). The cases before Magistrate Chen do not pose
the question of how _Chiudian_ should be applied to such former
officials.
[5] Dealing with sitting officials is a component of the President's power
over the nation's foreign relations. See, e.g., _United States v.
Curtiss-Wright Corp._, 299 U.S. 304, 320 (1936) (describing "the very
delicate, plenary and exclusive power of the President as the sole

- 6 -

F. Supp. 319 (D.D.C. 1988); *Lafontant v. Aristide*, 844 F.
Supp. 128 (E.D.N.Y. 1994); *Tachiona v. Mugabe*, 169
F.Supp.2d 259 (S.D.N.Y. 2001). These cases are consistent
with relevant international authority, such as the
decisions of the International Court of Justice in the
*Yerodia* case (*Case Concerning the Arrest Warrant of 11
April 2000 – Democratic Republic of the Congo v. Belgium*,
Judgment of Feb. 14, 2002) and the European Court of Human
Rights in *Al-Adsani v. The United Kingdom* (No. 35763/97,
Judgment of Nov. 21, 2001).

     In response to Magistrate Chen's second set of
questions ("Should the Court find the case nonjusticiable
under the Act of State doctrine? What effect will
adjudication of this suit have in the foreign policy of the
United States?"), we respectfully offer the following
observations for the Court's consideration.

     Litigation in U.S. courts challenging the legality of
a foreign government's actions, or inactions, taken within
its own territory, can present sensitive dimensions, as
recognized in a number of decisions of the U.S. Supreme
Court. See, e.g., *Underhill v. Hernandez*, 168 U.S. 250,
252 (1897); *Banco Nacional de Cuba v. Sabbatino*, 376 U.S.
398, 428 (1964); *W.S. Kirkpatrick & Co., Inc. v.
Environmental Tectonics Corporation, Int'l*, 493 U.S. 400,
405 (1990)). Cf., *Baker v. Carr*, 362 U.S. 186 (1962). The
Court has recognized that the judiciary should approach
such litigation with the utmost care and circumspection.

     We note that *Liu* is only one of several recent cases
brought in U.S. federal courts by Falun Gong adherents
against high-level PRC officials--typically, under the ATS
and the TVPA. The case just added to these proceedings,
*Plaintiff A et al. v. Xia Deren*, is but the most recent
example. See also, e.g., *Peng, et al. v. Zhao*, No. 01
Civil 6535 (DLC) (SDNY) (default judgment in nominal amount
of $1 entered, December 26, 2001; defendant Zhao Zhifei was
said to be the Department Head of the Public Security

organ of the federal government in the field of international
relations"). If Congress intended to alter the balance of power
between the Executive and Legislative Branches in the area of foreign
policy, Congress would be required to adopt a clear statement of that
intent. "[T]he 'clear statement' rule," which "was originally
articulated to guide interpretation of statutes that significantly
alter the federal-state balance," should also be applied to "statutes
that significantly alter the balance between Congress and the
President." *Armstrong v. Bush*, 924 F.2d 282, 289 (D.C.Cir. 1991).

- 7 -

Bureau of Hubei Province); *Jin, et al. v. Ministry of State
Security*, et al., No. 02-CV-627 (DDC)(case pending); *Petit,
et al. v. Ding*, No. CV 02-00295 (D. HI)(case pending)
(defendant Ding Guangen is said to be the Deputy Chief,
Falun Gong Control Office, and Minister for Media and
Propaganda, Central Committee of the Chinese Communist
Party of the PRC).  In our judgment, adjudication of these
multiple lawsuits, including the cases before Magistrate
Chen, is not the best way for the United States to advance
the cause of human rights in China.

     The United States Government has emphasized many times
to the Chinese Government, publicly and privately, our
strong opposition to violations of the basic human rights
of Falun Gong practitioners in China. We have made clear,
on repeated occasions, our absolute and uncompromising
abhorrence of human rights violations such as those alleged
in the complaint, in particular torture, arbitrary
detention, interference with religious freedom, and
repression of freedom of opinion and expression.  The
Executive Branch has many tools at its disposal to promote
adherence to human rights in China, and it will continue to
apply those tools within the context of our broader foreign
policy interests.

     We believe, however, that U.S. _courts_ should be
cautious when asked to sit in judgment on the acts of
foreign officials taken within their own countries pursuant
to their government's policy.[6]  This is especially true when
(as in the instant cases) the defendants continue to occupy
governmental positions, none of the operative acts are
alleged to have taken place in the United States, personal
jurisdiction over the defendants has been obtained only by
alleged service of process during an official visit, and
the substantive jurisdiction of the court is asserted to

_____

[6] As the Department of State testified before the Senate Committee on
the Judiciary during its consideration of the TVPA, "From a foreign
policy perspective, we are particularly concerned over the prospect of
nuisance or harassment suits brought by political opponents or for
publicity purposes, where allegations may be made against foreign
governments or officials who are not torturers but who will be required
to defend against expensive and drawn-out legal proceedings.  Even when
the foreign government decl―n―s to defend and a default judgment
results, such suits have the potential of creating significant problems
for the Executive's management of foreign affairs. … We believe that
inquiry by a U.S. court into the legitimacy of foreign government
sanctions is likely to be viewed as highly intrusive and offensive."
S. Hrg. 101-1284 on S. 1629 and H.R. 1662 (June 22, 1990) at 28
(Prepared Statement of David P. Stewart).

- 8 -

rest on generalized allegations of violations of norms of customary international law by virtue of the defendants' governmental positions.  Such litigation can serve to detract from, or interfere with, the Executive Branch's conduct of foreign policy.

We ask the Court in particular to take into account the potential for reciprocal treatment of United States officials by foreign courts in efforts to challenge U.S. government policy.  In addressing these cases, the Court should bear in mind a potential future suit by individuals (including foreign nationals) in a foreign court against U.S. officials for alleged violations of customary international law in carrying out their official functions under the Constitution, laws and programs of the United States (e.g., with respect to capital punishment, or for complicity in human rights abuses by conducting foreign relations with foreign regimes accused of those abuses).  The Court should bear in mind the potential that the United States Government will intervene on behalf of its interests in such cases.

If the Court finds that the FSIA is not itself a bar to these suits, such practical considerations, when coupled with the potentially serious adverse foreign policy consequences that such litigation can generate, would in our view argue in favor of finding the suits non-justiciable.  However, if the Court were to determine that dismissal is not appropriate, we would respectfully urge the Court to fashion its final orders in a manner that would minimize the potential injury to the foreign relations of the United States.

Sincerely,

William H. Taft

William H. Taft, IV


Enclosures:
     As stated.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
UNITED STATES COURTHOUSE
450 GOLDEN GATE AVENUE
SAN FRANCISCO, CA 94102



CHAMBERS OF
EDWARD M. CHEN
UNITED STATES MAGISTRATE JUDGE

MAY 16 2002

May 3, 2002

The Honorable William Howard Taft, IV
Office of the Legal Adviser
United States Department of State
2201 C Street N.W.
Washington, DC 20520

Re:    *Jane Doe I, et al. v. Liu Qi, et al.*, C-02-0672 CW (EMC) (Northern District of
California)

Dear Mr. Taft:

On February 2, 2002, six individual plaintiffs, each of whom is a Falun Gong practitioner,
brought suit against Liu Qi, who has served as the mayor of Beijing of the People's Republic of
China since February, 1999. The plaintiffs are citizens of various countries, including the
People's Republic of China, France, Sweden, Israel, and the United States. Four currently reside
in the United States. The suit contends that each of the plaintiffs was subject to arrest and
detention under harsh conditions, including the use of unreasonable force and torture, in
connection with China's crackdown on the Falun Gong practitioners. The suit contends that the
City of Beijing has been a focal point of the repression and persecution against the Falun Gong
and that the defendant Liu knew or should have known that Beijing police and other security
forces were engaged in a pattern and practice of severe human rights abuses against Falun Gong
practitioners. The complaint asserts that defendant Liu had a duty both under customary
international law and Chinese law to prevent police and other security forces under his authority
from engaging in abuses. The complaint asserts five causes of action under the Torture Victim
Protection Act and Alien Tort Claims Act. Enclosed is a copy of the complaint filed herein.

Defendant Liu was served while passing through San Francisco International Airport, apparently
on his way to the Winter Olympics. Having failed to respond to the complaint, the Court entered
a default on March 12, 2002. Plaintiffs now move for judgment by default. This motion has
been assigned to me by the District Judge in this case for a Report and Recommendation.
Enclosed is a copy of the plaintiffs' motion for judgment by default.

Having reviewed the complaint and plaintiffs' motion, the Court has determined that it would be appropriate to solicit the Department of State's opinion on a number of issues. In particular, the Court would appreciate the Department of State's views on the following issues:

1.    Is this case barred under the Foreign Sovereign Immunities Act ("FSIA")?  Please address, *inter alia*:

    a.    Whether the exception from immunity under 28 U.S.C. § 1605(a)(7) applies.

    b.    In determining both whether the FSIA applies and whether 28 U.S.C. § 1605(a)(7) applies, what law and facts must be demonstrated to establish defendant Liu was acting within or outside the scope of his authority?  Must the court determine defendant's scope of his authority under Chinese law; if so the Court requests translated version of all applicable law material to this determination.

2.    Should the Court find the case nonjusticiable under the Act of State doctrine?  What effect will adjudication of this suit have in the foreign policy of the United States?

If the Department of State believes a response to some or all of the above questions from the People's Republic of China is appropriate, it may invite the appropriate representative thereof to submit its written views to the Court as well.

The Court would appreciate your consideration of this matter and your communication of the State Department's position regarding these issues.  The Court leaves to your discretion whether your response is best submitted in the form of a letter or a Statement of Interest filed pursuant to 28 U.S.C. § 517.  A copy should be sent to plaintiffs' counsel.  The Court would appreciate a response by July 5, 2002.

Thank you for attention and cooperation.

Yours very truly,

Edward M. Chen
U.S. Magistrate Judge

EMC/ld
Enc.
cc:    Joshua Sondheimer, Esq., The Center for Justice & Accountability, 870 Market Street, Suite 684, San Francisco, CA  94102 (*Plaintiffs' counsel*)
Michael S. Sorgen, Esq., Law Offices of Michael Sorgen, 240 Stockton Street, 9th Floor, San Francisco, CA  94108(*Plaintiffs' counsel*)
Terri Marsh, Esq., Law Offices of Terri Marsh, 3133 Connecticut Avenue, NW, Suite 608, Washington, DC  20008 (*Plaintiffs' counsel*)