Xiaoning et al v. Yahoo! Inc, et al | Doc. 22

Case 4:07-cv-02151-CW    Document 22    Filed 06/22/2007    Page 1 of 16

1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
   mkline@omm.com
3  O'MELVENY & MYERS LLP
   1999 Avenue Of The Stars
4  Los Angeles, California 90067-6035
   Main Number: (310) 553-6700
5  Facsimile: (310) 246-6779

6  Attorneys for Defendant YAHOO!, INC. and
   Specially Appearing Defendant YAHOO!
7  HOLDINGS (HONG KONG), LTD.

8
              UNITED STATES DISTRICT COURT
9             NORTHERN DISTRICT OF CALIFORNIA
                    OAKLAND DIVISION
10

11  WANG XIAONING, YU LING, SHI TAO,        Case No. C07-02151 CW
    and ADDITIONAL PRESENTLY
    UNNAMED AND TO BE IDENTIFIED            DEFENDANT YAHOO!, INC.'S MOTION
12  INDIVIDUALS,                            FOR AN EARLY CASE MANAGEMENT
                                            CONFERENCE AND ORDER;
13              Plaintiff,                  PROPOSED ORDER

14       v.                                 Date:     July 2 or 26, 2007*
                                            Time:     TBD
15  YAHOO!, INC., a Delaware Corporation,   Location: Courtroom 2
    YAHOO! HOLDINGS (HONG KONG),
16  LTD., a Foreign Subsidiary of Yahoo!,   Judge:    Hon. Claudia Wilken
    ALIBABA.COM, INC. a Delaware
17  Corporation, AND OTHER PRESENTLY
    UNNAMED AND TO BE IDENTIFIED
18  INDIVIDUAL EMPLOYEES OF SAID
    CORPORATIONS,
19
                Defendant.
20

21  TO PLAINTIFFS; DEFENDANT ALIBABA.COM, INC.; AND THEIR COUNSEL OF

22  RECORD:

23       PLEASE TAKE NOTICE THAT ON Monday, July 2, 2007, at a time to be determined by

24  the Court or on Thursday, July 26, 2007, at 2:00 p.m.—depending on whether the Court grants

25  defendant Yahoo!, Inc.'s ("Yahoo!'s") motion to shorten time being filed concurrently

26  ─────────────

27  * Defendant Yahoo!, Inc. is filing concurrently herewith a motion to shorten time for the hearing
    on this motion from July 26, 2007 to July 2, 2007. Defendant Alibaba.com, Inc. joins this case
28  management motion and the motion to shorten time.

C07-02151 CW
YAHOO!'S MOT. FOR AN EARLY CASE
MANAGEMENT CONF. AND ORDER

herewith—in Courtroom 2, 4th Floor, United States Courthouse, 1301 Clay Street, Oakland, California, defendant Yahoo!, Inc. ("Yahoo!") will and hereby does move for an early Case Management Order, pursuant to Civil Local Rule 16-2(d). This Case Management Order, which proposes bifurcating certain issues and soliciting statements of interest from the political branches to address others, is sought consistent with the procedures contemplated in *Sosa v. Alvarez-Machain*, 542 U.S. 629, 728 n.23 (2004); other Alien Tort Statute cases that similarly pose foreign policy concerns, *see, e.g.*, *Doe v. Qi*, 349 F. Supp. 2d 1258 (N.D. Cal. 2004); and the Standing Order for All Judges of the N.D. Cal., Contents of Joint Case Mgmt. Statement (effective Mar. 1, 2007), which encourage parties to propose case management procedures that "facilitate the just, speedy, and inexpensive disposition" of matters by "narrowing," "bifurcat[ing]," and "streamlin[ing]" procedures.

This motion, which Alibaba.com, Inc. joins, is based on this Notice of Motion and Motion, the pleadings on file in this matter, the following Memorandum of Points and Authorities, the Exhibits filed with this Motion, and any further argument the Court might allow.

Dated: June 21, 2007

DANIEL M. PETROCELLI
MATTHEW T. KLINE
O'MELVENY & MYERS LLP

By: _____
Daniel M. Petrocelli
Attorneys for Defendant
YAHOO!, INC.

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. PLAINTIFFS' ALLEGATIONS ..................................................................................... 2

III. THE COURT SHOULD SEEK THE VIEWS OF THE POLITICAL BRANCHES GIVEN THE SERIOUS POLICY QUESTIONS PRESENTED BY THIS CASE ....................................................................................... 3

IV. THIS COMPLICATED LEGAL ISSUES IN THIS CASE SHOULD BE RESOLVED IN A LOGICAL, SEQUENTIAL FASHION ................................... 4

   A. Phase I: Threshold, Procedural Issues ....................................................... 5
      1. Personal Jurisdiction…………………………………………….....5
      2. Alibaba…………………………………………………………….5
      3. Plaintiffs' Proffer……………………………………………………6
      4. A Phase I Briefing Schedule………………………………………..7
   B. Phase II: Dispositive Motions Informed by Governments' Views .............. 7
      1. Is this Case Justiciable? ........................................................................ 7
      2. Can Claims Be Stated Under the ATS? ............................................... 7
      3. Can Claims Be Stated Under the TVPA? ............................................ 8
      4. Will the Remaining Claims Survive? ................................................... 9
      5. A Phase II Briefing Schedule………………………………………10

V. STAYING DISCOVERY ................................................................................................ 10

VI. MEET AND CONFER—PLAINTIFFS' POSITION ............................................. 11

VII. CONCLUSION…………………………………………………………………...12

## I. INTRODUCTION

Pursuant to Standing Order of this Court and Civil Local Rule 16-2(d), Yahoo! seeks an early Case Management Conference and the adoption of a tailored Case Management Order to facilitate a reasoned approach to this litigation, promote efficiency, and narrow and focus the issues, while at the same time respecting the seriousness of plaintiffs' claims and defendants' defenses. *See* Standing Order for All Judges of the N.D. Cal., Contents of Joint Case Mgmt. Statement ¶¶ 15, 16, 20 (effective Mar. 1, 2007). Plaintiffs seek to hold Yahoo! and the other defendants liable under the Alien Tort Statute for alleged acts of torture and violations of human rights committed by officials of the People's Republic of China. The complaint acknowledges that none of the defendants committed the alleged abuses; the allegation is that defendants aided and abetted the Chinese government by providing it with information about plaintiffs, in response to law enforcement requests.

The Supreme Court has cautioned that cases of this sort raise foreign policy concerns and must be handled with "great caution" and in consultation with the political branches of government. *Sosa v. Alvarez-Machain*, 542 U.S. 629, 728 n.23 (2004). Cases seeking to hold corporations liable for the acts of foreign government officials pose particular concern, because they expand the number of ATS suits that may be brought and provide more direct financial incentives to bring such suits.[1] Because this case challenges several decades of U.S. foreign policy toward China, seeks to adjudge the actions of the Chinese government, and seeks to impose new rules for responding to law enforcement requests for information, we believe the Court should secure a Statement of Interest from the United States before proceeding. The proposed Case Management Order reflects the time it will take to solicit the views of the United States, while at the same time setting a schedule to address other issues in the interim.

Yahoo! proposes that this case be managed in phases, with a hold on discovery unless and until the Court determines the case may proceed. The proposed Order initially divides the case

---

[1] *See, e.g., Sosa*, 524 U.S. at 732-33 nn.20 & 21; Brief of the United States as Amicus Curiae, *The Presbyterian Church of Sudan v. Talisman*, United States Court of Appeal for the Second Circuit, Case No. 07-0016, at 19-22 (filed May 15, 2007) ("U.S. Amicus Br.") (attached as Ex. A).

C07-02151 CW
YAHOO!'S MOT. FOR AN EARLY CASE
MANAGEMENT CONF. AND ORDER

into two phases:

- <u>Phase I</u>: The Court immediately resolves whether plaintiffs have named the correct corporate parties, whether the Court has jurisdiction over the Yahoo! Hong Kong defendant, and whether plaintiffs can prosecute this case, in light of the unique circumstances that they cannot give testimony or communicate with their counsel;
- <u>Phase II</u>: After the Court obtains a Statement of Interest by the appropriate branches of government, and after jurisdiction and party issues are resolved, the Court can address the varied legal issues presented by plaintiffs' claims asserted under federal, international, and California law.

As described below, Yahoo! proposes a briefing schedule for Phases I and II.

Yahoo! requests this motion be heard on shortened time, on July 2, 2007, so that these case management issues may be considered and the case streamlined before a great deal of work is done in the coming month. Also, a hearing on this date would make possible the attendance of Yahoo!'s lead counsel, who thereafter will be on a long-scheduled vacation until July 23. Defendant Alibaba.com, Inc. joins in these motions.

## II.     **PLAINTIFFS' ALLEGATIONS**

Plaintiffs Wang Xiaoning and Shi Tao are Chinese citizens. *See* Amended Complaint for Tort Damages ¶¶ 10, 12 (filed May 29, 2007) ("Am. Compl."). Both men are currently serving prison terms in China. *See id.* Wang's wife, Yu Ling, is also named as a plaintiff in this suit; she alleges she was harmed by her husband's mistreatment at the hands of the Chinese authorities. *See id.* ¶ 11. The named defendants are Yahoo!, Inc.; Yahoo Holdings (Hong Kong) Ltd. ("YHKL"); and Alibaba.com, Inc. The essence of the complaint is that plaintiffs published pro-democracy and other literature using Yahoo! China group lists or email accounts, and that the Chinese government requested information from YHKL to identify, charge, and try plaintiffs for violations of Chinese law. The complaint alleges that Chinese officials tortured and violated plaintiffs' human rights and seeks to hold defendants liable for the acts of the Chinese government. *See id.* ¶¶ 30-43.

1  Plaintiffs seek to hold defendants liable under three federal statutes (the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS"); the Torture Victim Protection Act, 28 U.S.C. § 1350 ("TVPA"); and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701, 2702, 2511 ("ECPA")), a variety of international law sources, and on a number of California statutory and common law theories (including battery, assault, false imprisonment, intentional infliction of emotional distress, negligence, and unfair business practices). *See* Am. Compl. at 17:5-28:5. Plaintiffs seek to hold defendants liable on aiding and abetting and other theories of vicarious liability. *See, e.g., id.* at ¶¶ 2, 60, 90. Plaintiffs seek, *inter alia*, compensatory and punitive damages, as well as declaratory and injunctive relief. *See id.* at 29:22-30:8.

## III. THE COURT SHOULD SEEK THE VIEWS OF THE POLITICAL BRANCHES GIVEN THE SERIOUS POLICY QUESTIONS PRESENTED BY THIS CASE.

As this Court and United States Supreme Court both have observed, ATS cases of this sort are "unusual" and must be approached with "great caution." *Doe v. Qi*, 349 F. Supp. 2d 1258, 1273 (N.D. Cal. 2004); *Sosa v. Alvarez-Machain*, 542 U.S. 629, 728 (2004). Caution is essential because such cases seek to compel the courts to pass judgment on the acts of government officials of foreign sovereign nations, thereby raising foreign policy and justiciability concerns. *See Sosa*, 524 U.S. at 727. Consequently, there is a "high bar" to asserting such claims, and courts are charged with the duty of "vigilant doorkeeping" to make sure ATS claims fall within the "narrow class" of claims allowed. *Id.* at 728; *Qi*, 349 F. Supp. 2d at 1291. Such doorkeeping, of necessity, must take into account the "policy of case-specific deference to the political branches" and includes seeking the political braches and other governments' views before allowing such a case to proceed. *Sosa*, 524 U.S. at 733 n. 21; *Qi*, 349 F. Supp. 2d at 1291, 1296-1303.

This particular ATS case has unique potential to affecting "impact foreign relations." *Qi*, 349 F. Supp. 2d at 1266. It challenges several decades of U.S. foreign policy toward China, in that one of its stated aims is to curtail American investment in China.[2] Moreover, the gist of

---

[2] *Compare* World Organization for Human Rights USA, "Major lawsuit filed by Human Rights USA against Yahoo! highlights the internet company's complicity in human rights abuses in China, (Apr. 18, 2007), http://humanrightsusa.blogspot.com/search/label/human%20rights (Website of Plaintiffs' Lead Counsel: "*[T]his lawsuit ought to convince other U.S. companies to*

C07-02151 CW
YAHOO!'S MOT. FOR AN EARLY CASE MANAGEMENT CONF. AND ORDER
- 3 -

plaintiffs' claim is that when Chinese law enforcement officials requested information from defendants, defendants should have refused the request on the ground the information provided could potentially be used to violate plaintiffs' human rights.[3]  Forcing Internet companies, or any company, into this quasi-judicial role of evaluating the merits of law enforcement requests, not only puts companies into an impossible position (requiring them either to break the law and refuse the request or risk liability in a case of this sort), but would impermissibly delay and hamper legitimate law enforcement efforts.  The U.S. government, foreign governments, law enforcement agencies, and the international business community no doubt would have serious and justifiable concerns about the creation of such a rule.

It is well settled that the views of the appropriate branches of government should be sought in ATS cases, where, as here, plaintiffs' case potentially violates the "act of state" doctrine, poses nonjusticiable "political questions," or should be dismissed under the doctrine of "international comity."[4]  The Case Management Order, as described below, affords the Court time to solicit and consider these views and the parties the opportunity to brief them.

---

*think twice before doing business with the Chinese government . . . ."), with* U.S. Dep't of State, Bureau of East Asian and Pacific Affairs, Background Note: China (January, 2007), http://www.state.gov/r/pa/ei/bgn/18902.htm (*"U.S. China policy has been remarkably consistent. For seven consecutive administrations, U.S. policy has been to encourage China's opening and integration into the global system.  As a result, China has moved from being a relatively isolated and poor country to one that is a key participant in international institutions . . . .  The State Department's annual China human rights and religious freedom reports have noted China's well-documented abuses of human rights . . . . . At the same time, China's economic growth and reform since 1978 has improved dramatically the lives of hundreds of millions of Chinese, increased social mobility, and expanded the scope of personal freedom.")* (emphases added).

[3] *See* "Some people think the Internet is a bad thing," (June 6, 2007), http://www.gginternet1.co.uk/amnesty/irrepressible01/ (video webcast at 1:02:05 to 1:02:33) (Plaintiffs' Lead Counsel: "The bottom line for Yahoo and the other internet companies that we're concerned about is that they must be held accountable for their complicity in these abuses, *they must ask themselves, before any new requests for information are responded to, whether it would result in the arbitrary arrest and torture of internet users who have committed no real crimes, and they must not allow themselves to become complicit in major human rights abuses.*") (emphasis added).

[4] *See, e.g., Sosa,* 524 U.S. at 733 n. 21; *Sarei v. Rio Tinto,* ___ F.3d ___, 2007 WL 1079901, at *7-14 (9th Cir. Apr. 12, 2007); *Qi,* 349 F. Supp. 2d at 1291, 1296-1303; *see also Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398 (1964); *Vieth v. Jubelirer,* 514 U.S. 267, 277-78 (2004); *American Ins. Ass'n v. Garamendi,* 539 U.S. 396, 414 (2003); *Societe Nationale Industrielle Aerospatiele v. United States Dist. Court for the Dist. of Iowa,* 482 U.S. 522, 544 n.27 (1987).

IV. **THIS COMPLICATED LEGAL ISSUES IN THIS CASE SHOULD BE RESOLVED IN A LOGICAL, SEQUENTIAL FASHION.**

This case should be divided into two initial Phases. In Phase I, which would commence immediately, the parties and Court would address three threshold issues: (1) whether this Court has personal jurisdiction over YHKL; (2) whether plaintiffs have any basis for bringing suit against the named Alibaba defendant; and (3) the complicated issue of how Wang and Shi intend to prove their case, given the fact of their incarceration and presumed inability to give testimony or communicate with the parties or the Court.

In Phase II, and with the anticipated benefit of the political branches' views regarding this case, the parties and Court would address merits issues, such as whether (1) this case is justiciable or violates the "act of state" doctrine; (2) plaintiffs have stated a claim under the ATS, TVPA, ECPA, and other sources of law on which they rely; and (3) whether plaintiffs' California state law claims are subject to a special motion to strike under the so-called "Anti-SLAPP" statute.

A. **Phase I: Threshold, Procedural Issues.**

(1) <u>Personal Jurisdiction</u>. Before the parties' and judicial resources are unnecessarily expended, the Court should determine whether it has personal jurisdiction over YHKL. YHKL is a foreign company that has never purposefully availed itself of California, and its contacts with California are minimal. The fact that YHKL is a wholly owned subsidiary of Yahoo!, a California company, does not confer personal jurisdiction over YHKL. *See, e.g., Doe I v. Unocal* 248 F.3d 915, 925-26 (9th Cir. 2001). YHKL is an independent Hong Kong business, focused on serving a Hong Kong clientele. It employs over 100 employees in Hong Kong, is well capitalized, and observes corporate formalities. It is not an alter ego or mere agent. Plaintiffs' complaint lacks any allegations to the contrary. Whether YHKL belongs in this case should be addressed at the outset, in Phase I.

(2) <u>Alibaba.</u> Plaintiffs conclusorily plead that the information concerning them allegedly disclosed to the Chinese government was provided by "Defendants Yahoo! Inc., its agents, wholly-owned subsidiaries Yahoo! HK and Yahoo! China, *and its strategic partner Alibaba.com, Inc.*" Am. Compl. ¶ 2 (emphasis added). Alibaba.com, Inc. does not, and never

did, maintain any information about Yahoo! China users and so could not possibly have participated in any way in the disclosures upon which plaintiffs' claims are based. Moreover, the complaint makes clear that it was not until 2005—well after the alleged wrongful disclosures were made in 2002 and 2004—that any Alibaba entity even had a connection with the operation of Yahoo! China. *Id.* ¶ 18. Alibaba.com, Inc. should be dismissed from this case immediately. This threshold issue should be litigated in Phase I before Alibaba.com, Inc. is forced to expend resources litigating the many other issues raised by this case.

(3) <u>Plaintiffs' Proffer</u>. A key threshold issue to be discussed at the first Case Management Conference and, if need be, litigated, is how plaintiffs will be able to prove their case and defendants defend it. Wang and Shi are currently serving lengthy prison terms in China. *See* Am. Compl. ¶¶ 10, 12, 39, 42, 60, 63. According to the complaint, Wang and Shi are allowed very little contact with the outside world. Indeed, the complaint alleges that Wang's access to visitors is "strictly limited" and that "[p]rison officials scrutinize all written correspondence to and from Wang, severely limiting his ability to communicate with anyone outside the prison, including his wife." *Id.* ¶ 43. Similarly, Shi is said to be housed at a high-security prison, at which his written communications are monitored, and it is alleged "[h]e has very little contact with people outside the prison." *Id.* ¶ 62.

There is no reason to believe that Wang or Shi will be allowed any contact with foreign attorneys (their named counsel in this case or defendants' lawyers), especially for purposes of prosecuting this case. Plaintiffs' counsel will not be able to take their deposition; and neither will defendants' counsel. According to the U.S. Department of State, "it does **not** appear possible to take the deposition of a witness located in China. . . . China does not recognize the right of persons to take depositions, *and any effort to do so could result in the detention and/or arrest of U.S. citizen participants.*"[5]

The majority of plaintiffs' causes of action, if not all of them, depend on admissible proof that defendants caused plaintiffs to suffer abuse at the hands of the Chinese government.

---

[5] U.S. Dep't of State, China Judicial Assistance, http://travel.state.gov/law/info/judicial/judicial_694.html (bolding in original) (last accessed on June 11, 2007).

C07-02151 CW
YAHOO!'S MOT. FOR AN EARLY CASE                - 6 -
MANAGEMENT CONF. AND ORDER

1  Although we have raised the issue, plaintiffs have not explained to date how they will provide
2  such proof. Any attempt by Yu or other parties to testify as to what Wang and Shi told them, or
3  mere reliance on generalized reports about abuses in China, is inadmissible hearsay that does not
4  fall within any recognized exception to the rule. *See Qi*, 349 F. Supp. at 1310 n.39. Under these
5  circumstances, we believe it is prudent and reasonable to require plaintiffs' to make a factual
6  proffer identifying the witnesses and other proof available of their claims.

7  (4) A Phase I Briefing Schedule. Defendants propose the following Phase I briefing
8  schedule: opening briefs addressing these three issues should be due July 27, 2007; oppositions
9  should be due August 27, 2007; and replies should be due September 14, 2007.

**B.     Phase II: Dispositive Motions Informed by Governments' Views**

We request that the Court solicit the views of the U.S. government regarding this case. The Court should also ask the U.S. government to solicit the views of other nations regarding the foreign policy and law enforcement issues this case raises. The Court should request responses from the government by the beginning of September, if possible. With these statements in hand, the parties will be able to brief a number of legal issues this case poses:

(1) Is this Case Justiciable?   Given the foreign policy and impact this case could have on law enforcement, this Court will need to determine if the case violates the "act of state" doctrine, poses nonjusticiable "political questions," or should be dismissed under the doctrine of "international comity." *See supra* n. 4. Waiting for the government's views on these issues is essential to the analysis. *See id.*

(2) Can Claims Be Stated Under the ATS?   This statute is the source of great controversy. ATS issues to be litigated, include:

- whether aiding and abetting theory of liability exists under the ATS;[6]

---

[6] *See, e.g., Sarei v. Rio Tinto*, __ F.3d __, 2007 WL 1079901, at *5 (9th Cir. Apr. 12, 2007) (concluding that such a claim was not frivolous, but stopping short of recognizing such a claim); U.S. Amicus Br. at 12-27 (arguing against aiding and abetting liability); Curtis A. Bradley et al., Sosa, *Customary International Law and the Continuing Relevance of Erie*, 120 HARV. L. REV. 870, 924-29 (2007) (discussing debate; concluding, that in light of *Sosa*, only Congress and the President through legislation, and not the courts, can impose such liability).

C07-02151 CW
YAHOO!'S MOT. FOR AN EARLY CASE                   - 7 -
MANAGEMENT CONF. AND ORDER

- assuming such a theory exists, whether *corporate* defendants may be held liable, given that international-law norms are applicable only to *states*;[7]
- assuming corporations may be held liable, whether *these* defendants may be liable, given there is no allegation they *intended* for plaintiffs to suffer any harm;[8]
- whether plaintiffs' torture claims under the ATS are preempted by the TVPA;[9]
- whether plaintiffs' remaining ATS claims, based on norms against arbitrary arrest and forced labor, are of sufficiently "definite content and acceptance" to be actionable under the ATS;[10]
- whether the international-law sources on which plaintiffs rely support ATS claims;[11]
- and whether plaintiffs' factual allegations are specific enough even to state a claim, particularly as to plaintiff Shi, for whom no specific allegations are made and it is merely assumed he was tortured because he is incarcerated at a notoriously abusive prison, *see, e.g.*, Am. Compl. ¶¶ 57, 64.

Litigating all these issues will take time and is costly, and their resolution is best informed after giving the government an opportunity to express its views. YHKL and Alibaba.com, Inc., moreover, should not be forced to brief these issues if they do not belong in this case.

(3)  <u>Can Claims Be Stated Under the TVPA?</u>  Plaintiffs' TVPA claims raise similar questions and equally call out for the government's views. The questions include:

- whether the TVPA applies only to individuals, not corporations;[12]

---

[7] *See, e.g.*, RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES, Part I, ch. 1, introductory note (1987) (noting that international law generally applies to states).

[8] *See, e.g.*, Rome Statute of the Int'l Criminal Court, art. 25(3), U.N. Doc. A/CONF.183/9 (1998) (recognizing intent requirement); *Presbyterian Church of Sudan v. Talisman Energy*, 453 F. Supp. 2d 633, 668 (S.D.N.Y. 2006) (same).

[9] *See Enahoro v. Abubakar*, 408 F.3d 877, 886 (7th Cir. 2005) (concluding the TVPA preempts torture claims under the ATS).

[10] *Sosa*, 542 U.S. at 732.

[11] *See id.* at 734 (noting that the International Covenant on Civil and Political Rights and the Universal Declaration of Human Rights, on which plaintiffs rely here, have "little utility" in establishing norms enforceable under the ATS).

- whether defendants can be held liable when they did not engage in the acts of torture;[13]
- whether even if the TVPA could be construed to impose some form of aiding and abetting liability, it would not impose such liability on individuals who were not themselves acting under the color of law;[14]
- and whether plaintiffs have alleged sufficient facts to make out their claims.

(4) <u>Will the Remaining Claims Survive?</u>  Plaintiffs' claims under California common law, the California Unfair Competition Law ("UCL"), and ECPA raise similarly complex questions. For example, the Court will need to decide whether these sources of law can be applied extraterritorially.[15] The Court will also need to decide whether plaintiffs' claims suffer from other defects, including whether some are time-barred.[16]

Finally, plaintiffs' California state law claims are subject to a special motion to strike. Invoking California law, plaintiffs seek to hold Yahoo! liable for communications allegedly made by its agent, YHKL, to the Chinese government. *See, e.g.*, Am. Compl. ¶¶ 40, 54, 60. Such communicative acts with government officials cannot give rise to claims for civil liability. *See* CAL. CIV. CODE § 47(b); *Beroiz v. Wahl*, 100 Cal. Rprt. 2d 905, 909-12 (Cal. Ct. App. 2000). California law provides Yahoo! immediate means to assert this defense, pursuant to CAL. CIV.

---

[12] *See, e.g., Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1164, 1175-76 (C.D. Cal. 2005) (TVPA does not apply to corporations).

[13] *Cf.* 28 U.S.C. § 1350, *Note*.

[14] *See In re South African Apartheid Litig.*, 346 F. Supp. 2d 538, 555 (S.D.N.Y. 2004) ("Since a prerequisite to TVPA liability is that the individual be acting under color of law, this Court finds that creating aider and abettor liability for private actors not acting under color of law would be inconsistent with the statute and precluded by *Central Bank*.").

[15] *See, e.g., United States v. Toscanino*, 500 F.2d 267, 279 (2nd Cir. 1974) (refusing to apply ECPA extraterritorially); *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 223 (1999) (refusing to apply UCL extraterritorially); *Arno v. Club Med, Inc.*, 22 F.3d 1464 (9th Cir. 1994) (Californian's claim against foreign employer for injury suffered in France governed by French law); Amicus Br. at 5-12 (arguing the ATS does not apply extraterritorially).

[16] To take just one example, Yu's intentional infliction of emotional distress claim fails because she was not the target of any of the conduct alleged—her husband allegedly was. *See, e.g., Christensen v. Superior Court*, 54 Cal.3d 868, 905-06 (1991).

1  PROC. § 425.16, the so-called "Anti-SLAPP" statute. *See Vess v. Ciba-Geigy Corp. USA*, 317
2  F.3d 1097, 1109 (9th Cir. 2003) (affirming granting of SLAPP motion).

3      The Anti-SLAPP statute provides that a SLAPP motion should be filed within 60 days of
4  service of the operative complaint and the hearing on a SLAPP motion should be held "not more
5  than 30 days after the service of the motion." CAL. CIV. PROC. § 425.16(f). If the Court agrees to
6  the phased approach Yahoo! proposes, and if plaintiffs consent to the hearing on the SLAPP
7  motion occurring more than 30 days after the motion is filed, then Yahoo! could file its SLAPP
8  motion and the Court could hear it pursuant to the Phase II briefing schedule below. *See Greka
9  Integrated, Inc. v. Lowrey*, 35 Cal. Rptr. 3d 684, 689 (Cal. Ct. App. 2005). If not, Yahoo! will
10 need to file this motion sooner, and it will need to be heard sooner.

11     (5)   <u>A Phase II Briefing Schedule.</u> These issues are complex and no doubt disputed.
12 They require extensive briefing, but may not need to be briefed at all after Phase I. To allow time
13 for Phase I and to solicit and receive Statement of Interest letters, opening briefs on Phase II
14 issues should be due October 8, oppositions due October 29, and replies due November 7.

15 **V.   STAYING DISCOVERY**

16     Only if plaintiffs' case survives Phases I and II, should merits discovery begin. A serious
17 issue and impediment in this case is whether defendants may produce documents or interview
18 witnesses related to the requests for information made by the Chinese government without
19 violating Chinese law and subjecting defendants, their employees, and counsel to criminal
20 sanctions. A Hong Kong Privacy Commissioner has already ruled in a parallel case that he would
21 *not* compel the production of such written materials, because producing such materials could
22 violate Chinese "State Secret Laws" and expose defendants to "serious penal consequences."[17]
23 Similarly, China counsel have advised us that merely interviewing witnesses about these events
24 could subject the witnesses and our lawyers to prosecution.

---

[17] Office of the Privacy Commissioner for Personal Data, Hong Kong, *Report Published under Section 48(2) of the Personal Data (Privacy) Ordinance (Cap. 486), Report No.: R07-3619*, at ¶¶ 7.17-7.18 (issued Mar. 14, 2007); *see also id.* ¶¶ 7.3-7.20 (attached as Exhibit C), http://www.pcpd.org.hk/english/publications/files/Yahoo_e.pdf.

C07-02151 CW
YAHOO!'S MOT. FOR AN EARLY CASE   - 10 -
MANAGEMENT CONF. AND ORDER

Before this Court grapples with such extraordinary issues, which directly raise foreign policy concerns, it should first determine whether this case is justiciable, whether plaintiffs can prosecute it, and whether the case should be dismissed for a variety of reasons. This can likely be accomplished by November. Thereafter, the Court will be able to determine whether this case should be allowed to proceed. If the Court answers this question in the negative, the case will be dismissed, foreign policy and justiciability concerns will have been respected, and plaintiffs will be entitled to appeal. If the Court answers the question in the affirmative, the parties can set a schedule to address discovery and move the case toward summary judgment and trial, if need be.

## VI. MEET AND CONFER—PLAINTIFFS' POSITION

We have explored these and other difficult threshold issues with plaintiffs' counsel. Plaintiffs' counsel have indicated they would like this case to proceed on the more traditional track. Plaintiffs also object that this motion is contrary to the Court's June 19, 2007 scheduling order and is premature, given the parties have not gone through the regular ADR process.[18]

To respond briefly, the stipulation and accompanying declaration that gave rise to the Court's June 19 order *explicitly* mentioned that Yahoo! would file this motion "promptly."[19] As for ADR, Yahoo!'s Proposed Order accompanying this motion provides:

> the phased approach and briefing schedule set forth in Yahoo!'s Motion shall be followed. *By no later than August 17, 2007, the parties shall "meet and discuss"*

---

[18] Plaintiffs' precise position, which they asked us to reproduce in this motion, is:

> Plaintiffs have indicated that they object to both the Defendants' Motion seeking a special case management conference, and to the Defendants' request for an early (July 2) date for a hearing on that Motion, on the grounds that, first, these requests are at variance with the new timetable ordered by the Court, and more specifically with the justification given by the Defendants for requesting changes in that timetable, and second, because it is premature to raise the matters the Defendants seek to address before the Court before the regular ADR and case management process takes place.

Email from M. Sklar to M. Kline (June 20, 2007).

[19] *See* Joint Stip. Request For Order Enlarging Time To Respond To Compl. & Extending Initial Deadlines ¶ 3 (filed June 18, 2007) (defendants "reserve[ing] their right to seek further enlargement of time and propose a modified case management plan consistent with the Standing Order for All Judges of the Northern District of California, Contents of Joint Case Management Statement (effective Mar. 1, 2007)"); Decl. Of Daniel Petrocelli ¶ 9 (filed June 18, 2007) ("Defendants anticipate promptly filing a motion to address case management issues.").

1  "early settlement" and "ADR." Otherwise, all deadlines set forth in this Court's
2  June 19, 2007 order are hereby superseded by this Order. (Emphasis added.)

3  **VII.   CONCLUSION**

4  For the foregoing reasons, Yahoo!'s motion should be granted.

5  Dated: June 21, 2007

DANIEL M. PETROCELLI
MATTHEW T. KLINE
6  O'MELVENY & MYERS LLP

7

8  By: _____
   Daniel M. Petrocelli
9  Attorneys for Defendant
   YAHOO!, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| WANG XIAONING, YU LING, SHI TAO, and ADDITIONAL PRESENTLY UNNAMED AND TO BE IDENTIFIED INDIVIDUALS,<br><br>Plaintiff,<br><br>v.<br><br>YAHOO!, INC., a Delaware Corporation, YAHOO! HOLDINGS (HONG KONG), LTD., a Foreign Subsidiary of Yahoo!, ALIBABA.COM, INC. a Delaware Corporation, AND OTHER PRESENTLY UNNAMED AND TO BE IDENTIFIED INDIVIDUAL EMPLOYEES OF SAID CORPORATIONS,<br><br>Defendant. | Case No. C07-02151 CW<br><br>[PROPOSED] ORDER REGARDING DEFENDANT YAHOO!, INC.'S MOTION FOR AN EARLY CASE MANAGEMENT CONFERENCE AND ORDER<br><br>Judge:  Hon. Claudia Wilken |

Having considered Defendant Yahoo!, Inc.'s Motion For An Early Case Management Conference and Order ("Yahoo!'s Motion"), the papers filed in response thereto, all other argument, and the entire record in this case, it is hereby ORDERED that the motion is:

GRANTED _____, and the phased approach and briefing schedule set forth in Yahoo!'s Motion shall be followed.  By no later than August 17, 2007, the parties shall "meet and discuss" "early settlement" and "ADR."  Otherwise, all deadlines set forth in this Court's June 19, 2007 order are hereby superseded by this Order.

DENIED _____.

SIGNED on the _____ day of _____, 2007.

_____
The Honorable Claudia Wilken
Judge, United States District Court
for the Northern District of California

CC1:765044

C07-02151 CW
[PROPOSED] ORDER RE: YAHOO!'S MOT.
FOR AN EARLY CASE MANAGEMENT