Xiaoning et al v. Yahoo! Inc, et al                                                                    Doc. 54

Case 4:07-cv-02151-CW    Document 54    Filed 08/15/2007    Page 1 of 43

Morton H. Sklar, Executive Director
msklar@humanrightsusa.org
World Organization for Human Rights USA
2029 P Street NW, Suite 301
Washington, DC  20036
Telephone:   (202) 296-5702
Facsimile:    (202) 296-5704
[Admitted *Pro Hac Vice*]

Roger Myers (CA State Bar No. 146164)
roger.myers@hro.com
HOLME ROBERTS & OWEN LLP
560 Mission Street, 25th Floor
San Francisco, CA  94105-2994
Telephone:   (415) 268-2000
Facsimile:    (415) 268-1999

Attorneys for Plaintiffs
[Additional Counsel Appear on Signature Page]

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| WANG XIAONING, YU LING, SHI TAO, and ADDITIONAL PRESENTLY UNNAMED AND TO BE IDENTIFIED INDIVIDUALS, <br><br> Plaintiffs, <br><br> v. <br><br> YAHOO! INC., a Delaware Corporation, YAHOO! HONG KONG, LTD., a Foreign Subsidiary of Yahoo! AND OTHER PRESENTLY UNNAMED AND TO BE IDENTIFIED CORPORATE DEFENDANTS AND UNNAMED AND TO BE IDENTIFIED INDIVIDUAL EMPLOYEES OF SAID CORPORATIONS, <br><br> Defendants. | **CASE NO. C07-02151 CW** <br><br><br> **Brief in Support of Plaintiffs' Proposed Statement of Interest Request, and Proposed Draft Letter for the Court** |

Dockets.Justia.com

1

2

**Brief in Support of Plaintiffs' Proposed Statement of Interest Request,
and Proposed Draft Letter for the Court**

3

4

5

6

7

8

9

10

11

12

13

14

On July 31, 2007, this Court issued an Order Denying Defendant Yahoo!'s Motion for an

Early Case Management Conference, but agreed that a request for the U.S. Government's views on

the potential impact of the case on foreign policy interests should be submitted. The Court ordered

the Parties to hold meet and confer discussions by August 8 to try to reach agreement on the content

of "the letter that the Court should send to the Department of State soliciting its opinion," and to

individually submit a five-page brief and accompanying proposed letter if agreement was not

possible. Pursuant to the Court's Order, the parties held a meet and confer session on August 8 to

share views on the content of the letter to be sent to the Government for this purpose, and shared

draft versions of their proposed letters. These communications revealed substantial disagreements

between the parties on several key points that could not be resolved.

15

16

17

18

19

20

21

22

23

24

Specifically, as reflected in the Parties' proposed draft letters, there were major differences

concerning the appropriateness, particularly at this early stage of the litigation, of including in the

letter a specific request for the views of the State Department on applicability to the case of a wide

variety of legal principles and standards, such as the act of state doctrine and a number of principles

related to the issue of the justiciability of the case. The Plaintiffs believe strongly that the

applicability of these legal doctrines and standards to a particular case or controversy are legal issues

for the Court to decide, and are not suitable for presentation to the State Department as matters that

should be considered and decided on political or foreign policy grounds.

25

26

27

28

Plaintiffs note, in this regard, that the Court's solicitation of views from the U.S. Department

of State in the case of *Sarei v. Rio Tinto,* 221 F. Supp 2d 1116 (N.D. Cal. 2002) (a similar corporate

accountability case), while indicating that a variety of legal issues had been raised by the

2

Defendants, including the "act of state" and "political question" doctrines, refrained from seeking the Department's views on these types of specific issues, and did "not expressly invite the Department to comment" on these legal matters. U.S. Dept. of State Letter to the Court in *Alexis Sarei v. Rio Tinto PLC.*   Plaintiffs believe a similar approach should be taken in this case, especially given the fact that the present case is at an even more preliminary stage than when the Department's views were solicited in the Court's *Rio Tinto* request, and the nature and relevance of these specific legal issues have not been adequately developed.

It should be stressed once again, in this context, that it is not appropriate in any case to seek the views of the political branch on the applicability of legal doctrines and principles to the circumstances of a particular case or controversy. That is uniquely a judicial function, and the separation of powers principle counsels against the type of far-reaching, open-ended intrusion of Executive Branch authority on judicial prerogatives.

The determination of the applicability of these legal principles to a particular case or controversy is uniquely a matter for the courts, not the political branches, to consider and decide. As this Court properly observed in its July 31 Order, consistent with similar views expressed by the U.S. Court of Appeals for the Ninth Circuit (*Alperin v. Vatican Bank*, 410 F.3d 532, 537-38 (9th Cir. 2005)), "jumping to the conclusion" that the political question doctrine or the concern for foreign policy implications bars all cases that touch on foreign relations and potentially controversial political issues would be incorrect. Instead, it is up to the courts to apply the *Sosa, Baker v. Carr*, and *Sabbatino* standards by balancing any political or foreign policy concerns that may exist with a number of legally oriented considerations. This analysis and application of the legal standards is a function for the court to carry out, not the political branches.

3

A second major difference in the two versions of the draft letter is that the Plaintiffs believe that the Court's analysis of the potential foreign policy impacts of the case, and the process of weighing these factors against other (legal) considerations under the balancing tests called for under the *Sosa*, *Baker v. Carr*, and *Sabbatino* standards, requires an analysis not only of the specific views submitted by the U.S. Department of State in response to the proposed letter, but also must take into account, and be properly informed by, all other indicators that are available concerning the positions that the U.S. Department of State has taken on the subject matter and issues raised by this case, including how the State Department has described and dealt with the arrests of the Plaintiffs and others who were similarly affected by criminal prosecutions for free speech and free press communications on the Internet, in public and Congressional statements it may have made on these matters, including the China sections of its annual Country Reports on Human Rights.   The U.S. Government has made a number of public statements regarding the unlawful nature of the arrest and imprisonment of reporters and human rights and democracy support advocates in China for their use of the internet to exercise free press and free speech rights.  Any request to the Government soliciting their opinion on this case involving such abuses should be informed not only by the State Department's formal views as presented to this Court, but by other public pronouncements that have been made, officially and publicly, regarding these abuses.

Another major difference in approach concerns whether the letter from the Court (as the Defendants' draft letter would do) should directly invite or encourage the State Department to seek the views of the Government of "the People's Republic of China and other governments" on the litigation.  Plaintiffs' proposed letter inquires as to whether the Government of China has in fact, up until the date of this request letter from the Court, conveyed any views on the case to the Department of State, as this might provide the Court with objective information as to whether the litigation has

Brief  ISO Plaintiffs' Proposed Statement of Interest Request                    Case No. C07-02151 CW
#29504 v1

had any actual and specific foreign policy impact as regards to relations with China. But making an open ended inquiry to foreign governments of the type the Defendants are proposing simply invites an expression of negative and theoretical views, rather than gauging the actual impact that the lawsuit has produced.

## Conclusion

Accordingly, and pursuant to the Court's Order, Plaintiffs hereby submit their version of the proposed request, as well as this short submission highlighting the differences in the two versions, and outlining the reasons why the Plaintiffs deem their version more suitable.

For the foregoing reasons, Plaintiffs respectfully request the Court to accept the attached proposed letter as the Court's official communication to the United States Department of State on these matters.

5

1  Respectfully submitted this 15th day of August, 2007,

2

3                                    MORTON SKLAR
                                     THERESA HARRIS
4                                    WORLD ORGANIZATION FOR HUMAN
                                     RIGHTS USA

5
                                     By: /s/ Morton Sklar
6                                        Morton Sklar

7

8                                    ROGER MYERS
                                     HOLME ROBERTS & OWEN LLP

9
                                     By: /s/ Roger Myers
10                                       Roger Myers

11                                   Attorneys for Plaintiffs

12
                                     Karen Parker
13                                   (CA State Bar No. 112486)
                                     Association of Humanitarian Lawyers
14                                   154 5th Avenue
                                     San Francisco, CA 94118
15                                   Telephone: (415) 668-2752
                                     E-mail: ied@agc.org
16
                                     With the assistance of:
17                                   Albert Ho Chun-Yan
                                     Legal Representative for Shi Tao
18                                   Hong Kong

19                                   Rebecca Babarsky, University of Michigan
                                         Law School
20                                   Shannon Barrows, University of Chicago Law
                                         School
21                                   Paul Bozzello, Harvard Law School
                                     Rifk Ebeid, George Mason Law School
22                                   Legal Interns

23

24

25

26

27

28

                                        6

August     , 2007

Honorable John B. Bellinger III
Legal Adviser
United States Department of State
2201 C Street NW
Washington, D.C. 20520

Re: Wang, et al. v. Yahoo! Inc., et al., Civil Action No. C07-02151 CW

Dear Mr. Bellinger:

On April 20, 2007, Wang Xiaoning, Yu Ling, Shi Tao and other unnamed plaintiffs filed a lawsuit in the U.S. District Court of the Northern District of California against Yahoo! Inc., Yahoo! Hong Kong Limited and other unnamed defendants (collectively "defendants") under the Alien Tort Claims Act ("ATCA"), the Torture Victims Protection Act ("TVPA"), the Electronic Communications Privacy Act and various state tort standards. A copy of the most recently amended complaint is enclosed. The plaintiffs are Chinese nationals and are currently residing in The People's Republic of China ("PRC"). Two of the plaintiffs, Wang Xiaoning and Shi Tao, are currently serving ten-year prison sentences in high-security prisons in China as a result of criminal convictions linked to their use of the Internet to communicate ideas and information that were deemed contrary to the interests of the Chinese Government.

According to plaintiffs' complaint, in response to a request they received from Chinese authorities, Yahoo! and its affiliates provided the plaintiffs' identification and contact information, as well as information on the content of their Internet communications, that PRC authorities used as a basis for arresting and criminally prosecuting the plaintiffs. Plaintiffs allege that their arrests were a direct result of Yahoo!'s actions in turning over private Internet user information to the PRC regarding lawful activities protected by free press and free speech standards, and that, as a direct result of Yahoo!'s actions, plaintiffs Wang Xiaoning and Shi Tao and others were subjected to arbitrary arrest, long-term detention and torture.

Since this case may be considered to touch upon the foreign policy interests of the United States, this Court would like to give the U.S. Department of State the opportunity to present to the Court its views on the potential foreign policy impacts of this case, if you feel that it is necessary and appropriate to do so. The Court leaves to your discretion whether the presentation of your views, if any, takes the form of a letter, or a more formal Statement of Interest filed pursuant to 28 USC § 517.

In making your decision whether to present your views to the Court, and in framing any comments you may wish to make, you may wish to take into account the fact that a U.S.

corporation and its affiliates are the named defendants in this case, not the Government of China or any officials of that Government. In addition, the case is still at a very preliminary stage, since the defendants' response to the complaint has not yet been filed, and specific details concerning the facts of the case and the legal issues it presents have not yet been fully developed. This factor has influenced the nature and scope of submissions the U.S. Government has made to courts in the past in similar cases (see, *e.g.*, Letter of Frank Hunger, Assistant Attorney General, U.S. Department of Justice presented to the court in the case of *National Coalition Government of Burma and the Federation of Trade Unions of Burma v. UNOCAL, Inc. and the Yadana Natural Gas Project,* July 8, 1997).

It also would greatly assist the Court if you could provide, as part of any comments or views that you may submit, copies of any public statements, reports and observations that the Department may have made that touch on the subject matter of the case, or potential foreign policy issues connected with the case, and that would help the Court to understand the positions you have taken on these matters. These would include references to these issues in the China section of your annual Country Reports on Human Rights, and any Congressional submissions or other public pronouncements that you may have made related to the issues or facts covered by the case. Also relevant would be whether any communications have been received as of the date of this letter from the Government of China on the initiation of the lawsuit, and what the nature of those communications may have been.

Thank you for your consideration of this matter.

Sincerely,

Claudia Wilken
Judge, U.S. District Court,
Northern District of California

cc: <u>Counsel for Plaintiffs</u>:
    Morton Sklar
    Theresa Harris
    World Organization for Human Rights USA
    Roger Myers
    Holme, Roberts and Owen

    <u>Counsel for Defendants</u>:
    Daniel Petrocelli
    Matthew Kline
    O'Melveny & Myers

Morton H. Sklar, Executive Director
msklar@humanrightsusa.org
World Organization for Human Rights USA
2029 P Street NW, Suite 301
Washington, DC 20036
Telephone: (202) 296-5702
Facsimile: (202) 296-5704
[Admitted *Pro Hac Vice*]

Roger Myers (CA State Bar No. 146164)
roger.myers@hro.com
HOLME ROBERTS & OWEN LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105-2994
Telephone: (415) 268-2000
Facsimile: (415) 268-1999

Attorneys for Plaintiffs
[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| WANG XIAONING, YU LING, SHI TAO, and ADDITIONAL PRESENTLY UNNAMED AND TO BE IDENTIFIED INDIVIDUALS,<br><br>Plaintiffs,<br><br>v.<br><br>YAHOO! INC., a Delaware Corporation, YAHOO! HONG KONG, LTD., a Foreign Subsidiary of Yahoo! AND OTHER PRESENTLY UNNAMED AND TO BE IDENTIFIED CORPORATE DEFENDANTS AND UNNAMED AND TO BE IDENTIFIED INDIVIDUAL EMPLOYEES OF SAID CORPORATIONS,<br><br>Defendants. | **CASE NO. C07-02151 CW**<br><br><br><br>**SECOND AMENDED COMPLAINT FOR TORT DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

### SECOND AMENDED COMPLAINT

Plaintiffs, by and through their attorneys, allege upon personal knowledge and belief as to their own circumstances, and upon information and belief (based on the investigation of counsel) as to all other matters, that substantial evidentiary support exists or will exist after a reasonable opportunity for further investigation and discovery as a result of trial proceedings, in support of the following:

1.    Named Plaintiffs and additional unnamed and to be identified Plaintiffs (hereinafter referred to collectively as "Plaintiffs") have been and are being subjected to grave violations of some of the most universally recognized standards of international law, including prohibitions against torture, cruel, inhuman, or other degrading treatment or punishment, arbitrary arrest and prolonged detention, and forced labor, for exercising their rights of freedom of speech, association, and assembly, at the hands of Defendants through Chinese officials acting under color of law in the People's Republic of China (referred to herein as "the PRC" or "China").

2.    To commit these violations of specific, universal, and obligatory standards of international law, Defendants willingly provided Chinese officials with access to private e-mail records, copies of email messages, e-mail addresses, user ID numbers, and other identifying information about the Plaintiffs and the nature and content of their use of electronic communications. This information, available only to the Defendants, was voluntarily provided to Chinese officials by Defendant Yahoo! Inc. and its agents, alter egos, and/or other affiliated entities, including but not limited to wholly-owned subsidiaries Yahoo! HK and Yahoo! China. In addition, there are positive indicators that various subsidiaries and affiliates of Yahoo! Inc., have also, under the control and supervision of Defendant Yahoo Inc., continued to provide PRC officials with this information for various unnamed and to be identified Plaintiffs after Alibaba.com acquired control over Yahoo! China in October 2005. These disclosures served and are continuing to serve as the basis for the acts of persecution and torture that occurred and are occurring as a direct result of the Defendants' activities. By providing internet user identification information to the PRC, Defendants knowingly and willfully aided and abetted in the commission of torture and other major abuses violating international law that caused Plaintiffs' severe physical and mental pain and suffering.

2

1    3.    Plaintiffs' claims are actionable under the Alien Tort Statute (ATS), 28 U.S.C. §

2    1350, and the Torture Victim Protection Act (TVPA), 28 U.S.C. § 1350, because their injuries

3    resulted from violations of specific, universal, and obligatory standards of international law as

4    embodied in a number of treaty obligations binding on the United States and implemented

5    domestically here in the United States by a number of statutes including the TVPA.

6    4.    Defendants' conduct also violates California state laws, including prohibitions against

7    battery, false imprisonment, assault, intentional infliction of emotional distress, negligence,

8    negligent supervision, and the California Business & Professions Code § 17200.

9    5.    Defendants' conduct also breaches United States law under the Electronic

10    Communications Privacy Act by exceeding their authorization to access and control highly private

11    and potentially damaging information concerning Plaintiffs' electronic communications, in violation

12    of 18 U.S.C. § 2701, by unlawfully and knowingly divulging Plaintiffs' electronic communication

13    contents and user information, in violation of 18 U.S.C. § 2702, and by intentionally acquiring

14    and/or intercepting the contents of electronic communications sent by and/or received by Plaintiffs

15    through their use of computers, routing equipment and other electronic devices which were part of,

16    and utilized in, Defendants' electronic communications systems, in violation of 18 U.S.C. § 2511.

17    6.    Plaintiffs seek general, compensatory, and punitive damages for their injuries, as well

18    as declaratory and injunctive relief to hold Defendants accountable for their unlawful actions, and to

19    secure the Defendants' assistance in obtaining the Plaintiffs' release from prison. Plaintiffs also seek

20    relief that would prevent them from similarly harming others in the future.

21

22                                **JURISDICTION AND VENUE**

23    7.    This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 (federal

24    question jurisdiction), 28 U.S.C. § 1350 (Alien Tort Statute) and 28 U.S.C. § 1350 (Torture Victim

25    Protection Act). The Alien Tort Statute provides federal jurisdiction for "any civil action by an alien

26    for a tort only, committed in violation of the law of nations or a treaty of the United States." The

27    Torture Victim Protection Act supplements and confirms the ATS by providing federal court

28    jurisdiction for acts of torture, as defined by 28 U.S.C. § 1350. The Electronic Communications

3

1  Privacy Act, 18 U.S.C. § 2701 *et seq.*, provides federal jurisdiction for civil claims arising from

2  unauthorized disclosure of electronic communications and customer information.

3      8.      This Court also has supplemental jurisdiction over claims arising from violations of

4  state law because, pursuant to 28 U.S.C. § 1367, the facts in the claims arising from state law are so

5  related to the Plaintiffs' claims under federal laws that they form part of the same case or

6  controversy under Article III of the United States Constitution.

8                            **INTRADISTRICT ASSIGNMENT**

9      9.      Assignment and venue in the San Francisco/Oakland Division is proper pursuant to

10  Local Rule 3-2(c) and (d) because Defendant Yahoo! Inc. is located in, does business in, and has

11  major business contacts with this district and division. Other named and unnamed Defendants are

12  similarly subject to the jurisdiction of this court by virtue of their corporate ties and/or business

13  contacts and activities in this jurisdiction.

                                    **PARTIES**

15                                  *Plaintiffs*

16      10.     Plaintiff **Wang Xiaoning** is a subject, citizen, and resident of the People's Republic

17  of China.  He sues on behalf of himself for the injuries, including severe pain and suffering, he has

18  endured as a result of his torture, cruel, inhuman, or other degrading treatment, and arbitrary arrest

19  and prolonged detention inflicted upon him as a result of the Defendants' actions aiding and abetting

20  Chinese government officials in committing these major human rights abuses.  Specifically, Wang

21  Xiaoning was arrested and unlawfully and arbitrarily detained and prosecuted for publishing and

22  circulating through the Internet electronic journals and articles that supported democratic reform in

23  China and for communicating with other democracy advocates. He also sues for compensation for

24  property seized by government officials in conjunction with his arbitrary arrest and prolonged

25  detention.  He is serving a ten-year sentence at Beijing Municipal No. 2 Prison, a forced labor prison

26  for political prisoners, under severe conditions of prolonged confinement that are highly abusive in

27  nature.  He has served almost four years of his ten-year sentence, and has been imprisoned for

28  almost five years.

                                        4

1      11.    Plaintiff **Yu Ling** is a subject, citizen, and resident of the People's Republic of China,

2   and is the wife of 27 years of Plaintiff Wang Xiaoning. She sues on behalf of herself for the injuries,

3   including pain and suffering, she has endured as a result of her husband's torture, cruel, inhuman, or

4   other degrading treatment, and arbitrary arrest and prolonged detention inflicted upon him as a result

5   of the Defendants' actions aiding and abetting Chinese government officials in committing these

6   major human rights abuses. Specifically, as a result of her husband's unlawful and arbitrary arrest

7   and detention, Yu Ling has suffered extreme emotional distress and financial hardship. She also

8   sues for compensation for property seized by government officials in conjunction with her husband's

9   arbitrary arrest and prolonged detention.

10     12.    Plaintiff **Shi Tao** is a subject, citizen, and resident of the People's Republic of China.

11  He sues on behalf of himself for his injuries, including severe pain and suffering, resulting from

12  torture, cruel, unusual, or other degrading treatment or punishment, arbitrary arrest and prolonged

13  detention, and forced labor that were inflicted upon him as a result of the Defendants' actions in

14  making possible, and aiding and abetting Chinese government officials in committing, these major

15  human rights abuses. Specifically, Plaintiff Shi Tao was arrested and unlawfully and arbitrarily

16  detained and prosecuted for emailing messages, notes and journalistic dispatches describing

17  government restrictions on journalists imposed in connection with the 15th anniversary of the

18  Tiananmen Square crackdown on democracy advocates. He also sues for compensation for property

19  seized by government officials in conjunction with his arbitrary arrest and prolonged detention. He

20  currently is serving the third year of a ten-year sentence for "divulging state secrets abroad" at

21  Chishan Prison of Hunan Province, a high-security prison with a documented system of forced labor

22  and torture, and has been in detention for almost four years.

23     13.    Additional Plaintiffs temporarily designated as "**Presently Unnamed and To Be**

24  **Identified Plaintiffs**" are citizens of China currently living in China or in exile in other countries,

25  such as the United States, who were arbitrarily detained, arrested, tortured, subjected to cruel,

26  inhuman, or degrading treatment or punishment, and/or subjected to forced labor, as a result of

27  Defendants' actions in aiding and abetting these violations of United States and international law,

28  including federal and state laws that provide civil actions for Defendants' acts. At the time of filing,

5

1   Plaintiffs and their attorneys have identified at least 60 individuals arbitrarily imprisoned in China

2   for expressing their support for free elections, democracy, or human rights through Internet

3   communications or use, whose arrests and detention, based on information currently available

4   through reliable sources including the United States Department of State may be linked to actions by

5   the Defendants that revealed their Internet and electronic communication identifying information to

6   PRC officials.  Additional information about their arrests and detention, and their treatment in

7   detention, for these unnamed individuals, as well as information about how the Defendants may be

8   responsible for their abuse, will be obtained during discovery and described in greater detail during

9   these proceedings.  Their inclusion in this lawsuit is critical both in order to identify the extent of the

10  Defendants' role in enabling these abuses, as well as to curb, prevent and remedy current corporate

11  practices of the Defendants that are directly responsible for these abuses.  Such Plaintiffs may also

12  include others located outside of China who have been or are currently being adversely affected by

13  the Defendants' practices.

14                                      ***Defendants***

15          14.     Defendant **Yahoo! Inc.** is incorporated in Delaware.  Its principal place of business

16  has been located in California since 1994.  Its corporate headquarters are in Sunnyvale, California, in

17  Santa Clara County.  Yahoo! Inc. operates a business concerned primarily with facilitating the

18  distribution of and access to electronic communication and information.  The company's major

19  activities include supplying and operating Internet service, web-based personal e-mail accounts,

20  news portals, and a search engine, all designed to facilitate electronic communication and the sharing

21  of information.  By the nature of its activities, Yahoo! has access to and maintains identifying

22  information about individuals using its electronic services.

23          15.     Yahoo! Inc. is the parent company and ultimate owner of the entire issued share

24  capital of Yahoo! Hong Kong Limited.  During the incidents related to the arrest and detention of

25  plaintiffs Wang Xiaoning and Shi Tao, Yahoo! Inc. exercised significant control over Yahoo! China.

26  It did so via its organizational relationship with Yahoo! Hong Kong Limited (formerly Yahoo!

27  Holdings (Hong Kong) Limited), which was the parent company of Yahoo! China.  In addition,

28  Yahoo! Inc. exercised functional control and supervision over important aspects of the operations of

6

1  Yahoo! China. This included supervision and control of policy and legal decisions made by Yahoo!

2  China's Legal Team, including issues and activities relevant to the subject of this complaint, where

3  the Yahoo! China legal team reported directly to and took direction from the legal team of Yahoo!

4  Inc. Given both Yahoo! Inc.'s ownership and supervision of Yahoo! Hong Kong Limited and their

5  relationship to the legal team of Yahoo! China, Yahoo! Inc. was uniquely positioned to review and

6  approve the specific practices and policies that led to the arbitrary arrest, arbitrary detention and

7  torture of the Plaintiffs Wang and Shi as outlined in this complaint. Prior to October 2005 and at the

8  time of the allegations made in this petition relating to Plaintiffs Wang, Shi and Yu, there was a

9  unity of ownership and positive indicators of a unity of interest between the personality of Yahoo!

10 Hong Kong Limited (formerly Yahoo! Holdings Hong Kong Limited) and the personality of Yahoo!

11 Inc.

12      16.    Yahoo! Inc. has supervised the business operations of Yahoo! in China under the

13 name Yahoo! China since 1999. Yahoo! Inc. has conducted business in China directly, through its

14 wholly-owned subsidiary Yahoo! HK and since October 2005, primarily through a strategic

15 partnership with Alibaba.com. In addition to directly owning and controlling the operations of

16 Yahoo! Hong Kong (and therefore Yahoo! operations in China) from the period prior to 2002 until

17 the organizational changes that were made in 2005, Yahoo! Inc. has consistently exercised the

18 function of controlling the organizational structures dictating the management and operation of

19 Yahoo! activities in China. For example, it was Yahoo! Inc., and not Yahoo! China itself, that was

20 the contractual party involved in transferring ownership of Yahoo! China to Alibaba.com. For

21 Yahoo! Inc. to have controlled these organizational and structural decisions, they had to be

22 functionally in charge of the decision making process with respect to China operations.

23      17.    Prior to October 2005, operational, management, strategic, and business decisions for

24 Yahoo! China were made under the direction from Yahoo! Inc. or its appointed international

25 operations management team. Even following the change in ownership of Yahoo! China in October

26 2005, Yahoo! Inc. can still be held responsible for similar ongoing abuses, as it has continued to

27 exercise substantial control and oversight of Yahoo! China, "caus[ing] each member of the China

28 Group to...carry on the China Business in, and only in, the Ordinary Course of Business, in

7

1   substantially the same manner" as conducted prior to the change in ownership, including the

2   maintenance of "all Governmental Approvals and other Consents necessary for, or otherwise

3   material to, the China Business." (Stock Purchase and Contribution Agreement by and between

4   Yahoo! Inc. and Alibaba.com Corporation, Dated as of August 10, 2005).

5       18.    Matters related to the specific personal information disclosures of Plaintiffs Wang,

6   Shi and other unnamed Plaintiffs within that time period were handled locally by the legal team of

7   Yahoo! China which reported directly to the legal team of Yahoo! Inc.  This line of authority and

8   accountability indicates that although Yahoo! China was legally owned by Yahoo HK at the time of

9   the disclosures, it was managed and controlled actually and ultimately by Yahoo! Inc.  According to

10  testimony provided to Congress by the General Counsel of Yahoo! Inc., the decision to disclose

11  internet user information by Yahoo! China may have been directly reviewed and approved by

12  Yahoo! Inc.

13      19.    Defendant **Yahoo! Hong Kong Ltd.** (formerly known as Yahoo! Holdings (Hong

14  Kong), Ltd.) (Yahoo! HK), is a wholly owned subsidiary of Yahoo! Inc. based in Hong Kong.  Prior

15  to a change in ownership and corporate structure on October 24, 2005, and during the incidents in

16  question for the named Plaintiffs, Yahoo! HK was the business entity, partner, alter ego and/or agent

17  of Yahoo! Inc. responsible for operating and managing Yahoo! China, subject to the control and

18  supervision of Defendant Yahoo! Inc.  Through its wholly owned subsidiary, Beijing Yahoo!

19  Consulting and Service Company Limited (Beijing Yahoo!), and the Technical Services Agreement

20  that existed between Peking University Founder Group (PUFG) and Beijing Yahoo!, Yahoo! HK

21  controlled and operated Yahoo! China, maintaining the ability throughout the period in question to

22  appoint and replace all members of the board of directors of Beijing Yahoo!.  This organizational

23  structure of ownership and control of Yahoo! China operations by Yahoo! HK remained intact until

24  Yahoo! Inc. formed a strategic partnership with Alibaba.com in October 2005.

25      20.    Yahoo! Hong Kong's connection to and responsibility for the abuses set out in this

26  complaint during the period when it exercised control over China operations are indicated by the use

27  of the Yahoo! Hong Kong seal on the documents sent to PRC officials providing them with private

28

8

1   internet user information, and by various indices of its ownership and control of Yahoo! China

2   operations at the time of the events in question.

3       21.    The additional, presently **Unnamed and To Be Identified Corporate Defendants**

4   listed in the caption heading of this case are presently unnamed and to be identified corporate entities

5   that contributed to or aided and abetted the violations of international law suffered by Plaintiffs as

6   set out in this complaint, either directly or indirectly via their corporate ties. Additional information

7   about these unnamed entities will be obtained during discovery, allowing the Parties to ascertain the

8   exact nature and extent of the relationships between these unnamed entities and the already

9   identified Defendants.  Identifying information about them and the role they played in the abuses

10  will be identified and described in greater detail during the course of these proceedings.

11      22.    The additional, presently **Unnamed Individual Defendants** listed in the caption

12  heading of this case are presently unnamed and to be identified employees of the Defendant

13  companies, and/or other persons whose individual actions contributed to or aided and abetted the

14  violations of international law suffered by Plaintiffs as set out in this complaint.  Identifying

15  information about them and the role they played in the abuses are expected to be identified and

16  described in greater detail during these proceedings.

17

18                          **STATEMENT OF FACTS**

19                            ***General Facts***

20      23.    Journalists, human rights advocates, democracy supporters and other Internet users in

21  China have been subjected to a pattern of arbitrary criminal prosecution, imprisonment, and torture

22  as a result of their expression of ideas that are perceived to be in opposition to the positions or

23  policies of the government of the PRC on a variety of politically disfavored topics, such as the

24  Tiananmen Square massacre, democratic reform, human rights advocacy, opposition to corruption or

25  disagreement with government policies generally.  As a result of the expression of their views, these

26  "dissidents" are subjected to arbitrary arrest, criminal prosecution, and persecution in violation of

27  numerous protections for fundamental rights involving the exercise of freedom of expression,

28  association, press and assembly under the Chinese Constitution and international law.

1    24.    Since the arrival of electronic communications and the Internet in China, official

2  controls have been imposed to monitor and censor electronic communications on a widespread basis,

3  in order to keep track of the access and use of Internet information sources, including expression and

4  communication related to what are considered certain politically sensitive topics, such as democracy

5  support and human rights.  As a result, "dissident" journalists, human rights activists, and other

6  Internet users' personal communications and activities are carefully censored and monitored.

7    25.    Once these "dissidents" are identified and targeted through the Internet monitoring

8  and censorship program, they face a well documented pattern of systematic arbitrary arrest and

9  prolonged detention, incommunicado detention, extrajudicial killings, torture, cruel, inhuman or

10  degrading treatment and punishment, and forced labor.  Sometimes, these abuses lead to death in

11  custody.  Despite Chinese laws prohibiting these violations of both domestic law and international

12  human rights standards, authorities carry out these abuses under color of law within a culture of

13  impunity.

14    26.    In or around the Spring of 2002, Yahoo! Inc. signed an official, voluntary agreement

15  that had the effect of directly involving Yahoo! in the censoring and monitoring of on-line content

16  and communication by its Chinese users.  This agreement was in the form of the Internet Society of

17  China's "Public Pledge on Self-Discipline for the Chinese Internet Industry" (referred to herein as

18  "the Public Pledge").  The Internet Society of China is a government-affiliated professional

19  organization, and the Public Pledge is described as being voluntary, not required by government

20  regulation, although pressures to sign the Pledge and to abide by its requirements as a prerequisite

21  for doing business in China are considerable. By signing the Public Pledge, Yahoo! Inc. voluntarily

22  agreed to help monitor and censor electronic communication use involving information that,

23  according to the Internet Society of China, could "jeopardize state security" or "disrupt social

24  stability," and to report any offending on-line expression or communication to PRC authorities.

25    27.    A number of human rights organizations responded to news of the Defendants signing

26  this pledge by alerting Defendants that by helping the censors, and by identifying people who could

27  be accused of anti-government speech or communication, the Defendants would be placing many

28  innocent individuals, who were merely expressing their views or communicating with others, at risk

10

1 | of arbitrary arrest, prolonged arbitrary detention, forced labor, and torture as a result of their lawful

2 | exercise of free speech and free association rights.  For example, on July 30, 2002, Human Rights

3 | Watch sent a letter to Yahoo! Inc. Chairman and Chief Executive Officer Terry Semel, expressing

4 | concern that Yahoo! Inc. signed the Public Pledge, and alerting Yahoo! Inc. of the dangers to

5 | Internet users associated with their company's cooperation with monitoring and censoring efforts.

6 | This letter notified Yahoo! Inc. that it was common in China for people to be arbitrarily arrested for

7 | expressing disfavored views.  The letter pointed out that "In China … any public expression of

8 | views that differ from those of the state, and provision of information not deemed politically

9 | acceptable, may be considered 'harmful' and may result in a prison sentence," mistreatment, torture,

10 | and execution.  The letter also stated that, by upholding the Public Pledge, Defendants would risk

11 | assisting such human rights violations, clearly pointing out that "there is a strong likelihood that

12 | Yahoo will assist in furthering such human rights violations" through support of these monitoring

13 | and censorship activities.  The letter urged Yahoo! Inc. to withdraw from the Public Pledge and to

14 | state its support for internationally recognized standards of free expression.  Human Rights Watch

15 | also sent copies of this letter to Jerry Yang, Co-Founder and Director of Yahoo! Inc., Chris Castro,

16 | Chief Communications Officer and Senior Vice President of Yahoo! Inc., John Costello, Chief

17 | Global Marketing Officer of Yahoo! Inc., and Jon Sobel, Vice President, General Counsel, and

18 | Secretary of Yahoo! Inc.

19 |     28.    A subsequent 2002 Amnesty International report also provided Defendants notice that

20 | the Defendants' involvement in the monitoring and censorship program presented a grave risk to

21 | Internet users, and subjected them to arbitrary detention and torture.  On November 26, 2002,

22 | Amnesty International published "State Control of the Internet in China," documenting Chinese

23 | officials' use of electronic evidence to prosecute Chinese democracy advocates for exercising their

24 | freedom of expression over the Internet. This report, as well as the numerous press releases and news

25 | articles publicizing it, noted that Yahoo! Inc. had signed the Public Pledge and pointed out that

26 | compliance with the pledge could lead to violations of international human rights norms.

27 | Furthermore, the report documented that 21 prisoners in China had already suffered arbitrary arrest

28 | and prolonged arbitrary detention, torture, and death in custody as punishment for the "crime" of

11

1   using the Internet to exercise their right to freedom of expression, and to communicate and obtain
2   information concerning human rights or democracy.

3       29.     Particularly in light of these notifications, along with general and well-publicized
4   documentation of Chinese human rights abuses, including those in the U.S. Department of State
5   Country Reports on human rights abuses dealing with China, and all other nations' human rights
6   practices, Defendants had every reason to know and understand that the electronic communication
7   user information they provided to authorities could well be used to assist in the infliction of such
8   abuses as arbitrary arrest, torture, cruel, inhuman, or other degrading treatment, and prolonged
9   detention and/or forced labor, to punish what might be viewed by authorities as pro-democracy or
10  human rights activities.  Despite this knowledge and understanding, Defendants turned over specific
11  identifying information about the Plaintiffs and their electronic communications to officials who
12  used this information as a basis for arbitrarily arresting, detaining, and torturing the Plaintiffs.  There
13  are positive indications that this policy of disclosure continues to the present day, and has affected a
14  large number of the presently unnamed and to be identified Plaintiffs, in addition to the named
15  Plaintiffs.

16      30.     While in custody, Plaintiffs were subjected to torture, cruel, inhuman or degrading
17  treatment, forced labor, and arbitrary, prolonged and indefinite detention, for expressing their free
18  speech rights and for using the Internet to communicate about democracy and human rights matters.

19      31.     Defendants greatly benefited from these violations of the Plaintiffs' fundamental
20  human rights through their continued and expanded conduct of business in the PRC, the second-
21  largest Internet market in the world with at least 110 million users.  Defendants provided identifying
22  information about the Plaintiffs, in violation of the privacy agreements and assurances made to the
23  Defendants' customers and users, that led to their arbitrary arrest, indefinite detention and torture, in
24  order to obtain the approval and support of PRC officials and their agreement to allow them to
25  continue conducting and expanding the Defendants' business interests in the PRC.

26
27
28

12

1

***Specific Facts***

2

Wang Xiaoning

3        32.    From 2000 to 2001, Wang Xiaoning edited *Free Forum of Political Reform*, and from

4    2001 to 2002, he edited *Commentaries on Current Political Affairs*, electronic journals containing

5    articles written by Wang and others calling for democratic reform and a multi-party system in China.

6        33.    During this same time period, Wang posted additional pro-democracy articles on

7    websites in China and abroad.   From 2000 to 2001, Wang Xiaoning published his journals and

8    articles on an e-mail subscriber list, "aaabbbccc" Yahoo! Group.

9        34.    In 2001, administrators noticed the political content of Wang's writings and blocked

10   him from sending messages to the "aaabbbccc" Yahoo! Group.

11       35.    With this means of dissemination blocked to him, Wang Xiaoning continued to

12   publish his writings by electronically sending his journal on an anonymous basis to individual e-mail

13   addresses until he was arbitrarily detained in 2002.

14       36.    Yahoo! HK provided identifying information to police, linking Wang Xiaoning to his

15   anonymous e-mails and other pro-democracy Internet communications.

16       37.    On September 1, 2002, approximately ten security police raided Wang Xiaoning's

17   home and arbitrarily detained Wang Xiaoning without informing him or his family of the charges

18   against him.  On the same day, police searched his home and seized two computers, personal

19   computer files, e-mail records, written notes, address books, and manuscripts.

20       38.    Wang was not formally arrested and charged until almost a month later, on September

21   30, 2002.

22       39.    From September 1, 2002 to May 2004, Wang was held at the Detention Center of

23   Beijing State Security Bureau, where he suffered severe abuse at the hands of the prison officials.

24   The officials kicked and beat Wang repeatedly to force him to confess to having engaged in "anti-

25   state" activities and to turn over the names of other persons with whom he had communicated.

26   Prison guards commanded and instructed other prisoners to use psychological tactics against Wang

27   to break his resolve so that he would confess, and also as punishment for his writings.  During the

28   more than twenty months that he was arbitrarily detained at the Detention Center, Wang was often

13

1    barred from going outside. These abuses had severe physical and psychological effects on Wang.

2    When his wife was finally able to see him approximately six months after his arbitrary and unlawful

3    detention, Wang was very weak, showed no emotional expression, and exhibited severe respiratory

4    difficulties.

5        40.    On July 25, 2003, the Beijing Municipal First Intermediary People's Court tried

6    Wang Xiaoning on charges of "incitement to subvert state power," advocating the establishment of

7    an alternative political party, and communicating with an overseas organization the Chinese

8    government considers "hostile."

9        41.    On September 12, 2003, after almost thirteen months of arbitrary detention, the court

10    sentenced Wang to ten years in prison and two additional years of deprivation of political rights.

11        42.    The court specifically relied on evidence supplied by Defendants to identify and

12    convict Wang Xiaoning. The judgment noted that Yahoo! HK informed investigators that a

13    mainland China-based e-mail account (bxoguh@yahoo.com.cn) was used to set up Wang Xiaoning's

14    "aaabbbccc" Yahoo! Group, and that the e-mail address ahgq@yahoo.com.cn, which Wang

15    Xiaoning used to post e-mails to that Yahoo! Group, was also a mainland China-based account

16    maintained by Wang Xiaoning. Defendants were cited in the court decision as instrumental in

17    causing the Plaintiff's arrest and criminal prosecution.

18        43.    Additional evidence cited by the judgment included the following pro-democracy,

19    non-violent statements attributed to Wang Xiaoning as having appeared in his electronic

20    communications:

21        "Without the multi-party system, free elections and separation of powers, all types of

22        political reform will come to nothing."

23

24        "We should never forget that China is still a totalitarian and despotic country."

25

26        "The Four Basic Principles [of Chinese Communist government] are the biggest

27        obstacle to the establishment of the democratic system [in China]."

28

14

"In today's China, the workers and peasants are pressed under the lowest level of society. Thousands upon thousands of workers lost their job and many peasant workers are bitterly oppressed and exploited. However, they have no right to go on strike, no freedom to organize their own union and cannot find anything by which to secure their basic rights."

"The main reason that the Chinese Communist Party has been able to retain power in spite of being so corrupt is that China does not yet have a party that can replace the Communist Party."

44.     In May 2004, authorities transferred Wang to the Beijing Prison No. 2. Upon his transfer, authorities warned Wang Xiaoning that if he appealed the judgment against him, he would be denied any opportunity for parole, reduction of sentence for good behavior, or other privileges. Despite these warnings, Wang Xiaoning filed his appeal with the Supreme People's Court, citing that his arrest and conviction for free expression of his opinions was illegal under Chinese and international law. Rejecting these arguments, the court denied his appeal on December 22, 2004. Through his wife, Yu Ling, Wang Xiaoning appealed his case again, but the courts rejected his application for appeal on July 1, 2006.

45.     Wang Xiaoning has continued to suffer severe physical, psychological, and emotional abuse as a result of the court's decision that his writings and beliefs were subversive. Beijing Municipal No. 2 Prison, where Wang is unlawfully incarcerated, is a secretive, high-security forced labor prison where serious and "special control" prisoners are held, particularly political prisoners. Wang has been subjected to a severe form of treatment in this prison. He is held in a cell with nine other inmates and subjected to malnourishment. The prison guards deny Wang any access to recreation or even sunlight for weeks and even months at a time, even though the standard at the prison is to allow prisoners outside once a day. Prison officials refused to allow Wang to see his mother before her death in September 2005. Wang's access to family members is strictly limited, with his wife allowed to see him at most for only one half hour per month. Prison officials scrutinize

1 | all written correspondence to and from Wang, severely limiting his ability to communicate with
2 | anyone outside the prison, including his wife.

3 | ### Yu Ling

4 | 46.     Yu Ling and her family have endured severe psychological and emotional suffering
5 | as a direct result of the arbitrary detention of her husband on September 1, 2002. She and her family
6 | have suffered from the loss of Wang's presence and the lack of information about his location, the
7 | charges against him, his treatment, and his well-being.

8 | 47.     Yu Ling was present on September 1, 2002, when security police raided the house she
9 | shared with her husband, Wang Xiaoning. Some of the property that security police seized that day
10 | – including one of the computers – was Yu Ling's property.

11 | 48.     Since Wang Xiaoning was illegally detained, Yu Ling has been subjected to
12 | continued police surveillance, which caused her to fear for her own safety and personal security.
13 | She feared that the police would arbitrarily arrest her and subject her to physical abuse like her
14 | husband. These fears were reinforced by the actions of her family and friends, who no longer
15 | contacted her out of their own fears for their personal safety and respectability, and also because the
16 | police required people coming to visit her to register their names. Because of the surveillance and
17 | out of sincere concern for herself and her family, friends, and neighbors, Yu Ling isolated herself
18 | and took extra care not to raise the suspicions of the officials toward her or her family and friends.
19 | Yu Ling has suffered from extreme depression and guilt over these events.

20 | 49.     The arbitrary detention of her husband Wang Xiaoning placed Yu Ling in an
21 | extremely embarrassing position with her family. Due to the implications of his arrest, the danger it
22 | could cause to her family, and the heightened importance of appearance and status in China, Yu Ling
23 | kept the truth of Wang's arbitrary detention from her immediate family. At her mother's funeral, Yu
24 | Ling's siblings confronted her and accused her husband of being a bad man for not attending the
25 | funeral. In the midst of her extreme grief over the passing of her mother, Yu Ling had to tell her
26 | brothers and sisters the truth that her husband Wang could not attend because he was in prison.

27 | 50.     These psychological and emotional injuries have caused Yu Ling physical injury.
28 | She cannot eat or sleep due to the emotional distress caused by her husband's absence, has lost a

1  substantial amount of weight, and is consumed by the plight of her husband, and by her efforts to

2  assist him.

3      51.    Since the arbitrary detention of her husband Wang Xiaoning on September 1, 2002,

4  Yu Ling has had to devote many hours to her husband's defense.  This has taken her away from

5  work, resulting in lost income.  She has also had to pay several attorneys a substantial amount of

6  money to defend her husband.  Yu and her family have also suffered financially from the loss of

7  Wang Xiaoning's income.  Her son has attempted to replace his father's lost salary but a company

8  that offered him work terminated the contract when it learned of Wang Xiaoning's conviction.

9                                      Shi Tao

10     52.    From February 2002 to May 2004, Shi Tao worked as a reporter and head of the

11  Editorial Department for *Contemporary Business News* (*Dangdai Shangbao*) in Changsha, Hunan

12  Province, China.  From May 2004 until his arbitrary arrest and prolonged arbitrary detention on

13  November 23, 2004, Shi Tao worked as a freelance journalist, in Taiyuan, Shanxi Province, China.

14     53.    As a reporter, Shi Tao wrote about corruption by government officials in China.  As a

15  freelance writer, he published numerous political commentaries calling for democratic reform of the

16  Chinese government, as well as several books of poetry.

17     54.    In April 2004, Shi Tao published an essay, "The Most Disgusting Day," that criticized

18  the Chinese government for detaining an activist member of the Tiananmen Mothers, an

19  organization of mothers whose children were killed by the Chinese government in its 1989

20  crackdown on the internal democracy movement and demonstrators in Tiananmen Square.  Tao

21  published the essay under a pseudonym on an Internet forum.

22     55.    On April 20, 2004, at a staff meeting at the offices of the publication *Contemporary*

23  *Business News*, Shi Tao was advised of a document sent by the CCP's Central Propaganda Bureau,

24  alerting journalists to the security concerns and government preparations in anticipation of the

25  upcoming 15th anniversary of the 1989 Tiananmen Square massacre. Later that night, Shi Tao sent

26  his notes from this staff meeting, under an alias, to the New York-based Web site *Democracy Forum*

27  (*Minzhu Tongxun*), using his personal Yahoo! e-mail account.

28

56.    Between April 20, 2004 and November 23, 2004, Yahoo! HK gave Chinese officials and investigators information linking Shi Tao to the anonymous email he sent to Democracy Forum, including the account holder information for the email address, the IP address and physical address of the computer from which the email was sent, and the date and time the email was sent and its contents.  Defendants also supplied to the prosecuting officials the physical address of the office where the offending electronic communication took place, thereby linking the anonymous email message to Shi Tao.

57.    On November 23, 2004, Shi Tao was detained mid-day in a street near his home in Taiyuan, Shanxi Province. As he was walking on the street, several people suddenly accosted and kidnapped him, placed a hood over his head and transported him thousands of miles away to Changsha, Hunan Province.  His house was subsequently searched and police seized his computer, papers, and other property without a warrant.

58.    After 21 days of detention, Shi Tao was formally arrested and charged on December 14, 2004, but the charges were not made public.

59.    Up to and during his trial, Shi Tao was held at Changsha Detention Center, where officials are known to physically abuse and torture detainees on a regular basis.  Survivors of the prison describe being handcuffed and shackled for weeks at a time and chained to a door plank. Officials typically prohibit visits from family members as they believe isolation contributes to a more rapid reeducation of the detainee and a repudiation of their "unlawful" conduct.

60.    On February 24, 2005, Chinese authorities revoked the credentials of Shi Tao's defense attorney for representing activists accused of "adopting positions and making statements contrary to the law and the Constitution" and "defiling and slandering the Communist Party and government." On March 4, 2005, seven days before Shi Tao's trial, authorities placed his defense attorney under house arrest, presumably for the "crime" of properly defending his client.

61.    On March 11, 2005, the Changsha Municipal Intermediate People's Court in Hunan Province tried Shi Tao in a closed hearing.  To no one's surprise, given what had happened to his prior attorney, Shi Tao's court-appointed replacement attorney entered a guilty plea on Shi Tao's behalf.

18

1     62.     On April 30, 2005, the court sentenced Shi Tao to ten years imprisonment for

2   "illegally providing state secrets overseas." In its verdict, the court specifically made reference to

3   and cited the Internet user information that Defendants had supplied to Chinese officials as evidence

4   against Shi Tao:

5          "Account holder information furnished by Yahoo! Holdings (Hong Kong) Ltd., which

6          confirms that for IP address 218.76.8.201 at 11:32:17 p.m. on April 20, 2004, the

7          corresponding user information was as follows: user telephone number 0731-4376362

8          located at the Contemporary Business News office in Hunan."

9     63.     On May 4, 2005, Shi Tao appealed the judgment to the Hunan Province High

10   People's Court on the ground that because the police used items seized without a warrant, the

11   evidence against him was illegal, and that because the information he provided to *Democracy Forum*

12   was a reflection of public sentiment, he could not be accused of revealing a state secret. At the

13   appellate court's hearing, the court refused to hear the arguments presented by Shi Tao's legal

14   defense, failed to respond to the evidence presented by the defense, and closed the hearing to the

15   public despite Chinese Criminal Procedure Law provisions that appeal hearings, even for state

16   secrets cases, should be open to the public unless there are enumerated exceptional circumstances.

17   The court denied Shi Tao's appeal on June 2, 2005.

18     64.     On March 30, 2006, Shi Tao, through his legal representative, filed a formal

19   complaint with the Hong Kong Privacy Commissioner, requesting an investigation of the

20   Defendants' actions divulging Shi Tao's private information. The Privacy Commissioner accepted

21   the complaint and conducted an investigation. The Privacy Commissioner's report, made public on

22   March 14, 2007, concluded that because Hong Kong's privacy ordinance only regulates the actions

23   of companies in Hong Kong and in Shi Tao's case the information was disclosed in China to

24   Chinese officials, his office did not have jurisdiction over the incident.

25     65.     Since his appeal was denied in June 2005, Shi Tao has been incarcerated at Chishan

26   Prison of Hunan Province, Area 6, a high-security prison known for holding political prisoners and

27   violent criminals serving long sentences. Shi Tao shares a cell with more than ten other inmates.

28   His health and mental state have deteriorated sharply in the prison. He suffers from an ulcer and a

19

1    heart ailment, as well as skin lesions induced by the prison's damp conditions. He has very little

2    contact with people outside the prison. The prison officials monitor his written communications.

3    66.    Chishan Prison uses a severe system of forced labor, in which prisoners work in dark,

4    dust-filled factories, starting before dawn and working for sixteen hours or more, in conditions

5    intended to destroy their physical and mental capacities. Shi Tao has served as a forced laborer in

6    these workshops. Detainees in this prison rarely see daylight. Former prisoners have reported that

7    inmates are denied sleep and forced to labor for long hours under bright lights, which harm their

8    vision and in some cases cause blindness and other disabilities. Prisoners convicted of violent crimes

9    are placed in charge of the workshops to intimidate their fellow inmates. They are encouraged to

10    target their attention and abuse on the political prisoners. Guards in Chishan Prison also abuse and

11    torture the political prisoners with constant violence and intimidation. Survivors of the prison have

12    described the systemic use of torture and other cruel, inhuman or degrading treatment or punishment

13    by prison guards. Prisoners also are denied necessary medical care, a particularly important

14    consideration for Shi Tao considering his ulcer, heart ailment, and skin lesions.

15    67.    In addition to his physical and psychological injuries, Shi Tao has suffered extreme

16    emotional distress. He has even lost his family, since his wife divorced him in 2006.

17    68.    In October 2005, the Committee to Protect Journalists named Shi Tao one of three

18    annual recipients of its International Press Freedom Award. Amnesty International has declared Shi

19    Tao a prisoner of conscience as he was imprisoned solely for peacefully exercising his right to

20    freedom of expression and opinion. The United States Department of State Country Report on

21    Human Rights Practices in China for 2006, published March 6, 2007, names Shi Tao as a political

22    prisoner, imprisoned for exercising the right to free expression.

23

24                                    **CAUSES OF ACTION**

25    69.    Plaintiffs' causes of action arise under and violate the following laws, agreements,

26    conventions, resolutions, and treaties:

27    (a)    Alien Tort Statute, 28 U.S.C. § 1350;

28    (b)    Torture Victim Protection Act, 28 U.S.C. § 1350;

20

(c)   Convention against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment G.A. res. 39/46, annex, 39 U.N. GAOR Supp. (No. 51) at 197, U.N. Doc. A/39/51 (1984), *entered into force* June 26, 1987;

(d)   International Covenant on Civil and Political Rights, G.A. res. 2200A (XXI), 21 U.N. GAOR Supp. (No. 16) at 52, U.N. Doc. A/6316 (1966), 999 U.N.T.S. 171, *entered into force* Mar. 23, 1976;

(e)   Universal Declaration of Human Rights (1948) G.A. res. 217A (III), U.N. Doc A/810 at 71;

(f)   Charter of the United Nations (1945), **adopted** June 26, 1945, 59 Stat. 1031, T.S. 993, 3 Bevans 1153 (*entered into force* October 24, 1945);

(f)   International Labor Organization Convention No. 29 Concerning Forced or Compulsory Labor (1930), *adopted* June 28, 1930, 39 U.N.T.S. 55 (*entered into force* May 1, 1932).

(g)   The Electronic Communications Privacy Act, 18 U.S.C. § 2701, § 2702, and §2511; and

(h)   Statutes and common law of the State of California, including but not limited to assault and battery, false imprisonment, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and unfair business practices.

### *FIRST CLAIM FOR RELIEF*

**(Torture, a Violation of International Law for Which the Alien Tort Statute and the Torture Victim Protection Act Provide Relief)**

**(By Wang Xiaoning, Shi Tao and Other Plaintiffs Against All Defendants)**

70.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 45 and 52 through 68 of this Complaint as if fully set forth herein in this First Claim for Relief.

71.    The Defendants' acts described in this Complaint caused direct and severe physical and mental pain and suffering to the Plaintiffs and placed them at severe risk of personal injury and/or death in connection with their participation in, and support of, the peaceful exercise of their

21

1  rights of free speech and communication, free association, and the right to hold, exercise and express

2  their political beliefs.

3      72.    Because the acts enabled by Defendants as described herein violated multiple

4  provisions prohibiting torture on an absolute basis including: (1) treaties binding on the United

5  States, (2) statutes adopted by the Congress of the United States implementing those treaty

6  obligations, (3) international and domestic judicial decisions applying and interpreting the

7  prohibition against cruel, inhuman, or degrading treatment or punishment, (4) administrative

8  regulations and international and domestic judicial decisions applying and interpreting the

9  prohibition against torture, and (5) a number of specific, universal, and obligatory standards that are

10  recognized to be part of customary international law, these acts constitute "tort[s] ... committed in

11  violation of the law of nations or a treaty of the United States" under the Alien Tort Statute (ATS),

12  28 U.S.C. § 1350.

13      73.    These acts also specifically constitute torture in violation of the Torture Victim

14  Protection Act (TVPA), 28 U.S.C. § 1350.

15      74.    Defendants aided and abetted and/or ratified these acts of torture in violation of

16  international, federal, and state law. These violations and actions meet the definition of torture under

17  the meaning of the TVPA, the ATS, and international treaties and U.S. laws and regulations, as well

18  as customary international law, which condemn torture on an absolute basis, irrespective of the

19  reasons why the abuses are inflicted.

20      75.    The Plaintiffs are therefore entitled on this basis to compensatory and punitive

21  damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief

22  as may be deemed appropriate.

23

24

25

26

27

28

22

### *SECOND CLAIM FOR RELIEF*

**(Cruel, Inhuman or Degrading Punishment or Treatment or Punishment, Violations of International Law for Which the Alien Tort Statute Provides Relief)**

**(By Wang Xiaoning, Shi Tao and Other Plaintiffs Against All Defendants)**

76.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 45 and 52 through 68 of this Complaint as if fully set forth herein in this Second Claim for Relief.

77.    These acts of cruel, inhuman, or degrading treatment or punishment suffered by the Plaintiffs designated in this Second Claim for Relief, including physical injury and the severe physical and mental suffering associated therewith, were inflicted upon them by the joint and collusive actions of the Defendants and PRC government officials acting under color of law, through unlawful or unauthorized actions prohibited by international law.

78.    These acts had the intent and the effect of grossly humiliating, debasing, intimidating, and punishing the Plaintiffs, forcing them to act against their will and conscience, inciting fear and anguish, and seeking to break their physical and/or moral resistance.

79.    These acts of cruel, inhuman, or degrading treatment or punishment were inflicted on the Plaintiffs for purposes that include, among others, preventing them from exercising their free speech and free association rights, and punishing them for exercising their right to have and communicate political beliefs.

80.    Because the acts described herein violated the prohibitions against cruel, inhuman, or degrading punishment or treatment including: (1) treaties binding on the United States, (2) statutes adopted by the Congress of the United States implementing those treaty obligations, (3) international and domestic judicial decisions applying and interpreting the prohibition against cruel, inhuman, or degrading treatment or punishment, (4) administrative regulations and international and domestic judicial decisions applying and interpreting the prohibition against cruel, inhuman or degrading treatment or punishment, and (5) a number of specific, universal, and obligatory standards that are recognized to be part of customary international law, these acts constitute "tort[s] ... committed in

23

1   violation of the law of nations or a treaty of the United States" under the Alien Tort Statute, 28

2   U.S.C. § 1350.

3       81.     Defendants knowingly aided and abetted and/or ratified these abuses, and did not act

4   to prevent or punish these violations of human rights as embodied in international law.

5       82.     Defendants are liable for aiding and abetting and/or ratification of the commission of

6   these abuses under this cause of action.

7       83.     The Plaintiffs are therefore entitled on this basis to compensatory and punitive

8   damages in amounts to be established at trial, and to such other declaratory and/or injunctive relief

9   as may be deemed appropriate.

10              ***THIRD CLAIM FOR RELIEF***

11  **(Arbitrary Arrest and Prolonged Detention, a Violation of International Law for Which the
    Alien Tort Statute and the Torture Victim Protection Act Provide Relief)**

12

13          **(By Wang Xiaoning, Shi Tao and Other Plaintiffs Against All Defendants)**

14      84.     Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in

15  paragraphs 1 through 45 and 52 through 68 of this Complaint as if fully set forth herein in this Third

16  Claim for Relief.

17      85.     These acts of arbitrary arrest and long-term detention suffered by the Plaintiffs

18  designated in this Third Claim for Relief, including arrest and detention for an unlawful purpose in

19  violation of the rights to freedom of speech, association, and assembly, were inflicted upon them by

20  the joint and collusive actions of the Defendants and government officials acting under color of law,

21  albeit through unlawful or unauthorized actions and for unlawful and unauthorized purposes.

22      86.     These acts caused direct physical and mental pain and suffering upon the Plaintiffs,

23  caused loss of liberty and property, and placed them at severe risk of personal injury in connection

24  with their participation in, and support of, the peaceful exercise of their rights of free speech and free

25  association, and their rights to hold, exercise and express their political beliefs.

26      87.     Because the acts described herein violated provisions prohibiting arbitrary arrest and

27  prolonged detention including: (1) treaties binding on the United States, (2) statutes adopted by the

28  Congress of the United States implementing those treaty obligations, (3) international and domestic

    judicial decisions applying and interpreting the prohibition against arbitrary arrest and prolonged

                                                24

1   detention, (4) administrative regulations and international and domestic judicial decisions applying

2   and interpreting the prohibition against arbitrary arrest and prolonged detention, and (5) a number of

3   specific, universal, and obligatory standards that are recognized to be part of customary international

4   law, these acts constitute "tort[s] ... committed in violation of the law of nations or a treaty of the

5   United States" under the Alien Tort Statute, 28 U.S.C. § 1350.

6       88.    Defendants aided and abetted in the carrying out of these abuses, and did not act to

7   prevent or punish these violations of human rights as embodied in international and domestic law.

8       89.    Defendants are liable for aiding and abetting and/or ratifying these abuses, as

9   specified in this cause of action.

10      90.    The Plaintiffs are therefore entitled on this basis to compensatory and punitive

11  damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief

12  as may be deemed appropriate.

13                          ***FOURTH CLAIM FOR RELIEF***

14  **(Forced Labor, a Violation of International Law for Which the Alien Tort Claims Act
    and the Torture Victims Protection Act Provide Relief)**

15

16              **(By Shi Tao and Other Plaintiffs Against All Defendants)**

17      91.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in

18  paragraphs 1 through 45 and 52 through 68 of this Complaint as if fully set forth herein in this

19  Fourth Claim for Relief.

20      92.    The Plaintiffs were placed in fear for their lives, were deprived of their freedom, and

21  were forced to suffer severe physical and mental abuse associated with forcing them into working in

22  the prison factories in inhumane conditions, by the joint and collusive actions of the Defendants and

23  government officials acting under color of law, through unlawful or unauthorized actions.

24      93.    Because the acts described herein violated provisions prohibiting forced labor

25  including: (1) treaties binding on the United States, (2) international and domestic judicial decisions

26  applying and interpreting the prohibition against forced labor, and (3) administrative regulations and

27  international and domestic judicial decisions applying and interpreting the prohibition against forced

28  labor, and (4) a number of specific, universal, and obligatory standards that are recognized to be part

1    of customary international law, these acts constitute "tort[s] ... committed in violation of the law of

2    nations or a treaty of the United States" under the Alien Tort Claims Act, 28 U.S.C. § 1350.

3        94.    Defendants aided and abetted in the carrying out of these abuses, and did not act to

4    prevent or punish these violations of human rights as embodied in international and domestic law.

5        95.    Defendants are liable for aiding and abetting and/or ratifying this cause of action.

6        96.    The Plaintiffs are therefore entitled on this basis to compensatory and punitive

7    damages to be established at trial, and to such other declaratory and/or injunctive relief as may be

8    deemed appropriate.

9                              ***FIFTH CLAIM FOR RELIEF***

10                                       **(Battery)**

11          **(By Wang Xiaoning, Shi Tao and Other Plaintiffs Against All Defendants)**

12        97.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in

13    paragraphs 1 through 45 and 52 through 68 of this Complaint as if fully set forth herein in this Fifth

14    Claim for Relief.

15        98.    On information or belief, Defendants intentionally committed acts that resulted in

16    harmful or offensive treatment of Plaintiffs' persons, and produced bodily harm.  Plaintiffs did not

17    consent to the contact and treatment that caused injury, damage, loss or harm to Plaintiffs.

18        99.    The acts described constitute battery, actionable under the laws of California and the

19    United States.

20        100.    Defendants are liable for aiding and abetting and/or ratifying these abuses, as

21    specified in this cause of action.

22                              ***SIXTH CLAIM FOR RELIEF***

23                                       **(Assault)**

24          **(By Wang Xiaoning, Shi Tao and Other Plaintiffs Against All Defendants)**

25        101.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in

26    paragraphs 1 through 45 and 52 through 68 of this Complaint as if fully set forth herein in this Sixth

27    Claim for Relief.

28

102.    On information or belief, Defendants' conduct caused Plaintiffs to be subjected to numerous batteries and/or intentional invasions of their rights to be free from offensive and harmful contact, and said conduct demonstrated that Defendants had a present ability to subject Plaintiffs to immediate, intentional, offensive and harmful touching.

103.    The acts described herein constitute assault, actionable under the laws of California and the United States.

104.    Defendants are liable for aiding and abetting and/or ratifying these abuses, as set forth in this cause of action.

### SEVENTH CLAIM FOR RELIEF

### (False Imprisonment)

### (By Wang Xiaoning, Shi Tao and Other Plaintiffs Against All Defendants)

105.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 45 and 52 through 68 of this Complaint as if fully set forth herein in this Seventh Claim for Relief.

106.    On information or belief, Defendants intentionally and unlawfully exercised force or the express or implied threat of force to restrain, detain or confine Plaintiffs on an arbitrary and unlawful basis. The restraint, detention or confinement compelled Plaintiffs to stay or go somewhere against their will for some appreciable time. Plaintiffs did not consent to this restraint, detention or confinement.

107.    Defendants' actions constituted false imprisonment under standards of law applied by California and the United States.

108.    Defendants are liable for aiding and abetting and/or ratifying these abuses as specified in this cause of action.

### EIGHTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress)

### (By All Plaintiffs Against All Defendants)

109.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 68 of this Complaint as if fully set forth herein in this Eighth Claim for Relief.

27

110.    On information or belief, Defendants intended to cause Plaintiffs to suffer emotional distress, or, in the alternative, (a) Defendants engaged in the conduct adversely affecting Plaintiffs with reckless disregard of the high probability that it would cause Plaintiffs to suffer severe abuses and emotional distress, (b) Plaintiffs were present at the time the outrageous conduct and these results occurred and (c) the Defendants knew that Plaintiffs were present and would be adversely affected.

111.    Plaintiffs suffered severe abuse and emotional distress as a result of the conduct of the Defendants.

112.    Defendants' conduct constitutes the intentional infliction of emotional distress and is actionable under the laws, standards, and causes of action as set forth in this complaint.

113.    Defendants are liable for aiding and abetting and/or ratifying these abuses as set forth in this cause of action.

## NINTH CLAIM FOR RELIEF

### (Negligence)

### (By All Plaintiffs Against All Defendants)

114.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 68 of this Complaint as if fully set forth herein in this Ninth Claim for Relief.

115.    On information or belief, Defendants failed to use ordinary or reasonable care in order to avoid injury to Plaintiffs. Defendants' negligence was a cause of injury, damage, loss or harm to Plaintiffs.

116.    As a result of these acts, Plaintiffs suffered harm including, but not limited to, severe emotional distress. Defendants' conduct constitutes negligence and is actionable under the causes of action as set forth in this complaint.

117.    Defendants are liable for aiding and abetting and/or ratifying these abuses as specified in this cause of action.

***TENTH CLAIM FOR RELIEF***

**(Violation of the California Business & Professional Code §§ 17200 *et seq.*,
Unfair Business Practices)**

**(By All Plaintiffs Against All Defendants)**

118.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 68 of this Complaint as if fully set forth herein in this Second Claim for Relief.

119.    Plaintiffs bring this cause of action on behalf of themselves, pursuant to Business and Professions Code § 17204.  The Defendants' conduct as alleged herein has been and continues to be deleterious to Plaintiffs, and Plaintiffs are seeking to enforce important rights affecting the public interest within the meaning of the Code of Civil Procedure § 1021.5.227.  Plaintiffs also seek compensation for the loss of their property and the personal financial impacts they have suffered as a result of Defendants' unfair business practices.

120.    The California Business and Professions Code §§ 17200 *et seq.* prohibits "unfair competition," defined as any "unlawful, unfair, or fraudulent business act or practice."  These acts or practices consist of those forbidden by law.

121.    The unlawful, unfair, and fraudulent business acts and practices described herein constitute ongoing and continuous unfair business practices within the meaning of Business and Professions Code §§ 17200 *et seq.*, as they are prohibited by state, federal, and international laws including but not limited to: (1) Electronic Communications Privacy Act, 18 U.S.C. § 2701 *et seq.*; (2) Alien Tort Statute, 28 U.S.C. § 1350; (3) Torture Victim Protection Act, 28 U.S.C. § 1350; (4) 18 U.S.C. § 2450 (federal statute criminalizing torture); (5)  Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment; (6)  International Covenant on Civil and Political Rights; (7)  Universal Declaration of Human Rights; (8) Charter of the United Nations; (9) International Labor Organization Convention No. 29 Concerning Forced or Compulsory Labor; and (10) Statutes and common law of the State of California, including but not limited to assault and battery, false imprisonment, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress.  Defendant's acts described herein also violate universal, specific,

1   and obligatory customary international law, which prohibit aiding and abetting, and conspiracy to

2   commit, violations of *jus cogens* human rights norms.

3       122.    Defendants' practices described herein offend established public policies and involve

4   business practices that are immoral, unethical, oppressive, unscrupulous and/or substantially

5   injurious to customers.

6       123.    Such practices include, but are not limited to, the unwarranted provision of internet

7   users' private electronic communication information or records in order to be permitted to engage in

8   business in China, with the knowledge that such information would substantively support the torture,

9   battery, threats, and further intimidation of persons who used Defendants' services in China.

10  Members of the public have been in the past and will in the future likely be damaged by these

11  practices.

12      124.    Defendants have also acted contrary to public policy by infringing upon the freedom

13  of speech and expression of the general public.  Members of the public have been in the past and will

14  in the future likely be harmed by these practices.

15      125.    The conduct as alleged herein constitutes clear violations of customary international

16  law, federal law, and the laws of California.

17      126.    The furtherance of Defendants' role in the stream of commerce by providing

18  information which results in the aforementioned business practices creates an unfair business

19  advantage over competitors that do not utilize such practices from within California and the United

20  States.

21      127.    Plaintiffs seek injunctive relief, disgorgement of all profits resulting from these unfair

22  business practices, restitution and other appropriate relief on behalf of themselves and members of

23  the general public as provided in Business and Professions Code § 17203.

24

25

26

27

28

### *ELEVENTH CLAIM FOR RELIEF*

**(Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2701, §2702, and §2511, Unlawful Access to Stored Communications)**

### (By Wang Xiaoning, Shi Tao and Other Plaintiffs Against All Defendants)

128.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 45 and 52 through 68 of this Complaint as if fully set forth herein in this First Claim for Relief.

129.    Upon information and belief, Defendants violated the rights of Plaintiffs herein by intercepting, disclosing, and/or intentionally using electronic communication between Plaintiffs and other persons.  The right of a civil action arises under 18 U.S.C. 2707(a), which provides that any person aggrieved by any violation of the Electronic Communications Privacy Act, "in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from any person or entity, other than the United States, which engaged in that violation such relief as may be appropriate."

130.    Defendants exceeded their authorization to access and control private information concerning Plaintiffs' electronic communications, in violation of 18 U.S.C. § 2701.

131.    Defendants unlawfully and knowingly divulged Plaintiffs' electronic communication contents and user information, in violation of 18 U.S.C. § 2702.

132.    Defendants intentionally acquired and/or intercepted the contents of electronic communications sent by and/or received by Plaintiffs through the use of an electronic device. Defendants intentionally acquired the communications that had been sent from or directed to Plaintiffs through their use of computers and other electronic devices which were part of, and utilized in, Defendants' electronic communications system, in violation of 18 U.S.C. § 2511 and pursuant to 18 U.S.C. § 2520.

133.    Defendants unlawfully accessed and used, and voluntarily disclosed, the contents of the intercepted communications to enhance their business in China.  This disclosure was not necessary for the operation of Defendants' system or to protect Defendants' rights or property.

31

134.    Plaintiffs are "person[s] whose ... electronic communication is intercepted ... or intentionally used in violation of this chapter" within the meaning of 18 U.S.C. § 2520.

135.    Defendants are liable directly and/or vicariously for this cause of action.

136.    Plaintiffs therefore seek remedy as provided for by 18 U.S.C. § 2520, including such preliminary and other equitable or declaratory relief as may be appropriate, damages consistent with subsection (c) of that section to be proven at trial, punitive damages to be proven at trial, and a reasonable attorney's fee and other litigation costs reasonably incurred.

## ABSENCE OF AVAILABLE AND EFFECTIVE REMEDIES IN CHINA

137.    These claims are not precluded by the need or failure to exhaust local remedies as set out in the Torture Victim Protection Act since Plaintiffs have made every effort to seek local remedies in China and Hong Kong, and their efforts have proven pointless and futile.

138.    Plaintiff Wang Xiaoning has attempted to utilize domestic remedies, pleading the laws of China, but the Chinese courts have convicted him and rejected his appeals in violation of Chinese and international law and have rejected all other efforts to challenge the actions taken against him. He exhausted all remedies available to him in the Chinese courts when the courts rejected his second appeal on July 1, 2006.

139.    Under Chinese law, Plaintiff Yu Ling would have a civil claim for her injuries were her husband's conviction overturned.  She has supported her husband's appeals not only to end the abuses he is suffering and exonerate him, but also to establish her own right to a remedy.  When the courts rejected her husband's second appeal on July 1, 2006, Yu Ling lost any chance for local remedies as well.

140.    Plaintiff Shi Tao has similarly appealed his conviction in the Chinese courts, and lost. He then filed a complaint with the Hong Kong Privacy Commission to challenge the Defendants' actions.  The Commissioner dismissed Shi Tao's complaint, finding that jurisdictional restrictions prohibited the Commission from holding the Defendants responsible despite evidence from Chinese court documents that the company and its agents played a material part in the convictions.  This

32

1    outcome exhausts all of Shi Tao's possible remedies in Hong Kong and precludes the other Plaintiffs

2    from filing similar complaints under the privacy laws of Hong Kong.

3    　　　141.    Any further efforts to obtain relief in China could well result in serious reprisals

4    against those making allegations of wrongdoing on the part of high level officials in the PRC, as well

5    as against the local attorneys representing the complainants.  High level officials of the PRC are

6    involved in the abuses alleged in this complaint and in the ratification of these abuses.  Taking into

7    consideration that the PRC government used the courts of China to secure Plaintiffs' prolonged

8    arbitrary arrests and detentions, using a highly controlled judicial process to do so, and taking into

9    account the PRC government's refusal and/or inability to properly and effectively investigate acts of

10    torture, cruel, inhuman or degrading treatment or punishment, and arbitrary arrest and prolonged

11    detention and bring the perpetrators to justice, and given further other substantial indicators of

12    governmental acquiescence in the violations of international law and its unwillingness to support

13    legal initiatives that might be undertaken in PRC to obtain relief for Plaintiffs, efforts to secure

14    remedies for them in the PRC, including lawsuits in Chinese courts, must be considered futile.   The

15    actions taken by the PRC government to revoke the license of Plaintiff Shi Tao's criminal defense

16    attorney and place him under house arrest just days before his trial, as well as similar actions against

17    Chinese human rights attorneys who defend persons accused of the types of charges for which

18    Plaintiffs Wang Xiaoning and Shi Tao were convicted, further indicate the futility of using the

19    Chinese judicial system to secure relief.

20    　　　142.    For these reasons, requirements for further exhaustion of efforts to obtain local relief

21    should be considered waived and satisfied.

23    ## STATEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11(b)(3)

24    　　　143.    Due to the unique circumstances of this case, specifically the fact that a substantial

25    amount of the information is unavailable without the Defendants' cooperation, the factual allegations

26    in paragraphs 1, 2, 13, 15, 16, 19, 20, 21, 30, 98, 102, 106, 110, 115 and 129 are made because they

27    "are likely to have evidentiary support after a reasonable opportunity for further investigation or

28    discovery," pursuant to Rule 11(b)(3).  Fed. R. Civ. P. 11(b)(3)

1

**PRAYER FOR RELIEF**

2      WHEREFORE, the Plaintiffs pray for judgment against Defendants Yahoo! Inc., Yahoo!

3 HK, and Other Presently Unnamed and To Be Identified Corporate Defendants and Presently

4 Unnamed and to be Identified Individual Employees of Said Corporations, as follows:

5      (a)    For actual and compensatory damages to each of the Plaintiffs according to proof to

6             be established at trial;

7      (b)    For punitive and exemplary damages according to proof to be established at trial;

8      (c)    For declaratory relief determining that the actions of the Defendants constituted

9             violations of international law, specifically, that such violations included prohibited

10            acts of torture, cruel, inhuman or degrading treatment, and arbitrary arrest and

11            prolonged detention for the peaceful and exchange of ideas, views, and political

12            beliefs in violation of the Convention Against Torture, numerous other international

13            treaty obligations binding on the United States, and domestic laws and regulations

14            implementing such standards, including the Torture Victim Protection Act, and other

15            enumerated causes of action in this Complaint;

16     (d)    For affirmative action by the Defendants to secure the release of the detainees;

17     (e)    For injunctive relief to stop any further disclosures of user information in order to

18            prevent such aforementioned abuses from taking place in the future;

19     (f)    For costs of the litigation, including, attorneys' fees; and

20     (g)    For such other relief as the Court deems just and proper.

21

22

23

24

25

26

27

28

34

1  Respectfully submitted this 19th day of July, 2007,

2

3                                    MORTON SKLAR
                                     THERESA HARRIS
                                     WORLD ORGANIZATION FOR HUMAN
4                                    RIGHTS USA

5
                                     By: */s/ Morton Sklar*_____
6                                         Morton Sklar

7

8                                    ROGER MYERS
                                     HOLME ROBERTS & OWEN LLP
9
                                     By: */s/ Roger Myers*_____
10                                        Roger Myers

11                                   Attorneys for Plaintiffs

12
                                     Karen Parker
13                                   (CA State Bar No. 112486)
                                     Association of Humanitarian Lawyers
14                                   154 5th Avenue
                                     San Francisco, CA 94118
15                                   Telephone: (415) 668-2752
                                     E-mail: ied@agc.org
16
                                     *With the assistance of:*
17                                   Albert Ho Chun-Yan
                                     Legal Representative for Shi Tao
18                                   Hong Kong

19                                   Rebecca Babarsky, University of Michigan
                                       Law School
20                                   Shannon Barrows, University of Chicago Law
                                       School
21                                   Paul Bozzello, Harvard Law School
                                     *Legal Interns*
22

23

24

25

26

27

28

Second Amended Complaint                                    Case No. C07-02151 CW
#29504 v1