Xiaoning et al v. Yahoo! Inc, et al                                                                    Doc. 71

Case 4:07-cv-02151-CW    Document 71    Filed 08/27/2007    Page 1 of 26

1   DANIEL M. PETROCELLI (S.B. #97802)
    dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
    mkline@omm.com
3   O'MELVENY & MYERS LLP
    1999 Avenue Of The Stars
4   Los Angeles, California 90067-6035
    Main Number: (310) 553-6700
5   Facsimile: (310) 246-6779
    Attorneys for Specially Appearing Defendant
6   YAHOO! HONG KONG LIMITED.

7

8                   UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
9                       OAKLAND DIVISION

10  WANG XIAONING, YU LING, SHI TAO,       Case No. C07-02151 CW
    and ADDITIONAL PRESENTLY
11  UNNAMED AND TO BE IDENTIFIED           SPECIALLY APPEARING DEFENDANT
    INDIVIDUALS,                           YAHOO! HONG KONG LIMITED'S
12                                         NOTICE OF MOTION AND MOTION TO
                    Plaintiff,             DISMISS FOR LACK OF PERSONAL
13                                         JURISDICTION; MEMORANDUM OF
          v.                               POINTS AND AUTHORITIES IN
14                                         SUPPORT
    YAHOO! INC., a Delaware Corporation,
15  YAHOO! HONG KONG LIMITED, a            [Declaration of Alfred Po Tak Tsoi filed
    Foreign Subsidiary of Yahoo! Inc.,     concurrently herewith]
16  ALIBABA.COM, INC. a Delaware
    Corporation, AND OTHER PRESENTLY       Date:      November 1, 2007
17  UNNAMED AND TO BE IDENTIFIED           Time:      2 p.m.
    INDIVIDUAL EMPLOYEES OF SAID           Location:  Courtroom 2
18  CORPORATIONS,
                                           Judge:     Hon. Claudia Wilken
19                  Defendant.

20

21  TO PLAINTIFFS; DEFENDANT YAHOO! INC.; AND THEIR COUNSEL OF RECORD:

22        PLEASE TAKE NOTICE THAT ON NOVEMBER 1, 2007, at 2 p.m. in Courtroom 2,

23  4th Floor, United States Courthouse, 1301 Clay Street, Oakland, California, specially appearing

24  defendant Yahoo! Hong Kong Limited ("YHKL") will and hereby does move for an order

25  dismissing YHKL for lack of personal jurisdiction, pursuant to Federal Rule of Civil

26  Procedure 12(b)(2) (hereinafter "Rule").  YHKL's motion to dismiss for lack of personal

27  jurisdiction is based on this notice of motion and motion, the pleadings on file in this matter, the

28  following memorandum of points and authorities, the declaration of Alfred Po Tak Tsoi, any

1  reply brief YHKL files in support of this motion, and any further argument and evidence the

2  Court allows.

3      Pursuant to Rules 12(b)(6) and 12(e), and without waiving its right to contest personal

4  jurisdiction, YHKL also moves to dismiss plaintiffs' Second Amended Complaint ("Complaint"),

5  with prejudice, for the reasons set forth in (1) Defendant Yahoo! Inc.'s Motion to Dismiss

6  Plaintiffs' Second Amended Complaint; (2) Defendant Yahoo! Inc.'s Special Motion to Strike

7  Plaintiffs' State Law Causes of Action Pursuant to the California Anti-SLAPP Statute; and (3)

8  Defendant Yahoo! Inc.'s Alternative Motion for a More Definite Statement (filed August 27,

9  2007), in which YHKL joins.

10      Dated: August 27, 2007           DANIEL M. PETROCELLI
                                          MATTHEW T. KLINE
11                                        O'MELVENY & MYERS LLP

12

13                                        By: _____
                                               Daniel M. Petrocelli
14                                        Attorneys for Specially Appearing Defendant
                                          Yahoo! Hong Kong, Limited
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ......................................................................................................... 1

II.  FACTUAL BACKGROUND ...................................................................................... 2

    A.   Plaintiffs' Allegations .......................................................................................... 2

    B.   Defendant Yahoo! Hong Kong Limited ("YHKL") ............................................. 2

III. YHKL SHOULD BE DISMISSED FOR LACK OF PERSONAL
    JURISDICTION........................................................................................................... 3

    A.   This Court Lacks General Jurisdiction Over YHKL............................................. 3

    B.   This Court Lacks Specific Jurisdiction Over YHKL. ........................................... 5

        1.   Plaintiffs Cannot Satisfy the Purposeful Availment "Effects Test.".......... 6

        2.   The Alleged Harm Did Not Arise Out Of Forum Contacts. ....................... 6

    C.   The *Zippo* "Sliding Scale" Test Does Not Save Plaintiffs.................................... 7

    D.   Yahoo! Inc.'s California Contacts Cannot Be Attributed to YHKL....................... 8

        1.   Plaintiffs' Boilerplate Legal Conclusions Fail as a Matter of Law............ 8

        2.   YHKL Is, in Fact, Neither an Alter Ego Nor an Agent of Yahoo!
            Inc................................................................................................................. 9

            a.   YHKL is not an Alter Ego of Yahoo! Inc. .................................... 10

            b.   YHKL is Not Yahoo! Inc.'s Agent. ............................................... 12

    E.   Exercising Jurisdiction Over YHKL Would Be Unreasonable. ........................... 14

IV.  YHKL JOINS IN YAHOO! INC.'S MOTIONS. ...................................................... 15

V.   CONCLUSION ......................................................................................................... 15

1

# TABLE OF AUTHORITIES

2

Page

3

## CASES

4

*Amini Innovation Corp. v. JS Imports, Inc.*,
  2007 WL 1597942 (C.D. Cal. May 22, 2007) .......................................................................... 7

5

*Asahi Metal Indus. Co. v. Superior Court*,
  480 U.S. 102 (1987) .................................................................................................................. 3

6

*Associated Vendors, Inc. v. Oakland Meat Co.*,
  210 Cal. App. 2d 825 (1962) .............................................................................................. 10, 11

7

*Automotriz del Golfo de Californias v. Resnick*,
  47 Cal. 2d 792 (1957) ................................................................................................. Appendix A

8

9

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
  223 F.3d 1082 (9th Cir. 2000) ........................................................................................... 3, 5, 6

10

*Bariffi v. Longridge Dev. Co.*,
  156 Cal. App. 2d 583 (1958) ..................................................................................... Appendix A

11

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) .............................................................................................................. 9

12

13

*Best Van Lines Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007) ...................................................................................................... 7

14

*Callaway Golf Corp. v. Royal Canadian Golf Assoc.*,
  125 F. Supp. 2d 1194 (C.D. Cal. 2000) .................................................................................... 7

15

*Calvert v. Huckins*,
  875 F. Supp. 674 (E.D. Cal. 1995) ........................................................................................... 9

16

17

*Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad*,
  812 F. Supp. 1041 (N.D. Cal. 1993) ....................................................................................... 15

18

*CFA N. Cal., Inc. v. CRT Partners LLP*,
  378 F. Supp. 2d 1177 (N.D. Cal. 2005) .................................................................................... 4

19

*China Ocean Shipping Co. v. Mitrans Shipping Co. Ltd.*,
  [1995] 3 H.K.C. 228 ................................................................................................................ 10

20

21

*Claremont Press Pub'g. Co. v. Barksdale*,
  187 Cal. App. 2d 813 (1960) ..................................................................................... Appendix A

22

*Coremetrics, Inc. v. Atomic Park.com, LLC*,
  370 F. Supp. 2d 1013 (N.D. Cal. 2005) ................................................................................. 5, 7

23

*Core-Vent Corp. v. Nobel Indus. AB*,
  11 F.3d 1482 (9th Cir. 1993) .................................................................................................... 6

24

*Doe v. Unocal*,
  248 F.3d 915 (9th Cir. 2001) ............................................................................................ passim

25

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003) ................................................................................................................ 10

26

27

*Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs. Inc.*,
  949 F. Supp. 1123 (S.D.N.Y. 1997) ........................................................................................ 15

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Engineering Service Corp. v. Longridge Inv. Co.,*
  153 Cal. App. 2d 404 (1957)..............................................................................Appendix A

*Gardemal v. Westin Hotel Co.,*
  186 F.3d 588 (5th Cir. 1999).......................................................................................... 10

*Gates Learjet Corp. v. Jensen,*
  743 F.2d 1325 (9th. Cir. 1984)........................................................................................ 4

*Glencore Grain Rotterdam B. V. v. Shivnath Rai Harnarain Co.,*
  284 F.3d 1114 (9th Cir. 2002)........................................................................... 3, 4, 5, 14

*Haskell v. Time, Inc.,*
  857 F. Supp. 1392 (E.D. Cal. 1994)............................................................................... 10

*HealthOne, Inc. v. Columbia Wesley Med. Ctr.,*
  93 F. Supp. 2d 1152 (D. Kan. 2000) ........................................................................ 10, 11

*Helicopteros Nacionales de Colombia, S.A., v. Hall,*
  466 U.S. 408 (1984) ......................................................................................................... 4

*Hiehle v. Torrance Millworks, Inc.,*
  126 Cal. App. 2d 624 (1954).............................................................................Appendix A

*Home Gambling Network, Inc. v. Betinternet.com,*
  2006 WL 1795554 (D. Nev. June 26, 2006)..................................................................... 7

*Honor Plastic Indus. Co. v. Lollicup USA, Inc.,*
  2006 WL 2792812 (E.D. Cal. Sept. 28, 2006)............................................................ 8, 14

*Kalb, Voorhis & Co. v. Am. Fin. Corp.,*
  8 F.3d 130 (2d Cir. 1993)............................................................................................... 10

*Keeton v. Hustler Magazine, Inc.,*
  465 U.S. 770 (1984) ......................................................................................................... 9

*Las Palmas Assocs. v. Las Palmas Center Assocs.,*
  235 Cal. App. 3d 1220 (1991)...........................................................................Appendix A

*Linco Services, Inc. v. DuPont,*
  239 Cal. App. 2d 841 (1966).............................................................................Appendix A

*Loral Terracom v. Valley Nat'l Bank,*
  49 F.3d 555 (9th Cir. 1995).............................................................................................. 6

*Luckett v. Bethlehem Steel Corp.,*
  618 F.2d 1373 (10th Cir. 1980)...................................................................................... 11

*M.O.D. of the Islamic Republic of Iran v. Gould, Inc.,*
  969 F.2d 764 (9th Cir. 1992)...................................................................................... 9, 10

*Marr v. Postal Union Life Ins. Co.,*
  40 Cal. App. 2d 673 (1940).............................................................................................. 2

*McKee v. Peterson,*
  214 Cal. App. 2d 515 (1963).............................................................................Appendix A

*Minton v. Cavaney,*
  56 Cal. 2d 576 (1961) .......................................................................................Appendix A

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3
*Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.*,
    64 F. Supp. 2d 448 (E.D. Pa. 1999) ...................................................................... 5

4
*Norins Realty Co. v. Consol. Abstract & Title Guar. Co.*,
    80 Cal. App. 2d 879 (1947) ................................................................................ 10

5

6
*Pan Pac. Sash & Door Co. v. Greendale Park, Inc.*,
    166 Cal. App. 2d 652 (1958) ................................................................ Appendix A

7
*Paul v. Palm Springs Homes, Inc.*,
    192 Cal. App. 2d 858 (1961) ................................................................ Appendix A

8
*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) .............................................................................. 6

9
*Platt v. Billingsley*,
    234 Cal. App. 2d 577 (1965) ................................................................ Appendix A

10

11
*Robbins v. Blecher*,
    52 Cal. App. 4th 886 (1997) ................................................................. Appendix A

12
*Rosen v. E. C. Losch, Inc.*,
    234 Cal. App. 2d 324 (1965) ................................................................ Appendix A

13
*Schlumberger Logelco, Inc. v. Morgan Equip. Co.*,
    No. C-94-1776 MHP, 1996 WL 251951 (N.D. Cal. May 3, 1996) ....................... 10

14
*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ............................................................................. 3, 6

15

16
*Seymore v. Lake Tahoe Cruises, Inc.*,
    888 F. Supp. 1029 (E.D. Cal. 1995) ................................................................. 12,

17
*Shafford v. Otto Sales Co.*,
    49 Cal. App. 2d 428 (1957) ................................................................. Appendix A

18
*Shah v. Stillman*,
    2004 WL 352179 (Cal. App. 2d Dist. Feb. 26, 2004) (unpublished) ...... Appendix A

19
*Sonora Diamond Corp. v. Superior Court*,
    83 Cal. App. 4th 523 (2000) ........................................................................ 10, 12

20

21
*Southeast Texas Inns, Inc. v. Prime Hospitality Corp.*,
    462 F.3d 666 (6th Cir. 2006) ........................................................................... 9, 12

22
*Stewart & Stevenson Servs., Inc. v. Serv-Tech*,
    879 S.W.2d 89 (Tex. App. 1994) ........................................................................ 10

23
*Talbot v. Fresno-Pacific Corp.*,
    181 Cal. App. 2d 425 (1960) ................................................................ Appendix A

24
*Temple v. Bodega Bay Fisheries, Inc.*,
    180 Cal. App. 2d 279 (1960) ................................................................ Appendix A

25

26
*VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*,
    99 Cal. App. 4th 228 (2002) ............................................................................... 13

27
*Wady v. Provident Life & Accident Ins. Co. of Am.*,
    216 F. Supp. 2d 1060 (C.D. Cal. 2002) .............................................................. 10

28

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Wells Fargo Bank v. Clarendon Services, Inc.*,
  2003 WL 21232420 (Cal. App. 3d Dist. May 28, 2003) (unpublished) .................Appendix A

*Wheeler v. Superior Mortgage Co.*,
  196 Cal. App. 2d 822 (1961).............................................................................Appendix A

*Yahoo!, Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006)................................................................................. 6

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
  952 F. Supp. 1119 (W.D. Pa. 1997) ..................................................................... 7, 8

**OTHER AUTHORITIES**

LAWRENCE LAU & PEONY WONG, TRESPASS TO THE PERSON IN TORT LAW AND
  PRACTICE IN HONG KONG 253, 254-66 (Kemal Bokhary et al. eds., 2005) ........................... 15

RESTATEMENT (SECOND) CONFLICT OF LAWS § 307 (1971) ......................................... 10

**RULES**

FED. R. CIV. P. 9(b) ................................................................................................. 9

FED. R. CIV. P. 12(b)(2)........................................................................................... 1

FED. R. CIV. P. 12(b)(6)........................................................................................... 2

FED. R. CIV. P. 12(e)............................................................................................... 2

1  **I.    INTRODUCTION**

2          In this action brought by Chinese citizens for harms allegedly suffered in China at the

3  hands of Chinese government officials, there is no basis for a court in California to exercise

4  personal jurisdiction over YHKL, an indirect Hong Kong subsidiary of Yahoo! Inc. that does

5  business a half a world away from this State.  YHKL does not have the substantial, systematic,

6  and continuous contacts with California approximating physical presence that are necessary to

7  find general jurisdiction here.  YHKL is a Hong Kong company organized under Hong Kong law

8  with headquarters in Hong Kong, where its approximately 150 employees work.  YHKL's

9  business is conducted in Hong Kong, and its revenue is derived almost exclusively from the Hong

10  Kong market.  YHKL is a well-established company worth over $100 million that possesses all

11  the indicia of a fully functional subsidiary whose separate identity and foreign status must be

12  honored.  YHKL has no offices, no business center, no property and no employees in California.

13  It has no business plan aimed at the State, and unsurprisingly derives no material revenue or profit

14  from this jurisdiction.

15          Likewise, plaintiffs do not and cannot allege facts that YHKL purposely availed itself of

16  the privilege of doing business in California *and* that plaintiffs' claims arise out of such contacts

17  sufficient to create specific jurisdiction.  YHKL's attenuated contacts to California have nothing

18  to do with plaintiffs' claims.  Moreover, plaintiffs did not use hk.yahoo.com email accounts or

19  groups lists to publish the materials they allege subjected them to mistreatment by the PRC.  The

20  complaint explicitly alleges that plaintiffs used the *mainland* Chinese website, cn.yahoo.com, and

21  email services to post and send the materials in question.

22          That YHKL's website (hk.yahoo.com) is, like any other website, available to be viewed

23  worldwide does not convey jurisdiction.  The YHKL site serves a Chinese-reading audience in

24  Hong Kong, is directed at Hong Kong residents and is not purposefully directed at California.

25  Nor does the California presence of YHKL's corporate grandparent, Yahoo! Inc., confer

26  jurisdiction.  Belated and bald assertions of "alter ego" and "agency" cannot not save plaintiffs.

27  In short, YHKL should be dismissed from this action based upon a lack of personal jurisdiction.

28

II.    **FACTUAL BACKGROUND**

A.    **Plaintiffs' Allegations**

Plaintiffs are Chinese citizens who reside in the People's Republic of China ("PRC").  *See* Compl. ¶¶ 10-12.  Plaintiffs Shi Tao and Wang Xiaoning allege the PRC imprisoned and abused them because they published political literature using Yahoo! China group lists and email accounts.  *See id.*  Plaintiffs admit they used computers based in China to post this material.  *See id.* ¶¶ 32-37, 42, 52-55.  Plaintiffs allege defendants provided the PRC with information regarding plaintiffs' online activities and that, using this information, the PRC identified, charged, and convicted plaintiffs for violating Chinese criminal law.  *See id.* ¶¶ 36-42, 56-62.  Wang and Shi allege the PRC is arbitrarily detaining them in mainland Chinese jails, has tortured them in these facilities, and has committed other human rights abuses.  *See id.* ¶¶ 39, 44-45, 65-67.  Wang's wife, Yu Ling, claims her husband's arrest and mistreatment harmed her as well.  *See id.* ¶ 11.

Plaintiffs seek to hold defendants liable for aiding and abetting the PRC's alleged misconduct.  Plaintiffs assert various causes of action under international, United States, and California law and seek, among things, compensatory and punitive damages and injunctive relief.  *See id.* ¶¶ 2, 6, 14-67, 60, 69, 75, 83, 90, 96, 97-117, 127 & Prayer at (a)-(g).

B.    **Defendant Yahoo! Hong Kong Limited ("YHKL")**

YHKL is a limited liability company organized under the laws of Hong Kong.  *See* Tsoi Decl. ¶ 2.  Yahoo! International Subsidiary Holdings, Inc. ("YISH"), a California corporation, owns 99% of YHKL's outstanding shares.  *See id.* ¶ 2.  The remaining 1% is owned by Yahoo! Inc. Yahoo! Inc. owns 100% of the outstanding shares of YISH stock.  *See id.* ¶ 2.

YHKL operates a Chinese-language website serving Hong Kong residents.  *See id.* ¶ 3.  Through its website, hk.yahoo.com, YHKL offers a variety of internet-based services, including search engines, email accounts, and a variety of content services, including news and entertainment.  *See id.* ¶ 3.  All these services are aimed at Hong Kong residents.  *See id.* ¶ 3.  The overwhelming majority of YHKL's income comes from third-party advertisers who purchase ads on YHKL's website to promote their goods and services to residents of Hong Kong.  *See id.* ¶ 7.

YHKL's business operations are located in Hong Kong.  All of YHKL's approximately

1   150 employees live and work there. *See id.* ¶ 4. All of YHKL's management positions—

2   including the most senior position, the General Manager—are filled by Hong Kong residents. *See*

3   *id.* YHKL is licensed to do business in Hong Kong and pays taxes there. *See id.* The content of

4   YHKL's website is selected by YHKL employees in Hong Kong, and YHKL has never

5   advertised to California residents. *See id.* ¶¶ 4, 6.

6   **III.    YHKL SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.**

7           YHKL may not be forced to defend this action in California because it has never

8   "purposefully established minimum contacts" in the State. *Asahi Metal Indus. Co. v. Superior*

9   *Court*, 480 U.S. 102, 108-09 (1987). Plaintiffs cannot allege facts sufficient to meet the "fairly

10  high" standard for establishing general jurisdiction which requires that contacts be of the sort that

11  approximate physical presence. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082,

12  1086 (9th Cir. 2000). Likewise, plaintiffs' complaint fails to show that YHKL purposefully

13  availed itself of California or that their claims "arose out of" YHKL's activities in California.

14  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Indeed, not only

15  is the connection to California not there, as the complaint concedes, it was plaintiffs' use of

16  Yahoo! *China* services *in China* that allegedly subjected them to mistreatment. Lastly, neither

17  the fact that YHKL is an internet company, nor the fact that plaintiffs' have now added alter-ego

18  and agency allegations to their complaint is enough to establish jurisdiction over YHKL.

19          **A.    This Court Lacks General Jurisdiction Over YHKL.**

20          For general jurisdiction to be found, a defendant must not only step through the door into

21  a forum, it must "[sit] down and [make] itself at home." *Glencore Grain Rotterdam B. V. v.*

22  *Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002). YHKL's inconsequential

23  contacts with California do not come close to meeting this standard. YHKL has never been

24  licensed to do business in California, has never paid taxes in the state, and has never filed or been

25  named as a defendant in a lawsuit filed in California—until this case. *See* Tsoi Decl. ¶ 5. YHKL

26  has never: (1) owned or leased any real property in California; (2) maintained an office here;

27  (3) maintained an address, P.O. Box or telephone listing in the state; or (4) maintained any other

28  physical presence in California. *See id.* Nor do YHKL's employees spend significant amounts of

1    time here.  A handful of YHKL employees periodically take short trips to California for brief

2    meetings.  *See id.*  Infrequent visits to California cannot justify a finding of general personal

3    jurisdiction, since none of YHKL's employees works or resides in California on a permanent or

4    even partial basis.  *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330-31 (9th. Cir. 1984).

5        YHKL has never advertised to California residents.  *See* Tsoi Decl. ¶ 6.  Virtually all of

6    the content on YHKL's website is in Chinese.  *See id.*  Unsurprisingly, the traffic YHKL receives

7    from California is incidental and not a significant part of its business.  To take one recent

8    example, YHKL estimates that less than 1% of the visitors to YHKL's website in March to May

9    2007 connected to the site from computers in California.  *See id.* ¶ 10.  Even assuming *all* of

10   those users are California residents—an unreasonable assumption given the hundreds of

11   thousands of Hong Kong and Chinese citizens who travel to California each year—this

12   unintended audience does not create general jurisdiction.  YHKL's best estimate is that, *at most,*

13   *1%* of its revenue comes from the state.  *See id.* ¶ 9.[1]

14       Courts have refused to find general jurisdiction even where companies have had greater

15   contacts to a forum state.  For example:

16   • In *Helicopteros Nacionales de Colombia, S.A., v. Hall*, 466 U.S. 408, 411 (1984), the
     Supreme Court held that a Colombian company was not subject to general jurisdiction in

17   Texas even though it purchased 80% of its helicopter fleet and equipment in the state (at a

18   cost exceeding $4 million) and sent its pilots and maintenance team to Texas for training.

19   • In *Glencore*, 284 F.3d at 1124-25, the Ninth Circuit rejected a claim of general

20   jurisdiction in California where defendant sent 15 shipments of rice through San Francisco
     during a one year period and employed an independent shipping agent in the state.

21
22   • And in *CFA N. Cal., Inc. v. CRT Partners LLP*, 378 F. Supp. 2d 1177, 1185 (N.D.
     Cal. 2005), this Court refused to exercise general jurisdiction over an Arizona franchisee

23   even though it signed 18 franchise agreements with a California franchisor, purchased

24   goods from California suppliers, and regularly visited the California franchisor's offices.

25

26   [1] YHKL can provide further specifics regarding these raw numbers underlying these percentages
     and how they were obtained, but such data and information are trade secrets.  Defendants have

27   moved for a protective order allowing them to keep such information confidential.  *See* Defs.'
     Mot. For Protective Order Governing Confidential Information (filed Aug. 15, 2007).  If the

28   Court grants the motion, defendants will be able to provide these additional details.

1    *Coremetrics, Inc. v. Atomic Park.com, LLC*, 370 F. Supp. 2d 1013 (N.D. Cal. 2005), on

2    the other hand, illustrates the kind of systemic, regular contacts that an internet business must

3    have in a forum state to warrant a finding of general jurisdiction.  There, defendant maintained a

4    "highly interactive website" used to sell its own products and services; had sales to California

5    consumers in excess of $3.3 million in a 10-month period, which constituted 14.71% of its total

6    sales; and purchased over $1 million worth of products from California vendors during a similar

7    time frame.  *See id.* at 1019-21.  Even then, the court said this was "a close call" and not one of

8    the factors, by itself, was enough to justify general jurisdiction.  *Id.* at 1021.

9    　　　In sharp contrast, YHKL's site has never catered to California residents (it is in Chinese);

10   YHKL's California revenues are minute; and only a tiny fraction of visitors to the site have even

11   a *potential* connection to the state.  YHKL has not "sat down and made itself at home" in

12   California.  *Glencore*, 284 F.3d at 1125.  It has barely tread on California's front yard.

13   　　　Assuming plaintiffs even argue for general jurisdiction in this case, the only possible

14   claim they can make is that, by having a global internet presence and a few incidental users in

15   California, YHKL is subject to general jurisdiction here.  That expansive view of general

16   jurisdiction proves too much, would create universal jurisdiction over almost every internet

17   company, and has consistently been rejected by the courts.  *See, e.g., Bancroft & Masters*, 223

18   F.3d at 1086 ("Masters" tournament's website, occasional sales to Californians, and license

19   agreements with California television networks insufficient for general jurisdiction); *Molnlycke*

20   *Health Care AB v. Dumex Med. Surgical Prods. Ltd.*, 64 F. Supp. 2d 448, 451-54 (E.D. Pa. 1999)

21   ("To hold that the possibility of ordering products from a website establishes general jurisdiction

22   would effectively hold that any corporation with such a website is subject to general jurisdiction

23   in every state.").  Imposing general jurisdiction over YHKL in California under these

24   circumstances would be unprecedented, unwarranted, and improper.

25   　　　**B.    This Court Lacks Specific Jurisdiction Over YHKL.**

26   　　　To establish specific jurisdiction, plaintiffs must show both that YHKL "purposefully

27   availed" itself of the privileges of California, and that plaintiffs' claims "arose out of" YHKL's

28   activities in California.  *Schwarzenegger*, 374 F.3d at 802.  Plaintiffs fail on both counts.

1              1.    **Plaintiffs Cannot Satisfy the Purposeful Availment "Effects Test."**

2         In tort cases, courts use the "effects test" to determine whether a party has "purposefully

3    availed" itself of the forum jurisdiction. The effects test "focuses on the forum in which the

4    defendant's actions were felt." *Yahoo!, Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*,

5    433 F.3d 1199, 1206 (9th Cir. 2006). Plaintiffs must show (1) YHKL took intentional actions

6    aimed at California; and (2) those actions caused plaintiffs' harm, "the brunt of which [were]

7    suffered—and which [YHKL] kn[ew] [were] likely to be suffered—in [California]." *Core-Vent*

8    *Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9th Cir. 1993). Simply showing a foreseeable

9    effect in California is not enough. Intent matters, and plaintiffs must show that YHKL's conduct

10   was directed at the state. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156-58 (9th Cir. 2006)

11   ("the fact that [defendant's] website is not directed at California is controlling."). Put another

12   way, YHKL must "have engaged in wrongful conduct targeted at a plaintiff whom the defendant

13   knows to be a resident of the forum state." *Bancroft & Masters*, 223 F.3d at 1087.

14        Proof of such facts is impossible here. To begin with, plaintiffs allegedly used

15   cn.yahoo.com accounts -- *not* hk.yahoo.com accounts -- to transmit the materials in question.

16   Even when focusing on YHKL's alleged conduct in the case, plaintiffs contend that YHKL

17   engaged in conduct in *Hong Kong* and *mainland China* that affected plaintiffs in *mainland China*.

18   *See, e.g.*, Compl. ¶¶ 1-2, 36, 42, 44-45, 54, 56, 62, 65. Plaintiffs do not allege YHKL aimed

19   conduct at California that YHKL knew would cause an injury, the "brunt of which" would be felt

20   in California. *Core-Vent*, 11 F.3d at 1486. To the contrary, plaintiffs allege YHKL's conduct

21   caused Chinese plaintiffs to be apprehended, tortured, and detained by Chinese officials, all in

22   China. Plaintiffs' inability to show or even allege purposeful availment is fatal to exercise of

23   jurisdiction over YHKL. *See Pebble Beach*, 453 F.3d at 1155 (dismissal appropriate first prong

24   not satisfied).

25             2.    **The Alleged Harm Did Not Arise Out Of Forum Contacts.**

26        Plaintiffs likewise have no ability to show they would *not* have been injured "but for"

27   YHKL's contacts with California. *Schwarzenegger*, 374 F.3d at 802; *Loral Terracom v. Valley*

28   *Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995). Plaintiffs' own allegations negate this "but for"

1  requirement.  Plaintiffs allege it was YHKL's doing business in China (not California), its

2  provision of information to the PRC (not California), and its alleged desire to appease the PRC

3  (not California) that caused plaintiffs' harm.  *See* Compl. ¶¶ 2, 14-20, 27-31.

4      **C.    The *Zippo* "Sliding Scale" Test Does Not Save Plaintiffs.**

5      YHKL is not subject to jurisdiction in California because its website can be accessed

6  almost anywhere in the world.  Under what is commonly referred to as the *Zippo* "sliding scale"

7  test,[2] a court may not find jurisdiction over an internet company where the defendant's website is

8  "passive," *i.e.*, one "through which the defendant simply posts information."  *Callaway Golf*

9  *Corp. v. Royal Canadian Golf Assoc.*, 125 F. Supp. 2d 1194, 1203 (C.D. Cal. 2000).  Only if the

10 defendant "conducts business transactions over the Internet with residents of the forum," can an

11 argument then be made for jurisdiction.  *Id.* at 1202.

12     While some courts in this circuit treat the *Zippo* test as a separate ground for establishing

13 jurisdiction,[3] the better reasoned opinions treat it merely as "a factor that informs the

14 jurisdictional analysis."[4]  As the Second Circuit recently and rightly concluded:

15     While analyzing a defendant's conduct under the *Zippo* sliding scale of
       interactivity may help frame the jurisdictional inquiry in some cases, as the district
16     court here pointed out, "it does not amount to a separate framework for analyzing
       internet-based jurisdiction."  Instead, "traditional statutory and constitutional
17     principles remain the touchstone of the inquiry."

18 *Best Van Lines Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007).

19     No matter how this Court considers or applies the *Zippo* test, plaintiffs fail it.  YHKL is

20 not an online store that derives its revenue from sales to or in California.  The bulk of YHKL's

21 on-line services are provided free of charge, and the vast majority of YHKL's revenue comes

22 from advertising written in Chinese and created for and directed to a Hong Kong audience.  *See*

23

24 [2] *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).
   [3] *See, e.g., Amini Innovation Corp. v. JS Imports, Inc.*, 2007 WL 1597942 (C.D. Cal. May 22,
25 2007) (addressing *Zippo* "sliding scale" and "effects" tests separately).

26 [4] *Coremetrics*, 370 F. Supp. 2d at 1019 ("[T]he fact that [defendant] maintains a highly
   interactive website *by itself* would not be enough to establish general jurisdiction, as a number of
27 courts have found."); *Home Gambling Network, Inc. v. Betinternet.com*, 2006 WL 1795554, at
   *2-4 (D. Nev. June 26, 2006) (rejecting general jurisdiction in Nevada over foreign internet
28 gambling company with "interactive" online gambling website).

1    Tsoi Decl. ¶¶ 7-8. Although YHKL offers some premium services that require users to pay a

2    fee—for example, users can buy online personal ads or pay for an astrology reading—*all* such

3    services are in Chinese and marketed exclusively to Hong Kong residents. *See id.* ¶ 8.

4        The economic reality here is that YHKL does not do business in California, over the

5    internet or otherwise: YHKL does not market its website or its services to California residents,

6    the users of the website are overwhelmingly *not* California residents, and YHKL generates no

7    significant revenue from California residents. *See Honor Plastic Indus. Co. v. Lollicup USA, Inc.*,

8    2006 WL 2792812, at *7 (E.D. Cal. Sept. 28, 2006) ("[T]he most reliable indicator of the nature

9    and extent of defendant's Internet contacts with the forum state will be the amount of sales

10   generated in the state by or through the interactive website.")). Under these circumstances,

11   YHKL's internet operations do not establish personal jurisdiction in California, regardless of the

12   test applied—general jurisdiction, specific jurisdiction, or the *Zippo* sliding scale.

13       **D.    Yahoo! Inc.'s California Contacts Cannot Be Attributed to YHKL.**

14       After being apprised of YHKL's objections to jurisdiction, plaintiffs recently amended

15   their complaint to allege that YHKL is a mere agent or alter ego of its grandparent company,

16   Yahoo! Inc. *See* Compl. ¶¶ 9, 15-20. These new allegations do nothing to create, justify, or

17   support jurisdiction. They are boilerplate and conclusory in the extreme and they are inadequate

18   to overcome the strong presumption that the parent-subsidiary relationship is insufficient to

19   establish personal jurisdiction.

20       1.    **Plaintiffs' Boilerplate Legal Conclusions Fail as a Matter of Law.**

21       Plaintiffs' first two complaints lacked *any* jurisdictional allegations concerning YHKL.

22   When filing their second amended complaint, plaintiffs argued it provided "the basis for the

23   exercise of jurisdiction over [YHKL] by this Court." Pls.' Mot. for Leave to File a Sec. Am.

24   Compl. at 2:19-24 (filed July 13, 2007). They are mistaken.

25       In their new complaint, plaintiffs say that Yahoo! Inc. "controlled" and had a "unity of

26   interest" with YHKL, because Yahoo! Inc. "directly owns" YHKL.[5] (In reality, YISH owns 99%

27

28   [5] *See, e.g.*, Compl. ¶ 2 ("Defendant Yahoo! Inc. and its agents, alter egos, and/or affiliated
     entities, including but not limited to wholly-owned subsidiaries Yahoo! HK and Yahoo! China.");

1  of YHKL, and Yahoo! Inc. only owns 1% of the company. *See* Tsoi Decl. ¶ 2.)  These are not

2  facts, but mere legal conclusions that come straight from the tests to prove agency and alter ego.[6]

3  In the words of the Supreme Court, "a plaintiff's obligation to provide the 'grounds' of his

4  'entitle[ment]' to relief" requires more than labels and conclusions. . . . *[A] formulaic recitation of*

5  *the elements of a cause of action will not do.*"  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955,

6  1964-65 (2007) (emphasis added).

7        Enforcing this pleading standard is especially important here.  As the Supreme Court has

8  further explained, "[j]urisdiction over a parent corporation" does not "automatically establish

9  jurisdiction over a wholly owned subsidiary.  Each defendant's contacts with the forum State

10  must be assessed individually."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).

11  The only jurisdictional contact plaintiffs have pled is that Yahoo! Inc. directly owns YHKL.  This

12  fact alone is plainly not enough.  If plaintiffs are serious that defendants used the corporate form

13  to commit a fraud, they make such claims "with particularity."  *Southeast Texas Inns, Inc. v.*

14  *Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) (citing FED. R. CIV. P. 9(b)).

15                    2.    **YHKL Is, in Fact, Neither an Alter Ego Nor an Agent of Yahoo! Inc.**

16        Courts only refuse to respect the corporate form of a party in "exceptional circumstances,"

17  and where plaintiffs point to clear evidence mandating this extreme remedy.  *Calvert v. Huckins*,

18  875 F. Supp. 674, 677-78 (E.D. Cal. 1995).  Plaintiffs have no such evidence, as they concede.

19  *See* Compl. at ¶ 143.  Nor would discovery yield such evidence, as demonstrated below.[7]

20  ────────────────────────────────

    *id.* ¶ 15 ("there was a unity of ownership and positive indicators of a unity of interest between the
21  personality of Yahoo! Hong Kong Limited (formerly Yahoo! Holdings Hong Kong Limited) and
    the personality of Yahoo! Inc."); *id.* ¶ 16 (Yahoo! Inc. "directly own[ed] and control[ed] the
22  operations of Yahoo! Hong Kong").

    [6] *See, e.g.*, *Doe v. Unocal*, 248 F.3d 915, 926 (9th Cir. 2001) (listing "control" and "unity of
23  interest" as factors); *id.* at 926 ("*agency* relationship is typified by parental *control* of the
24  subsidiary's internal affairs or daily operations") (emphasis added).

    [7] For purposes of this motion, we assume that California or Ninth Circuit law would apply—both
25  of which are "substantially similar." *M.O.D. of the Islamic Republic of Iran v. Gould, Inc.*, 969
26  F.2d 764, 769 n.3 (9th Cir. 1992).  YHKL reserves the right to argue that Hong Kong law—the
    law of the state of YHKL's incorporation—applies. *See Schlumberger Logelco, Inc. v. Morgan*
27  *Equip. Co.*, No. C-94-1776 MHP, 1996 WL 251951 at *3 (N.D. Cal. May 3, 1996) ("the law of
    Austria, as the state of incorporation, governs plaintiffs' alter ego claim"); *Kalb, Voorhis & Co. v.*
28  *Am. Fin. Corp.*, 8 F.3d 130 (2d Cir. 1993) (law of the state of incorporation governs);

1

### a.   YHKL is not an Alter Ego of Yahoo! Inc.

2      To find that a company is a mere alter ego, the Court must reject the company's separate

3  personage, presumed by law, and deprive its shareholders of the statutorily created right of

4  limited liability. *Cf. Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) ("A basic tenet of

5  American corporate law is that the corporation and its shareholders are distinct entities."). For

6  this reason, the alter-ego test is demanding, and hence plaintiffs must show (1) that the parent and

7  subsidiary are one; and (2) that an injustice would result if their separateness were recognized.

8  *See Unocal*, 248 F.3d at 926; *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523,

9  538 (2000); *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825 (1962).

10      Before the Court even reaches these two factors, however, an initial threshold showing

11  must be made—*i.e.*, that YHKL would be unable to satisfy a judgment.[8]  Counsel have scoured

12  the case law in California and cannot find a single instance of piercing the corporate veil where

13

---

14  RESTATEMENT (SECOND) CONFLICT OF LAWS § 307 (1971) (same).  Hong Kong law imposes even
greater hurdles to ignoring the corporate form. *See, e.g., China Ocean Shipping Co. v. Mitrans*

15  *Shipping Co. Ltd.*, [1995] 3 H.K.C. 228 (corporate veil may *only* be pierced where corporate form
used to evade existing legal obligation to plaintiff).

16  [8] *See Norins Realty Co. v. Consol. Abstract & Title Guar. Co.*, 80 Cal. App. 2d 879, 883 (1947)
(no piercing where corporation "not alleged to be insolvent and no facts are alleged from which it

17  can be inferred that it will be unable to respond to any judgment which may be imposed upon it"
because there is no evidence "that justice cannot otherwise be accomplished"); *Iran*, 969 F.2d at

18  770 (plaintiff failed to show an "inequity" where it was unable to "produce[] evidence that [the
alleged shell company] would be unable to satisfy the award"); *Wady v. Provident Life &*

19  *Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1070 (C.D. Cal. 2002) (plaintiff failed to submit

20  any evidence supporting the claim that "inequitable results will follow if the corporate wall
between Provident and UnumProvident is maintained"; "Provident is fully able to respond to any

21  damages award [plaintiff] may recover in this action"); *Haskell v. Time, Inc.*, 857 F. Supp. 1392,
1403 (E.D. Cal. 1994) (no piercing because, "[w]ith annual sales of $2 billion, Time should be

22  able to respond to any restitutionary award"); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594

23  (5th Cir. 1999) ("[T]here is scant evidence that [subsidiary] Westin Mexico is in fact
undercapitalized and unable to pay a judgment, if necessary."); *Stewart & Stevenson Servs., Inc.*

24  *v. Serv-Tech*, 879 S.W.2d 89, 110 (Tex. App. 1994) ("If the corporation responsible for the
plaintiff's injury is capable of paying a judgment upon proof of liability, then no reason would

25  exist to attempt to pierce the corporate veil and have shareholders pay for the injury.");

26  *HealthOne, Inc. v. Columbia Wesley Med. Ctr.*, 93 F. Supp. 2d 1152, 1164 (D. Kan. 2000)
("HealthOne cites nothing to show that permitting the defendants to maintain their separate

27  corporate structures will result in injustice. . . .  [M]ost significantly, *HealthOne* cites no
evidence that Wesley—with a net worth in excess of $200 million—will be incapable of paying

28  any judgment rendered against it in this action.").

1   the company was able to pay a judgment. *See* Appendix A. That threshold showing cannot

2   possibly be made in this case. YHKL's net worth is in excess of $100 million; it owns assets,

3   such as stock in other companies, that could be sold for hundreds of millions of dollars; and it is

4   subject to enforcement of a judgment in Hong Kong. Even if it were inconvenient for plaintiffs to

5   proceed against YHKL in Hong Kong—which demonstrably is not the case in light of Shi Tao's

6   pending action against YHKL there, *see* Compl. ¶ 64 *and* Tsoi Decl. ¶ 13—that would not justify

7   piercing YHKL's veil. *See Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1379 (10th Cir.

8   1980) ("We do not feel that the possible difficulty of enforcing a judgment against Bethlehem

9   Singapore alone or the possible inconvenience to plaintiff (and resulting convenience to

10  Bethlehem Singapore) in suing Bethlehem Singapore in another forum is the type of injustice

11  which warrants piercing the corporate veil.").

12          Nor can plaintiffs satisfy the two-prong test for piercing the corporate veil. The first

13  prong requires the Court to look at some 15 *Associated Vendors* factors. *See* Appendix B (listing

14  factors). In interpreting these factors, typical parent-subsidiary interactions do not count. As the

15  Ninth Circuit made clear:

16          A parent corporation may be directly involved in the activities of its subsidiaries
            without incurring liability so long as that involvement is "consistent with the
17          parent's investor status." Appropriate parental involvement includes: "monitoring
            of the subsidiary's performance, supervision of the subsidiary's finance and capital
18          budget decisions, and articulation of general policies and procedures."

19  *Unocal*, 248 F.3d at 926.

20          Plaintiffs neither allege nor could ever prove the contrary. Consistent with the *Associated*

21  *Vendors* factors:

22      • YHKL and Yahoo! Inc. do not commingle assets, *see* Tsoi Decl. ¶ 11;

23      • YHKL issued stock, *see id.* ¶ 2;

24      • YHKL pays taxes, makes regulatory filings, maintains its own corporate records, *see*
          *id.* ¶¶ 4, 11;

25      • YHKL has its own managers and board of directors, *see id.* ¶ 11;

26      • YHKL it is well capitalized and has significant corporate assets of its own, *see id.* ¶
          12;

27      • YHKL has its own offices in Hong Kong, around 150 employees, and both Hong
          Kong-qualified in-house attorneys and local outside counsel and advisors in Hong Kong,
28        *see id.* ¶¶ 4, 11;

C07-02151 CW
MOT. TO DISMISS FOR LACK OF          - 11 -
PERSONAL JURISDICTION

- YHKL has its own finance organization, negotiates contracts in its own name, and has its own relationships with local contractors, clients, vendors and suppliers, *see id.* ¶ 11;

- YHKL maintains its own bank accounts separate from Yahoo! Inc., *see id.* ¶ 11;

- YHKL generates its own income from its own operations in Hong Kong, *see id.* ¶ 11;

- YHKL makes its own business and hiring decisions, *see id.* ¶ 11; and

- YHKL runs its own website, *see id.* ¶¶ 4, 11.

No company with these hallmarks of independence has ever been found to be an alter ego.

Finally, plaintiffs fail the second prong of the alter-ego test. They have not alleged, nor could they ever show that Yahoo!, Inc., YISH, or YHKL engaged in "bad faith" in employing the corporate form or that plaintiffs' harm was somehow caused by or "flow[ed] from" the fact that YHKL is a separate corporation. *Cf. Sonora Diamond*, 83 Cal. App. 4th at 539 ("[t]he alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where *some conduct amounting to bad faith makes it inequitable* for the corporate owner to hide behind the corporate form"); *Seymore v. Lake Tahoe Cruises, Inc.*, 888 F. Supp. 1029, 1036 n.21 (E.D. Cal. 1995) ("[T]he showing of inequity necessary to satisfy the second prong must *flow from* the misuse of the corporate form.") (emphases added). In short, there is no conceivable connection between plaintiffs' alleged harm and YHKL's corporate status:

> [Plaintiffs'] underlying cause of action [*i.e.*, their claim that YHKL aided and abetted human rights abuses] does not supply the necessary fraud of injustice [necessary to pierce the corporate veil]. To hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping. The law requires that fraud or injustice be found in the defendants use of the corporate form.

*Southeast Texas Inns*, 462 F.3d at 674. Plaintiffs have neither alleged nor could ever prove this.

b.    **YHKL is Not Yahoo! Inc.'s Agent.**

The Ninth Circuit has recognized agency as a separate theory for jurisdictional purposes. *See Unocal*, 248 F.3d at 928. The legal test, as stated by both the Ninth Circuit and California courts, is often called the "representative services" test and mirrors aspects of the alter-ego test. Key factors of the agency test include unusual domination and control of the subsidiary's day-to-day affairs as well as the subsidiary's mere existence to do the bidding of the parent company.[9]

---

[9] *See Unocal*, 248 F.3d at 926 ("An alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations.")); *id.* at 928 (agency requires "a showing that the subsidiary functions as the parent corporation's representative in that it performs services

1    Plaintiffs have not alleged nor could they ever prove that Yahoo! Inc. runs YHKL's day-

2  to-day affairs or that YHKL exists solely to do Yahoo! Inc.'s bidding. YHKL's General

3  Manager, who works and lives in Hong Kong, his team of executives, who work and live in Hong

4  Kong, and YHKL's own employees run YHKL's affairs. They sign contracts. They maintain the

5  YHKL website. They seek advertisers for the site. And they try to bring Hong Kong residents to

6  the YHKL site. *See* Tsoi Decl. ¶¶ 4, 6-8, 11. Yahoo! Inc. may set broad corporate policies, but

7  such decisions and actions by a corporate parent are proper and do not create an agency

8  relationship. *See Unocal*, 248 F.3d at 926-28.

9    In *Unocal*, one of the first ATS cases against corporate defendants, plaintiffs alleged that

10  Total, the French energy company, could be hailed into court in California under the

11  "representative services" test because it had subsidiaries in California. The Ninth Circuit refused

12  to find an agency relationship for jurisdictional purposes even though Total's subsidiaries were

13  mere "holding" companies and "Total [was] an active parent corporation involved directly in

14  decision-making about its subsidiaries' holdings." *Id.* at 928-29. The Ninth Circuit found

15  plaintiffs had failed to allege or prove unusual domination and control. *See id.*

16    This is a more compelling case for rejecting plaintiffs' agency theory. Unlike Total's

17  subsidiaries, YHKL is much more than a holding company; it is an active, independent, operating

18  business. Moreover, no argument can be made here that Yahoo! Inc. relies on YHKL to do

19  business in the State of California. Yahoo! Inc. runs its own California business. YHKL focuses

20  on the Hong Kong market. If the existence of Total's subsidiaries in California solely to hold its

21

22

23  that are 'sufficiently important that if it did not have a representative to perform them, the
corporations own officials would undertake to perform substantially similar services.'");

24  *VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002) ("It is the nature
of the control exercised by the parent over the subsidiary that is crucial, because some degree of

25  control is an ordinary and necessary incident of the parent's ownership of the subsidiary. Only
when the degree of control exceeds this level and reflects the parent's purposeful disregard of the

26  subsidiary's independent corporate existence that the principal/agent theory will be invoked. As a
practical matter, the parent must be shown to have moved beyond the establishment of general

27  policy and direction for the subsidiary and in effect taken over performance of the subsidiary's
day-to-day operations in carrying out that policy.").

28

1    interests here was not enough to establish jurisdiction over Total, jurisdiction cannot be exercised

2    against YHKL just because its grandparent is located here.

3        E.    **Exercising Jurisdiction Over YHKL Would Be Unreasonable.**

4            There is a remaining hurdle plaintiffs must jump. Even assuming they satisfied one of

5    these tests above, they would have to show is "reasonable" for the Court to exercise jurisdiction

6    in this case. *See Glencore*, 284 F.3d at 1124-25; *Honor Plastic*, 2006 WL 2792812 at *4. There

7    are seven factors to determine reasonableness. *See Glencore*, 284 F.3d at 1125. Plaintiffs fail

8    each.

9            1. The extent to which YHKL "purposeful interject[ed]" itself into California is minimal.

10           2. It would be a burden for YHKL to defend itself in a case 7,000 miles from home.

11           3. This lawsuit challenges the sovereignty of the PRC, for the reasons stated in Yahoo!,

12   Inc.'s motion to dismiss, and YHKL is located in Hong Kong -- a Special Autonomous Region of

13   the PRC.

14           4. California has no particular interest in adjudicating a dispute between a Hong Kong

15   company and citizens of mainland China arising out of acts occurring in China, including acts of

16   the Chinese government.

17           5. Dismissing YHKL for lack of personal jurisdiction will not result in dismissing

18   plaintiffs' case; personal jurisdiction over Yahoo! Inc. is not disputed.

19           6. Plaintiffs could not enforce a judgment against YHKL in California, so there is no

20   added "convenience" in their suing here. *Glencore*, 284 F.3d at 1126 ("[A]bsent any evidence of

21   assets in the California forum against which [plaintiff] could enforce its award, we find

22   [plaintiff's] interest in 'convenient and effective' relief is frustrated, not promoted by bringing

23   suit here.").

24           7. Plaintiffs have an alternative forum in Hong Kong; indeed, Shi Tao has already

25   brought a complaint against YHKL there. *See* Compl. ¶¶ 64, 140. The fact that Shi lost his case

26   and is now appealing does not matter. U.S. courts have repeatedly found litigation in Hong Kong

27

28

1    to be an adequate alternative to litigation in the United States,[10] and Hong Kong recognizes the

2    torts of battery, assault, and false imprisonment.[11]

3    **IV.    YHKL JOINS IN YAHOO! INC.'S MOTIONS.**

4    Without waiving its objections to jurisdiction, YHKL's joins Yahoo! Inc.'s motions to

5    dismiss plaintiffs' complaint with prejudice, to strike plaintiffs' California claims pursuant to the

6    anti-SLAPP statute, and for a more definite statement.

7    **V.    CONCLUSION**

8    YHKL should be dismissed from this case for lack of personal jurisdiction.

9    Dated: August 27, 2007              DANIEL M. PETROCELLI
                                        MATTHEW T. KLINE
10                                       O'MELVENY & MYERS LLP

11

12                                       By: _____
                                              Daniel M. Petrocelli
13                                       Attorneys for Specially Appearing Defendant
                                         Yahoo! Hong Kong, Limited
14

15

16

17

18

19

20

21

22    [10] *See e.g., Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad*, 812 F. Supp. 1041, 1043-
23    44 (N.D. Cal. 1993) (Hong Kong is an adequate forum to adjudicate alleged RICO violations,
      common law fraud and breach of fiduciary duty claim), *Dragon Capital Partners L.P. v. Merrill*
24    *Lynch Capital Servs. Inc.*, 949 F. Supp. 1123, 1130-31 (S.D.N.Y. 1997) (rejecting claim that
      impending Chinese takeover of Hong Kong will render it an inadequate forum and finding that
25    Hong Kong is an adequate forum to try securities fraud claims).

26    [11] *See* LAWRENCE LAU & PEONY WONG, TRESPASS TO THE PERSON IN TORT LAW AND PRACTICE IN
      HONG KONG 253, 254-66 (Kemal Bokhary et al. eds., 2005). In addition, Section 66 of Hong
27    Kong's Personal Data (Privacy) Ordinance provides for a right to compensation for damages
      suffered as a result of violations of the Ordinance. *See* http://www.pcpd.org.hk/english/
28    ordinance/section_70.html.

C07-02151 CW
MOT. TO DISMISS FOR LACK OF              - 15 -
PERSONAL JURISDICTION

1

## APPENDIX A

2

### Capitalized Corporations Are Not Pierced

3

| Case | Alter ego rejected because: |
|------|------------------------------|
| *Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060 (C.D. Cal. 2002) | Corporation "*fully able to respond to any damages award [plaintiff] may recover* in this action.  The court thus concludes that no genuine issue of material fact exists to support [plaintiff's] alter-ego argument, and that [defendant] is entitled to judgment as a matter of law." (1070) |
| *Seymore v. Lake Tahoe Cruises, Inc.*, 888 F. Supp. 1029 (E.D. Cal. 1995) | Corporation was *not* "*undercapitalized or otherwise incapable of satisfying a judgment.*" (1036) |
| *Haskell v. Time, Inc.*, 857 F. Supp. 1392 (E.D. Cal. 1994) | Corporation "*should be able to respond to any restitutionary award.*" (1403) |
| *Norins Realty Co. v. Consol. Abstract & Title Guar. Co.*, 80 Cal. App. 2d 879 (1947) | Corporation "not alleged to be insolvent and no facts are alleged from which it can be inferred that it will be unable to *respond to any judgment* which may be imposed upon it." (883) |
| *M.O.D. of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764 (9th Cir. 1992) | Plaintiff failed to "produce[] evidence that [defendant] would be unable to satisfy the award." (770) |
| *Robbins v. Blecher*, 52 Cal. App. 4th 886 (1997) | Plaintiff was not a creditor, much less an unsatisfied one.  "*As an entity which was no longer a judgment creditor of [defendant], [plaintiff] had simply lost standing to pursue [defendant's] alter egos.*"  In other words, *the court recognized that the door to alter ego closes as soon as a plaintiff ceases to be an unsatisfied creditor.* (894) |

### Only Corporations with Insufficient Assets Are Pierced

| Case | Assets | Other Indicia Of Undercapitalization Noted By Court |
|------|--------|-----------------------------------------------------|
| *Minton v. Cavaney*, 56 Cal. 2d 576 (1961) | $0 | Corporation unable to pay $10,000 judgment<br>Corporation failed to issue stock |
| *Automotriz del Golfo de Californias v. Resnick*, 47 Cal. 2d 792 (1957) | $0 | Corporation bankrupt<br>Corporation unable to fulfill contractual obligations<br>Corporation failed to issue stock |
| *Linco Services, Inc. v. DuPont*, 239 Cal. App. 2d 841 (1966) | office furniture | Corporation unable to pay $25,000 promissory note<br>Shareholder "left [corporation] with substantial debts but no assets save office furniture" |
| *Platt v. Billingsley*, 234 Cal. App. 2d 577 (1965) | $0 | Corporation unable to pay $12,529 construction bill |
| *Rosen v. E. C. Losch, Inc.*, 234 Cal. App. 2d 324 (1965) | $856 | Corporation unable to fulfill $15,000 contractual obligation |
| *McKee v. Peterson*, 214 Cal. App. 2d 515 (1963) | $12,500 | Corporation liabilities, including $4,975 judgment, exceeded assets<br>Corporation failed to issue stock |
| *Wheeler v. Superior Mortgage Co.*, 196 Cal. | $0 | Corporation unable to pay $12,194 judgment<br>Corporation failed to issue stock |

| Case | Assets | Other Indicia Of Undercapitalization Noted By Court |
|---|---|---|
| App. 2d 822 (1961) | | |
| *Paul v. Palm Springs Homes, Inc.*, 192 Cal. App. 2d 858 (1961) | 2 corps: $0; $500 | Corporations unable to repay promissory notes totaling $47,608, because shareholders had effectuated transfers "in order to dissipate the corporation's assets" |
| *Claremont Press Pub'g. Co. v. Barksdale*, 187 Cal. App. 2d 813 (1960) | $500 | Corporation unable to fulfill $7,207 contractual obligation<br>Corporation failed to issue stock |
| *Talbot v. Fresno-Pacific Corp.*, 181 Cal. App. 2d 425 (1960) | $0 | Corporation unable to fulfill $7,280 contractual obligation |
| *Temple v. Bodega Bay Fisheries, Inc.*, 180 Cal. App. 2d 279 (1960) | $10,000 | Corporation unable to pay its creditors |
| *Pan Pac. Sash & Door Co. v. Greendale Park, Inc.*, 166 Cal. App. 2d 652 (1958) | 2 corps: $200; $500 | Corporations unable to pay its outstanding obligations of $28,700 |
| *Bariffi v. Longridge Dev. Co.*, 156 Cal. App. 2d 583 (1958) | $200 | Corporation unable to fulfill $5,900 contractual obligation |
| *Engineering Service Corp. v. Longridge Inv. Co.*, 153 Cal. App. 2d 404 (1957) | $200 | Corporation unable to fulfill $16,839 obligation<br>Corporation failed to issue stock |
| *Shafford v. Otto Sales Co.*,149 Cal. App. 2d 428 (1957) | $50 | Corporation insolvent, and unable to meet contractual obligation to pay commissions<br>Corporation failed to issue stock |
| *Hiehle v. Torrance Millworks, Inc.*, 126 Cal. App. 2d 624 (1954) | $2,000 | Corporation bankrupt<br>Corporation unable to repay promissory notes<br>Corporation failed to issue stock |
| *Marr v. Postal Union Life Ins. Co.*, 40 Cal. App. 2d 673 (1940) | Unclear | Corporation unable to repay promissory note<br>Corporation failed to issue stock |
| *Las Palmas Assocs. v. Las Palmas Center Assocs.*, 235 Cal. App. 3d 1220 (1991) | None for purposes of the court's analysis because assets were stripped from company by alter ego before filing of lawsuit and during trial and appeal | Before suit filed, "Sellers drained Devcorp of its assets and manpower for the purpose of leaving the company a mere shell corporation." *Id.* at 1236. After being drained, Devcorp was left with $4.1 million in assets, half of which was its interest under Buyers' promissory note. *Id.* at 1236. Devcorp held liable at trial for $11.5 million in damages. *Id.* at 1237. Award reduced to $2.2 million on appeal, but court rejects argument that Devcorp can satisfy judgment because (a) there was evidence that sellers were continuing to drain Devcorp of its assets pending the appeal; (b) Devcorp's alleged assets were of dubious value; and (c) there was no need to rely on a piercing theory to reach sellers because sellers themselves were liable for fraud. *Id.* at 1251-52. |
| *Shah v. Stillman*, 2004 WL 352179 (Cal. App. | Unclear, apparently $0 | Before suit filed, Stillman sold all the assets of the corporation to newly created corporation in effort to |

| Case | Assets | Other Indicia Of Undercapitalization Noted By Court |
|------|--------|----------------------------------------------------|
| 2d Dist. Feb. 26, 2004) (unpublished) | | evade liability from judgment. Payment was supposed to be made for assets but there is no evidence it was actually made. Stillman then allowed corporation to be suspended and default judgment entered against it (now assetless). Decided largely on fraudulent transfer theory - Stillman gutted corporation to try to escape paying judgment. |
| *Wells Fargo Bank v. Clarendon Services, Inc.*, 2003 WL 21232420 (Cal. App. 3d Dist. May 28, 2003) (unpublished) | Minimal, described as "shell" | Corporation was adequately capitalized and separate at beginning, but over years parent had assumed greater control, eventually stripping it of its assets and assuming total control of its affairs. Lease in content was entered at direction of parent company, and it was parent who regularly paid rent and who stopped paying (thus causing lawsuit for breach). Subsidiary had been "stripped" of separate identity by parent and had no ability to generate income or otherwise honor its obligations. |

# APPENDIX B

## The Fifteen *Associated Vendors* Factors[*]

(1)    Commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses

(2)    The treatment by an individual of the assets of the corporation as his own

(3)    The failure to obtain authority to issue stock or to subscribe to or issue the same

(4)    The holding out by an individual that he is personally liable for the debts of the corporation

(5)    The failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities

(6)    The identical equitable ownership in the two entities; the identification of the equitable owners thereof with the domination and control of the two entities; identification of the directors and officers of the two entities in the responsible supervision and management; sole ownership of all of the stock in a corporation by one individual or the members of a family

(7)    The use of the same office or business location; the employment of the same employees and/or attorney

(8)    The failure to adequately capitalize a corporation; the total absence of corporate assets and undercapitalization

(9)    The use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation

(10)    The concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities

(11)    The disregard of legal formalities and the failure to maintain arm's length relationships among related entities

(12)    The use of the corporate entity to procure labor, services or merchandise for another person or entity

(13)    The diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another

(14)    The contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions

(15)    The formation and use of a corporation to transfer to it the existing liability of another person or entity

---

[*] Taken verbatim from *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838-40 (1962).