Xiaoning et al v. Yahoo! Inc, et al                                                   Doc. 83

Case 4:07-cv-02151-CW    Document 83    Filed 08/30/2007    Page 1 of 67

1   DANIEL M. PETROCELLI (S.B. #97802)
    dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
    mkline@omm.com
3   O'MELVENY & MYERS LLP
    1999 Avenue Of The Stars
4   Los Angeles, California 90067-6035
    Main Number: (310) 553-6700
5   Facsimile: (310) 246-6779

6   Attorneys for Defendant YAHOO!, INC.

7
                    UNITED STATES DISTRICT COURT
8                NORTHERN DISTRICT OF CALIFORNIA
                         OAKLAND DIVISION
9
    WANG XIAONING, YU LING, SHI TAO,        Case No. C07-02151 CW
10  and ADDITIONAL PRESENTLY
    UNNAMED AND TO BE IDENTIFIED            DEFENDANT YAHOO!, INC.'S NOTICE
11  INDIVIDUALS,                            OF CORRECTED PLEADINGS

12              Plaintiff,                   Judge:   Hon. Claudia Wilken

13       v.

14  YAHOO!, INC., a Delaware Corporation,
    YAHOO! HONG KONG, LTD., a Foreign
15  Subsidiary of Yahoo!, AND OTHER
    PRESENTLY UNNAMED AND TO BE
16  IDENTIFIED INDIVIDUAL EMPLOYEES
    OF SAID CORPORATIONS,
17
                Defendant.
18

19
    TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:
20
          PLEASE TAKE NOTICE THAT defendant Yahoo!, Inc. hereby submits corrected copies
21
    of the following two motions it filed on August 27, 2007:
22
          • Defendant Yahoo!, Inc.'s Motion To Dismiss Plaintiffs' Second Amended Complaint
23
    ("Yahoo!'s Motion to Dismiss"); and
24
          • Defendant Yahoo!, Inc.'s Special Motion to Strike Plaintiffs' State Law Causes Of
25
    Action Pursuant To The California Anti-SLAPP Statute ("Yahoo!'s SLAPP Motion").
26
    Both motions are noticed to be heard November 1, 2007. Both motions contained typographical
27
    errors, which have now been corrected. No substantive change was made to either motion.
28

C07-02151 CW
YAHOO!'S NOTICE OF CORRECTED                  -1-
PLEADINGS

1     A corrected copy of Yahoo!'s Motion to Dismiss is attached as Exhibit A.  A corrected

2 copy of Yahoo!'s SLAPP Motion is attached as Exhibit B.  Counsel apologizes for any

3 inconvenience this causes plaintiffs' counsel, the Court, or its staff.

4         Dated: August 30, 2007                    DANIEL M. PETROCELLI
                                                     MATTHEW T. KLINE
5                                                    O'MELVENY & MYERS LLP

6

7                                                    By: _____

8                                                        Daniel M. Petrocelli
                                                     Attorneys for Defendant YAHOO!, INC.
   CC1:769924.1
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C07-02151 CW
YAHOO!'S NOTICE OF CORRECTED                      -2-
PLEADINGS

# EXHIBIT A

1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
   mkline@omm.com
3  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
4  Los Angeles, CA  90067-6035
   Telephone:    (310) 553-6700
5  Facsimile:    (310) 246-6779
   Attorneys for Defendant YAHOO!, INC and
6  Specially Appearing Defendant YAHOO! HONG
   KONG, LTD.
7

8                    UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
9                        OAKLAND DIVISION

10  WANG XIAONING, YU LING, SHI          Case No.  C07-02151 CW
    TAO, and ADDITIONAL PRESENTLY
11  UNNAMED AND TO BE IDENTIFIED         CORRECTED VERSION: DEFENDANT
    INDIVIDUALS,                         YAHOO!, INC.'S MOTION TO DISMISS
12                                       PLAINTIFFS' SECOND AMENDED
                   Plaintiffs,           COMPLAINT; PROPOSED ORDER
13
        v.                               Date:      November 1, 2007
14                                       Time:      2 p.m.
    YAHOO! INC., a Delaware Corporation, Location:  Courtroom 2
15  YAHOO! HONG KONG, LTD., a Foreign
    Subsidiary of Yahoo!, AND OTHER      Judge:     Hon. Claudia Wilken
16  PRESENTLY UNNAMED AND TO BE
    IDENTIFIED INDIVIDUAL
17  EMPLOYEES OF SAID
    CORPORATIONS,
18
                   Defendants.
19

20  TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

21        PLEASE TAKE NOTICE THAT ON November 1, 2007, at 2 p.m., defendant Yahoo!,

22  Inc. ("Yahoo!") will and hereby does move to dismiss, with prejudice, plaintiffs' second amended

23  complaint ("complaint"), which was filed July 30, 2007.  Yahoo! brings this motion pursuant to

24  Rules 12(b)(1), (6), and (7) of the Federal Rules of Civil Procedure.  This motion is based on this

25  notice of motion and motion, the following memorandum of points and authorities, the pleadings

26  on file in this matter, the reply memorandum Yahoo! intends to file, and any further argument the

27  Court might allow.

28
    C07-02151 CW
    YAHOO!'S MOT. TO DISMISS SEC. AM.
    COMPL

1    Without waiving its objection to the exercise of personal jurisdiction in this case, specially

2  appearing defendant Yahoo! Hong Kong, Ltd. ("YHKL") joins this motion.

3        Dated: August 30, 2007                    DANIEL M. PETROCELLI
                                                   MATTHEW T. KLINE
4                                                  O'MELVENY & MYERS LLP

5

6                                                  By:_____
7                                                       Daniel M. Petrocelli
                                                   Attorneys for Defendant Yahoo! Inc and for
8                                                  specially appearing defendant Yahoo! Hong
                                                   Kong, Ltd.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   Introduction ........................................................................................................ 1

II.  Summary Of Plaintiffs' Allegations ................................................................. 2

III. Plaintiffs Claims Are Not Justiciable. ............................................................. 4

   A.  This Case Should Be Dismissed Under The Act Of State Doctrine. ................... 5

      1.  This Case Directly Challenges Sovereign Acts Of The PRC. ....................... 5

         a. Judging PRC Speech Laws. .................................................................. 5

         b. Judging The PRC's Treatment Of Plaintiffs. ........................................ 7

         c. Judging The PRC's Ability To Gather Evidence. .................................. 7

      2.  The *Sabbatino* Factors All Favor Dismissal. ............................................ 8

   B.  This Case Should Be Dismissed Under Principles Of International Comity .................... 12

   C.  This Case Should Be Dismissed Under The Political Question Doctrine. ........................ 14

IV.  Plaintiffs Have Failed To State A Cognizable Claim. ....................................... 15

   A.  Plaintiffs Have Failed To State A Claim Under The ATS. ................................. 15

      1.  Plaintiffs' Allegations Do Not Meet *Sosa*'s "High Bar." ............................ 15

      2.  The ATS Does Not Apply Extraterritorially. ............................................. 16

      3.  The Norms Plaintiffs Invoke Are Not Actionable Under The ATS ............. 16

         a. Preemption. ....................................................................................... 16

         b. Free Speech. ...................................................................................... 17

         c. Forced Labor ..................................................................................... 18

      4.  Defendants Cannot Be Held Liable On Plaintiffs' ATS Theories. .............. 19

         a. State Action. ...................................................................................... 20

         b. Aiding and Abetting .......................................................................... 20

   B.  Plaintiffs Have Failed to State a Claim Under The TVPA. ............................... 23

   C.  Plaintiffs Have Failed To State A Claim Under ECPA. .................................... 24

   D.  Plaintiffs Have Failed to State a Claim Under California Law .......................... 27

      1.  The Foreign Affairs Doctrine Preempts Plaintiffs' California Claims. ........ 27

      2.  Plaintiffs Cannot Establish Their Intentional Tort Claims ......................... 28

         a. Aiding-and-Abetting Liability ........................................................... 28

# TABLE OF CONTENTS
**(Continued)**

      b.  Direct Liability. ..................................................................................... 29

   3.  Plaintiffs Do Not State a Claim for Negligence. ......................................... 29

   4.  Plaintiffs Do Not State a Claim For Unfair Competition. ........................... 31

  E.  Defendants' Communications With The PRC Are Protected From Liability. .................. 32

   1.  The Communications Are Protected Under Federal Law. ............................ 32

   2.  Plaintiffs' Claims Are Barred By California's Statutory Privilege ................. 35

   3.  Plaintiffs' International Law Claims Are Similarly Barred. ......................... 36

V.  Plaintiffs Failed To Join An Indispensible Party ................................................. 37

  A.  The PRC Is A Necessary Party. ........................................................................ 37

  B.  The PRC Cannot Be Joined. ............................................................................ 38

  C.  The PRC Is Indispensable. .............................................................................. 38

VI.  Plaintiffs' Counsel May Lack Authority To Bring This Suit. ................................... 39

VII.  Conclusion ................................................................................................... 40

- ii -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abdullahi v. Pfizer, Inc.*, 2002 WL 31082956 (S.D.N.Y. Sept. 17, 2002)...................................20

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242 (11th Cir. 2005) ..............17, 24

*American Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003)................................................14, 27, 28

*Ameritech Corp. v. McCann*, 403 F.3d 908 (7th Cir. 2005) ........................................................27

*Anderman v. Fed. Rep. of Austria*, 256 F. Supp. 2d 1098 (C.D. Cal. 2003)...............................15

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) ............................25

*Arndt v. UBS AG*, 342 F. Supp. 2d 132 (S.D.N.Y. 2004) ...........................................................24

*Artiglio v. Corning Inc.*, 18 Cal. 4th 604 (Cal. 1998) ................................................................30

*Baker v. Carr*, 369 U.S. 186 (1962)...........................................................................................14

*Baker v. Superior Ct.*, 129 Cal. App. 3d 710 (Cal. Ct. App. 1982) ...........................................31

*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964).............................................*passim*

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .......................................................2, 15, 18

*Berlin Democratic Club v. Rumsfeld*, 410 F. Supp. 144 (D.C. D.C. 1976) ...............................25

*Beroiz v. Wahl*, 84 Cal. App. 4th 485 (Cal. Ct. App. 2000)........................................................36

*Bigio v. Coca-Cola Co.*, 239 F.3d 440 (2d Cir. 2000) ...............................................................12

*Bohach v. City of Reno*, 932 F. Supp. 1232 (D. Nev. 1996) .......................................................27

*Bonneville Power Admin. v. FERC*, 422 F.3d 908 (9th Cir. 2005)..............................................24

*Borg v. Boas*, 231 F.2d 788 (9th Cir. 1956)...............................................................................33

*Boulware v. State of Nev. Dept. of Human Res.*, 960 F.2d 793 (9th Cir. 1992).........................35

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994)............................................................................3

*Brown v. Edwards,* 721 F.2d 1442 (5th Cir. 1984)......................................................................33

*Cabello v. Fernandez-Larios*, 402 F.3d 1148 (11th Cir. 2005) .................................................24

*Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad*, 812 F. Supp. 1041
   (N.D. Cal. 1993)........................................................................................................................38

*Center for Biological Diversity v. FPL Group, Inc.*, 2006 WL 2987634 (Cal.
   Superior Ct., Oct. 13, 2006).....................................................................................................32

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S.
   164 (1994)......................................................................................................................21, 22, 24

*Christensen v. Superior Ct.*, 54 Cal. 3d 868 (Cal. 1991) ...........................................................29

*Cohen v. McIntyre*, 16 Cal. App. 4th 650 (Cal. Ct. App. 1993) .................................................31

*Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663
   (Cal. Ct. App. 2006)..................................................................................................................32

*Conroy v. Regents of Univ. of Calif.*, 151 Cal. App. 4th 132
   (Cal. Ct. App. 2007)..................................................................................................................29

*Consol. Rendering Co. v. Vermont*, 207 U.S. 541 (1908).............................................................7

**TABLE OF AUTHORITIES**
(Continued)

*Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019 (W.D. Wa. 2005)....................................*passim*

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ..................................................14

*Daro v. Superior Court*, 151 Cal. App. 4th 1079 (2007).........................................................32

*Davidson v. City of Westminster*, 32 Cal. 3d 197 (Cal. 1982) ...............................................29

*Davis v. United States*, 192 F.3d 951 (10th Cir. 1999) ...........................................................37

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150
   (9th Cir. 2002).............................................................................................................37, 38, 39

*Dayton Coal & Iron Co. v. Barton*, 183 U.S. 23 (1901).............................................................7

*Doe I v. Exxon Mobil Corp.*, 393 F. Supp. 2d 20 (D.D.C. 2005)....................................20, 23, 24

*Doe v. Qi*, 349 F. Supp. 2d 1258 (N.D. Cal. 2004)................................................................*passim*

*Doe v. Saravia*, 348 F. Supp. 2d 1112 (E.D. Cal. 2004)......................................................17, 24

*Dorn v. Mendelzon*, 196 Cal. App. 3d 933 (Cal. Ct. App. 1987)..............................................36

*Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs. Inc.*, 949 F. Supp.
   1123 (S.D.N.Y. 1997) ...........................................................................................................39

*E. & J. Gallo Winery v. Andina Licores, S.A.*, Case No. CV F 05-0101, 2006 U.S.
   DIST. LEXIS 47206 (E.D. Cal. June 30, 2006)....................................................................36

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
   365 U.S. 127 (1961)...............................................................................................................35

*EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244 (1991) ...............................................................16

*EEOC v. Peabody Western Coal Co.*, 400 F.3d 774 (9th Cir. 2005) ........................................38

*Enahoro v. Abubakar*, 408 F.3d 877 (7th Cir. 2005) ...............................................................17

*Estate of Rabinowitz*, 114 Cal. App. 4th 635 (2003) ...............................................................39

*Estate of Stephens*, 28 Cal. 4th 665 (Cal. 2002).....................................................................29

*Evers v. Custer County*, 745 F.2d 1196 (9th Cir. 1984) ...........................................................35

*Fermino v. Fedco, Inc.*, 7 Cal. 4th 701 (Cal. 1994) .................................................................29

*Fiol v. Doellstedt*, 50 Cal. App. 4th 1318 (Cal. Ct. App. 1996) ..............................................29

*Foltz v. Moore McCormack Lines, Inc.*, 189 F.2d 537 (2d Cir. 1951) .....................................33

*Forro Precision, Inc. v. Int'l Bus. Machs.*, 673 F.2d 1045 (9th Cir. 1982) ........................35, 36

*Freedman v. America Online, Inc.*, 412 F. Supp. 2d 174 (D. Conn. 2005) ...............................26

*Friedman v. Merck & Co.*, 107 Cal. App. 4th 454 (Cal. Ct. App. 2003)...................................30

*Gerard v. Ross*, 204 Cal. App. 3d 968 (Cal. Ct. App. 1988) ....................................................28

*Guinto v. Marcos*, 654 F. Supp. 276 (S.D. Cal. 1986)........................................................6, 17

*Hagberg v. Calif. Fed. Bank FSB*, 32 Cal. 4th 350 (Cal. 2004)..........................................35, 36

*Hamid v. Price Waterhouse*, 51 F.3d 1411 (9th Cir. 1995) ......................................................26

*Hamilton v. Martinelli & Associates*, 110 Cal. App. 4th 1012 (Cal. Ct. App. 2003) ................31

*Herrle v. Estate of Marshall*, 45 Cal. App. 4th 1761 (Cal. Ct. App. 1996) ..............................30

*Holmes v. Eddy,* 341 F.2d 477 (4th Cir. 1965) .......................................................................33

*Howard v. Superior Ct.*, 2 Cal. App. 4th 745 (Cal. Ct. App. 1992)..........................................28

**TABLE OF AUTHORITIES**
(Continued)

*Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10 (D.D.C. 2005)........................................20

*Ileto v. Glock*, 194 F. Supp. 2d 1040 (C.D. Cal. 2002)............................................30

*In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054 (N.D. Cal. 2003)....................................3

*In re Estate of Ferdinand Marcos*, 25 F.3d 1467 (9th Cir. 1994)........................................6

*In re Estate of Marcos Human Rights Litig.*, 978 F.2d 493 (9th Cir. 1992) ...............................20

*In re Quarles*, 158 U.S. 532 (1895) ........................................................12, 32, 33

*In re Republic of the Phil.*, 309 F.3d 1143 (9th Cir. 2002) ..............................................38

*In re Retail Chemists Corp,* 66 F. 2d 605 (2d Cir. 1933)................................................40

*In re South Afr. Apartheid Litig.*, 346 F. Supp. 2d 538 (S.D.N.Y. 2004) ......................20, 21, 24

*Interamerican Refining Corp. v. Texaco Maracaibo, Inc.*, 307 F. Supp. 1291
    (D. Del. 1970) ..............................................................................34

*Joo v. Japan*, 413 F.3d 45 (D.C. Cir. 2005)............................................................14

*Kadic v.Karadzic*, 70 F.3d 232 (2d Cir. 1995)..........................................................20

*Khulumani et al. v. Barclay Nat'l Bank Ltd., et al.*, No. 05-2141 (2nd Cir. 2005)....................21

*Knight v. Jewett*, 3 Cal. 4th 296 (Cal. 1992) ..........................................................30

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (Cal. 2003)...........................32

*Liu v. Republic of China*, 892 F.2d 1419 (9th Cir. 1989) ...........................................8, 12

*McDonald v. Smith*, 472 U.S. 479 (1985) .............................................................33

*Meredith v. Ionian Trader*, 279 F. 2d 471 (2d Cir. 1960)..........................................2, 39

*Morales v. Coop. of Am. Physicians, Inc*, 180 F.3d 1060 (9th Cir. 1999) ...............................35

*Moser v. Ratinoff*, 105 Cal. App. 4th 1211 (Cal. Ct. App. 2003) ....................................30

*Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1164 (C.D. Cal. 2005)...........23, 24, 28

*Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363 (Cal. Ct. App. 2003)....................36

*Oregon Natural Res. Council v. Mohla*, 944 F.2d 531 (9th Cir. 1991)  ...............................35

*Palmer v. Roosevelt Lake Log Owners Ass'n.*, 551 F. Supp. 486 (D. Wash. 1982) ................35

*Panama Processes, S.A. v. Cities Services Co.*, 650 F.2d 408 (2d Cir. 1981)..........................35

*Pollock v. Williams*, 322 U.S. 4 (1944)..................................................................19

*Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82 (D.C. Cir. 2002)...........18, 24

*Pueblo of Santa Rosa v. Fall*, 273 U.S. 315 (1927)..................................................2, 39

*Quarles*, *Vogel v. Gruaz*, 110 U.S. 311 (1884).......................................................33

*Radiation Sterilizers, Inc. v. U.S.*, 867 F. Supp. 1465 (E.D. Wash. 1994) ...............................35

*Ratzlaf v. United States*, 510 U.S. 135 (1994) .........................................................24

*Ricci v. State Bd. of Law Examiners*, 569 F.2d 782 (3d Cir. 1978) ....................................37

*Rivendell Forest Prods., Ltd. v. Canadian Forest Prods.*, 810 F. Supp. 1116
    (D. Colo. 1993) ............................................................................14

*Rosenbloom v. Hanour Corp.*, 66 Cal. App. 4th 1477 (Cal. Ct. App. 1998) ...........................30

*Saffro v. Elite Racing, Inc.*, 98 Cal. App. 4th 173 (Cal. Ct. App. 2002)...................................30

**TABLE OF AUTHORITIES**
(Continued)

*Sale v. Haitian Ctrs. Council*, 509 U.S. 155 (1993) .................................................. 25

*Sarei v. Rio Tinto*, 456 F.3d 1069 (9th Cir. 2006) .................................................. 20

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993)........................................................... 38

*Shipping Ltd. v. Flota Mercante Grancocolombiana, S.A.*, 830 F.2d 449
(2d Cir. 1987)........................................................................................................ 15

*Small v. United States*, 544 U.S. 385 (2005)........................................................... 25

*Societe Internationale Pour Participations Industrielles et Commerciales,
S.A. v. Rogers*, 357 U.S. 197 (1958) .................................................................. 34, 35

*Societe Nationale Industrielle Aerospatiele v. United States Dist. Court for the
Dist. of Iowa*, 482 U.S. 522 (1987) .................................................................... 12

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)...................................................passim

*Southern California Housing Rights Center v. Los Feliz Towers Homeowners
Assoc.*, 426 F. Supp. 2d 1061 (C.D. Cal. 2005) ................................................ 32

*Swaaley v. U. S.*, 376 F.2d 857 (Ct. Cl. 1967) ....................................................... 33

*Tel-Oren v. Lybian Arab Republic*, 726 F.2d 774 (D.C. Cir. 1984) ..................... 20

*The Presbyterian Church of Sudan v. Talisman Energy, Inc.*, Case No. 07-0016,
(2d Cir. May 15, 2007) .......................................................................................passim

*Timberland Lumber Co. v. Bank of America*, 549 F.2d 597 (9th Cir. 1977) ......... 34

*U.S. v. New York Tel. Co.*, 434 U.S. 159 (1977)...................................................... 33

*Underhill v. Hernandez*, 168 U.S. 250 (1897) ......................................................... 5

*United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965)......................... 35

*United States v. Angulo-Hurtado*, 165 F. Supp. 2d 1363 (N.D. Ga. 2001)............. 25

*United States v. Brodie*, 174 F. Supp. 2d 294 (E.D. Pa. 2001) .............................. 34

*United States v. Cotroni*, 527 F.2d 708 (2d Cir. 1975) ........................................ 25, 26

*United States v. Denman*, 100 F.3d 399 (5th Cir. 1996).......................................... 26

*United States v. Gatlin*, 216 F.3d 207 (2d Cir. 2000) ............................................ 25

*United States v. Hambrick*, 55 F. Supp. 2d 504 (W.D. Va. 1999) ........................... 26

*United States v. Luong*, 471 F.3d 1107 (9th Cir. 2006) .......................................... 26

*United States v. Peterson*, 812 F.2d 486 (9th Cir. 1987) ........................................ 25

*United States v. Smith*, 5 Wheat. 153 (1820) ...................................................... 18, 22

*United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974) ...................................... 25

*United States v. Wolf*, 352 F. Supp. 2d 1195 (W.D. Okla. 2004) ........................... 39

*Video Int'l Prod. v. Warner-Amex Cable Commc'n*, 858 F.2d 1075 (5th Cir. 1988) ............... 35

*Vieth v. Jubelirer*, 514 U.S. 267 (2004) ................................................................ 14

*Walker v. USAA Casualty Ins. Co.*, 474 F. Supp. 2d 1168 (E.D. Cal. 2007)............. 32

*Wang v. Yahoo!, Inc.*, Order Denying Def. Yahoo!'s Mot. for Early Case Mgt.
Conf. & Order (filed July 31, 2007)................................................................... 4, 5

*White v. Trans Union LLC*, 462 F. Supp. 2d 1079 (C.D. Cal 2006)......................... 32

*Wilbur v. Locke*, 423 F.3d 1101 (9th Cir. 2005) .................................................... 37, 39

## TABLE OF AUTHORITIES
### (Continued)

*Wiwa v. Royal Dutch Petroleum*, 2002 U.S. Dist. LEXIS 3293 (S.D.N.Y. 2002) ..................... 20

*Yahoo!, Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 169 F. Supp. 2d 1181 (N.D. Cal. 2001), *rev'd on other grounds*, 433 F.3 1199 (9th Cir. 2006)........... 6, 7, 12

*Zschernig v. Miller*, 389 U.S. 429 (1968) ....................................................................... 27

## STATUTES

18 U.S.C. § 2 ................................................................................................................ 21

18 U.S.C. § 1513 .......................................................................................................... 25

18 U.S.C. § 2511 ..................................................................................................... 24, 25

18 U.S.C. § 2701 ..................................................................................................... 25, 27

18 U.S.C. § 2702 ............................................................................................... 25, 26, 27

18 U.S.C. § 2711 .......................................................................................................... 27

28 U.S.C. § 1350 .................................................................................................... *passim*

28 U.S.C. § 1350, note ........................................................................................... *passim*

28 U.S.C. § 1604 .......................................................................................................... 38

28 U.S.C. § 1605 .......................................................................................................... 38

Cal. Civ. Code §47(b) ................................................................................................... 27

CAL. CIV. PROC. CODE § 367 ........................................................................................ 39

CAL. PROB. CODE § 4303 .............................................................................................. 40

CAL. PROB. CODE § 4121 .............................................................................................. 39

CAL. PROB. CODE § 4122 .............................................................................................. 39

CAL. PROB. CODE § 4263(a)(1) ..................................................................................... 39

CAL. PROB. CODE § 4459 .............................................................................................. 39

CAL. BUS. & PROF. CODE § 17204 ........................................................................... 31, 32

## OTHER AUTHORITIES

1993 Country Reports on Human Rights Practices, Bureau of Democracy, Human Rights, and Labor, U.S. Department of State (Jan. 31, 1994).............................................. 19

4 W. BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 67 (1769) ............................ 19

Administrative Measures on Internet Bulletin Services (P.R.C.) ............................................. 35

Br. of the U.S. as Amicus Curiae, *The Presbyterian Church of Sudan v. Talisman Energy, Inc.*, Case No. 07-0016, at 5-12 (2d Cir. May 15, 2007) ............................... 16, 20, 22

BUREAU OF ECONOMIC AND BUSINESS AFFAIRS, OECD GUIDELINES FOR MULTINATIONAL ENTERPRISES 5 (2002) ................................................................... 13

Caroline Uyttendaele & Joseph Dumortier, *Free Speech on the Information Superhighway*, 16 J. MARSHALL J. COMPUTER & INFO. L. 905 (1998) .................................. 6

Civil Procedure Law (P.R.C.) ......................................................................................... 39

Criminal Law (P.R.C.) .................................................................................................... 34

Criminal Procedure Law (P.R.C.) .................................................................................... 34

Curtis A. Bradley et al., Sosa, *Customary International Law and the Continuing Relevance of* Erie, 120 HARV. L. REV. 870 (2007) .................................................... 20, 21, 22

**TABLE OF AUTHORITIES**
(Continued)

Daria Vaisman, *Turkey's Restriction, Europe's Problem* ............................................ 6

Evans J.R. Revere, Acting Assistant Sec'y for East Asian and Pacific Affairs, *The Bush Administration's Second-Term Foreign Policy Toward East Asia*, Remarks to Center for Strategic Int'l Studies Conference (May 17, 2005) ......................... 9

Judgment of Huang Qi, Huang Qi, Prisoner of conscience, Sichuan Province, http://web.amnesty.org/apro/aproweb.nsf/pages/asa170012004_appealtwo ................. 6

Letter from Hon. John B. Bellinger III to Hon. Peter D. Keisler re: *Li Weixum, et al. v. Bo Xilai*, No. 1:04CV00649 (D.D.C.) (July 24, 2006) ...................................... 9

Measures for the Administration of Internet E-mail Services (P.R.C.) ....................... 35

*Morton Sklar on Yahoo! human rights lawsuit* (Apr. 21, 2007) (webcast) ................. 6

Office of the Privacy Comm'r for Personal Data, Hong Kong, Report Published under § 48(2) of the Personal Data (Privacy) Ordinance (Cap. 486), Report No.: R07-3619 (Mar. 14, 2007), http://www.pcpd.org.hk/english/publications/files/Yahoo_e.pdf ............................... 3

Opinions of the Supreme People's Court on Certain Issues Concerning Application of PRC Civil Procedure Law 2002 (P.R.C.) ................................................ 39

Ratifications Of The Fundamental Human Rights Conventions By Country," http://www.ilo.org/ilolex/english/docs/declworld.htm ............................... 19

Regulations on Telecommunications (P.R.C.) ............................................................ 35

Reporters Without Borders Briefs for July 2007, *Spain: Gara and Deia Journalists Now Face Charges of "Insulting King* .................................................................. 6

RESTATEMENT (SECOND) OF TORTS (1977) .............................................................. 33

RESTATEMENT (THIRD) OF FOREIGN RELATIONS (1987) ................................... *passim*

Robert B. Zoellick, Deputy Sec'y of State, *Whither China: From Membership to Responsibility?*, Remarks to National Committee on U.S.-China Relations (Sept. 21, 2005) ............................................................................................................ 9

Ronald J. Krotoszynski, *A Comparative Perspective on the First Amendment*, 78 TUL. L. REV. 1549 (2004) ................................................................................ 6

Scott Shane, *Suit Over C.I.A. Program*, N.Y. TIMES, May 31, 2007 ...................... 11

Sionaidh Douglas-Scott, *The Hatefulness of Protected Speech*, 7 WM. & MARY BILL OF RTS. J. 305 (1999) ............................................................................. 6, 17

S. Rep. No. 99-541 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 3555, 3566 ............ 25

S. Rep. No. 102-249 (1991), 1991 WL 258662 ...................................................... 24

State Security Law (P.R.C.) ....................................................................................... 34

Statement of Interest of the United States, *Doe v. Qi*, Case No. C02 0672 CW (EMC) (filed Jan. 16, 2004) ................................................................................ 9, 11

Thomas J. Christensen, Deputy Assistant Sec'y for East Asian and Pacific Affairs, U.S.-China Relations, Statement Before the House Committee on Foreign Affairs, Subcommittee on Asia, the Pacific and the Global Environment (Mar. 27, 2007) ............................................................................................................................ 9

U.S. Dep't of State, Bureau of East Asian and Pacific Affairs, *Background Note: China* (Jan. 2007) ................................................................................................. 9

William J. Clinton, Remarks by the President at Signing of China Permanent

## TABLE OF AUTHORITIES
### (Continued)

Normal Trade Relations (Oct. 10, 2000)..................................................................9

World Organization for Human Rights USA, "Major lawsuit filed by Human
    Rights USA against Yahoo! highlights the internet company's complicity in
    human rights abuses in China (Apr. 18, 2007) ....................................................10

### RULES

FED. R. CIV. P. 12 ............................................................................................*passim*

FED. R. CIV. P. 17 ...........................................................................................................39

FED. R. CIV. P. 19 ...........................................................................................2, 37, 38, 39

CC1:769592.6

1    **I.      INTRODUCTION**

2              This is a lawsuit by citizens of China imprisoned for using the internet in China to express

3    political views in violation of China law. It is a political case challenging the laws and actions of

4    the Chinese government.  It has no place in the American courts.  Yahoo! deeply sympathizes

5    with the plaintiffs and their families and does not condone the suppression of their rights and

6    liberty by their government.  But Yahoo! has no control over the sovereign government of the

7    People's Republic of China ("PRC"), the laws it passes, and the manner in which it enforces its

8    laws.  Neither Yahoo! Inc. or YHKL, therefore, can be held liable for the independent acts of the

9    PRC just because a former Yahoo! subsidiary in China obeyed a lawful government request for

10   the collection of evidence relevant to a pending investigation.

11             There are numerous legal grounds why plaintiffs' complaint cannot proceed:

12             *First*, plaintiffs' claims are not justiciable under *Sosa v. Alvarez-Machain*, 542 U.S. 692

13   (2004), the act of state doctrine, principles of international comity, and the political question

14   doctrine.  The complaint challenges the actions of the PRC in enacting and enforcing laws

15   proscribing certain types of speech deemed inimical to its government.  Litigating this case thus

16   risks violating international law principles of sovereignty, interfering with U.S. foreign policy,

17   and jeopardizing the U.S. law enforcement interests.

18             *Second*, plaintiffs have failed to state a claim under the Alien Tort Statute ("ATS"), the

19   Torture Victim Protection Act ("TVPA"), the Electronic Communications Privacy Act ("ECPA"),

20   and the California laws on which they rely.  Among other infirmities, plaintiffs' ATS and TVPA

21   theories are not actionable against corporate actors, ECPA does not apply extraterritorially, and

22   plaintiffs' California claims are preempted.

23             *Third*, plaintiffs' claims contravene federal, California, and international law—each of

24   which expressly protects defendants from civil liability for communicating with law enforcement

25   officials regarding investigations.  Whether they responded to the PRC's requests voluntarily or

26   under compulsion of PRC law (the complaint seeks to obscure that it was plainly the latter),

27   defendants' conduct was plainly privileged.

28             *Fourth*, the complaint fails to join the PRC or PRC officials who allegedly harmed

1    plaintiffs, and who are "necessary" and "indispensable" parties under Rule 19 of the Federal

2    Rules of Civil Procedure.

3         *Fifth*, this case should not proceed unless counsel of record for plaintiffs establish their

4    authority to represent plaintiffs in this case.  *See Pueblo of Santa Rosa v. Fall*, 273 U.S. 315, 319

5    (1927); *Meredith v. Ionian Trader*, 279 F. 2d 471, 474 (2d Cir. 1960).

6    **II.**    **SUMMARY OF PLAINTIFFS' ALLEGATIONS[1]**

7         **Plaintiff Wang Xiaoning.**  From 2000 to 2002, Wang worked in mainland China as a

8    author and editor of pro-democracy publications.  Compl. ¶¶ 32-35.  PRC authorities arrested

9    Wang and charged, tried, and convicted him of "incitement to subvert state power," advocating

10   the establishment of an alternative political party, and communicating with an overseas enemy

11   organization.  *Id*. ¶¶ 37-40.  Wang was taken into custody on September 1, 2002, charged on

12   September 30, 2002, tried and convicted in July 2003, and sentenced to a 10-year prison term on

13   September 12, 2003.  *See id*. ¶¶ 37-41.  While in prison, Wang suffered brutal treatment at the

14   hands of the PRC as punishment for his political activities.  *See id*. ¶¶ 39, 43-44.  Wang is

15   allowed only limited contact with outsiders; it is unclear whether he has any contact with his

16   counsel or authorized this lawsuit.  *See id*. ¶ 45.

17        **Plaintiff Shi Tao.**  Shi Tao worked as a reporter and editor at the *Contemporary Business*

18   *News* in mainland China and wrote articles advocating political reform.  *See id*. ¶¶ 52-55.  On

19   April 20, 2004, from his place of employment, Shi published anonymously a document the PRC

20   considered to be a "state secret."  *See id*. ¶¶ 55-56, 62-63.  PRC authorities arrested Shi on

21   November 23, 2004 and charged him on December 14; he pled guilty on March 11, 2005.  *See id*.

22   ¶¶ 57-61.  On April 30, 2005, Shi was sentenced to 10 years in prison and is currently

23   incarcerated at a Chinese prison known for abusive treatment of prisoners.  *See id*. ¶¶ 62-66.

24   Given the vague allegations about his specific circumstances, it is unclear whether Shi's counsel

25   have contact with him or the authority to represent him.  *See id*. ¶¶ 59, 65-66.  Before filing this

26   suit, Shi brought an action against YHKL before the Hong Kong Privacy Commissioner.  *See id*.

27

28      [1] Solely for purposes of this motion, the facts alleged in plaintiffs' complaint ("compl.", filed July 30, 2007, are all assumed true.  *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1985 (2007).

1    ¶ 64.  The Commissioner rejected Shi's claim.  *See id.*

2        **Yu Ling.**  Yu Ling is Wang's wife.  *See id.* ¶ 11.  She and "her family have endured

3    severe psychological and emotional suffering as a direct result of [Wang's] arbitrary detention."

4    *Id.* ¶ 46.  She has been "subjected to continued police surveillance," including seizure of her

5    computer.  *Id.* ¶¶ 47-48.  Yu's "emotional injuries have caused [her] physical injury," and

6    devoting time to Wang's legal defense has cost her time and money.  *Id.* ¶¶ 50-51.

7        **Yahoo! and YHKL.**  Plaintiffs have sued Yahoo! and YHKL.  Yahoo! is a Delaware

8    corporation and its primary place of business is Sunnyvale, California.  Yahoo! is an internet

9    portal and provides email and other internet-based services.  YHKL, which is based in Hong

10   Kong, is Yahoo!'s indirect subsidiary and has a portal business in Hong Kong.  *See id.* ¶¶ 14-15.

11       Plaintiffs allege Yahoo! and YHKL controlled the operations of Yahoo! China, an internet

12   portal serving mainland China.  *See id.* ¶¶ 15-17.  Having used Yahoo! China email accounts and

13   group lists to publish political literature, *see id.* ¶¶ 33-34, 55, plaintiffs rest their claims on two

14   pivotal allegations:  defendants "willingly" provided information regarding plaintiffs' online

15   activities to the PRC and were "instrumental" to "causing the Plaintiff[s'] arrest and criminal

16   prosecution," *id.* ¶¶ 2, 42, 44, 62.

17       Although the success of this motion in no way turns on refuting these two assertions, the

18   very documents cited in the complaint undermine both claims.[2]  As the Hong Kong Privacy

19   Commissioner concluded in Shi's case, *see* Compl. ¶ 64 (citing ruling), "the disclosure of

20   Information in the circumstances of the case *was not a voluntary act initiated by [YHKL] but was*

21   *compelled under the force of PRC law*."[3]  (All emphases added unless otherwise indicated.)  And,

22   plaintiffs' criminal judgments do not show that defendants divulged plaintiffs' identities, caused

23   _____

24   [2] On a motion to dismiss, the court may consider documents described in, but not attached to, a
     complaint.  *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *In re Calpine Corp. Sec.
     Litig.*, 288 F. Supp. 2d 1054, 1076 (N.D. Cal. 2003).

25   [3] Exhibits are attached in Appendix A.  *See* Ex. A (Office of the Privacy Comm'r for Personal
     Data, Hong Kong, Report Published under § 48(2) of the Personal Data (Privacy) Ordinance
26   (Cap. 486), Report No.: R07-3619, at ¶ 8.25 (Mar. 14, 2007),
     http://www.pcpd.org.hk/english/publications/files/Yahoo_e.pdf ("Hong Kong Commissioner's
27   Report")).  The Report also explains that Yahoo! China's Privacy Policy and Terms of Service
     clearly informed users that their information would be disclosed in response to law enforcement
28   requests.  *Id.* at 8.37-8.39.

1    them to be investigated, or provided proof essential to their convictions.[4]

2        ***Claims and Relief Sought.***  The complaint contains claims under the ATS, TVPA, and

3    ECPA; a variety of international law sources; and six California law theories. *See* Compl. ¶¶ 3-6.

4    Shi asserts 11 causes of action. Wang asserts 10; unlike Shi, he does not make a forced labor

5    claim. *See id.* at ¶¶ 69-136. Yu asserts three California law claims—for intentional infliction of

6    emotional distress, negligence, and unfair business practices. *See id.* at ¶¶ 109-27. Plaintiffs seek

7    compensatory and punitive damages, as well as declaratory relief determining defendants violated

8    international law, injunctive relief to prevent defendants from complying with future requests for

9    information, and "affirmative action by the Defendants to secure the release of the detainees."

10   **III.    PLAINTIFFS CLAIMS ARE NOT JUSTICIABLE.**

11       *Sosa v. Alvarez-Machain*, 542 U.S. 692, 728 (2004), instructs courts to proceed in ATS

12   cases with "great caution." Trial courts have a duty of "vigilant door keeping," obligating them

13   to consider a variety of prudential concerns before exercising jurisdiction. *Id.* at 729; *see also*

14   *Wang v. Yahoo!, Inc.*, Order Denying Def. Yahoo!'s Mot. for Early Case Mgt. Conf. & Order at

15   4:19-5:19 (filed July 31, 2007) ("Order"). As this Court has recognized, "[a]lthough it is one

16   thing for American courts to enforce limits on their own government's power, . . . it is 'quite

17   another to consider suits under rules that would go so far as to claim a limit on the power of

18   foreign governments over their own citizens, and to hold that a foreign government or its agents

19   has transgressed those limits.'" *Id.* at 5:1-6 (quoting *Sosa*). Three justiciability doctrines that

20   reflect these constitutional and prudential concerns—the act of state doctrine, the doctrine of

21   international comity, and the political question doctrine—compel dismissal here.

22

---

23   [4] Wang's and Shi's judgments—both in the original Chinese and translated into English—are
     attached in Appendix A, as Exhibits B and C, respectively. Both judgments cite various sources
24   of evidence—including physical evidence, witnesses, and plaintiffs' confessions—on which
     plaintiffs' convictions rested. With regard to defendants, all Wang's judgment states is that
25   YHKL provided records that showed that two Yahoo! China email accounts had been set up by
     users in China. *See* Appx. A, Ex. B at 6 ¶ e, f. And in Shi's case, the judgment shows that the
26   information YHKL provided merely helped confirm that an email in the case was sent from Shi's
     place of employment—not that Shi sent it. *See* Appx. A, Ex. C at 4-5, Compl. ¶ 62. *Indeed,*
27   *contrary to the suggestion that the PRC learned about Wang's identity from defendants, the*
     *judgment discloses that Wang published articles using his real name.* See Appx. A, Ex. B at 11,
28   ¶ 4 and 21, ¶ a.

1

**A.    This Case Should Be Dismissed Under The Act Of State Doctrine.**

2       The act of state doctrine provides that "[e]very sovereign State is bound to respect the

3   independence of every other sovereign State, *and the courts of one country will not sit in*

4   *judgment on the acts of the government of another done within its own territory*."  *Underhill v.*

5   *Hernandez*, 168 U.S. 250, 252 (1897).  This doctrine is rooted in the recognition that "[t]he

6   conduct of the foreign relations . . . is committed by the Constitution to the Executive and

7   Legislative . . . departments."  *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 423 (1964).

8              **1.   This Case Directly Challenges Sovereign Acts Of The PRC.**

9       As this Court recently observed, "[t]he claims in this case directly implicate the propriety

10  of actions taken by the Chinese government."  Order at 6:22-27.  Indeed, the case "require[s] the

11  court to sit in judgment" of at least three sovereign acts of the PRC.  *Corrie v. Caterpillar, Inc.*,

12  403 F. Supp. 2d 1019, 1032 (W.D. Wa. 2005).  Each is addressed in turn.

13      a.  Judging PRC Speech Laws.  By its express terms, plaintiffs' complaint is a facial attack

14  on criminal laws in China banning political speech.  One of the complaint's recurring and critical

15  allegations is that the PRC had no right to detain plaintiffs for publishing political literature.[5]

16  However, "free speech" rights as we understand them in the United States are not the law in

17  China.[6]  As one Chinese court has summarized the law:

18

19  _____

[5] *See, e.g.*, Compl. ¶ 23 ("*As a result of the expression of their views*, these 'dissidents' are
20  subjected to arbitrary arrest, criminal prosecution, and persecution *in violation of numerous*
    *protections for fundamental rights involving the exercise of freedom of expression, association,*
21  *press and assembly under the Chinese Constitution and international law*."); ¶ 27 ("by helping
    the censors, and by identifying people who could be accused of anti-government speech or
22  communication, the Defendants would be placing many *innocent individuals, who were merely*
    *expressing their views or communicating with others*, at risk of arbitrary arrest, prolonged
23  arbitrary detention, forced labor, and torture *as a result of their lawful exercise of free speech and*
    *free association rights*"); ¶ 85 ("These acts of arbitrary arrest and long-term detention suffered by
24  the Plaintiffs designated in this Third Claim for Relief, including arrest and detention *for an*
    *unlawful purpose in violation of the rights to freedom of speech, association, and assembly*").

25  [6] Article 35 of the Chinese Constitution recognizes "freedom of speech" as a right citizens enjoy,
    but other parts of the Constitution and PRC law limit this right and prohibit various forms of
26  speech.  Translations of these and other Chinese law sources cited in this motion are included in
    Appendix B accompanying this motion.  See Appendix B, ex. 1, Constitution of the PRC, Articles
27  1, 28, 51, and 53; ex. 2, State Security Law (P.R.C), Article 4; ex. 4 Criminal Law (P.R.C.),
    Article 105; ex 6, Law on Protecting State Secrets (P.R.C.), Article 24; ex. 10, Management
28  Provisions on Electronic Bulletin Services in Internet (P.R.C.), Article 9.

C07-02151 CW
YAHOO!'S MOT. TO DISMISS SEC. AM.                         - 5 -
COMPL.

1  |  This court believes that freedom of speech is a political right of the citizens of
2  |  China, but when exercising this right, no one may harm the interests or security of
   |  the nation, and may not use rumor mongering or defamation to incite subversion of
3  |  the national regime. Therefore, the court takes note that the defense counsel takes a
   |  standpoint that only stresses the right of the accused, and ignores his duties.[7]

4  No matter how strenuous our disagreement, every sovereign nation has a right to regulate

5  speech within it borders. *See Yahoo!, Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 169

6  F. Supp. 2d 1181, 1186 (N.D. Cal. 2001), *rev'd on other grounds*, 433 F.3 1199 (9th Cir. 2006)

7  (en banc). Because American law is unique in the protections it affords to free speech—even

8  among Western democracies—courts have recognized that our First Amendment does not reflect

9  customary international law. *See Guinto v. Marcos*, 654 F. Supp. 276, 280 (S.D. Cal. 1986) (cited

10  favorably by *In re Estate of Ferdinand Marcos*, 25 F.3d 1467, 1475 (9th Cir. 1994)).[8]

11  Despite all this, plaintiffs' claims all proceed from the premise that international law is

12  violated not only when the PRC acts to enforce its laws prohibiting political speech, but when

13  companies assist the PRC in enforcing these laws.[9] Endorsement of this theory of liability

14  requires the Court to consider and declare unlawful the Chinese government's prohibitions on

---

[7] Judgment of Huang Qi, Congressional-Executive Committee on China Virtual Academy http://www.cecc.gov/pages/virtualAcad/exp/expsecurity.php

[8] *See also, e.g.*, Sionaidh Douglas-Scott, *The Hatefulness of Protected Speech*, 7 WM. & MARY BILL OF RTS. J. 305, 309 (1999) (As "Ronald Dworkin recently commented: 'The United States stands alone even among democracies, in the extraordinary degree to which its [C]onstitution protects freedom of speech and of the press.'"); Ronald J. Krotoszynski, *A Comparative Perspective on the First Amendment*, 78 TUL. L. REV. 1549 (2004) (German speech protections more limited than those in the U.S.); Caroline Uyttendaele & Joseph Dumortier, *Free Speech on the Information Superhighway*, 16 J. MARSHALL J. COMPUTER & INFO. L. 905 (1998) (free speech more limited in Europe; speech subject to restrictions when it harms the public order); Daria Vaisman, *Turkey's Restriction, Europe's Problem* ¶¶ 2-3, http://www.opendemocracy.net/democracy-turkey/free_speech_3952.jsp (French law makes it a crime to insult foreign heads of state); Reporters Without Borders Briefs for July 2007, *Spain: Gara and Deia Journalists Now Face Charges of "Insulting King,"* http://www.rsf.org/article.php3?id article=23090 (journalists who published satire of king "face[d] charges of 'insulting the king' under article 491 of the criminal code").

[9] *See, e.g.*, *supra* n.5; Compl. ¶ 124 ("Defendants have also acted contrary to public policy by infringing upon the freedom of speech and expression of the general public."); *Morton Sklar on Yahoo! human rights lawsuit* (Apr. 21, 2007), http://www.brightcove.com/title.jsp?title=769385554&channel=27638673 (webcast at 06:23-8:16) ("The U.S. Government outlaws these kinds of behaviors [against people] who are in *favor of free press and free speech. So when Yahoo! says that the people involved are just abiding by Chinese law, that may be the case, but the laws are unlawful in terms of U.S. and international law and U.S. law requires just the opposite.* . . . Foreign governments have the right to request information from Yahoo! pursuant to court orders . . . . China is using it to persecute people for the communication of ideas. And that's not something the United States government or a United States corporation should go along with.").

1   speech.  This would be a direct affront to the PRC's sovereignty.  *See Yahoo!*, 169 F. Supp. 2d at

2   1186 ("A basic function of a sovereign state is to determine by law what forms of speech and

3   conduct are acceptable within its borders").

4        b.  Judging The PRC's Treatment Of Plaintiffs**.**  The complaint also requires the Court to

5   question the PRC's criminal cases against Wang and Shi—from the lawfulness of their arrest, to

6   the fairness of their trials and appeals, to their treatment in prison.  *See* Compl. ¶¶ 37-45, 57-63.

7   Plaintiffs allege that the PRC violated their rights at every turn: "[h]igh level officials of the PRC

8   are involved in the abuses"; the PRC is "falsely imprison[ing]" plaintiffs.  *Id*. ¶¶ 45, 141, 105-08.

9   Plaintiffs even ask this Court to order defendants to take "affirmative action . . . to secure

10  [plaintiffs'] release."  *Id*. at 34 ¶ (d).  Adjudicating the legitimacy of plaintiffs' prosecution,

11  conviction, and incarceration—much less granting quasi-habeas corpus relief—openly and

12  directly challenges the PRC's sovereignty.

13       c.  Judging the PRC's Ability to Gather Evidence.  Plaintiffs also seek an order that would

14  require defendants to selectively violate China's laws, including orders compelling disclosure of

15  evidence.  *See* Compl. ¶ 6 (plaintiffs seek "injunctive relief to stop any further disclosures of user

16  information in order to prevent such . . . abuses from taking place in the future").

17       Defendants cannot be expected, let alone ordered, to violate another nation's laws.  Like

18  any sovereign state, China requires companies operating within its jurisdiction to comply with its

19  laws.  *Cf. Dayton Coal & Iron Co. v. Barton*, 183 U.S. 23, 24 (1901).  This sovereign power, as

20  has long been recognized, includes the right to compel the production of evidence.  *See Consol.*

21  *Rendering Co. v. Vermont*, 207 U.S. 541, 552 (1908).  Article 45 of the PRC Criminal Procedure

22  Law provides that "the public security organs shall have the authority to collect or obtain

23  evidence" in connection with investigations. [10]  Anyone who receives such a request "shall

24  provide truthful evidence," and may not "falsif[y], conceal[], or destroy[]" evidence.  Compliance

25  with these requests is mandatory and may not be challenged in the Chinese courts.[11]  It would be

---

26  [10] Appendix B, Tab 4.

27  [11] Section 2 of Article 1 of the People's Supreme Court's Judicial Interpretations on the People's
    Republic of China Administrative Procedure Law (Appendix B, Tab 9) specifically provides that
28  the courts shall not accept cases initiated by citizens, legal persons, or other organizations

1   a serious affront to the PRC's sovereignty even to entertain the issue of whether companies can

2   disregard such requests.

3                   **2.   The *Sabbatino* Factors All Favor Dismissal.**

4       Courts consider four factors in determining whether to dismiss on "act of state" grounds:

5   • *First*, courts examine the "degree of codification or consensus concerning [the]

6       particular area of international law." *Sabbatino*, 376 U.S. at 428.  The less consensus,

7       the stronger the argument is for declining jurisdiction.

8   • *Second*, courts consider the case's impact on "foreign relations"; the greater the

9       impact, the greater the "justification" for dismissing the case. *Id.*

10  • *Third*, a court has greater authority to hear a case if "the government which

11      perpetrated the challenged act of state is no longer in existence." *Id.*

12  • *Fourth*, courts in the Ninth Circuit consider "whether the foreign state was acting in

13      the public interest." *Liu v. Republic of China*, 892 F.2d 1419, 1432 (9th Cir. 1989).  If

14      the state was so acting, the court has less leeway to proceed with the case.[12]

15      *The First Factor.*  There is nothing remotely close to "codification or consensus" under

16  international law to support plaintiffs' claims. *Sabbatino*, 376 U.S. at 428.  As explained in

17  Section IV.E, *infra*, U.S., California, and international law all treat communications with law

18  enforcement officials as privileged acts that cannot give rise to liability.  It is likewise an axiom

19  of international law that "a state may not require a person . . . to refrain from doing an act in

20  another state that is required by the law of that state."  RESTATEMENT (THIRD) OF FOREIGN

21  RELATIONS § 441 (1987).  The first *Sabbatino* strongly favors dismissal.

22      *The Second Factor.*  The implications of this case for foreign relations—the most

23  important *Sabbatino* factor, *see Doe v. Qi*, 349 F. Supp. 2d 1258, 1296 (N.D. Cal. 2004)—can

24  _____

25  concerning the acts of state public security agencies and state security bureaus that are authorized
    by the PRC Criminal Procedure Law.  Article 28 of Provisions on the Procedures for the
    Handling of Administrative Review Cases by Public Security Bodies states that certain cases,

26  including "objections concerning criminal judicial acts such as compulsory measures and criminal
    investigation measures carried out in accordance with laws in criminal cases" may not be heard.

27  [12] Although it militates in favor of dismissal, defendants disagree that this fourth factor is an
    appropriate consideration under *Sabbatino*.  Because Ninth Circuit law included it, defendants

28  simply note their objection to preserve it.

1  hardly be overstated.  A cornerstone of U.S. foreign policy is maintaining strong and carefully

2  managed relations with the PRC.[13]  Unlike rogue or smaller states, often implicated in ATS cases,

3  China is a world power, a significant trading partner, and a fellow permanent member of the U.N.

4  Security Council.[14]  It can be expected to act decisively in protecting its sovereignty and guarding

5  against perceived encroachments on its authority.[15]  Both the Executive Branch and China have

6  expressed the strong view that the United States must manage its relations with the PRC without

7  interference from the courts.[16]

8         Though openly critical of China's human rights record, the United States has made the

9  policy judgment to actively engage China, promote investment there by American companies,

10  and take a "carrot" rather than "stick" approach to urging reform.[17]  As the Executive Branch has

11  consistently urged, ATS cases can threaten U.S. foreign policy toward countries like China,

12

13  [13] *See, e.g.*, Robert B. Zoellick, Deputy Sec'y of State, *Whither China: From Membership to Responsibility?*, Remarks to National Committee on U.S.-China Relations (Sept. 21, 2005), *available at* http://www.state.gov/s/d/former/zoellick/rem/53682.htm.

14

15  [14] *See, e.g.*, Thomas J. Christensen, Deputy Assistant Sec'y for East Asian and Pacific Affairs, U.S.-China Relations, Statement Before the House Committee on Foreign Affairs, Subcommittee on Asia, the Pacific and the Global Environment (Mar. 27, 2007), http://www.state.gov/p/eap/rls/rm/2007/82276.htm; Evans J.R. Revere, Acting Assistant Sec'y for East Asian and Pacific Affairs, *The Bush Administration's Second-Term Foreign Policy Toward East Asia*, Remarks to Center for Strategic Int'l Studies Conference (May 17, 2005), http://www.state.gov/p/eap/rls/rm/2005/46420.htm; UN Security Council, Membership in 2007, http://www.un.org/sc/members.asp.

16

17

18

19  [15] *See, e.g.*, U.S. Dep't of State, Bureau of East Asian and Pacific Affairs, *Background Note: China* (Jan. 2007), http://www.state.gov/r/pa/ei/bgn/18902.htm.

20  [16] *See, e.g.*, Ex. E (Statement of Interest of the United States, *Doe v. Qi*, Case No. C02 0672 CW (EMC), Tab A at 2-3, 7 (filed Jan. 16, 2004) (condemning human rights abuses by PRC, but urging that diplomatic means are far more effective than litigation)); Ex. F (Letter from Hon. John B. Bellinger III to Hon. Peter D. Keisler re: *Li Weixum, et al. v. Bo Xilai*, No. 1:04CV00649 (D.D.C.) at 2-3 (July 24, 2006) (same)).

21

22  [17] *See, e.g., id.*; William J. Clinton, Remarks by the President at Signing of China Permanent Normal Trade Relations (Oct. 10, 2000), http://www.clintonfoundation.org/legacy/101000-speech-by-president-at-signing-of-china-pntr.htm ("the more China opens its markets, the more it unleashes the power of economic freedom, the more likely it [will] be to more fully liberate the human potential of its people"); U.S. Dep't of State, Bureau of East Asian and Pacific Affairs, Background Note: China (Jan. 2007), http://www.state.gov/r/pa/ei/bgn/18902.htm ("*For seven consecutive administrations, U.S. policy has been to encourage China's opening and integration into the global system.*  As a result, China has moved from being a relatively isolated and poor country to one that is a key participant in international institutions . . . .  The State Department's annual China human rights and religious freedom reports have noted China's well-documented abuses of human rights . . . . .  At the same time, *China's economic growth and reform since 1978 has improved dramatically the lives of hundreds of millions of Chinese, increased social mobility, and expanded the scope of personal freedom.*").

23

24

25

26

27

28

1    where "constructive [economic] engagement has been advocated as a means of advancing human

2    rights."  Appx. A, Ex. D (*Doe v. Unocal*, Supp. Br. for the U.S. as Amicus Curiae, Case No. 00-

3    56603 at 12-13 (9th Cir. Aug. 25, 2004).

4        This case is a prime example.  It is an admitted effort by plaintiffs and their counsel to

5    "convince other U.S. companies to think twice before doing business with the Chinese

6    government."[18]  Indeed, the very purpose of this lawsuit is to attack specific laws in China and the

7    PRC's ability and authority to enforce them.

8        This Court's opinion and analysis in *Doe v. Qi* are instructive.  In *Qi*, 349 F. Supp. 2d at

9    1264, plaintiffs sued two PRC officials, accusing them of commanding the torture of proponents

10   of Falun Gong.  After considering the views of the U.S. and Chinese governments regarding the

11   policy impact of the case, the Court declined to dismiss the case in its entirety, choosing instead

12   to craft a narrow default judgment affording limited declaratory relief.  *See id.* at 1266.  The

13   Court reasoned that the PRC officials' acts of torture so clearly violated Chinese and international

14   law, as well as U.S. policy statements condemning such torture, that it would not contradict U.S.

15   foreign policy to declare that the two officials had deviated from these  norms.  *See id.* at 1266-

16   67.

17       Here, based on plaintiffs' strategic framing of their complaint, no such compromise is

18   available.  Plaintiffs have chosen not to name the PRC, PRC prison guards, or PRC law

19   enforcement personnel as defendants.  But considering a declaration on whether defendants did

20   anything wrong—let alone the monetary and injunctive relief plaintiffs seek—does not obviate

21   litigating the legitimacy of Chinese laws regulating speech and the PRC's ability to enforce them.

22   Undertaking such litigation might well be viewed as a profound rebuke of the PRC and risk

23   poisoning U.S. relations with a significant world power.  It might also provoke the PRC into

24   precipitously reacting to the perceived encroachment by cracking down more harshly on political

25   speech or even harming plaintiffs.  *Cf. Sabbatino*, 376 U.S. at 423 (act-of-state doctrine rests on

26

27   ──────────────
     [18] World Organization for Human Rights USA, "Major lawsuit filed by Human Rights USA
28   against Yahoo! highlights the internet company's complicity in human rights abuses in China,
     (Apr. 18, 2007), http://humanrightsusa.blogspot.com/search/label/human%20rights.

1    the "strong sense of the Judicial Branch that its engagement in the task of passing on the validity

2    of foreign acts of state may hinder rather than further this country's pursuit of goals both for itself

3    and for the community of nations").

4         In contrast to *Qi*, the policy implications of this case extend well beyond a mere

5    reaffirmation that the United States condemns torturing political dissidents. Entertaining this

6    lawsuit may invite challenges to U.S. policy and threaten American law enforcement efforts. For

7    example, were this Court to rule, as plaintiffs request, that defendants acted wrongfully in

8    respecting the PRC's official requests for evidence, nothing would stop courts in other countries

9    from issuing similar rulings about American processes and laws. A court in France could issue an

10   injunction mandating that French companies doing business in America refuse to provide

11   evidence in cases where the defendant might be subject to the death penalty. The Executive

12   Branch is clearly opposed to inviting such responses and has recognized this as a real threat. *See*

13   Appx. A, Ex. E (Statement of Interest of U.S., *Doe v. Qi* at 8 (death penalty example)); Ex. G

14   (*Matar v. Dicther*, Case No. 05 Civ. 10270 (WHP), Statement of Interest of the U.S. at 22

15   (S.D.N.Y. Nov. 29, 2006). Similarly, corporations doing business in the United States could

16   reasonably fear that complying with American requests for information might subject them to

17   civil liability in the United States or abroad. Suits under the ATS challenging the U.S. "War on

18   Terror," *see* Scott Shane, *Suit Over C.I.A. Program*, N.Y. TIMES, May 31, 2007, are one recent

19   example. To follow the path plaintiffs urge would seriously risk undermining U.S. law

20   enforcement efforts.

21        These policy concerns dramatically distinguish this case from *Qi*, where the defendants

22   were accused of engaging in and commanding acts of universally condemned violence, or the

23   more typical ATS case where a corporate defendant is accused of hiring rogue military forces to

24   commit abuses on its behalf to protect a major infrastructure project. Here, the issue is whether

25   defendants violated international, U.S., and California law by complying with Chinese law in

26   connection with a criminal investigation. American courts cannot be placed in the position of

27   deciding whether law enforcement activities carried out by a foreign state are illegitimate—at

28

1    least not without significantly jeopardizing U.S. foreign relations and law enforcement interests.

2    For these reasons, the second and "central" *Sabbatino* factor mandates dismissal.

3         *The Third Factor.*  As this Court held in *Qi*, 349 F. Supp. 2d at 1303, the third *Sabbatino*

4    factor "clearly weighs in favor of applying the act of state doctrine," because "the PRC still

5    exist[s]."  Nor is there any evidence that the PRC has retreated from or repudiated its position that

6    plaintiffs should be incarcerated or that it has a right to enforce its own criminal laws.  *Cf. Bigio*

7    *v. Coca-Cola Co.*, 239 F.3d 440, 453 (2d Cir. 2000) (declining to dismiss under act-of-state

8    doctrine where government  "ha[d] apparently repudiated the acts in question").

9         *The Fourth Factor.*  This final factor—"whether the foreign state was acting in the public

10   interest," *Liu*, 892 F.2d at 1432—also favors dismissal.  The creation and enforcement of laws

11   regulating speech within a sovereign's borders are quintessentially acts of a sovereign serving the

12   public's interest.  *See Yahoo!*, 169 F. Supp. 2d at 1186.  That the government is China and the

13   laws are inimical to our beliefs does not change the analysis or conclusion.  *Cf. In re Quarles*, 158

14   U.S. 532, 535-36 (1895) (It is the duty and the right . . . of every citizen to assist in prosecuting,

15   and in securing the punishment of, any breach of the peace of the United States.").

16        Again, *Qi* is instructive.  This Court rejected the argument that torture and arbitrary

17   detention of Falun Gong members were actions in the public interest, even though the PRC had

18   argued they posed a threat to public health and safety.  *See Qi*, 349 F. Supp. 2d at 1306.  Unlike

19   *Qi*, this case implicates not only the PRC's treatment of political dissidents, but also the propriety

20   of China's laws regulating speech, the right of the PRC to compel assistance to enforce its laws,

21   and ultimately the independence of the sovereign government of China.  *Cf. Quarles*, 158 U.S. at

22   537.

23        **B.**    **This Case Should Be Dismissed Under Principles Of International Comity.**

24        Comity counsels courts to decline jurisdiction in cases that call into question executive,

25   legislative, or judicial acts of foreign states.  *See Societe Nationale Industrielle Aerospatiele v.*

26   *United States Dist. Court for the Dist. of Iowa*, 482 U.S. 522, 544 n.27 (1987).  The *Restatement*

27   *(Third) of Foreign Relations Law* ("RESTATEMENT") sets forth eight factors to determine

28

"[w]hether exercise of jurisdiction over a person or activity is unreasonable."  RESTATEMENT, *supra*, § 403.[19]  All eight factors militate against exercising jurisdiction in this case:

- The first two factors are satisfied because the indisputable locus of this case is China. *See id.* at § 403(a), (b).

- The third, fifth, and sixth factors are satisfied because evidence-gathering laws are "traditional" and important parts of law enforcement efforts the world over.  *See id.* at § 403(c), (e), (f).  The PRC's prohibitions on speech, while misguided, are not uncommon, and a sovereign's ability to legislate and enforce its own laws is both "generally accepted" and an important part of the "international political, legal, [and] economic system."  *Id.* at § 403(c), (e).

- The fourth factor is satisfied because companies doing business abroad have a "justified expectation" that they should comply with local law.  *Id.* at § 403(d).  Plaintiffs' own authorities recognize companies are "obliged" to do so.  Human Rights Watch Letter at 2 ¶ 3 (quoted in Compl. ¶ 27).  The U.S. government mandates compliance as well.  *See* BUREAU OF ECONOMIC AND BUSINESS AFFAIRS, OECD GUIDELINES FOR MULTINATIONAL ENTERPRISES 5 (2002).

- The seventh and eighth factors are satisfied because the PRC has an exceedingly strong interest in compliance with its sovereign orders. See RESTATEMENT, *supra*, § 403(g), (h).  Other sovereign states would no doubt object to an American court prescribing which laws American companies (*e.g.*, Yahoo!), and foreign companies

---

[19] (a) the link of the activity to the territory of the regulating state, *i.e.,* the extent to which the activity takes place within the territory, or has substantial, direct, and foreseeable effect upon or in the territory;

(b) the connections, such as nationality, residence, or economic activity, between the regulating state and the person principally responsible for the activity to be regulated, or between that state and those whom the regulation is designed to protect;

(c) the character of the activity to be regulated, the importance of regulation to the regulating state, the extent to which other states regulate such activities, and the degree to which the desirability of such regulation is generally accepted;

(d) the existence of justified expectations that might be protected or hurt by the regulation;

(e) the importance of the regulation to the international political, legal, or economic system;

(f) the extent to which the regulation is consistent with the traditions of the international system;

(g) the extent to which another state may have an interest in regulating the activity; and

(h) the likelihood of conflict with regulation by another state.

1    (*e.g.*, YHKL) must obey when doing business in countries other than the U.S.  *See id.*

2    §§ 403(g), (h); *Rivendell Forest Prods., Ltd. v. Canadian Forest Prods.*, 810 F. Supp.

3    1116, 1119 (D. Colo. 1993).

4    **C.    This Case Should Be Dismissed Under The Political Question Doctrine.**

5    This case presents a nonjusticiable "political question," *Vieth v. Jubelirer*, 514 U.S. 267,

6    277-78 (2004), and should be dismissed because it "challenges the official acts of an existing

7    government in a region where diplomacy is delicate and U.S. interests are great."  *Corrie*, 403 F.

8    Supp. 2d at 1032.  In cases that "touch on foreign relations," the political question doctrine

9    requires the Court to undertake a "discriminating analysis of the particular question posed, in

10   terms of the history of its management by the political branches, of its susceptibility to judicial

11   handling in light of its nature and posture."  *Baker v. Carr*, 369 U.S. 186, 211-12 (1962).

12   Consideration of the traditional "political question" factors set forth in *Baker v. Carr*,

13   confirm that this case should be dismissed.  First, management of foreign relations is plainly

14   "commit[ed]" to the coordinate "political branches."  *Id.*  at 217; *American Ins. Ass'n v.*

15   *Garamendi*, 539 U.S. 396, 414 (2003); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363,

16   383-86 (2000).  Second, this Court could not entertain plaintiffs' complaint without expressing a

17   "lack of respect" for Executive Branch policy toward China, *Baker*, 369 U.S. at 217, which

18   disfavors lawsuits such as this one, encourages investment, encourages compliance with local

19   law, and elects to use diplomatic pressure to improve human rights.  *Cf. Corrie*, 403 F. Supp. 2d

20   at 1032 ("For this court to preclude sales of Caterpillar products to Israel would be to make a

21   foreign policy decision and to impinge directly upon the prerogatives of the executive branch of

22   government.").  Third, were it allowed to proceed, this lawsuit would represent "multifarious

23   pronouncements by various departments on one question."  *Baker*, 369 U.S. at 217.

24   "Dismissal is appropriate if *any one* of these . . . factors is 'inextricable' from the case."

25   *Corrie*, 403 F. Supp. 2d at 1032 (quoting *Alperin*, 410 F.3d at 544); *Joo v. Japan*, 413 F.3d 45,

26   49-53 (D.C. Cir. 2005).  Here, all three factors are present.  Practical concerns, which help guide

27   the political question analysis, also counsel in favor of dismissal.  Given Shi's and Wang's

28   unavailability to give testimony in this case, the parties' inability to depose PRC officials

C07-02151 CW
YAHOO!'S MOT. TO DISMISS SEC. AM.          - 14 -
COMPL.

1  regarding plaintiffs' allegations, and the unavailability of other witnesses and documents in

2  China, *see* Def. Yahoo!, Inc.'s Mot. For An Early Case Mgmt. Conf. & Order at 6-7, 10-11 (filed

3  June 21, 2007), "there is a very real possibility that the parties might not be able to compile all the

4  relevant data, thus making any adjudication of this case both difficult and imprudent." *Anderman*

5  *v. Fed. Rep. of Austria*, 256 F. Supp. 2d 1098, 1112 (C.D. Cal. 2003); *see also O.N.E. Shipping*

6  *Ltd. v. Flota Mercante Grancocolombiana, S.A.*, 830 F.2d 449, 453 (2d Cir. 1987) (act of state

7  doctrine requires dismissal "[w]hen the causal chain between a defendant's alleged conduct and

8  plaintiff's injury cannot be determined without an inquiry into the motives of the foreign

9  government").

10  **IV.     PLAINTIFFS HAVE FAILED TO STATE A COGNIZABLE CLAIM.**

11      Even if justiciable, plaintiffs' complaint  must be dismissed because it fails to state a claim

12  upon which relief can be granted.  *See* FED. R. CIV. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 127

13  S. Ct. 1955, 1964-65 (2007).  Plaintiffs' claims under the ATS, TVPA, ECPA, and California law

14  all fail as a matter of law.  Moreover, defendants' conduct is privileged and not actionable.

15      **A.     Plaintiffs Have Failed To State A Claim Under The ATS.**

16      On their face, plaintiffs' four ATS claims—the First through Fourth Claims for Relief—

17  have no basis in law.

18      **1.  Plaintiffs' Allegations Do Not Meet *Sosa*'s "High Bar."**

19      In *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), the Supreme Court established a

20  framework for addressing ATS claims.  *Sosa* held that, while the ATS grants district courts

21  jurisdiction over "any civil action by an alien for a tort only, committed in violation of the law of

22  nations," 28 U.S.C. § 1350, the statute itself does not create a cause of action, *see Sosa*, 542 U.S.

23  at 713-14.  If any cause of action exists under the ATS, the law of nations must provide it.  *Sosa*

24  set a "high bar" for recognizing such claims, holding that "the ATS [may] furnish jurisdiction"

25  for only a "relatively modest set of actions."  *Id.*  at 720, 727.  As *Sosa* observed, courts "have no

26  congressional mandate to seek out and define new and debatable violations of the law of nations,"

27  such claims may have "collateral consequences" on the "foreign relations of the United States,"

28  and widespread recognition of ATS claims would permit civil suits to proliferate "without the

1    check imposed by prosecutorial discretion." *Id*. at 727-28.

2         To overcome *Sosa*'s high bar, plaintiffs face three burdens.  They must establish that the

3    specific facts of their case amount to a violation of "definable, universal and obligatory"

4    international norm that is "accepted by the civilized world and defined with . . . specificity." *Id*.

5    at 720, 725.  They must show that "international law extends the scope of liability for a violation

6    of a given norm *to the perpetrator being sued*." *Id*. at 732 & n.20.  And they must overcome the

7    many prudential reasons to dismiss an ATS case, including objections from the "political

8    branches." *See id*. at 728 n.23.  Plaintiffs meet none of these burdens.

9              **2.  The ATS Does Not Apply Extraterritorially.**

10        The text of the ATS says nothing about the statute's extraterritorial application to aliens

11   not harmed on American soil.  Absent such a "clear express[ion]" from Congress in the "language

12   of" the ATS, the statute cannot be read to apply beyond outside our nation's boundaries. *EEOC*

13   *v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991).  In the wake of *Sosa*, the United States has

14   argued forcefully that the ATS should not apply where plaintiffs alleged they were harmed abroad

15   by their own governments. *See, e.g.*, Br. of the U.S. as Amicus Curiae, *The Presbyterian Church*

16   *of Sudan v. Talisman Energy, Inc.*, Case No. 07-0016, at 5-12 (2d Cir. May 15, 2007) ("U.S.

17   Talisman Br.").  Not only does the text of the ATS *not* mention extraterritorial claims, *see id*. at

18   8-9, a review of the legislative history in 1789—when Congress enacted the ATS—shows the

19   statute was enacted to do nothing more than provide foreigners with a forum to bring suit in the

20   United States if they were injured here, *see id*. at 6-8.  Although several courts in this circuit,

21   including this one, have assumed that the ATS may apply extraterritorially, *cf. id.* at 6 n.2,

22   federal statutes should presumptively *not* be so construed, *see id*. at 9-10.

23            **3.  The Norms Plaintiffs Invoke Are Not Actionable Under The ATS.**

24        Even if the ATS applies, plaintiffs' claims for torture and cruel and inhuman punishment

25   are preempted, and their claims for free speech and forced labor cannot be recognized under *Sosa*.

26        a.  Preemption.  Plaintiffs Shi and Wang's "First and Second Claims for Relief" are for

27   "Torture" and "Cruel, Inhuman, or Degrading Treatment or Punishment" in violation of the ATS

28   and TVPA.  Compl. ¶¶ 70-83.  In enacting the TVPA, Congress occupied the field and precluded

1   enforcement of these international law norms under the ATS.  *See Enahoro v. Abubakar*, 408

2   F.3d 877, 886 (7th Cir. 2005); *Corrie v. Caterpillar, Inc*., 403 F. Supp. 2d 1019, 1025 (W.D. Wa.

3   2005).  Although some courts have disagreed with this conclusion, *see, e.g.*, *Doe v. Saravia*, 348

4   F. Supp. 2d 1112, 1145 (E.D. Cal. 2004); *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416

5   F.3d 1242, 1251 (11th Cir. 2005), no post-*Sosa* opinion to the contrary binds this Court, and the

6   reasoning in *Enahoro* is most persuasive.  As *Enahoro* explained, and *Sosa* made clear:

7          "Since many attempts by federal courts to craft remedies for the violation of new
           norms of international law would raise risks of adverse foreign policy
8          consequences, they should be undertaken, if at all, with great caution."  [*Sosa*, 542
           U.S. at 727-28.]  It is [thus] hard to imagine that the *Sosa* Court would approve of
9          common law claims based on torture and extrajudicial killing when Congress has
           specifically provided a cause of action for those violations and has set out how
10         those claims must proceed.

11  408 F.3d at 885-86.  Shi and Wang's First and Second Claims for Relief stand or fall on whether

12  they can meet the standards Congress set forth in TVPA.  Plaintiffs' failure to state a claim under

13  the TVPA, and their torture claims specifically, are addressed in Section IV.B, *infra*, and in defs.'

14  Alternative Mot. for a More Definite Statement (filed herewith).

15         b.  Free Speech.  Shi and Wang's "Third Claim for Relief" is for "Arbitrary Arrest and

16  Prolonged Detention."  Compl. at 24-25.  The complaint alleges plaintiffs were wrongly arrested

17  and detained "for an unlawful purpose in violation of the rights to freedom of speech, association,

18  and assembly" and because of their "participation in, and support of, the peaceful exercise of their

19  rights of free speech and free association."  *Id*. ¶¶ 85-86.  As explained above, the right to free

20  expression is not guaranteed in China, *supra* at 5-6, many parts of the Western world, *see, e.g.*,

21  Douglas-Scott, *supra*, at 309, or by the law of nations, *see Guinto v. Marcos*, 654 F. Supp. 276,

22  280 (S.D. Cal. 1986).

23         *Sosa* instructs that "federal courts should not recognize private claims under federal

24  common law for violations of any international law norm with less definite content and

25  acceptance among civilized nations than the historical paradigms familiar when [the ATS] was

26  enacted."  542 U.S. at 732.  Plaintiffs' arbitrary detention claim, which rests on the premise that

27  plaintiffs may not be incarcerated for engaging in political speech, comes nowhere close.

28

1    *Sosa*, 542 U.S. at 730-31, pointed to the Supreme Court's definition of the law of piracy in

2    *United States v. Smith*, 5 Wheat. 153 (1820), as an example of the "specificity with which the law

3    of nations" must be defined before courts recognize a claim under the ATS.  In *Smith*, the Court,

4    listing 20 pages of citations dating back centuries, noted that  "[t]here is scarcely a writer on the

5    law of nations who does not allude to piracy as a crime of *settled and determinate* nature; and

6    whatever may be the diversity of definitions, in other respects, *all* writers concur in holding that

7    robbery, or forcible depredations upon sea, *animo furandi*, is piracy."  *Id*. at 161.  There is no

8    such international consensus either *protecting* the right to engage in political speech or

9    *prohibiting* nations from criminalizing it.

10          c.  Forced Labor.  Plaintiff Shi's "Fourth Claim for Relief" is for "Forced Labor."  Compl.

11   ¶¶ 91-96.  However, the complaint fails to describe what labor Shi was forced to do and instead

12   describes the conditions at his prison generally.  *See id*. ¶ 66.  As this Court and others have

13   recognized, "whether a claim under the [ATS] lies . . . turns on whether the specific facts (not the

14   general characterization of the claim) violates international norms."  *Qi*, 349 F. Supp. 2d at 1278;

15   *Sosa*, 542 U.S. at 737-38 (while "some policies of arbitrary detentions" might be actionable,

16   plaintiffs' detention was not); *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82,

17   93-94 (D.C. Cir. 2002); *see also Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) ([a]

18   formulaic recitation of the elements of a cause of action will not do.").

19          Shi's claim must also be rejected because forced labor in prison, however offensive, is far

20   from universally condemned.  There is no "settled and determinate" definition of forced labor on

21   which "all writers concur."  *Smith*, 5 Wheat. at 161.  Plaintiffs rely on the definition found in the

22   1930 Forced Labor Convention of the International Labor Organization, *see* Compl. ¶69 (f), but

23   the Convention's broad definition ("all work or service which is extracted from any person under

24   the menace of penalty and for which said person has not offered himself voluntarily," Convention

25   art. 2), is riddled with exceptions, including one for prison labor.[20]  The Supreme Court of the

---

[20] *See, e.g.*, *id*. art. 2 (excluding from definition "[a]ny work or service exacted from any person as a consequence of a conviction in a court of law, provided that the said work or service is carried out under the supervision and control of a public authority and that the said person is not hired to or placed at the disposal of private individuals, companies or associations"); *see also id*. art. 7 (permitting local "chiefs" to "have recourse to forced or compulsory labor") *id*. art. 10

1   Netherlands has held that the ILO's definition of "forced and compulsory labour" did not

2   "contain[] norms that are so precisely defined as to be eligible by virtue of their content for direct

3   application and hence to be capable of being binding on all persons." *E.O. v. Openbaar*

4   *Ministerie*, HR 18 Apr. 1995, NJ 1995, 619, *reproduced in* 28 NETH. Y.B. INT'L L. 336-38

5   (1997). Even if the ILO Convention's definitions were precise enough, *Sosa* held that such

6   conventions are not "self-executing" and do not "create obligations enforceable in the federal

7   courts." *Sosa*, 542 U.S. at 735.

8        To be actionable under the ATS, an alleged tort *cannot* involve the violation of any norm

9   with "less . . . acceptance among civilized nations than the historical paradigms." *Sosa*, 542 U.S.

10  at 732. Blackstone, writing in the era the ATS was enacted, *see id.* at 714-15, concluded that the

11  only international law violations recognized were those "in which *all* the learned of *every* nation

12  agree." 4 W. BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 67 (1769) at 67. The

13  ILO Convention on which plaintiffs rely does not reflect universal consensus: the United States

14  has not ratified it; nor have China, South Korea, or several other nations.[21]

15            **4.   Defendants Cannot Be Held Liable On Plaintiffs' ATS Theories.**

16       Even recognizing the norms plaintiffs assert: (a) these norms (torture, *etc.*) apply only to

17

---

18  (permitting forced labor "exacted as a tax"); *id.* art. 18 (permitting forced labor "for the transport
    of persons or goods, such as the labor of porters or boatmen"). In fact, as abhorrent as it is to

19  some, forced prison labor is constitutional in the United States. *See Pollock v. Williams*, 322 U.S.
    4, 17-18 (1944) ("Forced labor in some special circumstances may be consistent with the general

20  basic system of free labor. For example, forced labor has been sustained as a means of punishing
    crime, and there are duties such as work on highways which society may compel.").

21  [21] *See* "Ratifications Of The Fundamental Human Rights Conventions By Country,"
    http://www.ilo.org/ilolex/english/docs/declworld.htm. The absence of a universal norm

22  prohibiting forced labor is only underscored by its absence among international law violations in
    the *Restatement (Third) of Foreign Relations Law of the United States*. In *Sosa*, 542 U.S. at 737,

23  the Court looked to Section 702 of the *Restatement* to determine whether the arbitrary arrest at
    issue in the case was actionable. *Sosa* rejected plaintiffs' claim even though prolonged arbitrary

24  detention is included in Section 702, reasoning that that claim "expresse[d] an aspiration that
    exceeds any binding customary rule having the specificity we require." *Id.* at 738. Section 702

25  contains no mention of forced labor; and in 1993, it was practiced in more than 40 countries,
    including Brazil, China, India, Pakistan, and Bulgaria. *See* 1993 Country Reports on Human

26  Rights Practices, Bureau of Democracy, Human Rights, and Labor, U.S. Department of State
    (Jan. 31, 1994), http://dosfan.lib.uic.edu/ERC/democracy/1993_hrp_report/93hrp_report_toc.html

27  That a rule of international law "as stated is . . . far from full realization . . . is evidence against its
    status as binding law; and an even clearer point against the creation by judges of a private cause

28  of action to enforce the aspiration behind the rule claimed." *Sosa* 542 U.S. at 738 n.29.

1    *states*, not private actors like defendants; and (b) defendants cannot be held liable on an aiding-

2    and-abetting theory.  As *Sosa* makes clear, in evaluating whether to permit ATS liability, courts

3    must ask "whether international law extends the scope of liability for a violation of a given norm

4    *to the perpetrator being sued, if the defendant is a private actor such as a corporation.*"  *Sosa*,

5    542 U.S. at 732 n.20.

6         a.  State Action.  International law generally applies only to nations, not to private parties.

7    *See* RESTATEMENT, *supra*, Part I, ch. 1, intro. note; *In re Estate of Marcos Human Rights Litig.*,

8    978 F.2d 493, 501-02 (9th Cir. 1992).  Although some courts have expanded international law to

9    cover *private* violations of an extremely narrow list of norms, there is little dispute that the four

10   norms alleged by plaintiffs apply *only* to states:

11   • The *Restatement* lists "piracy, slave trade, attacks on or hijacking of aircraft, genocide,

12      war crimes, and perhaps certain acts of terrorism" as the only offenses for which

13      individuals may be held liable under international law.  RESTATEMENT, *supra*, § 404.

14   • Several courts have held that *private* actors may *not* be held liable for torture.[22]

15   • Courts have rejected arbitrary imprisonment claims against non-state actors.[23]

16   • Courts do not, and should not, recognize international law claims against private

17      corporations for cruel punishment, violations of free speech rights, or forced labor.

18        b.  Aiding and Abetting.  As the Executive Branch and courts and scholars who read *Sosa*

19   correctly have rightly concluded, there is no civil aiding-and-abetting liability under the ATS.[24]

---

[22] *See, e.g.*, *Kadic v. Karadzic*, 70 F.3d 232, 243 (2d Cir. 1995); *Tel-Oren v. Lybian Arab Republic*, 726 F.2d 774, 795 (D.C. Cir. 1984) (Edwards, J., concurring); *Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10, 14-15 (D.D.C. 2005); *Abdullahi v. Pfizer, Inc.*, 2002 WL 31082956, at *5 (S.D.N.Y. Sept. 17, 2002).

[23] *See Wiwa v. Royal Dutch Petroleum*, 2002 U.S. Dist. LEXIS 3293 at *37-40 (S.D.N.Y. 2002).

[24] *See* U.S. Talisman Br. at 12-28; Curtis A. Bradley et al., Sosa, *Customary International Law and the Continuing Relevance of* Erie, 120 HARV. L. REV. 870, 924-29 (2007); *Exxon*, 393 F. Supp. 2d at 24; *In re South Af. Apartheid Litig.*, 346 F. Supp. 2d 538, 549-51 (S.D.N.Y. 2004).
    Some courts have held to the contrary, *see, e.g.*, *Presbyterian Church of Sudan v. Talisman*, 453 F. Supp. 2d 633 (S.D.N.Y. 2006), but whether such a norm exists is an open question in the Ninth Circuit.  In *Rio Tinto*, a panel majority initially concluded that "post-*Sosa*, claims for *vicarious liability* for violations of *jus cogens* norms *are actionable* under the [ATS]."  *Sarei v. Rio Tinto*, 456 F.3d 1069, 1078 (9th Cir. 2006) (underline added).  But on rehearing, the panel modified its opinion and expressly declined to resolve the question.  *See Sarei v. Rio Tinto*, 487 F.3d 1193, 1203 (9th Cir. 2007).  On August 20, 2007, the Ninth Circuit granted petition for rehearing en banc and vacated the panel majority's opinion.  *See* Ex. H (Order).  It is unclear

1    Even accepting such a theory, defendants' conduct does not qualify—plaintiffs do not allege that

2    defendants *intended* to harm plaintiffs.

3        The text of the ATS, principles of statutory construction, practical considerations, and

4    international law all militate against finding aiding-and-abetting liability under the ATS.  The text

5    of the ATS contains no express provision for aiding and abetting liability.  *See* 28 U.S.C. § 1350.

6    But the Congress that enacted the ATS knew how to create secondary liability.  The year after it

7    enacted the ATS, "Congress enacted a criminal statute containing specific provisions for indirect

8    liability—for example, for aiding or assisting piracy."  Bradley, *supra*, at 926 & n.296 (citing Act

9    of Apr. 30, 1790, ch. 9, § 10, 1 Stat. 112, 114.  The ATS is bereft of such language.

10       And courts may not read secondary liability into federal statutes, *see Central Bank of*

11   *Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), especially in ATS

12   cases.  In *Central Bank*, the Supreme Court refused to read civil aiding-and-abetting liability into

13   the federal securities statute.  In doing so, the Court reasoned that while Congress has passed a

14   general *criminal* aiding and abetting statute, 18 U.S.C. § 2, it "has *not* enacted a general civil

15   aiding and abetting statute—either for suits by the Government . . . or for suits by private parties."

16   *Central Bank*, 511 U.S. at 176, 182.  While in *criminal* law, "aiding and abetting is an ancient . . .

17   doctrine," in civil cases, "the doctrine has been at best uncertain in application" and its

18   recognition would be "a vast expansion of federal law."  *Id.*  at 181, 183.  Moreover, *Sosa*

19   repeatedly emphasized that only a "modest number" of claims could be brought under the ATS

20   without legislative authorization and made clear that any "innovative" interpretations of the Act

21   must be left to the legislative process.  *See* 542 U.S. at 730-731.  Thus, to endorse civil aiding-

22   and-abetting liability in ATS cases would violate both the command of *Sosa* and of *Central*

23   *Bank*.[25]

24   _____

25   whether the Ninth Circuit will address vicarious liability issues, the "exhaustion" issue that was
     the subject of a lengthy dissent, or something else.

26   [25] *See, e.g.*, *In re S. Afr. Apartheid Litig.*, 346 F. Supp. 2d 538, 550-51 (S.D.N.Y. 2004), *appeal
     pending sub nom. Khulumani et al. v. Barclay Nat'l Bank Ltd., et al.*, No. 05-2141 (2nd Cir.

27   2005) (*Central Bank* applies "with special force" in the ATS context; recognizing aiding-and-
     abetting liability "without congressional mandate, in an area that is so ripe for non-meritorious

28   and blunderbuss suits would be an abdication of this Court's duty to engage in 'vigilant door
     keeping'" and would be inconsistent with the "'restrained conception' of new international law

1     Recognizing such claims would also harm U.S. policy interests.  The Executive Branch

2  has rejected the aiding-and-abetting theory plaintiffs advance, *see* U.S. Talisman Br. at 12-28, in

3  part, because it poses such significant policy concerns:

> [C]ivil aiding and abetting . . . liability would inevitably lead to greater diplomatic
> friction for the United States.  Such liability would trigger a wide range of ATS suits
> with plaintiffs challenging the conduct of foreign nations—conduct that would
> otherwise be immune from suit under the Foreign Sovereign Immunities Act. . . .

7  *Id*. at 19-22.  The Court has said such policy views must be given "serious weight."  Order at 7.

8     Civil aiding-and-abetting liability is equally disfavored under international law.  Notably,

9  none of the international law sources on which plaintiffs rely mentions the theory.  *See* Compl.

10  ¶ 69.  That is also not surprising.  As one group of scholars recently and rightly observed:

> The Court in *Sosa* rejected an arbitrary detention claim under the ATS [even
> though it was a norm expressed in several treaties and other documents]. . . *There
> is no relevant treaty that embraces aiding and abetting liability for corporations,
> the* Restatement *says nothing about such liability, and there is no widespread state
> practice of imposing liability on corporations for violations of international
> human rights law.*  To paraphrase *Sosa*, that a rule of corporate liability is so far
> from full realization is evidence against its status as binding law and even stronger
> evidence against the creation by judges of a private cause of action to enforce the
> aspiration behind the rule.

16  Bradley et al., *supra*, at 927-28.[26]

17     Even if, in theory, corporate actors could be held liable for aiding and abetting under the

18  ATS, defendants may not be held liable here.  Under any ATS theory, plaintiffs must establish

---

violations that the Supreme Court has mandated for the lower federal courts").

[26] Plaintiffs will no doubt cite statutes establishing international *criminal* tribunals that recognize aiding-and-abetting liability.  *See* Rome Statute of the International Criminal Court ("ICC") art. 25(1), July 17, 1998, 2187 U.N.T.S. 90; Statute of the International Criminal Tribunal for the Former Yugoslavia ("ICTFY"), S.C. Res. 827, arts. 2-5, U.N. Doc. S/RES/827 (May 25, 1993); Statute of the International Criminal Tribunal for Rwanda, S.C. Res. 955, arts. 2-4, U.N. Doc. S/RES/955 (Nov. 8, 1994).  But as *Central Bank* explains, these tribunals' recognition of the "ancient doctrine" of *criminal* aiding-and-abetting liability is a far cry from recognizing *civil* liability.  Moreover, even if these criminal law sources were valid evidence of *civil* law, they are too unspecific to be actionable under *Sosa*.  Some tribunals permit aiding-and-abetting liability if defendant had knowledge of the principal's violation; others require defendant to have intended to further the violation.  *See* Bradley, *supra*, at 927 (comparing ICTFY with ICC).  Further, "none of the modern international criminal tribunals extends criminal liability *to corporations*," and "the state parties to the relatively recent [ICC] negotiations *considered and rejected* international criminal liability for *corporations*."  *Id*. at 925 n.292; *see id*. at 927.  These conflicting standards, which only undercut plaintiffs' efforts to hold defendants liable, come nowhere close to the "settled and determinate" definitions on which the Supreme Court said one must rely to conclude that "all nations" and "all persons" recognize a particular norm.  *Smith*, 5 Wheat. at 161-62.

1   that defendants' conduct violated "norm[s] of international character accepted by the civilized

2   world." *Sosa*, 542 U.S. at 725.  As explained in Section IV.E, *infra*, defendants' alleged acts of

3   aiding and abetting are privileged by U.S. federal, U.S. state, and a wide variety of international

4   law.  Because there is no allegation that defendants *intended* harm to plaintiffs, plaintiffs' aiding-

5   and-abetting theory also fails.  Even those courts that wrongly recognize the theory hold that it

6   *only* applies if "the defendant knew of the [principal's] specific violation," and "acted with the

7   *intent*  to assist that violation."  *The Presbyterian Church of Sudan, v. Talisman Energy, Inc.*, 453

8   F. Supp. 2d 633, 668 (S.D.N.Y. 2006).  Courts have refused to find such intent even where the

9   defendant is accused of actively working with a local, repressive, military government to protect

10  defendants' oil extraction business.  *See id.*  Here, the allegations come nowhere close.

11          **B.**      **Plaintiffs Have Failed to State a Claim Under the TVPA.**

12          Plaintiffs' TVPA claims fail for similar reasons.  First, plaintiffs' Third and Fourth Claims

13  for Relief—for arbitrary arrest and forced labor, which plaintiffs bring, in part, under the TVPA,

14  *see* Compl. at 25-26—may not be brought under the statute.  By its plain terms, the TVPA

15  provides a remedy for "torture," *not* arbitrary arrest or forced labor.[27]

16          Second, all of plaintiffs' TVPA claims fail because the TVPA applies only to individuals,

17  *not* corporations.  The statutory text imposes liability on an "*individual* who, under actual or

18  apparent authority, or color of law, of any foreign nation . . . subjects an *individual* to torture."  28

19  USC 1350, note.  Because a corporation cannot be subjected to "torture," and because the same

20  word used in the same statute must be given the same meaning, "individual" in section 1350 does

21  not include "corporations," as numerous courts have recognized.  *See, e.g.*, *Mujica v. Occidental*

22  *Petroleum Corp.*, 381 F. Supp. 2d 1164, 1175-76 (C.D. Cal. 2005); *Doe I v. Exxon Mobil Corp.*,

23  393 F. Supp. 2d 20, 28 (D.D.C. 2005); *Arndt v. UBS AG*, 342 F. Supp. 2d 132, 141 (S.D.N.Y.

24

---

25  [27] *See* P.L. 102-256, 106 Stat. 73 at § 2(a) (codified at 28 U.S.C. § 1350, note) (creating liability
    for "[a]n individual who, under actual or apparent authority, or color of law, of any foreign
26  nation" subjects "an individual to torture" or "extrajudicial killing"); *id.* § 3(b)(1) (defining
    "torture" as "any act . . . by which severe pain or suffering . . . is intentionally inflicted on [an]
27  individual for such purposes as obtaining . . . information or a confession," punishment,
    intimidation, coercion, or discrimination); *Qi*, 349 F. Supp. 2d at 1278 (TVPA "provides a cause
28  of action for the . . . specific tort of torture").

1    2004); *but see Aldana*, 416 F.3d at 1249-50.

2         Third, properly construed, the TVPA does not impose aiding-and-abetting liability.  By its

3    plain terms, the TVPA applies only to individuals who "subject[]" others to torture, 28 U.S.C.

4    § 1350, note.  Civil aiding-and-abetting liability may not be read into the statute.

5         Fourth, even if the TVPA could be construed to impose aiding-and-abetting liability, only

6    individuals acting under the color of law, not private actors, may be held liable.[28]

7         Fifth, even if aiding-and-abetting liability were available, defendants' alleged acts of

8    aiding and abetment—communicating with the PRC—are privileged (see *infra*, IV.E), and

9    defendants are not alleged to have acted with the requisite intent.

10        Finally, plaintiffs Wang and Shi have failed to allege facts sufficient to establish they were

11   tortured and not merely subject to "police brutality," which is not actionable under the TVPA.

12   *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 93 (D.C. Cir. 2002); *see also*

13   Defs.' Alternative Mot. for a More Definite Statement (filed herewith) (elaborating on this

14   argument).

15        **C.    Plaintiffs Have Failed To State A Claim Under ECPA.**

16        In their Eleventh Claim for Relief, *see* Compl. ¶¶ 128-36, Shi and Wang allege defendants

17   improperly intercepted their emails, 18 U.S.C. § 2511, accessed their communications, 18 U.S.C.

18

19   [28] *See In re S. Afr. Apartheid Litig.*, 346 F. Supp. 2d at 555 ("Since a prerequisite to TVPA
     liability is that the individual be acting under color of law, this Court finds that creating aider and
20   abettor liability for private actors not acting under color of law would be inconsistent with the
     statute and precluded by *Central Bank*."); *Mujica*, 381 F. Supp. 2d at 1174; *Exxon*, 393 F. Supp.
21   2d at 28; *Corrie*, 403 F. Supp. 2d at 1027 (same); S. Rep. No. 102-249, at 9 (1991), 1991 WL
     258662 ("[A] higher official need not have personally performed or ordered the abuses in order to
22   be held liable.  Responsibility for torture, summary execution, or disappearances extends beyond
     the person who actually committed those acts—anyone with higher authority who authorize,
23   tolerated or knowingly ignored those acts is liable for them.").

24        While some courts have wrongly concluded or suggested that the TVPA permits
     secondary liability, they have done so largely based on statements in committee reports.  *See, e.g.*,
25   *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1157–58 (11th Cir. 2005); *Doe v. Saravia*, 348 F.
     Supp. 2d 1112, 1148–49 (E.D. Cal. 2004).  These decisions, including this Court's dicta in *Qi, see*
26   349 F. Supp. 2d at 1332, are incorrect, as "[l]egislative history cannot trump the statute,"
     *Bonneville Power Admin. v. FERC*, 422 F.3d 908, 920 (9th Cir. 2005); *Ratzlaf v. United States*,
27   510 U.S. 135, 147-48 (1994), and the Supreme Court's decision in *Central Bank* makes clear that
     Congress must speak clearly when, and if, it seeks to impose civil aiding-and-abetting liability.
28   In any event, this Court's dicta in *Qi* does not control here, because in *Qi*—unlike here—the
     defendants were state actors.  *See Qi*, 349 F. Supp. 2d at 1314.

1  § 2701, and disclosed contents of their communications and user information, 18 U.S.C. § 2702.

2  Plaintiffs' ECPA claims must be dismissed because (1) the statute does not apply

3  extraterritorially; and (2) sections 2701 and 2702 do not apply to defendants' alleged disclosures.

4      "Congress ordinarily intends its statutes to have domestic, not extraterritorial,

5  application." *Small v. United States*, 544 U.S. 385, 388-89 (2005).  Foreign policy concerns

6  justify this presumption, *see Sale v. Haitian Ctrs. Council*, 509 U.S. 155, 173-74 (1993), as does

7  the fact that, if Congress wishes to, it may rebut the presumption.  *Argentine Republic v. Amerada*

8  *Hess Shipping Corp*., 488 U.S. 428, 440 (1989) ("[w]hen it desires to do so, Congress knows how

9  to place the high seas within the jurisdictional reach of a statute").  "Absent clear evidence of

10  congressional intent to apply a statute beyond our borders [a] statute will apply only to the

11  territorial United States."  *United States v. Gatlin*, 216 F.3d 207, 211-12 (2d Cir. 2000).

12      Neither the text of ECPA nor its legislative history gives any indication that Congress

13  intended the statute to apply extraterritorially.  ECPA contains no extraterritorial provision, *cf*. 18

14  U.S.C. § 1513(d) (statute prohibiting retaliating against a witnesses: "There is extraterritorial

15  Federal jurisdiction over an offense under this section."), and ECPA's legislative history

16  explicitly states the Act's definition of "wire communication," applicable under both § 2702 and

17  § 2511, "is not meant to suggest that the Electronic Communications Privacy Act applies to

18  interceptions made outside the territorial United States."  S. Rep. No. 99-541, at 12 (1986), *as*

19  *reprinted in* 1986 U.S.C.C.A.N. 3555, 3566.

20      The Ninth Circuit has ruled that ECPA's wiretap provisions have no extraterritorial

21  application.  *See United States v. Peterson*, 812 F.2d 486, 492 (9th Cir. 1987) (holding that "Title

22  III has no extraterritorial force").  Similarly, the Second Circuit has held that the term "wire

23  communication" in ECPA is intended only to refer to communications "through our Nation's

24  communications network."  *United States v. Toscanino*, 500 F.2d 267, 279 (2d Cir. 1974); *United*

25  *States v. Cotroni*, 527 F.2d 708, 711 (2d Cir. 1975); *see also United States v. Angulo-Hurtado*,

26  165 F. Supp. 2d 1363, 1369 (N.D. Ga. 2001); *Berlin Democratic Club v. Rumsfeld*, 410 F. Supp.

27  144, 153 (D.C. D.C. 1976) (denying Austrian citizen standing to sue U.S. military officials in

28  Germany for violations of ECPA's wiretap provisions).

1   The complaint alleges plaintiffs Shi and Wang reside in China, used Chinese email

2   accounts, and that Yahoo!, YHKL, or Yahoo! China disclosed information regarding their

3   internet usage to Chinese authorities.  *See* Compl. ¶¶ 10, 12, 40, 54, 60, 62.  For purposes of

4   determining where an alleged interception takes place, the Ninth Circuit has held that telephone

5   conversations are intercepted "where the tapped phone is located *and* where law enforcement

6   officers first overhear the call."  *United States v. Luong*, 471 F.3d 1107, 1109 (9th Cir. 2006); *see*

7   *also United States v. Denman*, 100 F.3d 399, 403 (5th Cir. 1996).  Plaintiffs' computers—the

8   email equivalent of the "tapped phone"—were located in China, and Chinese officials allegedly

9   read their emails in China.  Therefore, any alleged interceptions—even if defendants facilitated

10  them in Hong Kong or the United States, as plaintiffs allege—occurred outside the United States

11  and ECPA's reach.  In *Cotroni*, the court rightly rejected the argument that Canadian wiretaps, set

12  in Canada and authorized by Canadian authorities, violated ECPA's wiretap provisions because

13  some conversations traveled over U.S. communications systems.  *Cotroni* reasoned, "it is not the

14  route followed by foreign communications which determines the application of [the wiretap

15  statute]; it is where the interception took place."  527 F.2d at 711.[29]

16  Even if ECPA applied extraterritorially, plaintiffs fail to state a claim under 18 U.S.C.

17  § 2702.  While section 2702(a) generally prohibits an electronic-communication-services provider

18  from divulging records or information pertaining to subscribers, the statute permits disclosure "to

19  any person other than a governmental entity."  18 U.S.C. § 2702(c)(6); *Freedman v. America*

20  *Online, Inc.*, 412 F. Supp. 2d 174, 183 (D. Conn. 2005) (ECPA "permits an ISP to voluntarily

21  divulge a subscriber's customer information to any person other than a governmental entity");

22  *United States v. Hambrick*, 55 F. Supp. 2d 504, 507 (W.D. Va. 1999) ("ISPs are free to turn

23

---

24  [29] To be clear, the ATS does not provide plaintiffs a vehicle by which to bring ECPA claims
    based on foreign conduct.  The ATS allows aliens to bring "civil action[s] . . . for a *tort only*,
25  committed in violation of *the law of nations* or a *treaty of the United States*."  28 U.S.C. § 1350.
    The Ninth Circuit has made clear that "garden variety violations of statutes, . . . regulations, and
26  common law" "are not appropriately considered breaches of the 'law of nations' for purposes of
    jurisdiction under the Alien Tort Statute."  *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1418 (9th
27  Cir. 1995).  Plaintiffs do not allege, nor could they ever prove, that the protections afforded by
    ECPA on which they rely are part of the "law of nations" or part of "a treaty of the United
28  States."  28 U.S.C. § 1350.

1    stored data and transactional records over to nongovernmental entities").  The PRC is not a

2    "governmental entity" for purposes of ECPA, because ECPA defines the term as "a department or

3    agency of the United States or any State or political subdivision thereof."  18 U.S.C. § 2711(4).[30]

4          Finally, plaintiffs cannot state a claim under 18 U.S.C. § 2701.  They assert defendants

5    violated this provision by exceeding "their authorization to access and control private information

6    concerning Plaintiffs' electronic communications."  Compl. ¶ 130.  However, section 2701(a)

7    does not apply "to conduct authorized . . . by the person or entity providing a wire or electronic

8    communications service."  18 U.S.C. § 2701(c)(1) .  As the alleged provider of the plaintiffs'

9    email services, defendants cannot violate this section.  *See Bohach v. City of Reno*, 932 F. Supp.

10   1232, 1236 (D. Nev. 1996) ("§ 2701(c)(1) allows providers to do as they wish when it comes to

11   accessing communications in electronic storage").[31]

12         **D.**      **Plaintiffs Have Failed to State a Claim Under California Law.**

13         Plaintiffs' California claims are for battery, assault, false imprisonment, intentional

14   infliction of emotional distress, negligence, and unfair competition.  Each claim is barred by

15   Section 47(b) of the California Civil Code, which privileges defendants' alleged communications.

16   *See infra* Section IV.E.2.  Each is also preempted by the foreign affairs doctrine and suffers from

17   various defects specific to California law.

18         **1.**    **The Foreign Affairs Doctrine Preempts Plaintiffs' California Claims.**

19         The federal foreign affairs doctrine limits "state involvement in foreign affairs and

20   international relations—matters which the Constitution entrusts solely to the Federal

21   Government."  *Zschernig v. Miller*, 389 U.S. 429, 436 (1968).  Where a proposed application of

22   state law falls outside areas of "traditional state responsibility," the foreign affairs doctrine

23

[30] The definition of "governmental entity" was added to § 2711 as part of a clarifying amendment
24   in the USA PATRIOT Improvement and Reauthorization Act of 2005.  PL 109-177.  Before the
     definition was codified, courts recognized that "governmental entity" meant federal, state, and
25   local governments.  *See Ameritech Corp. v. McCann*, 403 F.3d 908, 912-13 (7th Cir. 2005).

[31] If plaintiffs' claims proceed past the motion to dismiss stage, defendants will also demonstrate
26   that plaintiffs' ECPA claims are barred by the statute of limitations, vitiated by plaintiffs' consent
     to terms of services agreements, and precluded by provisions of ECPA allowing disclosure of
27   contents of communications and subscriber records where "necessarily incident to the rendition of
     the service or to the protection of the rights or property of the provider of that service."  18 U.S.C.
28   §§ 2702(b)(5) , 2702(c)(3).

1   mandates the dismissal of plaintiffs' claims even if there is no direct conflict between the state's

2   policy and that of the federal government. *American Ins. Ass'n v. Garamendi*, 539 U.S. 396, 419

3   n.11, 425 (2003). The regulation of an American business's conduct in China falls well outside

4   any area of "traditional state responsibility." *Id*. For this reason alone, the Court should either

5   refuse to hear or dismiss plaintiffs' six California claims with prejudice.

6       Even if regulating how companies conduct business in China were within California's

7   "traditional competence," *id.* at 419 n.11, the same outcome is required. California has only the

8   weakest interest in the claims plaintiffs assert because plaintiffs do not reside here, and all the

9   allegedly tortious activity took place in China. To the extent California has any interest in

10  proscribing defendants' alleged conduct, the foreign policy conflict that such regulation would

11  create far outweighs California's interest. *See Mujica*, 381 F. Supp. 2d at 1190.

12              **2.  Plaintiffs Cannot Establish Their Intentional Tort Claims.**

13      a.  Aiding-and-Abetting Liability.  Plaintiffs' intentional tort claims, their Fifth through

14  Eighth Claims for Relief, all hinge on an aiding-and-abetting theory. These claims—for battery,

15  assault, false imprisonment, and intentional infliction of emotional distress, *see* Compl. at 26-

16  28—must be dismissed. Plaintiffs cannot establish that defendants possessed the intent necessary

17  for aiding-and-abetting liability.

18      Under California law, aiding and abetting "necessarily requires a defendant to reach a

19  *conscious decision* to participate in tortious activity for the purpose of assisting another in

20  performing a wrongful act." *Howard v. Superior Court*, 2 Cal. App. 4th 745, 749 (Cal. Ct. App.

21  1992) (emphasis in original). Put another way, aiding-and-abetting liability may only be imposed

22  if the defendant "knew that a tort had been, or was to be committed, and *acted with the intent of*

23  *facilitating the commission of that tort*." *Gerard v. Ross*, 204 Cal. App. 3d 968, 983 (Cal. Ct.

24  App. 1988).

25      Plaintiffs do not allege that defendants intended to cause them harm or "facilitate" the

26  PRC's alleged torts. They merely allege defendants' conduct was "voluntary" and "willing."

27  Compl. ¶ 2. Neither claim is sufficient to establish that defendants acted "with the intent of

28  facilitating the commission of" their alleged abuse. *Gerard*, 204 Cal. App. 3d at 983. Nor are

1  these conclusory allegations consistent with documents identified in plaintiffs' complaint. *See*

2  Compl. ¶ 64 (citing ruling of Hong Kong Commissioner, which states at ¶ 8.25: "the disclosure

3  of Information in the circumstances of the case was not a voluntary act initiated by [YHKL] but

4  was compelled under the force of PRC law").[32]

5       b.  Direct Liability.  To the extent plaintiffs seek to hold defendants *directly* liable on their

6  false imprisonment and intentional infliction claims, *see* Compl. ¶¶ 106, 110, those claims must

7  be rejected as well.  Plaintiffs' false imprisonment claim is easily dispensed with, as the

8  complaint is devoid of allegations that defendants directly engaged in any "nonconsensual

9  intentional confinement of a person."  *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (Cal. 1994).

10      Plaintiffs' intentional infliction claim has no basis either.  Given California privilege law,

11 *see infra* Section IV.E.2, providing law enforcement officials with information regarding criminal

12 activity cannot possibly be "extreme and outrageous conduct . . . so extreme as to exceed all

13 bounds of that usually tolerated in a civilized community."  *Conroy v. Regents of Univ. of Calif.*,

14 151 Cal. App. 4th 132, 146 (Cal. Ct. App. 2007).  Moreover, to be held liable, defendants'

15 conduct must have been "directed at the plaintiff, or occur in the presence of a plaintiff of whom

16 the defendant is aware."  *Id.*  Defendants lacked this knowledge, particularly as to plaintiff Yu.[33]

17           **3.  Plaintiffs Do Not State a Claim for Negligence.**

18      Plaintiffs' negligence claims, Compl. ¶¶ 114-17, may not proceed on an aiding-and-

19 abetting theory, which only applies to intentional torts, *see Fiol v. Doellstedt*, 50 Cal. App. 4th

20 1318, 1325 (Cal. Ct. App. 1996).  Plaintiff Yu cannot state a direct claim for negligence because

21

_____

22 [32] To the extent plaintiffs claim defendants "ratified" the PRC's intentional torts and are liable on that theory, *see, e.g.*, Compl. ¶ 74, there can be no "ratification" under California law absent an agency relationship.  *See Estate of Stephens*, 28 Cal. 4th 665, 673 (Cal. 2002) ("Ratification is the

23 voluntary election by a person to adopt in some manner as his own act an act which was purportedly done *on his behalf* by another person . . . .").  Plaintiffs do not allege, nor could they,

24 that PRC officials acted on behalf of defendants or that defendants exercised control over the PRC.

25 [33] *Cf. Davidson v. City of Westminster*, 32 Cal. 3d 197, 210 (Cal. 1982) (dismissing intentional infliction claim against police officers who failed to prevent assault they knew was likely to

26 occur; "Absent an intent to injure, such inaction is not the kind of extreme and outrageous conduct" that gives rise to liability under the tort); *Christensen v. Superior Ct.*, 54 Cal. 3d 868,

27 879, 906 (Cal. 1991) (rejecting intentional infliction claims brought against funeral home that desecrated remains of plaintiffs' loved ones; plaintiffs had "not alleged that the conduct of any of

28 the defendants was directed primarily at them").

1    her injuries were not reasonably foreseeable and, thus, defendants owed her no duty of care.  Duty

2    is a "question of law to be resolved by the court," *Artiglio v. Corning Inc.*, 18 Cal. 4th 604, 614

3    (Cal. 1998), based on:

4    > the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff
5    > suffered injury, the closeness of the connection between the defendant's conduct
     > and the injury suffered, the moral blame attached to the defendant's conduct, the
     > policy of preventing future harm, the extent of the burden to the defendant and
6    > consequences to the community of imposing a duty to exercise care with resulting
     > liability for breach, and the availability, cost, and prevalence of insurance for the
7    > risk involved.

8    *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 465 (Cal. Ct. App. 2003).

9        Yu seeks to hold defendants liable for emotional and other harms suffered on account of

10   her husband's mistreatment.  *Ileto v. Glock*, 194 F. Supp. 2d 1040, 1053 (C.D. Cal. 2002),

11   disposes of her claim.  In *Ileto*, plaintiffs were injured by guns defendant manufactured and sued

12   for negligence.  Applying California law, the court held, "While it may be foreseeable that some

13   criminals might obtain Glock firearms and use them to harm others, there was no way of

14   foreseeing that this *particular individual* . . . would obtain a Glock firearm and use it to injure

15   *these Plaintiffs*."  *Id.* at 1053.  Yu's claims are similarly too remote.

16       Wang and Shi's negligence claims must be dismissed because they assumed the risk of

17   harm when they chose to use Yahoo! China email and group list services to engage in activity

18   they knew violated Chinese law.  Primary assumption of the risk "operate[s] as a complete bar to

19   the plaintiff's recovery" in negligence cases, and applies where "by virtue of the nature of the

20   activity and the parties' relationship to the activity, the defendant owes no legal duty to protect

21   the plaintiff from the particular risk of harm that caused the injury."  *Knight v. Jewett*, 3 Cal. 4th

22   296, 314-15 (Cal. 1992); *Saffro v. Elite Racing, Inc*., 98 Cal. App. 4th 173, 178 (Cal. Ct. App.

23   2002).

24       Although the doctrine is most commonly applied to active sports, *see Moser v. Ratinoff*,

25   105 Cal. App. 4th 1211, 1220-21 (Cal. Ct. App. 2003), it has also been applied to other

26   dangerous, non-sporting activities.[34]  In *Cohen v. McIntyre*, 16 Cal. App. 4th 650, 655 (Cal. Ct.

27   _____

28   [34] *See, e.g., Herrle v. Estate of Marshall*, 45 Cal. App. 4th 1761 (Cal. Ct. App. 1996) (patient's
     estate not liable to nurse's aid struck by patient suffering from senile dementia); *Rosenbloom v.
     Hanour Corp.*, 66 Cal. App. 4th 1477 (Cal. Ct. App. 1998) (employer not liable to employee

App. 1993), for example, the court rejected a negligence claim a veterinarian brought against the owner of a dog that had bit him. "Cohen, a licensed veterinarian, was injured during the course of treating an animal under his control, an activity for which he was employed and compensated and one in which the risk of being attacked and bitten is well known." *Id*.

Wang and Shi both made journalistic careers criticizing the PRC's repressive policies. *See* Compl. ¶¶ 32-45, 52-56. They were no doubt fully aware of the risk of engaging in political speech. *See, e.g.*, *id.* ¶ 25 (dissidents "face a well-documented pattern of" abuses). According to the complaint, Wang's writings included the warning: "We should never forget that China is still a totalitarian and despotic country." *Id.* ¶¶ 33, 43. Shi, like Wang, wrote about the suppression of free expression in China and, indeed, he was prosecuted for publicizing a "state secret" document that related to previous crackdowns on political speech. *See id.* ¶¶ 52-54. Moreover, according to Shi's criminal judgment cited in the complaint, *see id.* ¶ 62, Shi's editors warned him he would be prosecuted if he published the document, *see* Appx. A, Ex. C at 5. Defendants cannot be held liable for a knowing and obvious risk that plaintiffs assumed—however righteous their cause. *Cf. Baker v. Superior Ct.*, 129 Cal. App. 3d 710 (Cal. Ct. App. 1982) (firefighter cannot sue for injuries sustained while fighting blaze).

### 4. Plaintiffs Do Not State a Claim For Unfair Competition.

Plaintiffs' complaint does not state a claim within the meaning of section 17200. It does not allege unlawful, unfair, or fraudulent business practices. To the contrary, the gist of the complaint is that defendants *obeyed laws and procedures* that plaintiffs allege led to their imprisonment.

Moreover, plaintiffs lack standing to bring the Tenth Claim for Relief under California Business and Professions Code section 17204. *See* Compl. ¶¶ 118-27. Proposition 64 recently amended section 17204 to limit private suits to those brought by plaintiffs who have "suffered injury *and* lost money or property '*as a result* of such unfair competition.'" *Daro v. Superior*

---

hired to handle sharks who was bitten by a shark); *Hamilton v. Martinelli & Associates*, 110 Cal. App. 4th 1012, 1021 (Cal. Ct. App. 2003) (training officer not liable to probation officer injured while performing required training maneuver).

1  *Court*, 151 Cal. App. 4th 1079, 1098 (2007) (emphasis in original).  The new language in section

2  17204 is similar to existing language in section 17203, which courts have read to permit

3  restitution only.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (Cal.

4  2003).  Thus, under Proposition 64, to bring a UCL action a plaintiff must now allege a valid

5  claim to restitution.  *See Walker v. USAA Casualty Ins. Co.*, 474 F. Supp. 2d 1168, 1172 (E.D.

6  Cal. 2007).  *See also Center for Biological Diversity v. FPL Group, Inc.*, 2006 WL 2987634 at

7  \*4-6 (Cal. Superior Ct., Oct. 13, 2006) (Sabraw, J.).[35]

8  　　　Restitution claims under section 17204 are limited to the recovery of money or property

9  "that defendants took *directly* from plaintiff" or that can "be traced" to "*particular funds*" in a

10  defendant's possession.  *Korea Supply*, 29 Cal. 4th at 1149-50; *see also Colgan v. Leatherman*

11  *Tool Group, Inc.*, 135 Cal. App. 4th 663, 699 (Cal. Ct. App. 2006) (restitution limited to "money

12  or property identified as belonging in good conscience to the plaintiff [that] *could clearly be*

13  *traced to particular funds or property in the defendant's possession*").  Plaintiffs do not allege

14  defendants took or have their property.  They claim the PRC seized it.  *See* Compl. ¶¶ 10-12, 37,

15  47, 57.  Plaintiffs have no restitution claim against defendants.  *See Walker*, 474 F. Supp. 2d at

16  1172.[36]

17  　　**E.**　　**Defendants' Communications With The PRC Are Protected From Liability.**

18  　　　Finally, the complaint must be dismissed because the only actions defendants are alleged

19  to have taken—communications with law enforcement concerning suspected criminal activity—

20  are privileged and immunized from liability under federal, California, and international law.

21  　　　**1.  The Communications Are Protected Under Federal Law.**

22  　　　Federal law privileges communications with law enforcement officials.  In *In re Quarles*,

23  158 U.S. 532, 535-36 (1895), the Supreme Court explained that principles of sovereignty require

24  privileging such communications from liability.  "It is the right, as well as the duty, of every

25  _____

26  [35] Plaintiffs might cite two cases that they would argue are contrary.  *See White v. Trans Union LLC*, 462 F. Supp. 2d 1079 (C.D. Cal 2006); *Southern California Housing Rights Center v. Los*

27  *Feliz Towers Homeowners Assoc.*, 426 F. Supp. 2d 1061 (C.D. Cal. 2005).  Not so.  Neither case is apt on these facts, analyzes the issues closely, or is in keeping with the logic of *Korea Supply* or the purpose of Proposition 64.  *Walker* and its ilk control.

28  [36] Plaintiffs' California claims, like their ECPA claims, are also time barred.

1   citizen . . . to communicate to the executive officers any information which he has of the

2   commission of an offense against those laws; and such information, given by a private citizen, is

3   a privileged and confidential communication, for which no action of libel or slander will lie . . .

4   The right of a citizen informing of a violation of law . . . *arises out of the creation and*

5   *establishment by the Constitution itself of a national government, paramount and supreme within*

6   *its sphere of action.*"

7        Relying on *Quarles*, *Vogel v. Gruaz*, 110 U.S. 311 (1884), and their progeny, federal

8   courts have consistently upheld these privileges.  The Ninth Circuit, for example, has explained

9   that "the information given to a prosecutor by a private person for the purpose of initiating a

10  prosecution is protected by [a] cloak of immunity . . . so that all persons might freely disclose

11  their suspicions and deductions" without fear of being sued.  *Borg v. Boas*, 231 F.2d 788, 794-95

12  (9th Cir. 1956).[37]  While some courts say the privilege is absolute, *see Vogel*, 110 U.S. at 314;

13  *Holmes v. Eddy,* 341 F.2d 477, 480-481 (4th Cir. 1965), others say it is qualified, *see McDonald*

14  *v. Smith*, 472 U.S. 479, 485 (1985); *Foltz v. Moore McCormack Lines, Inc*., 189 F.2d 537, 540

15  (2d Cir. 1951).  Plaintiffs' federal claims fail either way.  Even under the qualified privilege,

16  defendants' communications with the PRC are immunized unless they were (1) false; *and* (2)

17  made with malice.  *See Foltz*, 189 F.2d at 540; *Swaaley v. U.S*., 376 F.2d 857, 862 (Ct. Cl. 1967).

18  Plaintiffs do not allege the information defendants provided was false; far from it, they complain

19  it was all too accurate.  Nor do they assert that defendants acted with ill will.

20        Plaintiffs' federal claims are also barred by the foreign sovereign compulsion and *Noerr*-

21  *Pennington* doctrines.  The foreign sovereign compulsion doctrine, which finds its roots in

---

22  [37] *See also U.S. v. New York Tel. Co.*, 434 U.S. 159, 175 (1977) (government could compel
23  private phone company to install pen registers on telephones; citing *In re Quarles* approvingly);
    *Brown v. Edwards,* 721 F.2d 1442, 1454 n.17 (5th Cir. 1984) (citing *Vogel* and *Borg* in support of
24  "an absolute privilege for statements made in the institution of criminal charges"); *Holmes v.
    Eddy*, 341 F.2d 477, 480-481 (4th Cir. 1965) (granting stockbroker immunity for statements made
25  to the SEC about a suspicion that a company was attempting to bilk the public); *Foltz v. Moore
    McCormack Lines, Inc.*, 189 F.2d 537, 540 (2d Cir. 1951) (defendant who provided information
26  to FBI was immune from suit unless statement was false and made with malice); *Swaaley v. U. S.*,
    376 F.2d 857, 862-63 (Ct. Cl. 1967) (statements made to government concerning suspected
27  criminal activity privileged); RESTATEMENT (SECOND) OF TORTS § 598 cmt. d (1977) (statement
    privileged "when any recognized interest of the public is in danger, including the interest in the
28  prevention of crime and the apprehension of criminals").

antitrust law, applies here to bar plaintiffs' claims.[38]  It provides that courts may not require a

person to engage in acts prohibited by a foreign state or refrain from acts compelled by the state.

*See Timberland Lumber Co. v. Bank of America*, 549 F.2d 597, 606 (9th Cir. 1977).  One leading

case, *Interamerican Refining Corp. v. Texaco Maracaibo, Inc.*, 307 F. Supp. 1291, 1296 (D. Del.

1970), holds that because "defendants were compelled by regulatory authorities in Venezuela to

boycott plaintiff," they had "a complete defense to [plaintiff's] action under the antitrust laws

based on that boycott."  As the court elaborated:

> When a nation compels a trade practice firms there have no choice but to obey.
> Acts of business become effectively acts of the sovereign.  The Sherman Act does
> not confer jurisdiction on United States courts over acts of foreign sovereigns. . . .
> *Were compulsion not a defense, American firms abroad faced with a government
> order would have to choose one country or the other in which to do business.  Id.*

Under the doctrine, defendants must show their communications were (a) "basic and

fundamental'" to plaintiffs' case and "not just [of] peripheral" concern, and (b) compelled.

*Brodie*, 174 F. Supp. 2d at 300.  Both requirements are met here.  Defendants' communications

with the PRC are at the core of plaintiffs' case; and, as documents cited in the complaint make

clear, *see* Compl. ¶ 64, defendants' disclosure of information was compelled by Chinese law.  In

its report, the Hong Kong Privacy Commissioner concluded:

- "[T]he disclosure of Information in the circumstances of the case was not a voluntary act initiated by [YHKL] but was compelled under the force of PRC law," Appx. A, Ex. A¶ 8.25;
- "the Order was a legal obligation imposed on [YHKL]," and "refusal to comply [with the order] might result in both criminal and administrative sanctions," *id*. ¶ 7.12; and
- "Yahoo! China and [YHKL] did in the circumstances of this case have genuine penal apprehension of possible violation of Article 45 or Article 277 if refused to comply with the [PRC's] order," *id*. ¶ 7.8.[39]

---

[38] *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197 (1958) (excusing Swiss company's failure to comply with American discovery order that required it to violate Swiss law); *United States v. Brodie*, 174 F. Supp. 2d 294, 299-304 (E.D. Pa. 2001) (recognizing potential applicability of doctrine outside antitrust law).

[39] Article 45 of the Criminal Procedure Law provides the PRC the authority to gather evidence requires the government to investigate those who "falsif[y], conceal[], or destroy[]" it. Article 277 of the Criminal Law provides "[w]hoever intentionally obstruct officers of a State security organ or a public security organ from maintaining State security in accordance with law" is to be punished "to fixed-term imprisonment of not more than three years, criminal detention, or public surveillance or be fined."  Article 18 of the State Security Law provides that "when a State security organ investigates and finds out any circumstances endangering State security and gathers related evidence, citizens and organizations concerned shall faithfully furnish it with relevant information and may not refuse to do so."  *Id.* ¶¶ 7.1-7.11; *see also* Article 57 of PRC

1  As the Supreme Court has said: "It is hardly debatable that fear of criminal prosecution

2  constitutes a weighty excuse for" acting, "and this excuse is not weakened because the laws

3  [engendering this fear] are those of a foreign sovereign." *Societe Internationale*, 357 U.S. at 211.

4      The *Noerr-Pennington* doctrine also originated in antitrust law and shields firms from

5  liability for communications with government officials. *See United Mine Workers of Am. v.

6  Pennington*, 381 U.S. 657 (1965); *Eastern R.R. Presidents Conference v. Noerr Motor Freight,

7  Inc.*, 365 U.S. 127 (1961). The doctrine has been extended to non-antitrust cases,[40] shields

8  defendants from claims based on communications with law enforcement,[41] and applies unless

9  plaintiffs can show that defendants' communications were a *sham* designed to injure plaintiffs

10  through *false* accusations, *see Oregon Natural Res.*, 944 F.2d at 534. Again, plaintiffs make no

11  such allegations.

12      **2.  Plaintiffs' Claims Are Barred By California's Statutory Privilege.[42]**

13      California Civil Code Section 47(b) "bars" civil actions based on communications with

14  law enforcement. *Hagberg v. Calif. Fed. Bank FSB*, 32 Cal. 4th 350, 360 (Cal. 2004). "[C]ourts

15  have given [47(b)] an expansive reach," "held that the privilege is absolute, even if the result is

16  inequitable," and ruled that "any doubt as to whether the privilege applies is resolved in favor of

17  applying it." *Morales v. Coop. of Am. Physicians, Inc*, 180 F.3d 1060, 1062 (9th Cir. 1999). Like

18

19  ───────────────────────────────
   Regulations on Telecommunications; Article 18 of Measures for the Administration of Internet E-mail Services; Articles 9, 13, 14 and 15 of Administrative Measures on Internet Bulletin Services. *See* Appendix B, Tabs 2, 3, 4, 7, 10, and 11.

20  [40] *See, e.g.*, *Boulware v. State of Nev. Dept. of Human Res.*, 960 F.2d 793, 800 (9th Cir. 1992)

21  (civil rights); *Evers v. Custer County*, 745 F.2d 1196, 1204 (9th Cir. 1984) (civil conspiracy); *Oregon Natural Res. Council v. Mohla*, 944 F.2d 531, 533-34 (9th Cir. 1991) (tort); *Video Int'l

22  Prod. v. Warner-Amex Cable Commc'n*, 858 F.2d 1075, 1084 (5th Cir. 1988) (*Noerr-Pennington* doctrine applies to "claims brought under federal and state law," and to "common-law tort"

23  claims as well as statutory claims).

24  [41] *See Forro Precision, Inc. v. Inter. Bus. Machines*, 673 F.2d 1045, 1059-1060 (9th Cir. 1982); *Palmer v. Roosevelt Lake Log Owners Ass'n.*, 551 F. Supp. 486, 493-494 (D. Wash. 1982).

25  [42] Defendants believe Chinese law should control and disposes of plaintiffs' "state law" claims. However, for the purposes of this motion, defendants assume *arguendo*, as plaintiffs' complaint

26  alleges, that California law applies. *Cf. Panama Processes, S.A. v. Cities Services Co.*, 650 F.2d 408, 413 n.6 (2d Cir. 1981) (noting party had reserved right to argue Brazilian law applied,

27  though it was presently arguing under New York law); *Radiation Sterilizers, Inc. v. U.S.*, 867 F. Supp. 1465, 1476 (E.D. Wash. 1994) (in ruling on motions to dismiss, court did not decide

28  whether Washington or Georgia law applied, but merely determined whether plaintiffs' causes of action, brought under Washington law, stated cognizable claims under Washington law).

1    its federal counterparts, section 47(b) is designed to "encourage[e] freedom of communication

2    between citizens and public authorities charged with investigating wrongdoing." *Forro*

3    *Precision, Inc. v. Int'l Bus. Machs.*, 673 F.2d 1045, 1053 (9th Cir. 1982). The privilege is based

4    on the recognition that "it [is] the duty of every citizen to cooperate with the police in their

5    investigation of crime and to provide information to investigating officers"; it thus "shields" those

6    who give "testimony or statements to officials conducting criminal investigations." *Hagberg,* 32

7    Cal. 4th at 373.

8         Both federal and California courts have held that the section 47(b) privilege applies to

9    communications made in foreign countries to foreign officials. *See Beroiz v. Wahl*, 84 Cal. App.

10   4th 485 494-95 (Cal. Ct. App. 2000) (Mexico); *E. & J. Gallo Winery v. Andina Licores, S.A.*,

11   Case No. CV F 05-0101, 2006 U.S. DIST. LEXIS 47206, at \*24 (E.D. Cal. June 30, 2006)

12   (Ecuador). The *Beroiz* court surveyed case law from other jurisdictions and observed that,

13   throughout the United States, courts "have uniformly held that similar privileges apply to foreign

14   proceedings and communications." 84 Cal. App. 4th at 494.[43]

15                **3. Plaintiffs' International Law Claims Are Similarly Barred.**

16        Finally, plaintiffs assert defendants violated "universal" standards of international law by

17   providing the PRC with evidence of plaintiffs' unlawful internet usage. *See* Compl. ¶¶ 3, 5, 70-

18   96. Not so. Numerous countries,[44] like our country and like virtually every State in the Union,[45]

19   have long *privileged* such communications.

20   _____

21   [43] While *Beroiz*, 84 Cal. App. 4th at 494-96, and *E. & J. Gallo Winery*, 2006 U.S. DIST. LEXIS
     47206, at \*24-26, observed that a qualified, rather than absolute, privilege might apply if

22   defendant initiated foreign legal proceedings and the foreign legal system did not provide
     adequate safeguards, that circumstance is not presented here. The complaint does not allege that

23   defendants initiated contact with the PRC, nor did they. Plaintiffs also have not alleged
     defendants acted with "hatred or ill will" or recklessly published false information. *Noel v. River*

24   *Hills Wilsons, Inc*., 113 Cal. App. 4th 1363, 1370 (Cal. Ct. App. 2003) ("The malice necessary to
     defeat a qualified privilege is 'actual malice' which is established by a showing [1] that the

25   publication was motivated by hatred or ill will towards the plaintiff or [2] by a showing that the
     defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted

26   in reckless disregard of the plaintiff's rights."); see also *Dorn v. Mendelzon*, 196 Cal. App. 3d
     933, 945 (Cal. Ct. App. 1987).

27   [44] *See* Yahoo!'s concurrently filed Anti-SLAPP Motion at 8, n.5.

28   [45] *See* Yahoo!'s concurrently filed Anti-SLAPP Motion at 8, n.6.

1    **V.    PLAINTIFFS FAILED TO JOIN AN INDISPENSABLE PARTY.**

2        Plaintiffs' complaint must be dismissed pursuant to Rule 12(b)(7), because the PRC is a

3    "necessary" party and the case cannot proceed without it.  *Wilbur v. Locke*, 423 F.3d 1101, 1111

4    (9th Cir. 2005).

5        **A.    The PRC Is A Necessary Party.**

6        A party is "necessary" if (1) complete relief cannot be afforded plaintiffs in its absence; *or*

7    (2) a decision on the merits will either (a) impair its ability to protect its interests or (b) subject

8    defendants in this case to "multiple or inconsistent obligations."  *Dawavendewa v. Salt River*

9    *Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1155 (9th Cir. 2002).  Both of these alternative

10   tests are satisfied; satisfying *either* test is sufficient.  *See* FED. R. CIV. P. 19(a).

11       Plaintiffs complain they are being wrongly incarcerated and abused by the PRC.  Their

12   complaint seeks "affirmative action by the Defendants to secure the[ir] release."  Compl. at 34

13   ¶ (d).  That relief is not possible in the PRC's absence.  No money judgment or declaration of

14   rights would be enough:  plaintiffs' harm continues so long as they remain incarcerated.

15       The PRC has a strong interest in this action and its absence will impair its interests and

16   impose conflicting obligations.  Plaintiffs seek both an injunction preventing defendants from

17   providing the PRC with evidence in criminal cases, *see* Compl. at 34 ¶ (e), and a declaration that

18   disclosure of such evidence violates international law, *see id.* at 34 ¶ (d).  Those requests are a

19   direct attack on the PRC's sovereignty and ability to "govern [its own] territory."  *Dawavendewa*,

20   276 F.3d at 1157.[46]  Moreover, there can be no question the case "subject[s] [defendants] to a

21   substantial risk of incurring . . . inconsistent obligations."  FED. R. CIV. P. 19(a)(2)(ii).  Unless the

22   Court can also bind the PRC, the requested relief will put defendants squarely "between the

23   proverbial rock and hard place."  *Dawavendewa*, 276 F.3d at 1156.  Rule 19(a)(2)  is designed to

24   prevent such results.  *See id.*

25

26

----

27   [46] *See also Davis v. United States*, 192 F.3d 951, 959 (10th Cir. 1999) (Seminole Tribe necessary party where judgment would overrule Tribe's ordinance); *Ricci v. State Bd. of Law Examiners*, 569 F.2d 782 (3d Cir. 1978) (State Supreme Court was necessary and indispensable party to

28   action seeking to invalidate court's rule governing bar admission).

C07-02151 CW
YAHOO!'S MOT. TO DISMISS SEC. AM.                - 37 -
COMPL.

1    **B.      The PRC Cannot Be Joined.**

2          American courts do not have jurisdiction over foreign states unless the state waives

3    immunity or the plaintiffs' claims fall under one of the statutory exceptions to the Foreign

4    Sovereign Immunity Act, 28 U.S.C. §§ 1604, 1605, *see In re Republic of the Phil.*, 309 F.3d

5    1143, 1149 (9th Cir. 2002).  The PRC does not fall into any of the exceptions in this case.  *See id.*

6    **C.      The PRC Is Indispensable.**

7          If a necessary party cannot be joined, the Court must consider whether in "equity and

8    good conscience" the suit should proceed without it. FED. R. CIV. P. 19(b); *EEOC v. Peabody*

9    *Western Coal Co.*, 400 F.3d 774, 780 (9th Cir. 2005).  Courts must balance four factors in making

10   this determination.  *See Dawavendewa*, 276 F.3d at 1161.  All four factors favor dismissal.

11         The first three factors are closely related:  (1) prejudice to the PRC and defendants; (2) the

12   ability to mitigate prejudice by shaping the relief; and (3) the adequacy of a judgment that does

13   not bind the PRC.  To award any relief to plaintiffs, the Court must rule that providing evidence

14   to the PRC in a criminal case was a violation of international law.   Plaintiffs seek a declaration to

15   such effect, an injunction preventing such disclosures, and damages.  Any judgment for plaintiffs

16   in this case—no matter how broad or narrow the relief—will intrude on the PRC's sovereignty,

17   and put defendants in an untenable conflict, *Dawavendewa*, 276 F.3d at 1156. [47]  Moreover, were

18   the Court to award plaintiffs relief without joinder of the PRC, such relief will be inadequate.

19   Political speech will still be criminal in China, plaintiffs will still be in prison, and companies will

20   still be required by Chinese law to furnish evidence.

21         The fourth factor—whether an alternative forum exists—also favors dismissal.  Shi

22   instituted legal proceedings before the Hong Kong Privacy Commissioner; his case is pending on

23   appeal; the Commissioner issued a detailed ruling showing Shi's claims were taken seriously; and

24   Hong Kong is an adequate, alternative forum. [48]  But even if no alternative forum existed, that

25   _____

26   [47] *See Saudi Arabia v. Nelson*, 507 U.S. 349, 361 (1993) ("however monstrous such abuse undoubtedly may be, a foreign state's exercise of the power of its police has long been understood" as sovereign in nature).

27   [48] *See e.g., Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad*, 812 F. Supp. 1041, 1043-

28   44 (N.D. Cal. 1993) (Hong Kong is an adequate forum to adjudicate alleged RICO violations, common law fraud and breach of fiduciary duty claim); *Dragon Capital Partners L.P. v. Merrill*

1   does *not* prevent dismissal when the other Rule 19(b) factors are satisfied.[49]

2   ## VI.    **PLAINTIFFS' COUNSEL MAY LACK AUTHORITY TO BRING THIS SUIT.**

3           In the unique circumstances of this case, there is a serious question about the authority and

4   ability of plaintiffs' counsel to prosecute this case on behalf of Shi and Wang.  As the complaint

5   suggests, counsel have no direct contact with Shi and Wang and can only allege the facts of Shi

6   and Wang's case based on information and belief.  *See* Compl. ¶¶ 45, 65, 145.  A "suit instituted

7   without authority from the party named as plaintiff is a nullity," "any judgment obtained in such a

8   suit is void," and the complaint in such a case must be dismissed.  *Meredith v. Ionian Trader*, 279

9   F. 2d 471, 474 (2d Cir. 1960); *see also Pueblo of Santa Rosa v. Fall*, 273 U.S. 315, 319 (1927).

10  Under federal and California law, every action must be prosecuted by the real party in interest or

11  a representative of that party authorized by law.  *See* FED. R. CIV. P. 17; CAL. CIV. PROC. CODE

12  § 367.  Representative suits are allowed *only* where appropriate documented authority exists.[50]

13          This Court has the power to "require an attorney, one of its officers, to show his authority

14  to appear," and to dismiss a case if that authority is not shown.  *Pueblo* 273 U.S. at 319; *see also*

15  *United States v. Wolf*, 352 F. Supp. 2d 1195, 1199 (W.D. Okla. 2004); *In re Retail Chemists*

16

17  *Lynch Capital Servs. Inc.*, 949 F. Supp. 1123, 1130-31 (S.D.N.Y. 1997) (rejecting claim that
    impending Chinese takeover of Hong Kong will render it an inadequate forum and finding that
18  Hong Kong is an adequate forum to try securities fraud claims).

    [49] *See Dawavendewa*, 276 F.3d at 1162 (collecting cases); *Wilbur*, 423 F.3d at 1115 ("even
19  assuming [plaintiffs] have no other forum in which to pursue a remedy, we have 'regularly held
    that the [absent party's] interest in [sovereign] immunity overcomes the lack of an alternative
20  remedy or forum for the plaintiffs.'").  Indeed, outside the Ninth Circuit, the fact that the PRC is
    entitled to sovereign immunity would, by itself, require that this case be dismissed.  *See*
21  *Dawavendewa*, 276 F.3d at 1162.  Defendants believe this rule is correct and hereby preserve the
    issue.

22  [50] In California, plaintiffs may grant general powers of attorney to sue on their behalf, *see* CAL.
    PROB. CODE §§ 4263(a)(1), 4459, but the documents must be (a) dated; (b) signed "either (1) by
23  the principal or (2) in the principal's name by another adult in the principal's presence and at the
    principal's direction"; and (c) "acknowledged before a notary public or . . . signed by at least two
24  witnesses."  *Id*. §§ 4121, 4122; *Estate of Rabinowitz*, 114 Cal. App. 4th 635, 638 (2003).

    In China, a party must submit to the People's Court a power of attorney bearing her signature
25  or seal that specifies the subject matter and the limits of authority granted.  An agent must have
    special authority to recognize, withdraw, or modify claims; to become involved in mediation; and
26  to file a counterclaim or to lodge an appeal on behalf of the principal.  *See* 1991Civil Procedure
    Law (P.R.C.), Art. 59.  (Appx. B, Tab 5).  A carte blanche power of attorney, which fails to name
27  the powers granted, precludes an agent from doing any of the above.  *See* Opinions of the
    Supreme People's Court on Certain Issues Concerning Application of PRC Civil Procedure Law
28  2002, SUP. PEOPLE'S CT. GAZ., Art. 69. (Appx. B, Tab 8).

1  *Corp*, 66 F. 2d 605, 608 (2d Cir. 1933). We submit it is important and prudent to address this

2  issue at the threshold of this case.[51]

3       Defendants have met and conferred with plaintiffs' counsel regarding this issue.

4  Plaintiffs' counsel have represented they have written powers of attorney granting full authority,

5  but decline to provide them to defendants at this stage of the proceedings. The need for such

6  assurances are especially important here, because it will be impossible to depose plaintiffs or

7  witnesses in China,[52] attempts to gather evidence may violate Chinese law,[53] and plaintiffs have

8  little or no ability to provide *any* evidence to support their claims.[54]

9  **VII.    CONCLUSION**

10      Plaintiffs' Second Amended Complaint should be dismissed with prejudice.

11      Dated: August 30, 2007                    DANIEL M. PETROCELLI
                                                   MATTHEW T. KLINE
12                                                 O'MELVENY & MYERS LLP

13                                                 By:_____
14                                                     Daniel M. Petrocelli
                                                   Attorneys for Defendant Yahoo! Inc and for
15                                                 specially appearing defendant Yahoo! Hong
                                                   Kong, Ltd.

16

17

18

19

_____

20  [51] Defendants are aware of one prominent ATS case prosecuted for six years, in which certain
    plaintiffs alleged that they had not authorized counsel to act in settling the case. The judgment
21  and settlement were only upheld, in large part, because plaintiffs had signed powers of attorney,
    shared them with defendants, and defendants relied on them pursuant to California Probate Code
22  section 4303, which provides: "A third person who acts in good faith reliance on a power of
    attorney is not liable to the principal . . . if . . . (1) The power of attorney is presented to the third
23  person by the attorney-in-fact designated in the power of attorney. (2) The power of attorney
    appears on its face to be valid. (3) The power of attorney includes a notary public's certificate of
24  acknowledgment or is signed by two witnesses." CAL. PROB. CODE § 4303.
    [52] *See* U.S. Department of State, China Judicial Assistance,
25  http://travel.state.gov/law/info/judicial/judicial_694.html ("it does **not** appear possible to take the
    deposition of a witness located in China") (emphasis in original).
26  [53] *See* Hong Kong Commissioner's Report ¶¶ 7.17-7.18; *see also id.* ¶¶ 7.3-7.20.
27  [54] *See id.* ¶ 3.2 ("No supporting evidence was attached to [Shi's] complaint. Despite repeated
    requests, no further information or evidence was produced by [Shi] or his authorized
28  representative to the Commissioner for consideration."); *see also id.* ¶¶ 3.3, 8.52.

# EXHIBIT B

1   DANIEL M. PETROCELLI (S.B. #97802)
    dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
    mkline@omm.com
3   O'MELVENY & MYERS LLP
    1999 Avenue Of The Stars
4   Los Angeles, California 90067-6035
    Main Number: (310) 553-6700
5   Facsimile: (310) 246-6779

6   Attorneys for Defendant YAHOO!, INC.

7

8           **UNITED STATES DISTRICT COURT**
          **NORTHERN DISTRICT OF CALIFORNIA**
          **OAKLAND DIVISION**

9

| | |
|---|---|
| 10   WANG XIAONING, YU LING, SHI TAO, and ADDITIONAL PRESENTLY UNNAMED AND TO BE IDENTIFIED INDIVIDUALS, | **Case No. C07-02151 CW** |
| 11 | **CORRECTED VERSION: DEFENDANT YAHOO!, INC.'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFFS' STATE LAW CAUSES OF ACTION PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE** |
| 12           Plaintiff, | |
| 13         v. | |
| 14   YAHOO!, INC., a Delaware Corporation, YAHOO! HONG KONG LTD., a Foreign Subsidiary of Yahoo!, AND OTHER PRESENTLY UNNAMED AND TO BE IDENTIFIED INDIVIDUAL EMPLOYEES OF SAID CORPORATIONS, | Date:      November 1, 2007 |
| 15 | Time:      2 p.m. |
| 16 | Location:   Courtroom 2 |
| 17           Defendant. | Judge:     Hon. Claudia Wilken |

18

19

20   TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

21        PLEASE TAKE NOTICE THAT ON November 1, 2007, at 2 p.m. in Courtroom 2, 4th

22   Floor, United States Courthouse, 1301 Clay Street, Oakland, California, defendant Yahoo!, Inc.

23   ("Yahoo!") will and hereby does move to strike plaintiffs' six causes of action brought under

24   California law—*i.e.*, plaintiffs' Fifth through Tenth Claims for Relief in their Second Amended

25   Complaint ("complaint").  This special motion to strike is brought on the grounds that (1)

26   plaintiffs' California causes of action are subject to the California anti-SLAPP statute, California

27   Code of Civil Procedure Section 425.16; and (2) are barred by California Civil Code Section 47,

28   which privileges the communications at issue in this case.

1       This motion is based on this notice of motion and motion, the following Memorandum of

2   Points and Authorities, Yahoo!'s concurrently filed Motion to Dismiss Plaintiffs' Second

3   Amended Complaint, the pleadings on file in this matter, the reply memorandum Yahoo! intends

4   to file, and any further argument the Court might allow.

5       Dated: August 30, 2007           DANIEL M. PETROCELLI

6                                     MATTHEW T. KLINE
                                      O'MELVENY & MYERS LLP

7

8                                     By:_____

9                                         Daniel M. Petrocelli
                                      Attorneys for Defendant

10                                    YAHOO!, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    **INTRODUCTION**

Plaintiffs' six causes of action brought under California law—their Fifth through Tenth Claims for Relief—each must be stricken pursuant to California's anti-SLAPP statute and California Civil Code section 47, because the claims are based on alleged acts of communications with Chinese law enforcement officials concerning, what is by definition, a matter of public concern—*i.e.*, alleged criminal activity.  The anti-SLAPP statute, which is designed to protect participation in matters of public concern, allows defendants an expedited means to challenge lawsuits arising out of such communications.  *See* CAL. CODE CIV. PROC. § 425.16.  The anti-SLAPP statute applies to supplemental state law claims brought in federal court, *see Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F. Supp. 2d 1127, 1129-30 (N.D. Cal. 1999), and affords Yahoo! substantive and procedural protections, including the right to file this special motion to strike.  Civil Code section 47(b) is similar to the SLAPP statute and privileges communications with law enforcement officials—even those that occur abroad—and shields Yahoo! from liability arising out of such acts.  Plaintiffs' claims in this case challenge quintessential acts of communication protected by California law.  Plaintiffs' Fifth through Tenth Claims for Relief must be stricken.

## II.    **STATEMENT OF FACTS**

Plaintiffs allege they published pro-democracy literature in China, using Yahoo! China email accounts and group lists.  *See* Compl. ¶¶ 10, 12, 33-35, 53-54, 56.  They allege the Chinese government sought to prosecute plaintiffs under Chinese laws prohibiting such speech, and Yahoo!, defendant Yahoo! Hong Kong, Ltd., and/or Yahoo! China (plaintiffs' allegations are unclear) "provided Chinese officials with access to [plaintiffs'] private e-mail records, copies of email messages, e-mail addresses, user ID numbers, and other identifying information . . . ." *Id.* ¶¶ 2, 42, 62.  Plaintiffs assert that "[t]hese disclosures served . . . as the basis" for their prosecution and detention and that, once incarcerated, government officials abused them and engaged in "acts of persecution."  *Id.* ¶ 2.  Plaintiffs are deliberately vague as to whether defendants provided information to the Chinese government on their own accord or in response to an official request from the Chinese government.  All the complaint says is that defendants acted

1  "voluntarily."  *Id.* ¶ 2.

2      Plaintiffs contend that defendants' disclosure of information aided and abetted the

3  misconduct of the Chinese government and violated federal, international, and California law.  In

4  paragraph 4 of their complaint, plaintiffs describe their California claims.  They say defendants

5  "violate[d] California state laws, including prohibitions against battery, false imprisonment,

6  assault, intentional infliction of emotional distress, negligence, negligent supervision, and the

7  California Business & Professions Code § 17200."  Compl. ¶ 4.  Plaintiffs elaborate on their

8  California law claims in the "Causes of Action" section of their complaint and their Fifth through

9  Tenth Claims for Relief.  *See id.* ¶¶ 69, 97-127.[1]

10      For purposes of this motion, Yahoo! assumes the facts alleged in the complaint are true

11  and should be read most favorably to plaintiffs—*i.e.*, that Yahoo! played some role in the

12  transmittal of information regarding plaintiffs to the Chinese authorities.  Even on these assumed

13  facts, the veracity of which Yahoo! does not concede, plaintiffs have failed to state a claim.

14  **III.  <u>PLAINTIFFS' CALIFORNIA LAW CLAIMS MUST BE STRICKEN BECAUSE</u>**

15  **<u>YAHOO!'S ALLEGED COMMUNICATIONS WERE PRIVILEGED.</u>**

16      Plaintiffs' complaint could not more directly challenge Yahoo!'s right to engage in

17  communicative acts protected by California law.  As both California state and federal courts have

18  recognized, California Civil Code Section 47(b) privileges communications made to both

19  domestic and foreign law enforcement officials.  *See Beroiz v. Wahl*, 84 Cal. App. 4th 485, 494-

20  95 (Cal. Ct. App. 2000) ( 47(b) privilege applies to communications made to Mexican law

---

21

22  [1] At times, plaintiffs suggest that their tort claims (*e.g.*, for battery) are brought under both "the laws of California *and the United States*."  *Id.* ¶¶ 98-100 (emphasis added); *see also id.* ¶¶ 112,

23  116.  Of course, "[t]here is no federal general common law" and, as the Supreme Court explained 70 years ago, "[e]xcept in matters governed by the Federal Constitution or Acts of Congress, the

24  law to be applied in any case *is the law of the State*."  *Erie Railroad Co v. Tompkins*, 304 U.S. 64, 78 (1938) (emphasis added).  Because plaintiffs' complaint directly invokes the law of the State

25  of California, Yahoo! assumes, for purposes of bringing this motion, that California law applies. However, Yahoo! reserves the right to assert that California law does not apply to this case.

26  *Cf. Radiation Sterilizers, Inc. v. U.S.*, 867 F. Supp. 1465, 1476 (E.D. Wash. 1994) (in ruling on motions to dismiss, court did not decide whether Washington or Georgia law applied, but merely

27  determined whether plaintiffs' causes of action, brought under Washington law, stated cognizable claims under Washington law); *Panama Processes, S.A. v. Cities Servs. Co.*, 650 F.2d 408, 413

28  n.6 (2d Cir. 1981) (party reserved right to argue that Brazilian law applied, though it presently argued under New York law).

1   enforcement); *E. & J. Gallo Winery v. Andina Licores, S.A.*, Case No. CV F 05-0101, 2006 U.S.

2   DIST. LEXIS 47206, at \*24 (E.D. Cal. June 30, 2006) (privilege applies to communications made

3   in Ecuador); *Johnson v. Symantec Corp.*, 58 F. Supp. 2d 1107, 1110 (N.D. Cal. 1999)

4   ("undisputed" that privilege applies to communications "made in the context of ongoing

5   governmental investigations").  Given this rule, plaintiffs' California law claims should either be

6   dismissed pursuant to Yahoo!'s concurrently filed motion to dismiss, or stricken pursuant to the

7   anti-SLAPP statute.

8       Adjudicating a SLAPP motion is a two-step process.  First, the Court must determine

9   whether the defendant has met its burden of demonstrating that the anti-SLAPP statute applies.

10  *See Navellier v. Sletten*, 29 Cal. 4th 82, 88 (Cal. 2002).  Second, if defendant meets that burden,

11  the plaintiffs must demonstrate they have stated a legally cognizable claim.  *See id.*

12      In federal court, a plaintiff's burden in response to an anti-SLAPP motion depends on the

13  nature of the defendant's challenge.  If the challenge is based on legal defects on the face of the

14  pleadings, then plaintiffs' burden is "analogous to [that of] a Rule 12(b)(6) motion to dismiss."

15  *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999).  If, instead, a

16  defendant's challenge is based on a lack of evidence to substantiate plaintiff's claims, then the

17  plaintiff's burden is analogous to a motion for summary judgment pursuant to Rule 56.  *See id.* at

18  982-83.  Here, Yahoo! challenges deficiencies on the face of the pleadings.  Thus, plaintiffs'

19  allegations should be assumed true and their California law claims stricken only if they failed to

20  plead a "cognizable legal theory" or pled insufficient facts "under a cognizable legal theory."

21  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988) (applying Rule 12(b)(6)).

22  Yahoo! contends plaintiffs' claims are barred by California privilege law.

23      **A.    The Anti-SLAPP Statute Applies.**

24          **1.    Plaintiffs' Claims Target Protected Acts of Communication.**

25      The SLAPP statute applies to any "cause of action against a person arising from any act of

26  that person in furtherance of that person's right of petition or free speech under the United States

27  or California Constitution in connection with a public issue," CAL. CODE CIV. PROC.

28  § 425.16(b)(1), including "any written or oral statement or writing made before a legislative,

1  executive, or judicial proceeding, or any other official proceeding authorized by law" and "any

2  written or oral statement or writing made in connection with an issue under consideration or

3  review by a legislative, executive, or judicial body, or any other official proceeding authorized by

4  law," *id*. §§ 425.16(e)(1)-(2).  Plaintiffs' California claims fall within the scope of the SLAPP

5  statute because they arise from communications with government officials concerning an official

6  investigation.

7      California courts have uniformly held that such communications are protected:

8      • In *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (Cal.

9          1999), the California Supreme Court held that statements made to investigators for the

10         Department of Housing and Urban Development fell within the ambit of the statute.

11     • In *Dickens v. Provident Life & Accident Ins. Co.*, 117 Cal. App. 4th 705, 713-717

12         (Cal. Ct. App. 2004), the California court of appeal held that the statute protected

13         statements made to federal prosecutors that resulted in plaintiffs' prosecution.

14     • In *Siam v. Kizilbash*, 130 Cal. App. 4th 1563, 1569-1570 (Cal. Ct. App. 2005), the

15         Court of Appeal held that defendant's reports of child abuse to police qualified.

16     • And in *Computerxpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1009-10 (Cal. Ct. App.

17         2001), the court held that SLAPP applied to complaints filed with the SEC.

18  None of these results is surprising.  As the California Supreme Court has recognized: "it [is] the

19  duty of every citizen to cooperate with the police in their investigation of crime and to provide

20  information to investigating officers," and defendants cannot be held liable for "fulfill[ing] this

21  duty." *Hagberg v. Calif. Fed. Bank FSB*, 32 Cal. 4th 350, 373 (Cal. 2004).

22      Under any reading of the complaint, defendants' alleged communications are protected.

23  Even assuming Yahoo! *volunteered* information to the PRC—which it did not—its actions, like

24  those in *Briggs*, *Dickens*, *Siam*, and *Computer Express*, are fully protected.  *See Dickens*, 117 Cal.

25  App. 4th 705 at 707-08 (lawsuit is subject to SLAPP because "Dickens's cause of action . . .

26  challenges the actions of [defendants] in allegedly playing an instrumental role in procuring the

27  criminal prosecution against him").

28

1    If Yahoo!'s communications were made in response to a formal legal request, then those

2    communications deserve even greater protection.  Testimony given before public bodies,

3    evidence produced in response to subpoenas or legal process, and reports made in response to

4    official requests for information are all "protected activities" under the SLAPP statute.  *Greka*

5    *Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1580 (Cal. Ct. App. 2005) ("Lowrey

6    disclosed information about Greka to his counsel, to authorities and in deposition and trial

7    testimony *in response to subpoenas*.  *These are all protected activities*.  Accordingly, Lowrey met

8    his burden to show the complaint arose from protected speech.") (citing CAL. CODE CIV. PROC. §

9    425.16(e)(1) (statements made "before a legislative, executive, or judicial proceeding, or any

10    other official proceeding authorized by law" are protected activity)) (emphasis added); *Gallanis-*

11    *Politis v. Medina*, 152 Cal. App. 4th 600, 611 (Cal. Ct. App. 2007) (holding that "investigation

12    and report . . . conducted and written in response to a request for information from" county

13    official were "acts in furtherance of [defendants'] right of petition or free speech," and, thus,

14    protected by the SLAPP statute).

15           2.    **No Good Reason Exists to Exempt Plaintiffs' Claims from the Statute.**

16    Plaintiffs have not indicated whether they believe the SLAPP statute applies in this case.

17    If they argue against its application, such arguments should be rejected.

18    First, plaintiffs may argue that because they filed this lawsuit to protect their free speech

19    rights—and not to interfere with defendants' rights and duties to speak—the SLAPP statute

20    should not apply.  Such an argument would be misguided.  The SLAPP statute applies even when

21    plaintiff's lawsuit is not motivated by a desire to chill defendant's speech.  *See Dickens*, 117 Cal.

22    App. 4th 705 at 716-17.  Even if that were not the rule, plaintiffs clearly intend to silence

23    defendants:  they seek "injunctive relief to stop any further disclosures of user information" to the

24    PRC.  Compl. at 34.

25    Second, plaintiffs might argue that SLAPP should not apply to communications with

26    foreign law enforcement officials.  However, plaintiffs assert claims based on *California* law

27    against a *California* defendant and are, therefore, subject to *California* defenses.  Moreover,

28

1   identical language in California's related litigation privilege statute, *see* CAL. CIV. CODE § 47(b),

2   has been held to apply to communications with foreign law enforcement officials.

3        The Ninth Circuit has held that the anti-SLAPP statute furthers "important, substantive

4   state interests," and should be applied to California claims absent a direct conflict with other laws.

5   *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir.

6   1999) (extending SLAPP statute's protection to California claims in federal diversity actions).

7   Although a court in this district has recently concluded that the SLAPP statute may not apply to

8   claims *filed* in another jurisdiction and *governed by the substantive law* of that jurisdiction, it

9   recognized that the SLAPP statute does govern "cases where California substantive law was

10  being applied."  *Schering Corp. v. First DataBank*, Inc., 2007 U.S. Dist. LEXIS 50164 at *8

11  (N.D. Cal. Apr 20, 2007).  "California has a great interest in determining how much protection to

12  give California speakers" who are sued for California torts.  *Id*. at *17.  Plaintiffs cannot claim the

13  protections of California law but avoid its burdens.[2]

14       Moreover, in determining the scope of the SLAPP statute's protections, California courts

15  have often looked to California Civil Code section 47(b), which contains identical language.

16  Though the conduct protected by the two statutes is not identical, courts often examine "the scope

17  of the litigation privilege to determine whether a given communication falls within the ambit of

18  subdivision (e)(1) and (2) [of the SLAPP statute]."  *Flatley v. Mauro*, 39 Cal. 4th 299, 322 (Cal.

19  2006); *see also Dickens*, 117 Cal. App. 4th at 715 ("because the defendants' conduct would have

20  been privileged under Civil Code section 47 subsection (b), *it would have necessarily been*

21  *protected activity under section 425.16*") (emphasis added); *Sylmar Air Conditioning v. Pueblo*

22  *Contracting Servs.*, 122 Cal. App. 4th 1049, 1058 (Cal Ct. App. 2004) ("Communications within

23

---

24  [2] Indeed, one Illinois federal court held that, "because California has a great interest in
    determining how much protection to give California speakers," the SLAPP statute may apply to
25  protect California defendants even where another state's substantive law does govern the
    underlying action.  *See Global Relief Found. v. New York Times Co.*, 2002 U.S. Dist. LEXIS
26  17081 at *32-33 (N.D. Ill 2002) (holding that California defenses to defamation, including
    SLAPP, applied even though defamation claim was otherwise governed by Illinois law) (citing
27  RESTATEMENT (SECOND) OF CONFLICTS § 145, cmt. d (1971) ("[T]he local law of the state where
    the parties are domiciled, rather than the local law of the state of conflict and injury, may be
28  applied to determine whether one party is immune from tort liability to the other.")).

1  the protection of the litigation privilege of Civil Code section 47, subdivision (b) are equally

2  entitled to the benefits of section 425.16."); *Contemporary Services Corp. v. Staff Pro Inc.*, 152

3  Cal. App. 4th 1043, 1055 (Cal. App. 2007) ("Both section 425.16 and Civil Code section 47 are

4  construed broadly, to protect the right of litigants to the utmost freedom of access to the courts

5  without [the] fear of being harassed subsequently by derivative tort actions.  Thus, it has been

6  established for well over a century that a communication is absolutely immune from any tort

7  liability if it has 'some relation' to judicial proceedings."); *but see Flatley*, 39 Cal. 4th at 322-23

8  (finding an instance where the protections did not overlap because the purpose of the SLAPP

9  statute was not served by protecting activities conclusively established to be crimes).

10      Section 47(b) has been held to apply to communications abroad.  *See Beroiz v. Wahl*, 84

11  Cal. App. 4th 485 494-95 (Cal. Ct. App. 2000), *E. & J. Gallo Winery v. Andina Licores, S.A.*,

12  Case No. CV F 05-0101, 2006 U.S. DIST. LEXIS 47206, at *24 (E.D. Cal. June 30, 2006).  In

13  *Beroiz*, 84 Ca. App. 4th at 490-91, for example, the defendant was an American citizen living in

14  Mexico who filed criminal charges against American members of a Mexican homeowners'

15  association.  The members of the homeowners' association sued the defendant in California court

16  for defamation based on statements made to a Mexican district attorney.  *See id.*  In ruling that

17  section 47(b) applied, the court noted that the question was an issue of first impression in

18  California, but both out-of-state precedents and the public policy rationales supporting

19  section 47(b) argued strongly in favor of applying it broadly to shield defendants from suit.  *See*

20  *id.* at 909-12.

21      Similarly, in *E. & J. Gallo*, Andina sued Gallo in Ecuador for breach of contract.  *See*

22  2006 U.S. Dist. LEXIS at *1-9.  Gallo then sued Andina in California for declaratory relief,

23  breach of contract, unfair competition, and abuse of process.  *See id.*  Relying on *Beroiz*,

24  *E. & J. Gallo* held that statements made in connection with foreign legal proceedings were

25  protected under section 47(b).  *See id.* at *26-28.[3]

26  ───────────────

[3] Both courts said that if the foreign legal system was "devoid of adequate procedural safeguards," and defendants used the foreign legal process as a means and with the intent to harm plaintiffs, then the absolute privilege afforded by § 47(b) might not apply.  *See id.*; *see Beroiz*, 84 Cal. App. 4th at 494-96.  But where, as here, there is no claim that defendants acted with malice, the privilege applies to communications outside the state.

1    Indeed, American courts generally have refused to allow plaintiffs to hold defendants

2    liable for engaging in conduct abroad that would be protected speech here.  *See, e.g.*, *Bachchan v.*

3    *India Abroad Publ'ns, Inc.*, 585 N.Y.S. 2d 661, 664-65 (N.Y. Sup. Ct. 1992) (where plaintiff filed

4    suit in U.S. to enforce foreign libel judgment, court refused to enforce judgment because foreign

5    tribunal had not provided defendant with various substantive and procedural free speech

6    defenses).[4]  And courts in numerous countries[5] and virtually every state[6] privilege

7    _____

8    [4] *See also Beroiz*, 84 Cal. App. 4th at 494:

9    In *Vanderkam v. Clarke* (S.D.Tex. 1998) 993 F. Supp. 1031, 1031-1032, the
executive director of a scandal-ridden Irish corporation brought an action against a
lawyer appointed by the High Court of Ireland to investigate the corporation, alleging

10   that the lawyer's communication of his official findings had defamed the director. The
district court in Vanderkam held that the lawyer's conduct was absolutely privileged,
reasoning that the lawyer had published his findings as ordered by the Irish court, and

11   that under Texas law, lawyers are privileged to publish otherwise defamatory material in
connection with a judicial proceeding. (*Id.* at p. 1032.)

12   Similarly, in *Sorge v. City of New York* (1968) 56 Misc.2d 414, 415 [288 N.Y.S.2d

13   787, 790-791], two police officers in New York City testified, at the request of the State
Department of the United States, at a hearing before an Italian judge regarding criminal

14   activity in Italy.  When the officers were sued for defamation, the court in Sorge held
that their testimony during the Italian judicial proceeding was absolutely privileged

15   under New York law. (288 N.Y.S.2d at pp. 798-799.)

16   Finally, in *Bakhshandeh v. American Cyanamid Company* (S.D.N.Y. 1962) 211 F.
Supp. 803, 804, an Iranian citizen sued an American corporation for defamation,
alleging, inter alia, that the corporation's employees had made defamatory remarks to an

17   Iranian governmental official in Tehran. Citing primarily New York law, the district
court in Bakhshandeh determined that these remarks to the Iranian official were subject

18   to a qualified privilege, and thus they were not actionable absent proof of malice. (*Id.* at
pp. 808-809.).

19   [5] *See, e.g., Mann v. O'Neill* (1997) 191 C.L.R. 204 at 216 (Austl.) ("Complaints to prosecuting
authorities—'statements in aid of justice', as they are sometimes called— enjoy qualified

20   privilege.")); *Pleau v. Simpsons-Sears Ltd.*, (1976) 15 O.R. 2d 436 (Ont. C.A.) at ¶16 (Qualified
privilege applied to defendant's publication of a notice to employees regarding possible forged

21   checks bearing plaintiff's name; reasoning that published statement was privileged because
defendant "acted at the request of the local police"); *Lupee v. Hogan*, (1920) 47 N.B.R. 492 (N.B.

22   C.A.) at ¶9 ("universally recognized" rule that "all material statements made by persons interested
in the detection of a crime during their investigations, and material thereto, are privileged");

23   *Padmore v. Lawrence*, 11 Ad. & El. 380, 382 (K.B. 1840) (Coleridge, J.) (Great Britain: "For the
sake of public justice, charges and communications, which would otherwise be slanderous, are

24   protected if bona fide made in the prosecution of inquiry into suspected crime."); *Martin v.*
*Watson*, [1994] Q.B. 425 at p. 437 (Great Britain: "[Q]ualified privilege . . . applies to a statement

25   made to a police officer by way of reporting a complaint."); Susanna Frederick Fischer,
*Rethinking* Sullivan, 34 Geo. Wash Int'l L. Rev. 101, 118-26 (2002) (English law privileges

26   "statement[s] made to the police concerning the commission of a crime"; noting that the laws of
Australia, New Zealand, and England are similar; showing that statutory developments in all three

27   countries have not changed the common law privilege for communications to police); *Hardaker*
*v. Phillips*, 2005 (4) SA 515 (S. Afr.) (discussing qualified privilege that attaches to witness

28   statements in ongoing prosecutorial proceedings).

1    communications to law enforcement.  In short, the SLAPP statute—like section 47(b)—should be

2    read broadly to apply in this case.

3        Finally, plaintiffs may not argue that their claims under Business & Profession Code

4    section 17204 are exempt from the SLAPP statute.  California Code of Civil Procedure section

5    425.17 exempts claims "brought *solely* in the public interest" when the "plaintiff does *not* seek

6    any relief greater than or different from the relief sought for the general public."  CAL. CODE CIV.

7    PROC. § 425.17(b), (b)(1) (emphasis added.)  Although plaintiffs advert to the "public interest" in

8    describing their section 17204 claims, Compl. ¶ 119, they concede that they "bring this cause of

9    action on behalf of *themselves*" and "seek compensation for the loss of *their property and the*

10   *personal financial impacts they have suffered*," *id*. (emphasis added).  As a result, section 425.17

11   does not exempt their claims.  *See, e.g.*, *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal.

12   App. 4th 1050, 1067 (Cal. Ct. App. 2005) ("[b]ecause appellant alleges and seeks recovery of

13   damages personal to himself, his claim fails to meet the first requirement set out in section

14

---

15   [6] *See General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1125-27 (6th Cir. 1990) (Kentucky);
*Borg v. Boas*, 231 F.2d 788, 794 (9th Cir. 1956) (Idaho); *Kahermanes v. Marchese*, 361 F. Supp.
16   168, 172 (E.D. Pa. 1973); *Marsh v. Commercial & Sav. Bank of Winchester, Va.*, 265 F. Supp.
614, 621 (W.D. Va. 1967); *Cutts v. Am. United Life Ins. Co.*, 505 So. 2d 1211, 1215 (Ala. 1987);
17   *Miller v. Nuckolls*, 91 S.W. 759, 761, 762 (Ark. 1905); *Kress v. Self*, 526 P.2d 754, 756 (Ariz. Ct.
Appl. 1974); *Burke v. Greene*, 963 P.2d 1119, 1122 (Colo. 1998); *Flanagan v. McLane*, 87 Conn.
18   220, 87 A. 727, 728 (1913); *Newark Trust Co. v. Bruwer*, 141 A.2d 615, 617 (Del. 1958);
*Fridovich v. Fridovich*, 598 So. 2d 65, 67, 68 (Fla. 1992); *Hardaway v. Sherman Enters., Inc.*,
19   210 S.E.2d 363, 364 (Ga. 1974); *Starnes v. Int'l Harvester Co.*, 539 N.E.2d 1372-75 (Ill. 4th Dist.
1989); *Indiana Nat. Bank v. Chapman*, 482 N.E.2d 474, 479 (Ind. Ct. App. 4th Dist. 1985);
20   *Winckel v. Von Maur Inc.*, 652 N.W.2d 453 (Iowa 2002); *Faber v. Byrle*, 229 P.2d 718 (Kan.
1951); *Cormier v. Blake*, 198 So. 2d 139, 144 (La. Ct. App. 3d Cir. 1967); *Robinson v. Van
21   Auken*, 76 N.E. 601, 602 (Mass. 1906); *Packard v. Central Maine Power Co.*, 477 A.2d 264, 268
(Me. 1984); *Kefgen v. Davidson*, 617 N.W.2d 351 (Mich. Ct. App. 2000); *Smits v. Wal-Mart
22   Stores, Inc.*, 525 N.W.2d 554, 557 (Minn. Ct. App. 1994); *Arnold v. Quillian*, 262 So. 2d 414,
415 (Miss. 1972); *Hancock v. Blackwell*, 41 S.W. 205, 207 (Mo. 1897); *Pierce v. Oard*, 37 N.W.
23   677, 679 (Neb. 1888); *Hampe v. Foote*, 47 P.3d 438, 440 (Nev. 2002); *Dijkstra v. Westerink*, 401
A.2d 1118-21 (N.J. App. Div. 1979); *Grossman v. Fieland*, 483 N.Y.S.2d 735, 736 (2d Dep't
24   1985); *Averitt v. Rozier*, 458 S.E.2d 26 (N.C. 1995); *Richmond v. Nodland*, 552 N.W.2d 586
(N.D. 1996); *Paramount Supply Co. v. Sherlin Corp.*, 16 Ohio App. 3d 176 (8th Dist. Cuyahoga
25   County 1984); *Magness v. Pledger*, 334 P.2d 792, 795 (Okla. 1959); *Ducosin v. Mott*, 642 P.2d
1168, 1169-70 (Or. 1982); *Sylvester v. D'Ambra*, 54 A.2d 418, 420 (R.I. 1947); *Moore v. Bailey*,
26   628 S.W.2d 431, 436 (Tenn. Ct. App. 1981); *Hott v. Yarbrough*, 245 S.W. 676, 678, 679 (Tex.
Comm'n App. 1922); *Schnupp v. Smith*, 457 S.E.2d 42 (Vt. 1995); *Story v. Shelter Bay Co.*, 760
27   P.2d 368, 372-73 (Wash App. Div. 1 1988); *Otten v. Schutt*, 113 N.W.2d 152, 156 (Wis. 1962);
*Lever v. Cmty. First Banestates*, 989 P.2d 634 (Wyo. 1999); *Columbia First Bank v. Ferguson*,
28   665 A.2d 650 (D.C. 1995).

1    425.17, subdivision (b)").

2    **B.    Plaintiffs Claims Are Barred by Civil Code Section 47(b).**

3    Because Yahoo! has shown the SLAPP statute applies, plaintiffs bear the burden to show

4    each of their six California claims is cognizable. *See Navellier*, 29 Cal. 4th at 88. Plaintiffs'

5    California claims fail as a matter of law, as fully addressed in Yahoo!'s concurrently filed motion

6    to dismiss. *See* Mot. at 27-31, 35-36.

7    One infirmity that pervades each of plaintiffs' California claims—and the one most

8    closely tied to the anti-SLAPP statute—is the privilege afforded by Civil Code section 47(b). *See*

9    *id.* at 18-19. The privilege, as noted above, is read broadly by Californian courts to shield

10    defendants from liability for communicating with law enforcement officials. *See Johnson*, 58 F.

11    Supp. 2d at 1110. That privilege applies to communications in the United States and abroad. *See*

12    *Beroiz*, 84 Cal. App. at 494-95; *E. & J. Gallo Winery*, 2006 U.S. DIST. LEXIS 47206, at *24.

13    And that privilege is an absolute bar to plaintiffs' six California claims. *See Moore v. Conliffe*, 7

14    Cal. 4th 634, 638 n.1 (Cal. 1994) ("Although the protection afforded by the statute is commonly

15    denominated a 'privilege,' which creates a 'privileged communication,' section 47(b) does not

16    create an evidentiary privilege that protects a communication from compelled disclosure. Instead,

17    the section 47(b) privilege operates as a limitation on liability, precluding use of the protected

18    communications and statements as the basis for a tort action other than for malicious prosecution.

19    Thus, section 47(b) creates what in many other contexts is termed an 'immunity' from suit.").

20    **IV.    CONCLUSION**

21    For the foregoing reasons, Yahoo!'s anti-SLAPP motion should be granted and plaintiffs'

22    six causes of action brought under California law—their Fifth through Tenth Claims for Relief—

23    should be immediately stricken from plaintiffs' Second Amended Complaint.

24    Dated: August 30, 2007                    DANIEL M. PETROCELLI
                                                MATTHEW T. KLINE
25                                              O'MELVENY & MYERS LLP

26                                              By: _____
27                                                   Daniel M. Petrocelli
                                                     Attorneys for Defendant
28                                                   YAHOO!, INC.