Xiaoning et al v. Yahoo! Inc, et al                                                    Doc. 105

Case 4:07-cv-02151-CW     Document 105     Filed 10/18/2007     Page 1 of 22

Morton, H. Sklar, Executive Director
msklar@humanrightsusa.org
World Organization for Human Rights USA
2029 P Street NW, Suite 301
Washington, DC 20036
Telephone: (202) 296-5702
Facsimile: (202) 296-5704
[Admitted *Pro Hac Vice*]

Roger Myers (CA State Bar No. 146164)
roger.myers@hro.com
HOLME ROBERTS & OWEN LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105-2994
Telephone: (415) 268-2000
Facsimile: (415) 268-1999

[Additional Attorneys Appear on Signature Page]

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANSISCO DIVISION

| | |
|---|---|
| WANG XIAONING, YU LING, SHI TAO, and ADDITIONAL PRESENTLY UNNAMED AND TO BE IDENTIFIED INDIVIDUALS,<br><br>                              Plaintiffs,<br><br>          v.<br><br>YAHOO, INC., a Delaware Corporation, YAHOO! HONG KONG, LTD., a Foreign Subsidiary of Yahoo!, AND OTHER PRESENTLY UNNAMED AND TO BE IDENTIFIED CORPORATE DEFENDANTS AND UNNAMED AND TO BE IDENTIFIED INDIVIDUAL EMPLOYEES OF SAID CORPORATIONS,<br><br>                              Defendants. | Case No. C07-02151 CW<br><br>**TORT DAMAGES CLAIM**<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR INITIAL AND JURISDICTIONAL DISCOVERY**<br><br>Judge: Hon. Claudia Wilken |

1

**TABLE OF CONTENTS**

2

I.   RESPONSES TO DEFENDANTS' ARGUMENTS ............................................... 1

3

   A.  Overview ................................................................................................. 1

4

5

   B.  Defendants Offer New Facts And Alternative Factual Interpretations As A Basis
     For Their Motions ................................................................................... 3

6

7

   C.  Defendants' Motions Do Not Rest On Purely Legal Issues, But Require
     Underlying Factual Determinations To Be Made ............................... 5

8

   D.  Each Of The Defendants' Motions Raises Factual Issues Relevant To Jurisdiction .... 6

9

   E.  Jurisdictional Discovery Is Necessary And Appropriate Under These
     Circumstances ........................................................................................ 6

10

11

   F.  Why Court-Ordered Jurisdictional Discovery Is Needed ............................. 7

12

   G.  Plaintiffs Are Not Seeking Long-Term, Comprehensive Discovery As Defendants
     Claim, But Limited Discovery Over A Short Period (Estimated At Three Months)
     Carefully Focused On Specifically Identified Jurisdictional Issues ........................... 7

13

14

   H.  The Defendants' Motions Should Be Treated In A Unified And Consolidated
     Way, As Rule 12(g) Contemplates, Not As Separate And Unrelated Matters,
     Based On The Defendants' "Bifurcated" Approach That This Court Previously
     Rejected ................................................................................................. 8

15

16

II.  EACH OF THE DEFENDANTS' RULE 12 MOTIONS RAISES FACTUAL ISSUES,
   AND REQUIRES FURTHER FACTUAL DEVELOPMENT, BEFORE THE
   UNDERLYING JURISDICTIONAL ISSUES CAN BE PROPERLY ADDRESSED
   AND DECIDED ...................................................................................... 9

17

18

19

   A.  Rule 12(b)(1) Lack Of Subject Matter Jurisdiction Claims ....................... 10

20

   B.  Rule 12(b)(2) Personal Jurisdiction Claims ............................................ 12

21

   C.  Rule 12(b)(6) Failure To State A Claim Challenges ................................ 13

22

   D.  Rule 12(b)(7) Indispensable Party Claim ............................................... 14

23

   E.  Privileged Communications And Foreign Sovereign Compulsion Defenses ............ 14

24

   F.  Anti-SLAPP Motion To Strike Discovery Issues ................................... 15

25

III. CONCLUSION ............................................................................................ 15

26

27

28

1

2

3

## TABLE OF AUTHORITIES

**CASES**                                                                              **Page**

4   *Aetna Life Ins. Co. v. Alla Medical Servs., Inc.,*

5       855 F.2d 1470 (9th Cir. 1988)..................................................................................... 9

6   *Butcher's Union Local No. 498 v. SDC Investments, Inc.,*

7       788 F.2d 535 (9th Cir. 1986) ......................................................................................7

8   *Canatella v. Van DeKamp,*

9       486 F.3d 1128 (9th Cir. 2007)…………………………………………………….13

10  *Corrie v. Caterpillar,*

11      2007 U.S. App. LEXIS 22133 (9th Cir.)…………………………………… 9, 11

12  *Data Disc, Inc. v. Systems Tech. Assocs.,*

13      557 F.2d 1280 (9th Cir. 1977)..................................................................................... 7

14  *Doe v. Unocal,*

15      395 F.3d 932 (9th Cir. 2002)..................................................................................... 11

16  *Khulumani v. Barclay National Bank, Ltd., et. al.,*

17      05-2141-cv and 05-2326-cv (2nd Cir., October 12, 2007 (not yet reported))................... 9, 11, 12

18  *McDonald v. Smith,*

19      472 U.S. 479, 485 (1985). ..................................................................................... 6

20  *McGhee v. Arabian American Oil Co.,*

21      871 F.2d 1412 (9th Cir. 1999)..................................................................................... 14

22  *Metabolife Intern., Inc. v. Wornick,*

23      264 F.3d 832 (9th Cir. 2001)..................................................................................... 15

24  *Mujica v. Occidental Petroleum Corp.,*

25      381 F.Supp.2d 1164 (C.D. Cal. 2005) ..................................................................................... 11

26  *Schnabel v. Lui,*

27      302 F.3d 1023 (9th Cir. 2002)..................................................................................... 9

28

1

**TABLE OF AUTHORITIES**
**(continued)**

2

3    *Sipple v. Foundation for Nat. Progress,*

4       71 Cal. App.4th 226 (2nd Dist. 1999) ................................................................ 15

5    *Sizova v. Nat. Inst. of Standards,*

6       282 F.3d 1320 (10th Cir. 2002) .......................................................................... 10

7    *Societe Internationale Pour Participations v. Rogers,*

8       357 U.S. 197 (1958) ........................................................................................... 14

9    *Tiernan v. Dunn*

10       295 F.Supp. 1253 (DCRI 1969) ........................................................................... 9

11    *U.S. v. Ruiz,*

12       536 U.S. 622 (2002) ............................................................................................. 7

13    *Victory v. Manning,*

14       128 F.2d 415 (3rd Cir. 1942) ............................................................................... 9

15    *Wells Fargo and Co. v. Wells Fargo Express Co.,*

16       556 F.2d 406 (9th Cir. 1977) ............................................................................... 7

17

**STATUTES**

18

19    18 U.S.C. § 2701 .............................................................................................................. 5

20    18 U.S.C. § 2702 .............................................................................................................. 5

      18 U.S.C. § 2511 .............................................................................................................. 5

21    28 U.S.C. §1605(a)(2) ...................................................................................................... 14

22    California Civil Code § 425.16(g) (Anti-SLAPP Statute) ............................................... 15

23

**COURT RULES**

24

25    Federal Rule of Civil Procedure Rule 12 ....................................................................... 2, 5

      12(g) .......................................................................................................... 2, 3, 8, 9

26    12(b)(1) ......................................................................................................... 3,10

      12(b)(2) ........................................................................................................ 12, 13

27    12(b)(6) .................................................................................................... 3, 13, 14

      12(b)(7) ............................................................................................................ 14

28    12(e) .................................................................................................................. 6

**TABLE OF AUTHORITIES**
(continued)

Federal Rule of Civil Procedure 19 ........................................................................... 14

Federal Rule of Civil Procedure 26(b)(1) ................................................................. 7

Federal Rule of Civil Procedure 26(d) ..................................................................... 7

Federal Rule of Civil Procedure Rule 56 ................................................................. 14

**OTHER AUTHORITIES**

Restatement (Third) of the Foreign Relations Law of the U.S. § 403(2)(a) (1987) ...................... 5

Restatement (Third) of the Foreign Relations Law of the U.S. § 442, note 6 (1987).................. 14

Restatement (Third) of the Foreign Relations Law of the U.S. § 443, Cmt.(c) (1987) ............... 11

"Verizon Says It Turned Over Data Without Court Orders," *Washington Post*,
     October 16, 2007, p.1............................................................................................. 4

1  **I.    RESPONSES TO DEFENDANTS' ARGUMENTS**

2      **A.  Overview**

3      Defendants have made initial and jurisdictional discovery necessary by moving for

4  dismissal of Plaintiffs' Second Amended Complaint on a wide variety of grounds based on a

5  number of factual and legal challenges that require additional factual material in order to be

6  properly and fairly addressed, and by introducing as part of their motions new factual materials,

7  extraneous to the Complaint and prior pleadings, that cannot be responded to without obtaining

8  further facts that are uniquely within the possession and control of the Defendants.   Even without

9  the additional factual and documentary materials that the Defendants used to supplement their

10 motions to dismiss and associated motions, jurisdictional discovery would be justified and

11 necessitated if the Plaintiffs are to have a fair and reasonable opportunity to properly respond to

12 the motions, since, despite the Defendants' assurances to the contrary, their motions

13 fundamentally challenged key factual allegations of the Complaint, and offered alternative factual

14 interpretations and arguments that seek to undercut major elements of the Plaintiffs' claims.

15      The new facts and materials introduced by the Defendants compounded the problem and

16 reinforced the need for jurisdictional discovery by providing factual allegations and information,

17 as well as arguments based upon them, that Plaintiffs must be provided an opportunity to counter.

18 Defendants motions must be treated as dispositive in that they could result in the dismissal of the

19 Complaint in whole or in part, making it essential that the Plaintiffs be given a full and fair

20 opportunity to respond to them.  This cannot take place without jurisdictional discovery since

21 many of the most essential facts relevant to responding to the Defendants' claims, and to the

22 additional factual material they have introduced in support of their motions, are in their

23 possession, have not been disclosed previously and are not part of the public record.  This most

24 certainly includes, among other relevant items,  information on the content, legality and

25 appropriateness of the requests for information that Chinese government officials delivered to

26 Yahoo!, the content and nature of the disclosures Yahoo! made in response, the nature of any

27 communications between China and  Yahoo!, and among Yahoo!'s affiliates and staff regarding

28 the requests and disclosures, and information regarding the organizational structures and

1    relationships involving Yahoo! and its China affiliates that relate to the numerous jurisdictional

2    and substantive issues that Yahoo! has raised in its motions.

3         Nor should the Court accept the Defendants' argument that certain of its motions to

4    dismiss be considered independently of, and prior to, the jurisdictional discovery process being

5    completed.  Defendant violated the standards calling for consolidated Rule 12 motions to dismiss

6    under 12 (g), as well as this Court's 40-page limit mandate (issued Aug. 23, 2007), when it

7    submitted a series of separate motions to dismiss and other associated motions on Aug. 27, 2007,

8    comprising a total number of narrative pages well over the 40-page limit.  Defendants now seek

9    to take unfair advantage of its own Rule 12 and Court Order violations to seek separate and

10   independent consideration of each of their motions to dismiss.  This "bifurcated" approach is

11   inconsistent with the purposes of consolidation and efficiency set out under Rule 12(g)'s more

12   unified approach.  Furthermore, this Court previously rejected the "bifurcated" approach when

13   Defendants originally suggested it in its June 21, 2007 motion for an alternative system case

14   management as a basis for by-passing and delaying the regular litigation and case management

15   process.

16        In its July 31, 2007 Order rejecting the Defendants' bifurcation proposal, the Court held

17   that it would "not adopt Defendant Yahoo!'s proposed two-phase schedule, nor will the Court

18   stay discovery" (Order Denying Defendant Yahoo!'s Motion, July 31, 2007, p.6, line 13).  In

19   essence, the Defendants now seek to reprise and relitigate this very same proposal in the context

20   of their motions to dismiss and associated motions, and their Opposition to Plaintiffs' Motion for

21   Initial and Jurisdictional Discovery.  Defendants have presented no basis for revisiting the Court's

22   prior decision, or for changing the results of that prior decision as regards staying discovery, in

23   connection with the Defendants' proposal that a variety of individual jurisdictional objections be

24   considered on a piecemeal or "bifurcated" basis.  The jurisdictional issues cited by the Defendants

25   for consideration in their "bifurcation" proposal mirror exactly the grounds cited for their current

26   motions to dismiss.  Their earlier proposal also sought a withholding of discovery until each of

27   the preliminary jurisdictional issues could be addressed, which the Court similarly rejected.

28        Equally important, the Defendants' motions must be treated in a coordinated and unified

1  fashion, pursuant to the Rule 12(g) consolidation mandate.  Many of the factual items Plaintiffs

2  seek through jurisdictional discovery speak to issues raised by several of the motions.  As a

3  practical matter, and consistent with the consolidated approach called for under Rule 12(g), all of

4  the Defendants' motions should be treated together and jointly, not separately considered and

5  handled.

6      **B.      Defendants Offer New Facts and Alternative Factual Interpretations as a**
       **Basis for Their Motions.**
7

8          Defendants' Opposition to Plaintiffs' Motion for Initial and Jurisdictional Discovery

9  (hereinafter "Defendants' Opposition") fails to address or rebut the key point in the Plaintiffs'

10  motion for jurisdictional discovery.  That is, while claiming to accept the facts alleged by the

11  Plaintiffs' Complaint as true and given for purposes of their motions to dismiss, and to be

12  challenging only the adequacy of the legal theories being put forward, Defendants do the

13  opposite.  They offer not just legal arguments, but new facts and documentary evidence, as well

14  as alternative interpretations of the facts, and legal theories based on these alternative facts, in

15  support of the defenses they present.  This seeks to place into question the validity of the facts and

16  arguments set out in the Plaintiffs' Complaint, the Defendants' assurances to the contrary

17  notwithstanding.

18      A case in point is the claim underlying Defendants' Rule 12(b)(1) and 12(b)(6) motions

19  that they were obliged by Chinese law to provide the Internet user identifying information they

20  disclosed, because their officials and their corporation would be subject to civil and criminal

21  penalties under Chinese law if they refused to do so.  Defendants provided the Court with texts of

22  several selected Chinese statutes as supplements in support of this argument.  Even if the Chinese

23  laws themselves are admissible in support of the Defendants' motions to dismiss as part of the

24  public record (and Plaintiffs do not concede that they are), they justify the Plaintiffs'

25  jurisdictional discovery request, since they represent only a small part of the picture relating to

26  the "compulsion" argument.  The U.S. Department of State has itself officially reported that these

27  laws are selectively and often illegally applied to subvert and persecute the legitimate exercise of

28

free speech and free press rights.[1] Even without this official finding, legitimate questions have to be raised and explored as to how these requests for information were presented and responded to, what threats and expressions of compulsion accompanied them, and how other U.S. corporations facing similar requests responded. This information is critical to determining the accuracy of the Defendants' claims in their motions to dismiss, and should be made subject to jurisdictional discovery before the Defendants' lack of jurisdiction claims can be considered and accepted.

The Court can be informed in its consideration of this matter and can take judicial notice of recent revelations in the public domain that as a general practice U.S. telecommunications firms improperly provided customer records to federal law enforcement authorities in hundreds of cases of domestic monitoring and surveillance "without traditional legal supporting documents," and without inquiring into the "requests' legality or necessity," arguing, exactly as Yahoo! has suggested in the present case, that they had no duty to inquire into the legality of the requests, and that "public officials, not private businessmen, must ultimately be responsible for whether the legal judgments underling … surveillance activities turn out to be right or wrong…." "Verizon Says It Turned Over Data Without Court Orders," *Washington Post*, October 16, 2007, p.1. Although the standards applied to domestic and foreign surveillance activities are different, these revelations provide support for the view that in both contexts factual information regarding the circumstances surrounding the disclosures are vital to determining the legality and appropriateness of the companies' actions, not simply excerpts from the laws in question. If unlawful and inappropriate requests for information and disclosures of user information can take place in the U.S, they are also likely to take place in China, making it essential that more detailed factual information be obtained, beyond simply the text of Chinese laws, that will shed light on the legality of requests being made and Yahoo!'s disclosures, and the actual degree of "compulsion" that was present.

Among other new factual materials offered and factual arguments presented in conjunction with the motions to dismiss are the statement made by the Managing Director of

---

[1] *See* Country Reports on Human Rights Practices - 2006. Released by the Bureau of Democracy, Human Rights, and Labor, March 6, 2007, http://www.state.gov/g/drl/rls/hrrpt/2006/78771.htm, found on 09/11/07.

1   Yahoo! Hong Kong regarding lack of sufficient business connections with the U.S., U.S.

2   Department of State Statements of Interest in several other cases involving China, and the text of

3   several Chinese statutes and administrative regulations.[2]  All of these documents have been

4   selectively chosen to present facts and views that seek to undercut the factual allegations and

5   legal arguments presented by the Plaintiffs in their Complaint and other pleadings.  As such, they

6   go well beyond the meaning and purpose designed to be served by Federal Rule 12 motions.

7   They seek to put into question the factual accuracy of key elements of the Plaintiffs' allegations,

8   to question the factual basis underlying many of the legal claims being made, and to offer

9   alternative factual interpretations supporting the various defenses being offered by Yahoo!.  As

10  such, they justify and require the more complete factual analysis that only jurisdictional discovery

11  can provide.

12

13          C.      **Defendants' Motions Do Not Rest on Purely Legal Issues, But Require
                    Underlying Factual Determinations to be Made.**

14          Contrary to the Defendants' position in their October 11 Opposition pleading (p. 1, line

15  10), the Defendants' motions do not turn on purely "*legal* propositions … that support dismissal

16  of some or all of plaintiffs' claims" (emphasis supplied).  While the motions certainly are based in

17  part upon legal issues, many of these legal standards cannot be applied to the Plaintiffs' claims

18  without more of a factual analysis than that provided by the highly selective and self-serving

19  presentations accompanying the Defendants' motions and other pleadings.  For example, the

20  applicability of the act of state doctrine hinges (among other considerations) on the nature and

21  extent of the Defendants' involvement in, and understanding of, the nature and consequences of

22  the criminal prosecutions undertaken by Chinese officials against the detained Plaintiffs.  Mot.

23  Diss. page 7.  Motion to Dismiss Similarly, the Defendants' "extraterritoriality" argument

24  regarding the Electronic Communications Privacy Act, 18 U.S.C. §2701, §2702, and § 2511, is

25  subject to dispute not just as a matter of law, but as regards whether the disclosed electronic

26  communications that are the subject of the Complaint did in fact affect U.S. based Internet users

27  in addition to those in China.  Restatement 3d. Foreign Relations Law of the United States

28  _____
    [2] *See* Tsoi Decl., Motion to Dismiss Appendix A, Exhibits E and G, and Appendix B, Tabs 1-6.

§§403(2)(a).  The issue of whether California claims can be barred on governmental communication statutory privilege grounds cannot be addressed without a much clearer factual understanding of the nature of those communications, and whether they may well fall under one or more of the recognized exceptions to the privilege in question, including the exceptions for unlawful communications, and for communications related to foreign governmental activities that do not meet fundamental fairness and due process standards.  *McDonald v. Smith*, 472 U.S. 479, 485 (1985).

> **D.    Each of the Defendants' Motions Raises Factual Issues Relevant to Jurisdiction.**

Each of the Defendants' motions, including their anti-SLAPP motion to strike under California law, contains and/or raises factual issues and allegations that present the need for additional information to be obtained through initial discovery in order for the motions to be properly and fairly responded to and decided.  The only possible exception is the Defendants' Rule 12(e) motion in the alternative for a more definite statement.  The analysis below in Section II dealing with each of the Defendants' individual motions, provides detail on the factual issues that each of these motions raise, and why additional factual discovery is required to properly address them.

> **E.    Jurisdictional Discovery Is Necessary and Appropriate Under These Circumstances.**

A more thorough examination through initial and jurisdictional discovery is required of the facts and issues the Defendants seek to raise in each of their motions.  Initial and jurisdictional discovery is the sole means available for obtaining the additional information – *information that is uniquely in the Defendants' possession and control* – needed for the Court to make an informed judgment concerning the various motions the Defendants have raised.

Jurisdictional discovery is widely recognized as necessary and appropriate under these circumstances both in general terms, and in the context of the specific types of Rule 12(b) motions that the Defendants have introduced.  It is well accepted that federal courts "always have

1   jurisdiction to determine its own jurisdiction." *U.S. v. Ruiz*, 536 U.S. 622, 627 (2002). Rule

2   26(b)(1) provides that "parties may obtain discovery regarding any matter, not privileged, that is

3   relevant to the claim or defense of any party ...." F.R.Civ.P. 26(b)(1). Because the Defendants'

4   motions to dismiss are identified as a "defense" in Rule 12(b), Rule 26(b)(1) has been interpreted

5   to mandate that facts relating to such motions to dismiss are discoverable. *See Data Disc, Inc. v.*

6   *Systems Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *Wells Fargo and Co. v Wells Fargo*

7   *Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977). There is considerable support for the

8   proposition that courts should allow for jurisdictional discovery when pertinent facts bearing on

9   the question of jurisdiction are contested, or when a more satisfactory rendition of the facts is

10  necessary. *Butcher's Union Local No. 498 v. SDC Investments, Inc.*, 788 F.2d 535, 540 (9th Cir.

11  1986). *See also Wells Fargo,* 556 F.2d at 431, note 24. Additional case law support on the need

12  for jurisdictional discovery in the context of specific types of motions to dismiss is provided in

13  Section II below, dealing with the Defendants' individual motions.

14         **F.**    **Why Court-Ordered Jurisdictional Discovery Is Needed**.

15        The Defendants' argument that a court order to initiate jurisdictional discovery is not

16  necessary because Plaintiffs can self-initiate the process at any time, does not have a basis in

17  either fact or law. Defendants have made clear their position that they strenuously object to the

18  initiation of discovery until their numerous motions to dismiss have been decided. Any effort by

19  Plaintiffs to seek disclosures from Defendants without a court order would be futile under these

20  circumstances, given Defendants' stated position on this issue. In addition, jurisdictional

21  discovery, since it is focused on the court's need to determine whether it properly has jurisdiction

22  to consider a case, and arises in connection with and in response to motions to dismiss, cannot be

23  undertaken by the Plaintiffs acting in their own capacity, but requires specific court action in

24  order to be initiated. Fed. R. Civ. Proc. 26(d).

25

26        **G.**    **Plaintiffs Are Not Seeking Long-Term, Comprehensive Discovery As Defendants**
                 **Claim, But Limited Discovery Over A Short Period (Estimated At Three Months)**

27                   **Carefully Focused On Specifically Identified Jurisdictional Issues.**

28        Defendants' October 11 Opposition conveniently mischaracterizes the Plaintiffs'

1   jurisdictional discovery request as comprehensive and lasting a year, when in actuality a short-

2   term (three month), tightly focused and very limited initial discovery process is proposed, keyed

3   to the more complete factual analysis that is needed for addressing and determining the several

4   jurisdictional issues that Defendants' motions have raised.  It is ironic that Defendants are

5   accusing the Plaintiffs of seeking to delay this litigation when the Defendants' position from the

6   beginning, starting with their motions to "bifurcate" the proceedings into "sequential" segments,

7   and including their most recent series of unconsolidated motions to dismiss and associated

8   motions, are quite obviously geared towards delaying the litigation process, and keeping Plaintiffs

9   from reaching the merits of the case.

10  **H.    The Defendants' Motions Should Be Treated In a Unified and Consolidated Way, as Rule 12(g) Contemplates, Not As Separate and Unrelated Matters, Based on the Defendants' "Bifurcated" Approach That This Court Previously Rejected.**

11

12      When the Defendants initially proposed (Motion dated June 12, 2007) taking a

13  "bifurcated" and "sequential" approach in dealing with a variety of jurisdictional issues raised by

14  this case, this Court rejected their proposal as inconsistent with the regular case management

15  procedures called for under the Court's rules, and as unnecessarily delaying the litigation process.

16  In essence, the Defendants are now seeking to revive their rejected proposal for a bifurcated and

17  sequential process, repackaging it in the form of a series of separate motions to dismiss and

18  associated motions.  As Plaintiffs have pointed out, this approach is inconsistent with the

19  consolidated approach to Rule 12 motions to dismiss that is mandated and favored under Rule

20  12(g).  It also is inconsistent with this Court's Order of Aug. 23, 2007, referring to submission of

21  "a motion to dismiss" (presumably in the consolidated form called for under Rule 12(g)) not

22  exceeding 40 pages, standards that were violated by the Defendants' multiple Rule 12 motions

23  totaling well over the Court's established page limit.  These deficiencies are highly relevant to

24  how the Court should deal with Defendants' suggestion that their separate motions be treated on

25  an individual basis, with some elements permitted to be considered even if other elements are

26  made subject to jurisdictional discovery.

27      Plaintiffs' position is that all of the motions should be treated on a unified and

28

1   consolidated basis, as Rule 12(g) contemplates, rather than being treated as separate, independent

2   and unrelated matters.  Many of the factual issues needing supplementation through discovery

3   relate to several aspects of the Defendants' jurisdictional objections.  Rule 12(g) requires joint

4   and consolidated consideration of defenses, in order to discourage dilatory and delaying tactics,

5   and to promote a more coordinated approach in the handling of these related motions.  *Aetna Life*

6   *Ins. Co. v. Alla Medical Servs., Inc.*, 855 F.2d 1470, 1475, n.2 (9th Cir. 1988, *quoting* Section 2A

7   of Moore's Federal Practice P 12.22 at 12-192 (2d ed. 1987).  See also *Tiernan v. Dunn*, 295

8   F.Supp. 1253, 1256 (DC RI, 1969), *Schnabel v. Lui*, 302 F.3d 1023, 1034 (9th Cir. 2002).  To

9   allow separate defenses to be raised and considered independently would defeat the general

10  purpose of the Federal Rules and needlessly delay and prolong litigation.  *Victory v. Manning*,

11  128 F.2d 415, 417 (3rd Cir. 1942).

12  **II.    EACH OF THE DEFENDANTS' RULE 12 MOTIONS RAISES FACTUAL**
13  **ISSUES, AND REQUIRES FURTHER FACTUAL DEVELOPMENT, BEFORE**
    **THE UNDERLYING JURISDICTIONAL ISSUES CAN BE PROPERLY**
14  **ADDRESSED AND DECIDED.**

15      Contrary to the argument presented by the Defendants in their Opposition, the claims they

16  present in their various motions to dismiss and associated motions cannot be considered or

17  resolved purely as a matter of law.  It is not true that discovery "will yield no information relevant

18  to any of these legal points."  Defendants' Opposition, p. 5.  The legal principles they cite do not

19  suffice to resolve the issues in question without the need for concrete facts.  For example, as the

20  Ninth Circuit confirmed last month in the *Corrie* decision, and the Second Circuit most recently

21  confirmed in its *Khulumani* decision this week, many of the act of state, foreign policy, and other

22  non-justiciability claims must be considered in the context of the specific facts associated with the

23  case, and go well beyond the simple invocation of a legal doctrine (see subsection II(A), p. 9

24  below).  *Corrie v. Caterpillar, Inc.,* 2007 U.S. App. LEXIS 22133, 17 (9th Cir.); *Khulumani v.*

25  *Barclay National Bank, Ltd., et al., 05-2141-cv and 05-2326-cv* (2d Cir., decided October 12,

26  2007 (not yet reported), at 8.  Nor can the personal jurisdiction claims being made by Yahoo!

27  Hong Kong be considered without details – available only to the Defendants – concerning their

28  corporate agreements and relationships over various time frames relevant to this case (see

1    subsection II(B), p. 11, below).  Examination of specific factual needs associated with

2    Defendants' individual Rule 12 motions is provided below, and should be considered in

3    conjunction with related analyses provided in Plaintiffs' prior pleadings on these issues.

4         **A. Rule 12(b)(1) Lack of Subject Matter Jurisdiction Claims**

5              Jurisdictional discovery on factual issues implicated by a motion to dismiss for lack of

6    subject matter jurisdiction is permitted, and a refusal to grant jurisdictional discovery may be

7    considered an arbitrary denial of due process, if it would prejudice the plaintiffs.  *See Sizova v.*

8    *Nat. Inst. of Standards,* 282 F.3d 1320, 1326 (10th Cir. 2002).  Whether the Defendants' actions

9    involving the disclosure of Internet user identifying information constituted an unlawful "aiding

10   and abetting" of acts of torture and other violations of law in the present case, of course involves

11   interpreting and applying the statutory provisions of the ATCA and the TVPA.  But factual issues

12   also are involved, including the extent of the Defendants' knowledge of the likely consequences

13   of their disclosures, and the extent to which they knew or should have known whether or not the

14   communications whose contents were revealed were lawful in nature, and protected by

15   international and U.S. free press and free speech standards.  Facts relating to these issues as

16   alleged in the Complaint have been controverted by the Defendants motions, making "a more

17   satisfactory [and complete] showing of the facts" necessary for a judgment regarding jurisdiction

18   to be made.  *Sizova, infra. at 1326.*

19             The Court can be informed in its consideration of this issue and take judicial notice of the

20   announcement issued on October 16, by the Foreign Affairs Committee of the U.S. House of

21   Representatives that it would hold hearings on November 6 on whether Yahoo! lied to Congress

22   in its previous testimony in February 2006, regarding the extent of its knowledge of the nature

23   and consequences of its disclosure to Chinese officials.

24             For these reasons, whether Defendants come under the ATCA/TVPA aiding and abetting

25   standards cannot be treated simply as a matter of law, without considering the factual matters that

26   are integral to these issues.  As the just issued decision of the U.S. Court of Appeals for the

27   Second Circuit in the South Africa Apartheid cases indicates, both the issue of aiding and abetting

28   liability for private actors, and the issue of foreign relations impacts of a particular case, involve

1   complex factual determinations that are not foreclosed by simplistic and formalistic application of

2   these legal doctrines, but require a "careful 'case-by-case' analysis" of these questions based on

3   the type of more detailed fact-based approach that jurisdictional discovery is designed to make

4   possible.  *Khulumani* (2d Cir., decided October 12, 2007).  Simply citing legal principles such as

5   comity, foreign relations impacts or act of state, as Yahoo! seems to be suggesting, does not

6   justify dismissal without a more thoroughgoing examination of the factual circumstances

7   involved in applying these principles to the case in question.

8         Another key aspect of the Defendants' lack of subject matter jurisdiction claim focuses on

9   a variety of political question, foreign policy impact, comity, act of state and other related

10  arguments bearing on the question of the justiciability of the Plaintiffs' allegations, and whether

11  the Complaint involves matters subject legitimately to the federal courts' judicial powers.

12  Substantial case law, including a recent Ninth Circuit decision, supports the principle that these

13  types of "justiciability" questions fit within the Rule 12(b)(1) motion to dismiss framework, since

14  they involve challenges to subject matter jurisdiction.  *See e.g. Corrie*, 2007 U.S. App. LEXIS

15  22133, 17.  Defendants acknowledged as much when they listed Rule 12(b)(1) as one of the bases

16  for their motions to dismiss and associated motions on the first page of their motions to dismiss.

17  Courts have consistently held that the act of state doctrine and related non-justiciability factors do

18  not apply where the claims against a private defendant arise "out of alleged violation[s] of

19  fundamental human rights – for instance, a claim on behalf of a victim of torture or genocide …

20  [because] international law of human rights is well established and contemplates external scrutiny

21  of such acts."  Restatement (Third) of the Foreign Relations Law of the U.S. section 443 Cmt.(c)

22  (1987).  *See also, e.g., Mujica v. Occidental Petroleum Corp.,* 381 F.Supp.2d 1164 (C.D. Cal.

23  2005); *John Doe I v. Unocal Corp*., 395 F.3d 932 (9th Cir. 2002) (holding that the act of state

24  doctrine did not apply for aiding and abetting torture and rape).

25        Similarly, when the Defendants' argue that they can not be held responsible for the human

26  rights abuses committed by Chinese officials, they are raising not just legal issues relating to the

27  sufficiency of the Plaintiffs' Complaint, but, as the U.S. Court of Appeals for the Second Circuit

28  just confirmed only days ago, factual matters associated with whether the private defendant "acts

1   together with state officials or with significant state aid" sufficient to satisfy "aiding and abetting"

2   standards. *Khulumani,* (2d. Cir., decided Oct. 12, 2007), at 8.

3        In the circumstances of the present case, these are not matters that can be considered and

4   resolved simply by citing a legal principle on its face, without a more thorough examination of

5   the underlying factual circumstances as they relate to the Defendants' actions that may, or may

6   not, implicate these principles of law.  The availability of an "act of state" defense, for example,

7   may depend on the nature and extent of Defendant officials' involvement in the alleged human

8   rights abuses, whether they were sufficiently implicated in the alleged acts of torture, and the

9   extent to which they served as agents of the Government of China in their actions.  Defendants

10  offer facts that seek to challenge or contradict the facts alleged in the Complaint when they

11  suggest that they were compelled under Chinese law to disclose the Plaintiffs' Internet user

12  identifying information to Chinese authorities (Motion to Dismiss, p. 7), and when they argue that

13  "plaintiffs seek an order that would require Defendants to selectively violate China's laws…."

14  (Motion in Opposition to Plaintiffs' Motion to Enlarge Time, p. 2).  In their Motions to Dismiss,

15  Defendants go to considerable pain to establish the validity of these claims (Motion to Dismiss, p.

16  34, and note 39), thereby contesting the facts as alleged in the Complaint on these points.  These

17  are all matters that involve factual determinations as well as legal analysis.  That is why the

18  Plaintiffs' proposed jurisdictional discovery plan seeks copies of all the actual requests for

19  information received from Chinese officials, copies of all communications with Chinese officials

20  regarding these requests, the answers provided, and all of Defendants' internal communications

21  regarding the requests, especially those addressing the legality of these requests.

22       **B.  Rule 12(b)(2) Personal Jurisdiction Claims**

23       At the heart of the Defendants' lack of personal jurisdiction claims on behalf of

24  Yahoo! Hong Kong are questions concerning the nature and extent of Yahoo! HK's contacts in

25  California and the U.S., and the relationship of those contacts to the causes of action alleged in

26  the Complaint.  Defendants offered a statement by the General Manager of Yahoo! HK on the

27  contacts issues.  But this statement was very limited and self-serving in scope and content, raising

28  the necessity for additional facts to be obtained on the contact and relationship issues in order for

1    the Rule 12(b)(2) claims to be properly addressed and decided.

2          It is Plaintiffs' contention that the contacts between Yahoo! HK and California and the

3    U.S. are significantly greater than the General Manager contends, including direct supervision

4    and control over major elements of Yahoo! HK's operations and policies by Yahoo! Inc.,

5    specifically the question of how the request for Internet user identification information for China

6    users would be handled, a policy that according to testimony to Congress was made here in the

7    U.S. by Yahoo! Inc. officials.  Having offered factual assertions on these matters that contradict

8    those set out in the Complaint, Defendants have introduced new facts extraneous to the Complaint

9    and pleadings that justify and require jurisdictional discovery in order to be properly addressed.

10   Also highly relevant to this inquiry is information relevant to the U.S. recipients of the electronic

11   communications that were disclosed to officials of the Government of China and that were used

12   as a key foundation for the criminal prosecution of the Plaintiffs.  Information on these U.S. (and

13   other) recipients was apparently made available by Yahoo! to the Government of China, and

14   should be made available to the Plaintiffs and to this Court in assessing the level of minimal

15   contacts by Yahoo! HK with the U.S., whether the disclosures were lawful and justified, and the

16   extent of supervision of Yahoo! Inc. over China operations.  Communications between Yahoo!

17   and its China affiliates on these issues, as well as general policies affecting these activities, are

18   highly relevant to these matters.  Also relevant to these determinations would be facts regarding

19   the organizational structures and relationships between and among Yahoo! and its China affiliates

20   over different periods of time that speak to whether Yahoo! HK can be considered an alter ego or

21   agent of its parent company.  These matters are not addressed by the limited statement supplied

22   by Yahoo! HK's general manager.

23          **C.  Rule 12(b)(6) Failure to State a Claim Challenges**

24          Substantial case precedent addressing Rule 12(b)(6) motions supports limited initial

25   discovery in cases where Plaintiffs have stated cognizable claims, and where discovery is needed

26   in order to resolve potentially dispositive factual issues that can not be determined unless limited

27   discovery is granted.  *See, e.g., Canatella v. Van DeKamp*, 486 F3d 1128,1132 (9th Cir. 2007).

28   This is particularly needed where Defendant has presented new facts as part of, or in support of

1    its Rule 12(b)(6) motion, as is true in the present case, and where courts have cited these new

2    facts as a reason for treating the 12(b)(6) motion as the equivalent of a motion for summary

3    judgment under Rule 56.

4            **D.   Rule 12(b)(7) Indispensable Party Claim**

5            A major element of the indispensable party claim concerns whether the Government of

6    China can be joined as a party and is subject to the jurisdiction of the Court given their status as a

7    foreign government subject to coverage under the Foreign Sovereign Immunity Act immunity

8    protections.   There are notable exceptions to FSIA coverage related to "an act performed in the

9    United States in connection with a commercial activity" abroad, and to commercial activity that

10   "causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).  These are among the

11   elements that jurisdictional discovery would address in relationship to the specific activities of

12   Yahoo! and how they tie in with actions by Chinese officials that might ordinarily raise FSIA or

13   act of state claims, but for the exceptions.

14           Furthermore, simply because the interests of a foreign government may be implicated by a

15   pending court case does not necessarily mean that the foreign government must be treated as an

16   "indispensable party" for Rule 12(b)(7) and Rule 19 purposes.  The nature and extent of the

17   interactions between Yahoo! and officials of the Government of China reflect on this question, as

18   do to the level of responsibility of Yahoo! for the abuses involved, matters that cannot be decided

19   without further factual development.

20           **E.    Privileged Communications and Foreign Sovereign Compulsion Defenses**

21           The foreign sovereign compulsion defense is not available to corporations that do

22   business abroad in situations where the corporation knows or has reason to know that the

23   behavior being compelled would be contrary to U.S. laws (Restatement (Third) on Foreign

24   Relations Law of the U.S., *infra*, §442, note 6), and where the U.S. corporation did not make

25   efforts "to avoid or mitigate the effects" of the unlawful orders or requests, or otherwise produce

26   a result more consistent with U.S. laws and policies.  *See e.g., Societe Internationale Pour*

27   *Participations v. Rogers*, 357 U.S. 197, 205 (1958); *McGhee v. Arabian American Oil Co.*, 871

28   F.2d 1412, 1419 (9th Cir. 1999).  The nature and degree to which foreign compulsion was present,

1    and available as a defense, and whether required actions were taken to mitigate the alleged

2    compulsion where questions of the legality of the orders were involved, are all matters that

3    require further factual development.

4        **F.  Anti-SLAPP Motion to Strike Discovery Issues**

5        The privileged governmental communications protections of California's Anti-SLAPP

6    motion to strike provisions cannot be applied until additional information can be obtained

7    regarding whether the "lawful application" and "fair judicial process" exceptions to the foreign

8    application of the Anti-SLAPP statute may be applicable to the present case.  The necessity for

9    initial discovery in order to determine the applicability of the Anti-SLAPP statute is recognized in

10   section 425.16(g) of the statute itself, which permits the Court, on noticed motion and for good

11   cause shown, to grant discovery on SLAPP related issues.  *Metabolife Intern., Inc. v. Wornick,*

12   264 F.3d 832, 848 (9th Cir. 2001) (finding Plaintiff was entitled to discovery on crucial factual

13   issues); *Sipple v. Foundation for Nat. Progress,* 71 Cal.App.4th 226, 247 (2nd Dist. 1999)

14   (recognizing that discovery is authorized, where the plaintiff provides a clear explanation of what

15   additional facts are required and why they are necessary).  This limited discovery is necessary on

16   the SLAPP matters because Plaintiffs contest the legality and fundamental fairness of the legal

17   processes that were invoked as the basis for Yahoo!'s disclosures, matters that touch on the

18   availability of the SLAPP protections, and the applicability of the governmental communications

19   privilege that Defendants are claiming as the basis for their invoking the SLAPP statute.

20   **III.  CONCLUSION**

21       Based on the above arguments, Plaintiffs request that the Court order initial and

22   jurisdictional discovery for the purposes that have been set out, consistent with the initial and

23   jurisdictional discovery plan submitted to the Court with Plaintiffs' motion.  Plaintiffs further

24   request that the Court continue in effect its ruling that Plaintiffs' responses to the Defendants'

25   various motions to dismiss and associated motions are not due until 14 days after completion of

26   the initial and jurisdictional discovery process, or an order rejecting jurisdictional discovery,

27   whichever comes first.

28

1    Respectfully submitted this 18th day of October, 2007 by:

2

3                                                MORTON SKLAR
                                                 THERESA HARRIS
4                                                WORLD ORGANIZATION FOR HUMAN
                                                 RIGHTS USA
5                                                By: */s/ Morton Sklar*
                                                     Morton Sklar
6

7                                                ROGER MYERS
8                                                HOLME ROBERTS & OWEN LLP
                                                 By: */s/ Roger Myers*
9                                                    Roger Myers

10                                               Attorneys for Plaintiffs

11                                               Karen Parker
12                                               (CA State Bar No. 112486)
                                                 Association of Humanitarian Lawyers
13                                               154 5th Avenue
                                                 San Francisco, CA 94118
14                                               Telephone: (415) 668-2752
                                                 E-mail: ied@agc.org
15

16                                               *With the assistance of:*
                                                 Albert Ho Chun-Yan
17                                               Legal Representative for Shi Tao
                                                 Hong Kong
18

19                                               Neil Conley and Pavithra Shekar
                                                 George Washington University Law School
20                                               *Pro Bono Assistance*

21                                               Jessica Anna Cabot, American University,
                                                     Washington College of Law
22                                               Rifk Ebeid, George Mason University Law
                                                     School
23                                               Danielle Rosché, George Washington
                                                     University Law School
24                                               *Legal Interns*

25

26

27

28

Plaintiffs' Reply To Defendants' Opposition to
Jurisdictional Discovery                        - 16 -                    Case No. C07-02151 CW

**CERTIFICATE OF COMPLIANCE**

This reply on behalf of Plaintiffs Wang Xiaoning, Yu Ling, Shi Tao and Additional Presently Unnamed and To Be Identified Individuals complies with all Federal and Local Rule requirements including the page limit of 15 narrative pages.


Signed and Certified to this 18th day of October, 2007.


By: */s/ Morton Sklar*
    Morton Sklar
    Executive Director
    World Organization for Human Rights USA
    2029 P Street NW, Suite 301
    Washington, DC 20036